HUNTON ANDREWS KURTH LLP
ROLAND M. JUAREZ (SBN 160793)
rjuarez@HuntonAK.com
EMILY BURKHARDT VICENTE (SBN 263990)
ebvicente@HuntonAK.com
D. ANDREW QUIGLEY (SBN 280986)
aquigley@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: 213 • 532 • 2000
Facsimile: 213 • 532 • 2020

Attorneys for Plaintiff,
3D SYSTEMS, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTICT OF CALIFORNIA**

| | |
|---|---|
| 3D SYSTEMS, INC., a California Corporation;<br><br>              Plaintiff,<br><br>       v.<br><br>BEN WYNNE, an individual; CHRIS TANNER, an individual; JAMIE ETCHESON, an individual; ROBERT MUELLER, an individual; IVAN CHOUSAL, an individual; INTREPID AUTOMATION, a California Corporation; and DOES 1 through 20, inclusive,<br><br>              Defendants. | CASE NO. 3:21-CV-01141-LAB-DEB<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT;**<br>**2. VIOLATION OF THE DEFEND TRADE SECRETS ACT;**<br>**3. BREACH OF CONTRACT;**<br>**4. BREACH OF DUTY OF LOYALTY;**<br>**5. CIVIL CONSPIRACY**<br>**6. VIOLATION OF BUSINESS & PROFESSIONS CODE §§ 17200, *ET SEQ.***<br>**7. UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1
FIRST AMENDED COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Plaintiff 3D Systems, Inc. ("3D Systems") alleges the following against Defendants Ben Wynne (hereafter, "Wynne"), Chris Tanner (hereafter, "Tanner"), Jamie Etcheson (hereafter, "Etcheson"), Robert Mueller (hereafter, "Mueller"), Ivan Chousal (hereafter, "Chousal"), Intrepid Automation (hereafter, "Intrepid") (collectively, "Defendants"), and other as of yet unnamed defendants, on information and belief formed after reasonable inquiry under the circumstances:

## I.    INTRODUCTION

1.      This is a case of blatant illegal and improper competition, the very sort of unlawful and unfair "business practice" that California law strictly prohibits.  3D Systems is a leading provider of 3D printing centric design-to-manufacturing solutions including 3D printers, print materials, software, and cloud sourced on-demand custom parts for professionals and consumers alike in materials including plastics and metals. The company also provides integrated 3D scan-based design, freeform modeling and inspection tools and an integrated 3D planning and printing digital thread for personalized surgery and patient specific medical devices.

2.      3D Systems has spent decades developing its designs and products, business relationships, and other confidential, proprietary, and trade secret information as well as investing in and training its employees.  Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal were five such employees in 3D Systems' San Diego office.  As a group, they were referred to as the "Architects," since they all held the position of Principal Systems Architect for 3D Systems.  They all came over to 3D Systems from Hewlett Packard (HP) between June and August 2016.

3.      Following their training, 3D Systems relied on the Architects to redesign 3D Systems' signature line of digital light processing (DLP) three dimensional printers – the Figure 4 family of products.  On information and belief, the Architects, however, had no prior experience working on 3D technology.  Thus, 3D Systems senior engineers taught them the ins and outs of 3D Systems' processing and provided

FIRST AMENDED COMPLAINT

1  them access to the company's trade secrets and confidential information.  3D Systems,

2  through its patent agents and counsel, filed patent applications with the various

3  Architects identified as inventors.

4      4.    3D Systems recently learned that the Architects betrayed 3D Systems'

5  trust.  While still employed by 3D Systems, the Architects began scheming to form a

6  competing company, Intrepid Automation.  They worked together to plan this

7  company, planned their joint departure together in a way to inflict damage on 3D

8  Systems, and then wiped their work computers and work phones clean in order to

9  cover their tracks, and resulting in destruction of 3D Systems documents and

10  information.

11      5.    The Architects were very secretive about where they were leaving to and

12  what their plans were upon their departure from 3D Systems.  Unbeknownst to 3D

13  Systems at the time of their departure, the Architects started a competing company,

14  Intrepid Automation, and sought investors and customers to help design or develop

15  3D printing capabilities.

16      6.    Since then, Intrepid has hired at least five engineers from 3D Systems'

17  San Diego office, many of whom had previously worked with the Architects at HP

18  prior to joining 3D Systems.

19      7.    The Architects also stole 3D Systems trade secrets.  3D Systems

20  discovered this misappropriation in early 2021 when 3D Systems learned that the

21  Architects and Intrepid used 3D Systems' non-public, trade secret information in

22  Intrepid's patent filings.  The patent applications filed by the Architects on behalf of

23  Intrepid borrowed heavily and directly from 3D Systems' trade secret information,

24  which the Architects learned while working for 3D Systems, and which they blatantly

25  misappropriated for their own and Intrepid's benefit and at great cost to 3D Systems.

26      8.    The Architects acted in concert to capitalize on 3D Systems' hard work

27  and confidential, proprietary, and trade secret information, and gain an unfair

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FIRST AMENDED COMPLAINT

21cv01141 LAB DEB

competitive advantage in the 3D printing industry.  This campaign of unlawful competition against 3D Systems has caused significant damage to 3D Systems' business, directly violates the law, and has forced 3D Systems to file this lawsuit to protect its business interests.

## II.    JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. § 1331.

10.     Venue is proper in this District under 28 U.S.C. § 1391 because Intrepid's principal place of business is in this District, and a substantial portion of the events and a substantial portion of the events and omissions giving rise to the claims and losses at issue occurred within the District.  Additionally, Wynne, Tanner, Etcheson, Mueller, and Chousal all worked in and were responsible for 3D Systems business in San Diego, California.

## III.    THE PARTIES

11.     Plaintiff 3D Systems, Inc. is a corporation organized, existing, and doing business under the laws of the State of California. The principal place of business for 3D Systems is 16550 W. Bernardo Dr., Building 5, Suite 500, San Diego, CA 92127. Plaintiff 3D Systems, Inc. is a wholly owned subsidiary of 3D Systems Corporation.

12.     Intrepid is a corporation organized under the laws of the State of California with its principal place of business at 7867 Dunbrook Rd., Suite A, San Diego, California 92126.

13.     Upon information and belief, Defendant Wynne is an individual residing in Escondido, California.  Wynne was employed by 3D Systems from June 2016 to August 2017, as a Principal Systems Architect.  Wynne was based in 3D Systems' San Diego, California office.

14.     Upon information and belief, Defendant Tanner is an individual residing in Idyllwild, California.  Tanner was employed by 3D Systems from June 2016 to

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

August 2017, as a Principal Systems Architect.  Tanner was based in 3D Systems' San Diego, California office.

15.    Upon information and belief, Defendant Etcheson is an individual residing in San Diego, California.  Etcheson was employed by 3D Systems from June 2016 to August 2017, as a Principal Systems Architect.  Etcheson was based in 3D Systems' San Diego, California office.

16.    Upon information and belief, Defendant Mueller is an individual residing in San Diego, California.  Mueller was employed by 3D Systems from July 2016 to August 2017, as a Principal Systems Architect.  Mueller was based in 3D Systems' San Diego, California office.

17.    Upon information and belief, Defendant Chousal is an individual residing in Chula Vista, California.  Chousal was employed by 3D Systems from August 2016 to August 2017, as a Principal Systems Architect.  Chousal was based in 3D Systems' San Diego, California office.

18.    The true names and capacities of the defendants sued under the fictitious names of DOES 1 through 20 are unknown to 3D Systems, and 3D Systems will seek leave of court to amend this Complaint to allege such names and capacities as soon as they are ascertained.

## IV.    FACTUAL ALLEGATIONS

19.    On April 4, 2016, Vyomesh Joshi ("Joshi"), a former executive at Hewlett Packard (HP), joined 3D Systems as President and CEO and soon thereafter opened a San Diego office for 3D Systems.

20.    By July 2016, Defendants Wynne, Tanner, Etcheson, and Mueller joined 3D Systems in the San Diego office as Principal Systems Architects.  By at least September 2016, Defendant Chousal also joined 3D Systems in the San Diego office as a Principal Systems Architect.  All five individual Defendants (the "Architects") had been engineers at HP whom Joshi brought to 3D Systems.

21. Each of the Architects signed employee confidentiality agreements with 3D Systems Corporation and its subsidiaries, including Plaintiff 3D Systems, which included intellectual property assignment obligations.

22. Each of the Architects agreed in these Agreements that he would not disclose 3D Systems' Confidential Information.

23. The Agreements were designed to protect 3D Systems' confidential, proprietary, and/or trade secret information from its competitors and from the general public.

24. The Agreements contain a clause that prohibits the Architects from disclosing 3D Systems' non-public, proprietary, and confidential information both during their employment with 3D Systems and after:

> Employee recognizes and agrees that Employee will not, at any time, whether during or subsequent to the term of Employee's employment by the Company or any of its subsidiaries, unless done so in the performance of Employee's job responsibilities as an employee of the Company   . . . directly or indirectly use, divulge, disclose, release, publish, or communicate to any person, firm or corporation confidential information belonging to the Company or any of its subsidiaries or their business, as that term is defined in this Agreement. "Confidential Information" specifically includes: (a) the identities, buying habits or practices of the Company's customers; (b) the Company's advertising and marketing strategies, methods, research and related data; (c) the names of the Company's vendors, resellers or suppliers; (d) the cost, type and quantity of materials and/or supplies ordered by the Company; (e) the prices at which the Company obtains or has obtained or sells or has sold its products or services; (f) the Company's manufacturing, distribution and sales costs, methods and objectives; (g) technical information including machinery and equipment designs, drawings and specifications; (h) inventions; (i) pending patent applications; (j) product information including designs, drawings, specifications, methods of quality control and formulas or equations used in connection therewith; (k) "trade secrets" as such term is defined by California law; and/or (l) current or potential customer lists, pricing lists, supplier lists or reseller lists. The parties hereto agree that the foregoing items of Confidential

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

21cv01141 LAB DEB

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Information are important, material, and confidential, could constitute trade secret material, affect the successful conduct of the Company's business, and its goodwill, and that a breach of any term of this Section 2 is a material breach of this Agreement.

\*\*\*\*\*\*

Employee agrees to comply with all of the Company's security and confidentiality procedures including but not limited to, maintaining the secrecy of all Confidential Information. Employee further agrees that Employee will use his/her best efforts to preserve the confidentiality and secrecy of all Confidential Information that comes into Employee's possession, or of which Employee becomes aware.

25.     The five individual Defendants were sometimes called the "Architects" because their first major project at 3D Systems was to redesign the architecture of the Figure 4 family of products that were under development at 3D Systems prior to their arrival there.  Figure 4 is 3D Systems' name for its DLP-based 3D printing systems.

26.     Figure 4 products using digital light processing project the light (which selectively solidifies a liquid photocurable polymer) through the bottom of a light-transparent tray filled with the liquid photopolymer to form the 3D object that is connected to a platform that is pulled up out of the tray of liquid photopolymer during the 3D printing process.

27.     Joshi instructed 3D Systems' senior engineers, including Scott Turner, to take the Architects under their wings and get them up to speed on 3D Systems' latest 3D technology in order to enable them to improve on the Figure 4 products.

28.     Upon information and belief, the Architects had no experience working on 3D technology in their previous jobs at HP.

29.     One project that the Architects worked on at 3D Systems was "Enso," which was 3D Systems' Figure 4 print engine.  The "Enso" design is unique compared to other stereolithography systems.  Using 3D Systems confidential information, Enso

FIRST AMENDED COMPLAINT

21cv01141 LAB DEB

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  was developed by Defendant Tanner in late 2016 and early 2017 while he worked for

2  3D Systems.

3      30.    3D Systems provided the Architects with the knowledge they needed.

4  During the Architects' employment with 3D Systems, 3D Systems filed at least eight

5  (8) patent application families with the various Architects as inventors.

6      31.    The Architects worked on the Enso Figure 4 project until their sudden

7  joint departure from 3D Systems in August 2017.

8      32.    Upon information and belief, prior to ending their employment with 3D

9  Systems, the Architects decided to start their own competing company, to compete

10  against 3D Systems, and to steal 3D Systems key employees (including inducing each

11  other to leave) to accomplish the same.

12      33.    During the course of their employment with 3D Systems, and prior to

13  their coordinated departure in August 2017, the Architects forwarded emails from

14  their 3D Systems email accounts to their personal email accounts.  Included in those

15  forwarded emails were floor plans for a new lab that 3D Systems was proposing to

16  build.  Chris Tanner was tasked with laying out the lab for 3D Systems, but he made

17  sure to send floor plans and equipment and space requirements to his personal email

18  account, including the final design plans, which Tanner sent to himself just weeks

19  before he left to start Intrepid.

20      34.    During his employment with 3D Systems, Ivan Chousal sent to his

21  personal email account diagrams and floor plan information for various 3D Systems

22  equipment, such as Halo, LabDental, and ProBot.  Among these documents was the

23  "Enso 2.6 Power Topology Revision 0.02," dated February 16, 2017, which was

24  confidential research and development information of 3D Systems.

25      35.    Both Tanner and Chousal, during their employment with 3D Systems,

26  sent to their personal email numerous pictures of equipment used at 3D Systems' lab,

27  including photos of "stack light," the "Testbot" printer, and a "pump" used in the lab.

28

FIRST AMENDED COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

36.    The floor plans, lab information, and the particular equipment used by 3D Systems was confidential and could benefit a competitor if taken and used.

37.    On July 23, 2017, Ben Wynne received on his personal email account links to Dropbox files containing images that would allow him to re-flash Halo boards.  The subject line on the email was "Re: Re-flasher for Enso…"  On information and belief, Wynne retained these images from the Dropbox file after his employment with 3D Systems ended a month later.

38.    On August 2, 2017, Etcheson opened an external thumb drive on his work laptop and browsed a file called "backup.pst."  On information and belief, Etcheson exported onto this thumb drive a copy of his entire 3D Systems email account as of August 2, 2017.  Thus, on information and belief, the Architects would have access to information related to 3D Systems' customers, pricing lists and information, supplier lists, vendor and supplier contact information, information related to materials ordered from vendors, 3D Systems' marketing strategies, and product design information.

39.    Two days after Etcheson is believed to have exported a copy of his entire 3D Systems email account onto a thumb drive, the Architects each submitted identical resignation letters to Joshi on August 4, 2017.  The Architects each provided two weeks' notice and stated that August 18, 2017 would be their last day of employment with 3D Systems, with the exception of Etcheson, whose last day of employment was August 14, 2017.  Each of the Architects stated that, during his last two weeks at 3D Systems, he would "do everything possible to wrap up [his] duties and train other team members."  However, that is not what the Architects did.

40.    On August 14, 2017 – his last day of work at 3D Systems – Etcheson plugged an external USB hard drive device into his work laptop.  Etcheson then browsed on his work computer a folder on a USB drive labeled "Software," as well as a "Documents\3DSystems" folder on the user profile on his work computer.  Etcheson

21cv01141 LAB DEB

last plugged in the USB device at 10:48 a.m., and he accessed the "Software" folder on that USB drive one minute later at 10:49 a.m.  Etcheson did this approximately an hour after he last opened his Resignation Letter on this device, at 9:52 a.m. that morning.

41.    All of the information identified in paragraphs 34-40 falls within the definition of Confidential Information in the Architects' Agreements.

42.    Before they left, the Architects reset their work phones prior to turning them in to 3D Systems upon their departure in an attempt to wipe their work phones clean in order to cover their tracks, and resulting in destruction of 3D Systems documents and information.  Four of the work phones had been "hard" factory reset, meaning no data could be recovered from these work phones.  The fifth work phone was also reset, but because it asked for a PIN code, it may not have been a "hard" factory reset.   The computer hard drives for four of the Architects – Defendants Wynne, Tanner, Mueller, and Chousal – were also professionally wiped of data.  Thus, 3D Systems only learned of the Architects' coordinated conduct in attempting to cover their tracks because Defendant Etcheson did not completely wipe his work laptop.

43.    The Architects also did not inform 3D Systems management about where they were going to work after their employment with 3D Systems ended or what their plans were.

44.    The Architects left 3D Systems and it appears they immediately formed a company, Intrepid Automation ("Intrepid"), which competes directly with 3D Systems.  On its website, Intrepid states:

> Intrepid Automation will be the essential **additive manufacturing and automation** service provider offering full end-to-end integration of **highly optimized 3D printing technology and downstream automation** in supply chains for customers looking to modernize their manufacturing processes and harness the power of data (for

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

10

FIRST AMENDED COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

compliance, governance, security, visibility, auditability, and traceability) as part of their ongoing digital transformations.

https://www.intrepidautomation.com/ (emphasis in original) (last visited April 29, 2021)

45.    3D Systems believes the Architects – during their employment with 3D Systems – were seeking investors and customers to help design or develop 3D printing capabilities.

46.    Since its founding in August 2017, Intrepid has hired approximately five or six engineers from 3D Systems' San Diego office, many of whom had also worked with the Architects at HP prior to working for 3D Systems.

47.    3D Systems hereby alleges that Defendants misappropriated 3D Systems' trade secrets, and that Defendants are unlawfully using and benefitting from 3D Systems' trade secrets, which 3D Systems discovered only recently.

48.    Intrepid began filing patent applications related to 3D printing on or about June 29, 2018.  Between June 29, 2018 and October 1, 2018, Intrepid filed six patent families.

49.    3D Systems has been monitoring Intrepid's patent filings, as it does with many third party patent filings in the 3D industry, and Intrepid's patent filings started publishing in early 2020.   3D Systems did not discover that the Architects and Intrepid stole 3D Systems non-public, trade secret information until early 2021.

50.    All five patents and one patent application that the Architects applied for at Intrepid contain trade secret and confidential drawing details of Enso, which the Architects could only have learned about while working at 3D Systems. These include Intrepid Patent Numbers 10,780,640; 10,809,205; 10,759,116; 10,647,055; 10,844,211; and Intrepid Patent Application Number US 20200103857.  Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal are each listed as Inventors for these patents and patent application.

FIRST AMENDED COMPLAINT

21cv01141 LAB DEB

51.     The drawings for Intrepid's Patent Number 10,780,640, for instance, include details from at least three 3D Systems sources that were not published or made available to the public at the time of Intrepid's filing: a) a DLP multi-projector system that was developed by Guthrie Cooper of 3D Systems, which were provided to the Architects during their onboarding at 3D Systems in June and July 2016; b) the Enso Figure 4 print engine that was designed by Defendant Tanner while at 3D Systems; and c) 3D Systems' patent application for a multi-projector printing system – US20180222125.

52.     With respect to the DLP multi-projector system, the Architects incorporated into their patent for Intrepid highly confidential edge blending and calibrating techniques developed by 3D Systems, which is a unique technique for varying energy when transitioning from one projector to another.

53.     Intrepid also stole and incorporated Enso CAD drawings and CAD data, and the initial Enso patent filings that were not published at the time Intrepid filed its patent application for Patent Number 10,780,640.  These features include the spine for supporting components, elevator mounted to spine, projector mounted to spine, and bracket on the projector.  The CAD data contains confidential and trade secret mechanical assembly information, including dimensioning and tolerance data in order to optimize cost and assembly, and to ensure reliable and repeatable manufacturing. This information is confidential trade secrets that 3D Systems does not share.

54.     Intrepid's patent application for Patent Number 10,780,640 also overlaps heavily with 3D Systems' US20180222125 patent application disclosure.  Both describe an additive manufacturing system comprised of an image projection system made up of a plurality of image projectors and a display subsystem that controls the image projection system and each of the image projectors.  3D Systems' patent application was not publicly available at the time of Intrepid filing its patent application.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FIRST AMENDED COMPLAINT

21cv01141 LAB DEB

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

55.    Intrepid's Patent Number 10,647,055 includes updating print platform motion parameters based upon resin pool temperature.  Most of the claim elements include features that Defendant Tanner developed for Enso, which 3D Systems had not published and had not made publicly known at the time Tanner filed the patent application on behalf of Intrepid.  Tanner filed this patent application on or about June 2018 while at Intrepid, which was before any Enso filing by 3D Systems was published and made available to the public.  Whereas other 3D printers in the market operated at room temperature, 3D Systems developed a unique printer with active temperature control that improves the print process.  3D Systems studied the effects of heating polymer to print at a higher speed with better results.  This information was confidential and a trade secret of 3D Systems, which Intrepid unlawfully took and patented.

56.    Intrepid made a provisional patent filing of a stereolithography bot system – Intrepid Patent Application Number US 20200103857 – which contains most of the trade secret and proprietary elements that were provided to Jamie Etcheson by 3D Systems when Etcheson worked for 3D Systems.  These elements were not publicly known at the time of Intrepid's filing.

57.    Intrepid's provisional filing of Patent Application Number US 20200103857 also contains trade secret and proprietary elements directly from 3D Systems' Enso "Figure 4" print engine design, including elements from the Enso CAD drawings and 3D Systems' initial Enso patent filings, which were not published at the time of Intrepid's provisional filing.   The control system for Enso is unconventional and represented a very different approach to 3D printers, as the printer itself was a server that could draw data from sources other than the printer itself, including spooling data from the internet.

58.    Because of their misappropriation of 3D Systems' trade secrets, Defendants were able to develop competing 3D products in a relatively short period of time after the formation of Intrepid.

## **FIRST CAUSE OF ACTION**

**Violation of the California Uniform Trade Secrets Act, Civ. Code § 3426, *et seq.* (Against All Defendants)**

59.    3D Systems re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-58.

60.    3D Systems' compilations, programs, devices, methods, techniques, or processes described above constitute trade secrets as defined by California's Uniform Trade Secrets Act.

61.    The above described trade secrets derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public who can obtain economic value from their disclosure or use. These trade secrets would be useful for a competitor of 3D Systems and give 3D Systems a completive advantage.  As a result, at all relevant times, 3D Systems has made, and continues to make, reasonable efforts to maintain the secrecy of this confidential, proprietary, and trade secret information.  For example, 3D Systems requires the use of key cards to enter the building and key cards to enter the labs, the use of firewalls and passwords to protect access, providing passwords on a need-to-know basis, and the use of confidentiality agreements and non-disclosure agreements to require employees to maintain the secrecy of 3D Systems' Confidential Information.

62.    Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal knew or should have known under the circumstances that the information they misappropriated for their own benefit and for the benefit of Defendant Intrepid were trade secrets.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

21cv01141 LAB DEB

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

63.     Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal misappropriated trade secrets by acquiring trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means, and Defendants Intrepid, Wynne, Tanner, Etcheson, Mueller, and Chousal are using and/or threatening to use the trade secrets acquired by improper means without 3D Systems' knowledge or consent.

64.     As a direct and proximate result of Defendants' conduct, 3D Systems is threatened with injury and has been injured in an amount in excess of the jurisdictional minimum of this Court and that will be proven at trial.  3D Systems has also incurred, and will continue to incur, additional damages, costs and expenses, including attorney's fees, as a result of Defendants' misappropriation.  As a further proximate result of the misappropriation and use of 3D Systems' trade secrets, Defendants were unjustly enriched.

65.     The aforementioned acts of Defendants were willful, malicious and fraudulent.
3D Systems is therefore entitled to exemplary damages.

66.     Defendants' conduct constitutes transgressions of a continuing nature for which 3D Systems has no adequate remedy at law.  Unless and until enjoined and restrained by order of this Court, Defendants will continue to retain and use 3D Systems' trade secret information to enrich themselves and divert business from 3D Systems.  3D Systems is entitled to a preliminary and permanent injunction against the misappropriation and continued threatened misappropriation of trade secrets as alleged herein and further asks the Court to restrain Defendants from using all trade secret information misappropriated from 3D Systems and to return all trade secret information to 3D Systems.

67.     3D Systems is entitled to an award of attorneys' fees for Defendants' misappropriation of trade secrets.

FIRST AMENDED COMPLAINT

21cv01141 LAB DEB

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## SECOND CAUSE OF ACTION

### Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*
### (Against All Defendants)

68.   3D Systems re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-67.

69.   The trade secrets mentioned above are protected by the Defend Trade Secrets Act.

70.   3D Systems' Confidential Information relates to products and services used, sold, shipped, and/or ordered in or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

71.   As stated above, 3D Systems has undertaken efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets at issue.

72.   Due to these security measures, 3D Systems' trade secret information is not available for others in the 3D printing industry – or any other industry – to use through any legitimate means.

73.   3D Systems' confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.  The trade secrets would benefit a competitor of 3D Systems if known.

74.   In violation of 3D Systems' rights, Defendants misappropriated 3D Systems' confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein.  Defendants' misappropriation of 3D Systems' confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.  Defendants have attempted and continue to attempt to conceal their misappropriation.

21cv01141 LAB DEB

75.    3D Systems is informed and believes and hereby alleges that if Defendants are not enjoined, Defendants will continue to misappropriate and use 3D Systems' trade secret information for their own benefit and to 3D Systems' detriment.

76.    Defendants' conduct constitutes transgressions of a continuing nature for which 3D Systems has no adequate remedy at law.  Unless and until enjoined and restrained by order of this Court, Defendants will continue to retain and use 3D Systems' trade secret information to enrich themselves and divert business from 3D Systems.  3D Systems is entitled to a preliminary and permanent injunction against the misappropriation and continued threatened misappropriation of trade secrets as alleged herein and further asks the Court to restrain Defendants from using all trade secret information misappropriated from 3D Systems and to return all trade secret information to 3D Systems.

77.    3D Systems has been damaged by all of the foregoing and is entitled to an award of economic, exemplary damages and attorney's fees.

## THIRD CAUSE OF ACTION

### Breach of Written Contract
### (Against Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal)

78.    3D Systems re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-77.

79.    The Confidentiality Agreements and the Non-Disclosure Clauses within them are valid and enforceable contracts.  The non-disclosure and confidentiality covenants and other provisions contained in the Confidentiality Agreements are reasonably necessary to protect 3D Systems' legitimate protectable interests in its Confidential Information, customer relationships, work force, and goodwill.

80.    3D Systems has fully performed all of its obligations under the Agreements.

FIRST AMENDED COMPLAINT

21cv01141 LAB DEB

81.     Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal are breaching or threatening to breach the Confidentiality Agreements and the Non-Disclosure Clauses by using and/or disclosing 3D Systems' nonpublic, proprietary, or confidential information, knowledge, or data relating to 3D Systems, or its businesses, which Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal obtained during their employment with 3D Systems.  Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal breached their agreements with 3D Systems by, at a minimum, using 3D Systems' trade secret, confidential, proprietary, and/or nonpublic information to submit patent applications and divulging this information in said patent applications in violation of their agreements with 3D Systems.  During the course of their employment with 3D Systems, and prior to their coordinated departure in August 2017, the Architects forwarded emails from their 3D Systems email accounts to their personal email accounts, including floor plans for a new lab that 3D Systems was proposing to build, diagrams and floor plan information for various 3D Systems equipment, such as Halo, LabDental, and ProBot; photos of equipment used at 3D Systems' lab, including photos of "stack light," the "Testbot" printer, and a "pump" used in the lab; and Jamie Etcheson, on information and belief, exported onto this thumb drive a copy of his entire 3D Systems email account as of August 2, 2017.

82.     As a result of Defendants Wynne's, Tanner's, Etcheson's, Mueller's, and Chousal's breaches of their Agreements, 3D Systems has been injured and faces irreparable injury.  3D Systems is threatened with losing customers, technology, its competitive advantage, its trade secrets and/or Confidential Information, and goodwill in amounts that may be impossible to determine unless Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal are enjoined and restrained by order of this Court.

83.     As a proximate result of the detailed breaches, 3D Systems has suffered damages in an amount to be determined at trial, including its attorney's fees and costs.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## FOURTH CAUSE OF ACTION

### Breach of Duty of Loyalty
### (Against Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal)

84.     3D Systems re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-6, 11-17, 19-20, 38-40, 42-46.

85.     As a result of their employment by 3D Systems, Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal each owed 3D Systems a duty of loyalty to protect, preserve, and enhance 3D Systems' interests, and to place those interests before their own when transacting in similar businesses.

86.     While employed by 3D Systems and drawing paychecks from 3D Systems, Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal began plotting to start their own company that would compete directly with 3D Systems.  The Architects forwarded emails from their 3D Systems email accounts to their personal email accounts during their employment, including floor plans, diagrams, equipment and space requirements, all of which could be used to set up a competing 3D printing company.

87.     They also took steps to cover their tracks, including wiping their computers and phones before giving them back to 3D Systems in an apparent attempt to leave no records of communications to further their scheme.  Their decision to form their own competing company, and to encourage and induce the others to leave together, would leave 3D Systems without the five Architects, and would also leave 3D Systems without several other engineers, as the individual Defendants hired away several other 3D Systems engineers to join Defendant Intrepid.  The Architects were not working full time for 3D Systems and devoting their efforts to 3D Systems.  Rather, they were preparing to compete against 3D Systems.

88.     As a direct result of their positions, the Architects had access to 3D Systems' confidential and proprietary information and business opportunities.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

89.    As alleged above, Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal breached their duties of loyalty to 3D Systems by failing to fulfill their duties to 3D Systems, while they were still employed there.

90.    As the direct and proximate result of the misconduct of Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal, 3D Systems has suffered economic damage and harm in an amount to be proven at trial.

91.    The aforementioned acts of Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal were intentional, willful, oppressive, malicious and/or fraudulent, thereby justifying an award of punitive damages.

## FIFTH CAUSE OF ACTION

### Conspiracy
### (Against All Defendants)

92.    3D Systems re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-6, 11-17, 19-20, 38-40, 42-46.

93.    As alleged above, Defendants Wynne, Tanner, Etcheson, Mueller, and Chousal knowingly and willing conspired and agreed among themselves, in violation of their duties of loyalty, to damage 3D Systems' interests, and by taking actions so that Defendants could unfairly compete with 3D Systems, including but not limited to the Architects coordinating their departure by all giving two-week notices to 3D Systems on August 4, 2017, which was two days after Jamie Etcheson downloaded, on information and belief, his entire 3D Systems email account.  Etcheson's last day at 3D Systems was August 14, 2017, and the other four Architects all left on August 18, 2017, and soon thereafter started Intrepid, in which they immediately began competing against 3D Systems.

94.    As the direct and proximate result of Defendants' misconduct, 3D Systems has suffered harm in an amount to be proven at trial.

21cv01141 LAB DEB

95.     The aforementioned acts of Defendants were intentional, willful, oppressive, malicious and/or fraudulent, thereby justifying an award of punitive damages.

## SIXTH CAUSE OF ACTION

### Violation of California Bus. & Prof. Code § 17200
### (Against All Defendants)

96.     3D Systems re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-6, 11-17, 19-20, 38-40, 42-46.

97.     Defendants willfully undertook and continue to undertake unlawful and/or unfair acts to harm 3D Systems, with knowledge of and in disregard of 3D Systems' rights, and with the intention of causing harm to 3D Systems and benefitting Defendants.

98.     Defendants' conduct as alleged herein constitutes "unlawful" and/or "unfair" business acts or practices in violation of California Business and Professions Code §§ 17200, *et seq.*

99.     As the direct and proximate result of Defendants' violations of §§ 17200, *et seq.,* 3D Systems has suffered irreparable injury. Because its remedy at law is inadequate, 3D Systems seeks, in addition to restitution of all benefits improperly received by Defendants, preliminary and permanent injunctive relief to recover and protect its confidential business information and other legitimate business interests.

## SEVENTH CAUSE OF ACTION

### Unfair Competition
### (Against All Defendants)

100.    3D Systems re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-6, 11-17, 19-20, 38-40, 42-46.

101.    As fully alleged and described above, Defendants have engaged in unfair competition.

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

FIRST AMENDED COMPLAINT

21cv01141 LAB DEB

102.   As a proximate result of the Defendants' conduct, 3D Systems has been irreparably injured and has suffered damages in an amount to be proven at the time of trial.  Because its remedy at law is inadequate, 3D Systems also seeks, in addition to any other available remedy, preliminary and permanent injunctive relief against Defendants as described herein.

103.   The aforementioned acts of Defendants were and continue to be intentional, willful, oppressive, malicious and/or fraudulent, thereby justifying an award of punitive damages.

## PRAYER FOR RELIEF

3D Systems prays for judgment against Defendants, and other as of yet unnamed Doe defendants, as follows:

1.    For damages, including restitution and monetary, compensatory, consequential, punitive, and exemplary damages in an amount to be proved at trial and as permitted by law;

2.    For preliminary and permanent injunctive relief against Defendants and their agents, servants, assigns, and all those acting in active concert or participation with them from further engaging in the unfair and/or unlawful acts described above, including disclosing or misusing 3D Systems' trade secrets or other confidential information to unlawfully and unfairly compete with 3D Systems;

3.    For prejudgment and post-judgment interest at the rate authorized by law;

///
///
///
///
///
///

FIRST AMENDED COMPLAINT

21cv01141 LAB DEB

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

4.   For reasonable attorney's fees;

5.   For costs of suit incurred herein; and

6.   For such other and further relief as this Court deems just and proper.

DATED:  July 19, 2021                          **HUNTON ANDREWS KURTH LLP**

                                    By: _____
                                        Roland M. Juarez
                                        Emily Burkhardt Vicente
                                        D. Andrew Quigley
                                        Attorneys for Plaintiff,
                                        3D SYSTEMS, INC.

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

FIRST AMENDED COMPLAINT

21cv01141 LAB DEB