UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

3D SYSTEMS, INC.
Plaintiff,
v.
BEN WYNNE, et al.
Defendants.

Case No.: 21cv1141-LAB (DDL)

**ORDER:**

**(1) DENYING AS MOOT 3D SYSTEMS' EX PARTE APPLICATION [Dkt. 46];**

**(2) GRANTING IN PART 3D SYSTEMS' MOTION TO STRIKE AND DISMISS INTREPID AUTOMATION'S COUNTERCLAIM [Dkt. 48];**

**(3) GRANTING IN PART EVAN KEUSTER'S MOTION TO DISMISS THIRD PARTY CLAIMS [Dkt. 82]; AND**

**(4) GRANTING MOTION TO AMEND THE SCHEDULING ORDER AND TO AMEND INTREPID'S ANSWER AND COUNTERCLAIM [Dkt. 51]**

Plaintiff 3D Systems, Inc. ("3D Systems") originally filed this suit against Defendants Ben Wynne, Chris Tanner, Jamie Etcheson, Robert Mueller, Ivan Chousal, and Intrepid Automation ("Intrepid") (collectively, "Defendants") for claims stemming from Defendants' alleged misappropriation of trade secret information for use by their competing company, Intrepid. Following this Court's ruling on Defendants' motion to dismiss, Intrepid (or "Counter-Claimant") filed a Counterclaim and Third-Party Claim ("Counterclaim") against 3D Systems and a third-party, Evan Keuster, for fraudulent inducement, breach of written contract, and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. (Dkt. 42, Counterclaim). Intrepid claims that 3D Systems wrongfully acquired and used Intrepid's confidential information for its own advantage, and launched a campaign to discredit Intrepid in the marketplace and destroy its customer relationships.

3D Systems and Keuster now separately move to strike or, in the alternative, dismiss Intrepid's Counterclaim. (Dkt. 48, 82). The Court has read and considered all documents submitted in support of and in opposition to the motions, and rules as follows.

## I. BACKGROUND

3D Systems commenced this action on June 21, 2021. (Dkt. 1). It then filed a First Amended Complaint ("FAC"), asserting the following claims against Defendants: (1) violation of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426; (2) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836; (3) breach of contract; (4) breach of duty of loyalty; (5) conspiracy; (6) violation of the UCL; and (7) unfair competition. (Dkt. 6). Defendants subsequently moved to dismiss the FAC in its entirety. (Dkt. 10). On March 9, 2022, the Court denied Defendants' motion to dismiss 3D Systems' claims for trade secret misappropriation and breach of contract and dismissed the remaining claims with leave to amend. (Dkt. 16). 3D Systems did not further

amend its complaint, and on April 18, 2022, Defendants filed their Answer. (Dkt. 20). On September 1, 2022, Intrepid filed a Counterclaim, alleging third-party claims for fraudulent inducement and breach of written contract against Evan Keuster, and unfair competition against both 3D Systems and Keuster. (Dkt. 42, Counterclaim).[1]

The allegations in Intrepid's Counterclaim are as follows. 3D Systems is a publicly traded corporation in the additive manufacturing industry. (*Id*. ¶ 1). Around 2015 or 2016, 3D Systems recruited five engineers from Hewlett Packard—Defendants Ben Wynne, Chris Tanner, Jamie Etcheson, Ivan Chousal, and Robert Mueller (collectively, the "Engineers")—to help "revolutionize [3D Systems'] existing moribund research and development processes." (*Id*. ¶ 3). However, due to political in-fighting, broken promises, and a dysfunctional workplace, the Engineers ultimately chose to resign from 3D Systems and abandon their stock options in 2017. (*Id*. ¶¶ 4–5). Following their departure, the Engineers founded another company, Intrepid, which competes with 3D Systems in the 3D-techonology space. (*Id*. ¶ 5).

Nearly four years after the formation of Intrepid, 3D Systems' leadership conceived of a plan to exploit the friendship between the Engineers and a 3D Systems employee, Evan Keuster, in order to gain access to Intrepid's confidential information. (*Id*. ¶ 18). Under this plan, Keuster reached out to Intrepid under the guise of seeking employment as a Senior Application Engineer. (*Id*.). Intrepid required Keuster to sign a nondisclosure agreement ("NDA"), (*id*.), and on January 26, 2021, Keuster toured Intrepid's facilities, (*id*. ¶ 20). Keuster was

---

[1] Additionally, 3D Systems separately filed an *Ex Parte* Application, requesting the same relief as requested in its present motion and additionally requesting that the Court extend its deadline to respond to the Counterclaim. (Dkt. 46). Because the Court is already addressing its duplicate arguments in this Order and 3D Systems already filed its response to the Counterclaim on September 29, 2022, the *Ex Parte* Application is **DENIED AS MOOT**.

shown new and unreleased products and technologies, including the Valkyrie product (a multi-projection system); provided information about Intrepid's operations, business strategy, and customer relationships; and given insights into the specific capabilities of Intrepid's machines. (*Id*. ¶¶ 19–21). Following his visit, Keuster continued to ask more detailed questions about Intrepid's capabilities, including many specific technical questions about one of the unreleased products he was shown during the tour. (*Id*. ¶¶ 24–25). Keuster also engaged in negotiations with Intrepid regarding his compensation and job title. (*Id*. ¶ 26). The negotiations were completed on February 4, 2021, and just a week later, Keuster informed Tanner that he was planning to leave 3D Systems. (*Id*.).

However, on February 15, 2021, Keuster reversed course and informed Intrepid that he would be staying at 3D Systems because he'd been promised additional stock in the company. (*Id*. ¶ 27). Keuster then used the confidential information he acquired to 3D Systems' advantage. (*Id.* ¶¶ 27–28). For instance, he disrupted Intrepid's prospective business relationship with an aerospace company also working with 3D Systems, and he used information he wrongfully obtained from Intrepid to develop a machine that directly competes with Intrepid's devices. (*Id*. ¶ 28). Keuster also breached his NDA with Intrepid by revealing confidential information to 3D Systems "for use as a weapon in furtherance of 3D Systems' campaign to undermine Intrepid's business opportunities." (*Id*. ¶ 29). This "campaign" was launched by 3D Systems and Keuster "to discredit Intrepid and its founders and interfere with Intrepid's abilities to obtain and retain customers," (*id*. ¶ 30), including by "falsely conveying to one or more customers that Intrepid's founders lack experience in 3-D printing technology, that Intrepid took 3D Systems' purported trade secrets, and that Intrepid will not be a viable supplier of 3-D technology or machines," (*id*. ¶ 31). As a result, Intrepid has lost actual and potential customers. (*Id*. ¶¶ 30–31).

//

## II. LEGAL STANDARD

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(5) on the grounds that they weren't properly served. Service is proper if it complies with the requirements of Rule 4. A plaintiff bears the burden of demonstrating that service is proper. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). When determining whether service has been properly executed, a court may consider outside evidence. *See S.E.C. v. Internet Solutions for Bus., Inc.* 509 F.3d 1161, 1163 (9th Cir. 2007). The court has discretion to dismiss or retain an action in the event a plaintiff is unable to satisfy its burden of demonstrating effective service. *See Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976).

A Rule 12(b)(6) motion, on the other hand, tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Somers v. Apple, Inc.*, 729 F.3d 953, 959–60 (9th Cir. 2013). While a pleading

"does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Finally, a party may move to strike a complaint under Rule 12(f), which provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (alteration in original) (quoting *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993)). "Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (citing *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)).

## III. ANALYSIS

### A. Standalone Counterclaim

On August 2, 2021, Defendants filed a motion to dismiss 3D Systems' FAC. (Dkt. 10). On August, 18, 2022, following this Court's ruling on the motion to dismiss, (Dkt. 16), Defendants filed their Answer and Affirmative Defenses ("Answer") to the FAC, (Dkt. 22). Defendants didn't assert any counterclaims against 3D Systems at that time. Magistrate Judge Daniel E. Butcher then entered a Scheduling Order, setting the deadline as August 1, 2022, for the parties to file "[a]ny motion to join other parties, to amend the pleadings, or to file additional pleadings." (Dkt. 28 ¶ 1). Thereafter, Defendants requested that the Court continue this deadline, (Dkt. 35), and for good cause shown, Judge Butcher granted the request and continued the deadline to September 1, 2022, (Dkt. 37).

On September 1, 2022, Intrepid filed its Counterclaim, asserting three

causes of action against 3D Systems and a third party, Evan Keuster. (Dkt. 48). 3D Systems now requests that Intrepid's Counterclaim be dismissed or stricken as procedurally defective because it was incorrectly filed as a standalone document rather than as part of another pleading, and because it was filed without first seeking leave from the Court or stipulating with 3D Systems to amend or join new parties. (Dkt. 48 at 7). Keuster joins in this argument. (Dkt. 82 at 6–7).

Defendants filed their Answer on April 18, 2022, but Intrepid's Counterclaim wasn't filed until September 1, 2022, over four and a half months later. The Answer didn't include any counterclaims against 3D Systems, nor did it mention Keuster as an additional named party to this case. Federal Rule of Civil Procedure 13 provides that "[a] pleading must state as a counterclaim," whether compulsory or permissive, "any claim that—at the time of its service—the pleader has against an opposing party." Fed. R. Civ. P. 13(a)(1), (b). Rule 7, in turn, identifies the types of pleadings allowed: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Notably, Rule 7 doesn't identify a counterclaim as a pleading. *See Primerica Life Ins. Co. v. Davila*, No. 1:10-CV-1924 AWI SMS, 2011 WL 643395, at *3 (E.D. Cal. Feb. 17, 2011) ("Counterclaims are not separate pleadings, but are instead items that are asserted as part of another pleading, such as an answer.")[2]; *see also Grano v. Sodexo Mgmt., Inc.*, No. 3:18-CV-1818-RSH-BLM, 2023 WL 125590, at *29 n.34 (S.D. Cal. Jan. 6, 2023) (determining that a cross-claim against a co-party can't

---

[2] Intrepid disputes the applicability of the holding in *Primerica Life Insurance* to this case, arguing that the document in question was ultimately stricken not because it was filed as a standalone document, but rather because it violated Rule 15. However, that conclusion doesn't negate the court's clear interpretation of Rules 7 and 13—counterclaims must be asserted as part of another pleading, like an answer. *Primerica Life Ins. Co.*, 2011 WL 643395, at *3.

be asserted separately from the answer, and holding that "[t]he fact that [Rule] 7(a) explicitly includes 'an answer to a complaint' and 'an answer to a crossclaim' to the exclusion of cross claims is by itself evidence that a cross claim is not a separate pleading, but rather, a claim within another pleading"). Intrepid doesn't attempt to suggest that the Answer and Counterclaim are a single filing or are to be construed together, and its filing of a standalone document therefore appears to be procedurally improper.

3D Systems additionally argues that the Court should dismiss Intrepid's Counterclaim because it was filed in violation of Rule 15 and this Court's Scheduling Order. Rule 15 provides that, if the time to amend once as a matter of course has passed, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Here, Judge Butcher's original Scheduling Order set August 1, 2022, as the deadline for the parties to file "[a]ny *motion* to join other parties, amend the pleadings, or file additional pleadings." (Dkt. 28 ¶ 1 (emphasis added)). He later granted a request to extend this deadline to September 1, 2022, but the language in his Minute Order was unclear as to whether the party seeking to amend its pleadings or join other parties was required to first file a motion requesting to do so. (Dkt. 37 ("Good cause appearing, the Court GRANTS Defendants' Ex Parte Request to Continue Date to Join Other Parties, to Amend the Pleadings, or to File Additional Pleadings (Dkt. No. 35) and continues the deadline to amend the pleadings to September 1, 2022.")).

Here, Intrepid indeed filed its Counterclaim by the September 1st deadline, but it never sought leave of Court to do so first. Intrepid's Counterclaim is therefore **DISMISSED**. However, given the ambiguity in Judge Butcher's instructions and for good cause shown, the Court **GRANTS** Intrepid's request to file an amended Answer, which must incorporate the Court's rulings herein and comply with Rule 13. (Dkt. 51).

**B. Service of Summons**

Keuster also seeks to dismiss Intrepid's claims against it under the additional basis that Intrepid failed to timely serve the summons and complaint within ninety days of filing the Counterclaim. (Dkt. 82 at 7). Under Rule 4, "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Rule 4 also provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*. Rule 4(m)'s "good cause" exception applies "'only in limited circumstances' and is not satisfied by 'inadvertent error or ignorance of the governing rules.'" *Moore v. Wells Fargo Bank*, No. 217CV04828ODWGJS, 2018 WL 2723305, at *8 (C.D. Cal. Mar. 21, 2018), *aff'd sub nom. Moore v. Wells Fargo Bank, N.A.*, 749 F. App'x 624 (9th Cir. 2019) (quoting *Hamilton v. Endell*, 981 F.2d 1062, 1065 (9th Cir. 1992)). "In making extension decisions under Rule 4(m) a district court may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).

On September 1, 2022, Intrepid filed its Counterclaim, which, for the first time in this case, names Keuster as a third-party. The ninety-day deadline to serve Keuster was November 30, 2022. However, it wasn't until January 3, 2023, that Intrepid was finally able to properly effectuate service. (*See* Dkt. 103-1). Keuster argues that Intrepid's failure to timely serve the Counterclaim by the ninety-day service deadline warrants dismissal of all claims made against him. (Dkt. 82). Intrepid responds by explaining that 3D Systems had stated in its Initial Disclosures, which were served on May 26, 2022, that any communications with Keuster must go through 3D Systems' counsel of record, but that despite a series of email exchanges with opposing counsel between September and

November 2022, Keuster's counsel ultimately refused to accept service on Keuster's behalf until the Court ruled on 3D Systems' challenges to the Counterclaim. (Dkt. 104 at 1). Intrepid argues that Keuster's counsel acted as "gatekeeper" for contacting Keuster. (Dkt. 104 at 1).

But the Court doesn't find this argument persuasive. Intrepid maintains that it made repeated attempts to convince Keuster's counsel to accept service, but these discussions occurred over the course of nearly three months, and not once during that period can Intrepid demonstrate that it altered course and attempted personal service on Keuster, even after November 1, 2022, when Keuster's counsel stated it wouldn't accept service until the Court issued its ruling on the present motion. Intrepid also states that the Clerk of the Court didn't issue the Third Party Summons for Keuster until December 22, 2022, (Dkt. 75), and that on that same day, Intrepid twice unsuccessfully attempted to serve Keuster at his place of business—3D Systems' San Diego office. (*Id*. at 4–5; *see* Dkt. 103-1 at 4). On December 27, 2022, the process server again unsuccessfully attempted service and left a copy of the service documents at 3D Systems' San Diego office. (Dkt. 82 at 8). Finally, on January 3, 2023, a 3D Systems employee with authority accepted service. (Dkt. 103-1).

Keuster doesn't dispute that he had actual notice of the suit against him, nor does he persuasively argue in his briefings that he was prejudiced by the delay in service. Intrepid also properly served Keuster just a little over a month after the 90-day period expired and just over a week after the Clerk of Court issued the Third Party Summons. Given the circumstances of this case, the Court finds that extending the time for service in this matter would be well within a district court's discretion. Keuster's motion to dismiss on this basis is **DENIED**.

### C. Unfair Competition

Intrepid brings a UCL claim against both 3D Systems and Keuster, alleging that each of them "knowingly and willing[ly] agreed among themselves to damage

Intrepid's interests by taking actions so 3D Systems could unfairly compete with Intrepid." (Counterclaim ¶ 49). 3D Systems moves to dismiss this claim on the basis that it's preempted or displaced by CUTSA because the allegations made in support of this claim are based on 3D Systems' alleged misappropriation of trade secrets, and because Intrepid can't satisfy the claim's unfair prong. As to it

The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999). CUTSA, however, preempts state law claims insofar as they are based on misappropriation of a trade secret. *See Ali v. Fasteners for Retail, Inc.,* 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008). Indeed, CUTSA provides the exclusive civil remedy for California state law noncontract claims "based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7; *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010), *as modified on denial of reh'g* (May 27, 2010), *overruled on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011). But CUTSA doesn't displace (1) "contractual remedies, whether or not based upon misappropriation of a trade secret," Cal. Civ. Code § 3426.7(b)(1), or (2) "noncontract claims that, although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim," *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506 (2013) (citation omitted); *see also Axis Imex, Inc. v. Sunset Bay Rattan, Inc.,* No. C 08–3931, 2009 WL 55178, at *5 (N.D. Cal. Jan. 7, 2009) ("Preemption is not triggered where the facts in an independent claim are similar to, but distinct from, those underlying the misappropriation claim."). Section 3426.7 of CUTSA instead only "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025,

1035 (N.D. Cal. 2005)). The focus is on "whether [the] claims are not more than a restatement of the same operative facts supporting trade secret misappropriation. . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) (quoting *Convolve, Inc. v. Compaq Computer Corp.*, No. 00 CV 5141-GBD, 2006 WL 839022, at *6 (S.D.N.Y. Mar. 31, 2006)).

The parties dispute whether Intrepid's claim for unfair competition is predicated on the same set of facts as one for trade secret misappropriation, such that it would be preempted or displaced by CUTSA. Critical to this analysis is whether Intrepid's UCL claim is grounded in allegations beyond just those relating to the misappropriation of trade secrets. To engage in this analysis, the Court must first determine what constitutes a claim for trade secret misappropriation.

Under CUTSA, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (citation omitted); *see also* Cal. Civ. Code § 3426.1(b). CUTSA defines "trade secret" as information that: "(1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). "Misappropriation" means either (1) the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"; or (2) the "[d]isclosure or use of a trade secret of another without express or implied consent." *Id*. § 3426.1(b).

The parties cite to *Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*, No. 21-

CV-0052-GPC-DEB, 2021 WL 2317410, at *9 (S.D. Cal. June 7, 2021), which concerns a suit brought by Glam and Glits Nail Design, Inc. ("G&G"), a nail care products manufacturer and vendor, against its competitor, #Notpolish, Inc. ("NotPolish"), and one of G&G's former employees. G&G accused the defendants of stealing confidential customer information (e.g., customer names, numbers, preferences, purchasing history, and account pricing) to benefit G&G's competition, and of launching a "campaign" to redirect G&G's customers away from G&G to the defendant competitor. The court in that case found that certain of plaintiff's claims, including one for unfair competition, alleged more "than the usurpation of . . . valuable information," and were instead also "grounded in 'defamation, other false and misleading statements regarding Glam and Glits' work environment, and threats of violence against employees who cooperate with Glam and Glits against Defendants.'" *Id.* at *11. In distinguishing the unfair competition claim from the plaintiff's claim for trade secret misappropriation, the court found that the allegations made in support of the unfair competition claim were "wholly independent from [the defendant's] access to the [trade secret] information and/or the intangible digital assets." *Id*. For instance, with respect to allegations that the defendants made disparaging social media posts about G&G, the court held that "the alleged social media 'campaign' did not hinge on, nor require, the information or intangible digital assets." *Id*.

Although Intrepid doesn't expressly bring a claim for trade secret misappropriation, the Court acknowledges that Intrepid's UCL claim does indeed include allegations that 3D Systems stole Intrepid's confidential information by deploying Keuster to Intrepid under the guise of soliciting employment with Intrepid. Intrepid argues that, as in *Glam & Glits*, the Counterclaim also includes allegations that "3D Systems, along with Keuster, began a campaign to discredit Intrepid and its founders and interfere with Intrepid's abilities to obtain and retain customers." (Counterclaim ¶ 30). But critically, intertwined with the allegations that

Keuster and 3D Systems launched a campaign against Intrepid are allegations that Keuster and 3D Systems specifically "exploited their ill-gotten information" to do so. (*Id*. ¶ 49). In fact, even though Intrepid's UCL claim incorporates by reference allegations made previously in the Counterclaim, the allegations specifically made in support of the UCL claim all seem to be predicated on Keuster and 3D Systems' misappropriation of trade secrets—i.e., that 3D Systems and Keuster "coordinat[ed] which questions to ask Intrepid employees" during and after Keuster's tour of Intrepid's facilities in order to wrongfully obtain confidential information; "assess[ed] what confidential information and capabilities 3D Systems viewed as threats"; and "together tailor[ed] interference with Intrepid customers to address Intrepid's potential market threats." (*Id*.). Intrepid specifically alleges that, "[t]ogether, Keuster and 3D Systems exploited their ill-gotten information by disrupting Intrepid's customer relationships." (*Id*.).

While Intrepid may very well have alleged that Keuster and 3D Systems launched a campaign against Intrepid, including by spreading false information about it to actual and potential customers in order to disrupt its position in the marketplace, the allegations specifically made in support of the UCL claim appear to suggest that such a campaign was predicated on and directly connected to 3D Systems' and Keuster's alleged "acquisition of" and/or "disclosure or use" of Intrepid's confidential trade secret information "without [Intrepid's] express or implied consent." Cal. Civ. Code § 3426.1(b). Accordingly, Intrepid's UCL claim is preempted by CUTSA, and 3D Systems' motion to dismiss the third cause of action against 3D Systems and Keuster is **GRANTED**. Intrepid's claim is **DISMISSED WITH LEAVE TO AMEND** to eliminate the trade secret misappropriation allegations and to set forth more clearly a basis for the UCL claim that isn't preempted by CUTSA.

**D. Anti-SLAPP**

3D Systems additionally challenges Intrepid's Counterclaim under

California's Anti-SLAPP (or Strategic Lawsuit Against Public Participation) statute, Cal. Civ. Proc. Code § 425.16. (Dkt. 48 at 21). The Anti-SLAPP statute allows defendants (or counter-defendants) to make a special motion to strike a claim if that claim arises from an act by the defendants to further their right of petition or free speech in connection with a public issue. Cal. Civ. Proc. Code § 425.16(b)(1); *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) (citation omitted) (holding certain portions of California's anti-SLAPP law "have been found to not conflict with the Federal Rules of Civil Procedure—such as § 425.16(b) allowing a special motion and § 425.16(c) providing fees and costs"). An act qualifies for protection under this statute if it falls within one of four categories:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law[;] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law[;] (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest[;] or (4) any conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Id.* § 425.16(e).

Analyzing an Anti-SLAPP motion involves a two-step process. First, a court must determine whether the defendants have made a prima facie showing that the plaintiff's claims arise from an act protected under the statute. *Ingles v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1061 (2005). To make this determination, a court may look to any pleadings or affidavits that state facts relating to the parties' theories of liability or defense regarding the claim. *Martinez v. Metabolife Int'l Inc.*, 113 Cal. App. 4th 181, 186 (2003). Second, the court should

decide whether the parties have carried their respective burdens. If the defendant (or counter-defendant) makes the required prima facie showing, the burden then shifts to the plaintiff (or counter-claimant) to demonstrate "a probability that [it] will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). The plaintiff must provide admissible evidence to establish that "the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). If the plaintiff fails to make this showing by a preponderance of the evidence, a court must grant the motion to strike and award the prevailing defendant attorneys' fees and costs. Cal. Civ. Proc. Code § 425.16(c)(1).

Intrepid argues that its UCL claim doesn't involve activity arising from protected speech or petitioning activity, and instead "revolve[s] around [3D Systems'] anti-competitive conduct and disparagement of Intrepid in the *marketplace*, not *court*." (Dkt. 52 at 12 (emphasis in original)). Intrepid further maintains that its UCL claim is rooted in allegations related to the damage allegedly caused to Intrepid's customer relationships because of Keuster's and 3D Systems' statements and unfair business practices, including their purposeful attempts to divert business away from Intrepid. (*Id*. at 12). 3D Systems disagrees, contending that "Intrepid clearly states that [3D Systems'] lawsuit underlies its Section 17200 claim," including in the Counterclaim's allegation that "Keuster . . . breached the NDA by using Intrepid's confidential, proprietary, and/or nonpublic information to (a) assist 3D Systems develop [sic] unmeritorious claims against Intrepid." (Dkt. 56 at 9 (quoting Counterclaim ¶ 44)).

But 3D Systems' argument is unconvincing. None of the allegations specifically made in support of the UCL claim indicate, or even suggest, that 3D Systems' lawsuit is the basis for Intrepid's claim. Rather, the Counterclaim makes clear that the crux of Intrepid's UCL claim is that Keuster and 3D Systems engaged in unfair business practices by secretly accessing Intrepid's confidential

information and interfering with Intrepid's business by purposely misstating Intrepid's capabilities and business plans to its actual and potential customers. (*See* Counterclaim ¶ 49). California law makes clear that:

> Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, . . . arising from any statement or conduct by that person if both of the following conditions exist:
>
> > (1) The statement or conduct consists of representations of fact about that . . . business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services . . . .
> >
> > (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer.

*See* Cal. Civ. Proc. Code § 425.17(c). Both conditions clearly exist here, as any alleged statements made by 3D Systems were made to Intrepid's actual and potential customers about Intrepid's business operations and products for the purpose of dissuading them from doing business with Intrepid. Such activity is plainly rooted in anti-competitive conduct rather than protected activity, and thus the Anti-SLAPP statute doesn't apply. 3D Systems fails to satisfy the first prong of the analysis, and its motion to strike the UCL claim under the Anti-SLAPP law is **DENIED**.

//

//

//

//

//

//

## IV. CONCLUSION

3D Systems' *Ex Parte* Application is **DENIED AS MOOT**. (Dkt. 46). 3D Systems' motion to strike or dismiss Intrepid's Counterclaim is **GRANTED IN PART**. (Dkt. 48). Keuster's motion to dismiss the Counterclaim is likewise **GRANTED IN PART**. (Dkt. 82) The Court **DISMISSES** Intrepid's Counterclaim **WITH LEAVE TO AMEND**. Intrepid shall have until no later than **<u>May 18, 2023</u>**, to file an amended Answer, which must incorporate the Court's rulings herein.

**IT IS SO ORDERED**.

Dated: May 4, 2023

Honorable Larry Alan Burns
United States District Judge