# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3D SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BEN WYNNE, et al., <br><br> Defendants. | Case No.: 21-cv-1141-AGS-DDL <br><br> **ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS** <br><br> **[Dkt. No. 294]** |

## I.
## INTRODUCTION

Defendants move for terminating and other sanctions based on (1) plaintiff 3D Systems Inc.'s ("3D Systems or Plaintiff") failure to preserve the emails of three former employees relating to an investigation of Defendants following their departure from 3D Systems in 2017 and (2) an alleged lack of candor by 3D Systems in this action regarding the investigation. The Court denies the motion.

/ / /
/ / /
/ / /
/ / /
/ / /

# II.
# FACTS AND PROCEDURAL HISTORY

## A. 3D Systems Investigates Defendants In 2017

In 2016, 3D Systems hired the five individual defendants (collectively "Defendants") to "advance [it's] Figure 4 print engine technology." Declaration of Andrew Johnson (Dkt. No. 363-27) at ¶ 3.[1] Defendants simultaneously resigned their employment in August 2017, and "3D Systems" initiated an internal investigation into their departure. *Id.* at ¶ 4.[2] The investigation included "collecting certain data related to the Figure 4 project that was available on the [Defendants'] company computers" as well as data from their "company email accounts, their company-issued cell phones, their company-issued PC hard drives, certain HR files, [their] employment contracts, company-issued credit card usage and their travel history." *Id.* The investigators "review[ed] the data collected to determine whether the [Defendants] had engaged in misconduct when they left 3DS, or whether it was possible to tell from the data what the [Defendants] planned to do after they left 3DS." *Id.* at ¶ 5. The issues under investigation included, but were not limited to, "whether they had improperly retained and/or taken any 3DS confidential or trade secret information when they left 3DS." *Id.*

## B. Defendants Seek Discovery Regarding the Investigation

Defendants have sought discovery from 3D Systems regarding the 2017 investigation. As relevant here, Defendants requested that 3D Systems produce emails sent and received by Michael Jackyra, John McMullen and Jim Ruder, who Defendants contend

---

[1] The Court relies on the facts contained in the Declaration of Andrew Johnson ("Johnson Dec."), submitted in opposition to Defendants' motion for summary judgment. Dkt. No. 363-27.

[2] Throughout his declaration, Johnson refers to "3D Systems" and "3DS," which appears to include both 3DS, Inc. and its corporate parent, 3DS Corporation. The Court similarly will refer to both entities collectively as "3D Systems."

were part of the 3D Systems investigation team in 2017. However, each of these individuals left 3D Systems before this lawsuit was filed in 2021, and 3D Systems did not preserve their emails.

## III.
## DISCUSSION

### A. Failure To Preserve Emails

#### 1. Legal Standards

The law imposes upon litigants "a duty to preserve evidence which [they] know[] or reasonably should know is relevant to" pending or reasonably anticipated litigation. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Spoliation is a party's breach of this duty and is sanctionable. *See Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015). Such sanctions serve to cure the prejudice created by the spoliation to the extent possible, and to deter any future spoliation. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013).

Federal Rule of Civil Procedure 37(e) governs the spoliation of electronically stored information ("ESI").[3] The Rule empowers the Court to sanction a spoliating party when ESI "that should have been preserved in the anticipation or conduct of litigation is lost because [the] party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery . . . ." Fed. R. Civ. P. 37(e). The Rule further provides that the Court "may order measures no greater than necessary to cure the prejudice," unless the Court finds that the spoliating party "acted with the intent to deprive

---

[3] A majority of courts hold that Rule 37 "provides the exclusive source of sanctions for the loss of ESI and forecloses reliance on [the Court's] inherent authority." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022) (citing Rule 37(e), advisory committee note to 2015 amendment); *see also Gault v. United States*, No. 20-10687 PA (PVC), 2022 WL 4292340, at *6 (C.D. Cal. Aug. 23, 2022) (noting that "[t]he weight of authority holds that [t]he 2015 revision to Rule 37(e) provides the *sole* basis for a court to take action for the failure to preserve electronic evidence") (second alteration and emphasis in original) (citations and internal quotation marks omitted).

another party of the information's use." Fed. R. Civ. P. 37(e)(1) and (2). In the latter circumstance, the Court may impose harsher sanctions, including "instruct[ing] the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2).

Rule 37(e) "establishes three prerequisites to sanctions" for spoliation of ESI. *Fast*, 340 F.R.D. at 335. First, "the ESI should have been preserved." *Id*. Second, the ESI "[was] lost through a failure to take reasonable steps to preserve it." *Id*. And third, the ESI "cannot be restored or replaced through additional discovery." *Id*. The party moving for sanctions bears the burden of proving that the ESI existed and was spoliated. *See Belew-Nyquist v. Quincy School Dist. No. 144*, No. 2:19-CV-0215-TOR, 2020 WL 6845934, at *11 (E.D. Wash. Nov. 20, 2020) (citation omitted). "The relevant standard of proof . . . is a preponderance of the evidence." *Fast*, 340 F.R.D. at 335 (citations omitted). "[O]nce spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017) (citation omitted).

### 2. **Defendants Do Not Meet Their Burden Under Rule 37(e)**

Defendants' motion does not cite Rule 37(e) or address its requirements. Rather, Defendants rely solely on Rule 37(B)(2)(A)(ii), which applies when a party fails to obey a discovery order. But as noted above, Rule 37(e) governs where a party seeks sanctions based on spoliation of ESI, as Defendants allege here, *Fast*, 340 F.R.D. at 335, and Defendants' failure to address the rule's requirements is fatal to their motion. Even assuming that emails to and from Jackyra, McMullen and Ruder "should have been preserved" and that the emails were "lost through a failure to take reasonable steps to preserve" them, Defendants have not shown that the emails "cannot be restored or replaced through additional discovery." *Id.*

"A court may not sanction a party for spoliation under [Rule] 37(e) if the parties can restore or replace the lost ESI through feasible means." *Oracle USA, Inc. v. Rimini St.,*

*Inc.*, No. 2:10-CV-0106-LRH-VCF, 2020 WL 9209714, at *4 (D. Nev. Sept. 21, 2020), *report and recommendation adopted*, 2021 WL 1224904 (D. Nev. Mar. 31, 2021), *on reconsideration*, 2021 WL 9333202 (D. Nev. June 9, 2021). This is because ESI "often exists in multiple locations" such that "loss from one source may . . . be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment. On the current record, Defendants have not carried their burden to show that the emails are irretrievably lost. *See Garrison v. Ringgold*, No. 19-cv-0244 GPC-DEB, 2020 WL 6537389, at *6 (S.D. Cal. Nov. 6, 2020) (noting that "[t]he moving party has the burden to show that the ESI was in fact lost"); *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 506 (C.D. Cal. 2022) ("The showing that ESI actually was lost, or likely lost, must be made through competent evidence, which could take the form of expert testimony or other evidence.") (citation and quotations omitted). Defendants' failure to acknowledge or satisfy Rule 37(e)'s requirements compels denial of their motion. *See Gault*, 2022 WL 4292340, at *8 (finding motion for sanctions "fail[ed]" for the "fundamental reason" that the moving party could not show that ESI was lost or destroyed); *Belew-Nyquist,* 2020 WL 6845934, at *10 (noting that sanctions are available "*if* the moving party satisfies all three elements" of Rule 37(e)) (emphasis added).

**B.     Alleged Lack of Candor Re 2017 Investigation**

Defendants also seek terminating and other sanctions under the Court's inherent authority and under 28 U.S.C. § 1927 based on Plaintiff's alleged lack of candor to the Court and to Defendants regarding the 2017 investigation.

**1.     Legal Standards**

A district court may impose sanctions, including terminating sanctions, for "a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). When considering whether terminating sanctions are appropriate, the Ninth Circuit directs district courts to consider "(1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, [and] (4) the relationship or nexus between the misconduct drawing the dismissal

sanction and the matters in controversy in the case . . . ." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988).

Section 1927 empowers the Court to require that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" must "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Conduct that "unreasonably and vexatiously multiplies [the] proceedings" is sanctionable under the statute. *Gomez v. Vernon*, 255 F.3d 1118, 1135 (9th Cir. 2001) (citation omitted). Section 1927 obligates counsel "to avoid dilatory tactics throughout the entire litigation." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (9th Cir. 2001).

### 2. **Sanctions Are Not Warranted**

Defendants argue that sanctions are warranted because 3D Systems failed to timely disclose the existence of the 2017 investigation, erroneously informed the Court that the investigation wasn't "big," failed to timely comply with the Court's order to produce documents pertaining to the investigation and incorrectly represented to the Court on two occasions that the production was complete. These allegations do not support sanctions under the Court's inherent authority or under § 1927 based on the record and the Court's familiarity with discovery proceedings in this case.

Defendants served written discovery in October 2022, and 3D Systems produced documents pertaining to the 2017 investigation beginning in March 2023. In May 2023, 3D Systems provided a privilege log for documents pertaining to the 2017 investigation as to which 3D Systems asserted the attorney-client privilege and work product doctrine. And regardless of whether 3D Systems produced every document pertaining to the 2017 investigation by the deadline of July 7, 2023, the record reflects that all such documents have been produced or are included on 3D Systems's privilege log. Dkt. No. 435 at 11-13. Finally, counsel's statements at a discovery hearing on May 31, 2023, do not warrant sanctions. At that hearing, counsel acknowledged the 2017 investigation but discounted its breadth, stating "this notion that there was this big investigation when they left, it just doesn't pan out." Dkt. No. 217 at 46-47. Whether or not the 2017 investigation is properly

characterized as "big," counsel's argument did not display a lack of candor or an intent to mislead the Court. As such, no sanctions are warranted under either the Court's inherent authority or § 1927.

## IV.
## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion for sanctions.

**IT IS SO ORDERED.**

Dated: February 21, 2024

*/s/ David Leshner*

Hon. David D. Leshner
United States Magistrate Judge