# NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3D SYSTEMS, INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>Ben WYNNE, et al.,<br><br>                                    Defendants. | Case No.:  21-cv-01141-AGS-DDL<br><br>**ORDER GRANTING IN PART MOTIONS TO STRIKE OR DISMISS COUNTERCLAIMS (ECF 214) AND THIRD-PARTY CLAIMS (ECF 215)** |

In this trade-secret action involving the 3D-printing industry, the Court considers motions to strike or dismiss various counterclaims and third-party claims.

## **BACKGROUND**

Defendant Intrepid Automation responds to trade-secret allegations against it with charges of its own, describing "a brazen display of corporate espionage." (ECF 199, at 22.) It alleges that a competitor, plaintiff 3D Systems, Inc., sent one of its employees to steal Intrepid's trade secrets under the guise of seeking employment—or perhaps persuaded that employee to reveal those secrets after a legitimate job interview. Either way, the employee—third-party defendant Evan Kuester—told Intrepid that he was "interested in leaving 3D Systems to join the team at Intrepid." (*Id.*) Intrepid first had Kuester sign a "Non-Disclosure Agreement." (*Id.*) It then allowed him to tour its facilities, learn about its "confidential business plans" and prospective customers, and obtain "detailed product specification and capabilities information" about a "multi-projector vat-based 3D Printer System" in development. (*Id.* at 22–23.)

Afterwards, Kuester recanted his interest in joining Intrepid and allegedly relayed to 3D Systems all the protected information he learned. (ECF 199, at 23, 31–32.) 3D Systems, realizing that Intrepid's technology posed an "existential threat," purportedly "took immediate action to readjust its pricing, strategy, and product release timelines." (*Id.* at 23.)

1

According to Intrepid, 3D Systems also began "misrepresenting and discrediting Intrepid and its founders in the marketplace to interfere with Intrepid's prospective customer relations and to stunt Intrepid's growth." (*Id.*) As a result, Intrepid contends that previously "enthusiastic prospective customers abandoned business relationships" with it. (*Id.*)

After the Court dismissed Intrepid's original answer and counterclaim, it filed an amended answer with various counterclaims and third-party claims. 3D Systems and Kuester move to strike or dismiss these claims. (ECF 214, 215.)

## DISCUSSION

### MOTIONS TO STRIKE

A "court may strike claims from any pleading for failure to comply with the court's orders." *Naranjo v. Bank of Am. Nat'l Ass'n*, No. 14-CV-2748-LHK, 2015 WL 4463851, at *13 (N.D. Cal. July 21, 2015); *see* Fed. R. Civ. P. 12(f). 3D Systems and Kuester argue that Intrepid exceeded the scope of its leave to amend, which was "simply" to "cure its deficient *original* counterclaim and third party claims," so the claims it now alleges for the first time should be stricken. (ECF 214, at 22; ECF 215, at 30.) Intrepid responds that there wasn't "any language" in the court's order limiting its allowable amendment. (ECF 260, at 16; ECF 261, at 26.)

Intrepid is correct. The Court's order granted "Intrepid's request to file an amended Answer" with only two restrictions: it "must incorporate the Court's rulings herein and comply with Rule 13." (ECF 174, at 8.) The order does not elsewhere restrict the scope of amendment. Thus, Intrepid did not violate the order by adding these new claims. The motions to strike are denied.

### MOTIONS TO DISMISS

3D Systems and Kuester next move to dismiss each claim on the merits. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

2

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Motions to dismiss counterclaims are "evaluated under the same standard." *Snap! Mobile, Inc. v. Croghan*, No. 18-cv-4686-LHK, 2019 WL 3503376, at *2 (N.D. Cal. Aug. 1, 2019). The Court must accept "the factual allegations in the [amended counterclaims] as true" and construe them "in the light most favorable" to the nonmovant. *See GP Vincent II v. Estate of Beard*, 68 F.4th 508, 514 (9th Cir. 2023).

## A. Intrepid's Claim 7: Declaratory Relief

Intrepid requests a declaratory judgment that provisions of certain employment agreements are "unlawful restraints on trade" and thus void. (ECF 199, at 50.) The agreements at issue are those between 3D Systems and the engineers who left it to form Intrepid. (*Id.*) Intrepid challenges three distinct provisions in these agreements— "non-competition," "non-solicitation," and "non-disclosure"—each of which, it maintains, prevents it from "availing itself of the [engineers'] experience and expertise in the 3D Printing industry," in violation of California law and public policy. (*Id.* at 48–49.)

### 1. *Standing*

3D Systems does not challenge Intrepid's standing to seek declaratory relief. Even so, the Court has an "independent obligation to examine standing," a basic jurisdictional requirement. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010). To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The injury-in-fact element is satisfied by showing "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Intrepid claims an ongoing invasion of its right to "avail itself of [its employees'] experience and expertise in

3

the 3D Printing industry," because the contracts' nondisclosure provision "operates as a de facto non-compete" and unlawfully interferes with their duties at Intrepid. (ECF 199, at 49); *see Brown v. TGS Mgmt. Co.*, 57 Cal. Rptr. 3d 303, 316–17 (Ct. App. 2020) (finding void ab initio "strikingly broad" confidentiality provisions that effectively barred plaintiff "in perpetuity from doing any work in the securities field"). The injury here is concrete and actual; 3D Systems' third cause of action in this lawsuit alleges breach of this very provision by the individual defendants. (ECF 6, at 17–18.) Intrepid's injury is "fairly traceable" to the nondisclosure clause, and a declaratory judgment that this provision is unenforceable would likely redress it. Standing appears satisfied, at least for relief sought from the nondisclosure provision.

But as to the non-competition and non-solicitation provisions, Intrepid has shown no cognizable injury. It merely alleges that they are "are void and unenforceable" as "facial violations" of California law. (ECF 199, at 49.) The non-compete and non-solicitation clauses expired in August 2017 and February 2019, respectively. (ECF 214, at 32.) Consequently, they impose no ongoing burden on Intrepid's ability to exploit the talents and know-how of its engineers. At most, 3D Systems might seek damages—from the individual ex-employees, not Intrepid—for actions those individuals took years ago. And to the extent Intrepid contends that a hypothetical future lawsuit against its individual founders could somehow injure *it*, Intrepid cites no authority establishing that a company is in privity with its employees as to contracts those employees signed before it even existed. Intrepid lacks constitutional standing to challenge these expired clauses, and its counterclaim as to the non-competition and non-solicitation provisions is dismissed.

### 2. *Dismissal Arguments*

Turning to the arguments, 3D Systems first seems to contend that, because two of the three challenged provisions have expired, the whole counterclaim is moot. (*See* ECF 214, at 30, 32.) Yet it filed this lawsuit to enforce the unexpired nondisclosure clause, so a case or controversy exists as to that provision. (*See* ECF 6, at 6, 17–18.) Courts have found that there "no longer is any actual controversy between the parties" when declaratory

4

relief is sought but (1) the challenged provision in an employment agreement has "already expired" and (2) the employer represents that it will not "pursue any claims to enforce" it "in the future." *See Imtiaz Khan v. K2 Pure Sols., LP*, No. 12-CV-05526-WHO, 2013 WL 4734006, at *4 (N.D. Cal. Sept. 3, 2013). But when an employer—far from "assert[ing] that it will not pursue" enforcement—contemporaneously "fil[es] suit against [defendant] for breach" of the provision, "a live case and controversy exists." *See Healy v. Qognify, Inc.*, No. 2:18-cv-068310-ODW (MRW), 2020 WL 136589, at *3 (C.D. Cal. Jan. 10, 2020).

Next, 3D Systems argues for the first time in its reply that Intrepid's failure to assert unenforceability as an affirmative defense when it filed its original answer means it has waived "any claims based on this theory." (ECF 264, at 9.) This argument has two parts: (1) that the counterclaim is in fact an affirmative defense and (2) that affirmative defense is waived because it wasn't raised in the answer. Both parts fail.

Courts do indeed treat counterclaims as affirmative defenses when appropriate. Fed. R. Civ. P. 8(c)(2) ("If a party mistakenly designates a defense as a counterclaim . . . the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."). But here justice does not require such a relabeling. The declaratory relief Intrepid seeks is broader than a mere affirmative defense; it goes beyond simply defending against an existing claim. Were the Court to review and invalidate portions of the agreements as Intrepid requests, Intrepid would be protected from all actions brought on the stricken terms, not just this action.

Even if the Court were to relabel this counterclaim an affirmative defense, Intrepid's failure to plead unenforceability in its original answer would not necessarily be fatal to its ability to do so now. The Ninth Circuit has "liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings." *Magana v. Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997). "When there is no prejudice from the delay in asserting affirmative defenses," the Ninth Circuit has held that "it is proper for the district court to allow them." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1068 (9th Cir. 2000).

5

The opposing party "must point to a tangible way in which it was prejudiced by the delay," *Garcia v. Salvation Army*, 918 F.3d 997, 1009 (9th Cir. 2019) (quotation marks omitted), like the loss of a right to discovery. But "mere untimely assertion of an affirmative defense is insufficient to establish prejudice." *Baumgarner*, 2013 WL 12309779, at *3. 3D Systems has argued no prejudice. Indeed, after Intrepid filed its amended answer, the Court extended all pretrial deadlines (including fact discovery) specifically to accommodate that amendment—at the parties' joint request. (*See* ECF 222, at 1–2.)

3D Systems' motion to dismiss Intrepid's counterclaim for a declaratory judgment is granted as to the non-solicitation and non-compete provisions of the employment agreements but denied as to their nondisclosure provisions.

## B.   Intrepid's Claims 4 and 5: Trade-Secret Misappropriation

Intrepid also alleges trade-secret misappropriation under both state and federal law. (*See* ECF 199, at 41–46.) A plaintiff may state a claim for trade-secret misappropriation by alleging that "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (citation omitted); *see also* Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1839(5). 3D Systems and Kuester directly contest the first two elements, arguing that "Intrepid fails to identify any non-public trade secrets" (ECF 214, at 27; ECF 215, at 33) and that Intrepid supports its misappropriation allegations with only "rank speculation," "on information and belief," and "no facts" (ECF 214, at 29; ECF 215, at 35).

### 1.   *Trade-Secret Element*

Under both federal and state law, a "trade secret" has three components: "(1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). 3D Systems and Kuester hang their hats on the fact that "disclosure of a trade secret in a patent application extinguishes the information's trade secret status."

6

*Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020). They insist that Kuester received no more information (in 2021) than Intrepid had already made public in patents and patent applications (in 2019 and 2020). (ECF 214, at 26; ECF 215, at 32.) "Thus, Intrepid fails to identify any non-public trade secrets that Kuester and 3DS allegedly misappropriated." (ECF 214, at 27; ECF 215, at 33.) Intrepid responds that "specific implementation details remain trade secrets" that can support a misappropriation claim when not "completely parallel" to the patent publication. (ECF 260, at 20–21; ECF 261, at 28 (citing *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1358 (Fed. Cir. 1998) (finding substantial evidence supporting the jury's conclusion that a trade secret was misappropriated when plaintiff had disclosed "details and techniques that went beyond the information disclosed in the patent")).)

Determining the "scope" of trade secrets—whether the information appropriated was coextensive with that published in the patent documents—presents "highly factual issues that are not properly decided on a motion to dismiss." *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, No. CV 17-5169-GW(FFMX), 2018 WL 2558388, at *5 (C.D. Cal. Feb. 27, 2018). At the pleading stage, it is inappropriate "for the Court to go through every detail" and "determine whether or not *every* alleged trade secret was publicly disclosed," especially given that the technical substance "would likely require expert testimony to decipher." *Id.* Therefore, the Court declines to find at this early stage that Intrepid failed to plausibly plead a trade secret.

### 2. *Misappropriation Element*

Under both federal and state statutes, "misappropriation" is defined as "either (1) the acquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means; or (2) the disclosure or use of a trade secret of another without express or implied consent." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (cleaned up) (citing 18 U.S.C. § 1839(5)); Cal. Civ. Code § 3426.1(b)). Thus, plausibly pleading any one of wrongful "acquisition," "disclosure," or "use" will state the misappropriation element.

Movants argue that, because Intrepid's allegations are made "on information and belief," its claims descend into "rank speculation." (*See* ECF 214, at 28–29; ECF 215, at 34–35.) But the "plausibility standard permits allegations on information and belief" when: "(1) 'the facts are peculiarly within the possession and control of the defendants'; or (2) 'the belief is based on factual information that makes the inference [of] culpability plausible.'" *Auris Health, Inc. v. Noah Med. Corp.*, No. 22-CV-08073-AMO, 2023 WL 7284156, at *4 (N.D. Cal. Nov. 3, 2023) (quoting *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)). Intrepid's pleading falls into that second caveat.

Intrepid pleads many facts that make the inference of culpability plausible. Among other things, Intrepid alleges that Kuester gained trade-secret access by signing a nondisclosure agreement, premised on his interest in joining Intrepid. (ECF 199, at 28.) Kuester toured Intrepid's facility and viewed "unreleased products and technologies" that constitute at least some of the trade secrets at issue. (*Id.*) He then "abruptly changed course" and told Intrepid he planned to remain with 3D Systems. (*Id.* at 31.) Whether or not Kuester was initially sincere, Intrepid alleges "on information and belief" that he disclosed to 3D Systems all the trade secrets he obtained. (*Id.* at 32.) Intrepid pleads the types of "misappropriation" in the alternative: either Kuester was a spy all along (in which case he wrongfully *acquired* the secrets) or else 3D Systems compensated him enough to breach it later (in which case he wrongfully *disclosed* the secrets). (*See id.* at 31–32.)

Likewise, Intrepid's allegations that 3D Systems wrongfully acquired secret information (either by tortiously inducing Kuester to breach the agreement or by using him as a cat's-paw from start to finish) are supported by plausible allegations. 3D Systems employee Stacie Hoche revealed in a February 2021 email her understanding that "Intrepid's products are built to order based on customer requirements," something Intrepid alleges she could only have learned from Kuester. (*Id.* at 33.) Hoche also revealed that "Intrepid's new printer system was a custom built, vat-based DLP multi-projection system with a large print area," something Intrepid contends that she also must have learned from Kuester. (*Id.*) In its responses, Intrepid clarifies that this information does not appear in its

8

patent filings, which describe "a relatively small, membrane-based (i.e., not vat-based) print engine." (ECF 260, at 22; ECF 261, at 29.) So, Intrepid has plausibly stated that 3D Systems inappropriately "acquired" its trade secrets, notwithstanding its use of "on information and belief" pleading.

Intrepid leans most heavily on "information and belief" allegations for its claims of trade-secret "use." (ECF 199, at 34.) For example, it asserts, without specific factual support, that 3D Systems used the information to "adjust its pricing and market position" of an existing product; "to accelerate its time to market of the SLA-750," a planned large-format printer; to "hone its pricing and market position of the SLA-750" to account for the superior characteristics of Intrepid's device; and to "explore development" of its own direct competitor to Intrepid's multi-projector design. (*Id.*) Much of that is appropriately pleaded "on information and belief," however, because those "facts are peculiarly within the possession and control of the defendants." *See Soo Park*, 851 F.3d at 928.

But even if they weren't, Intrepid supports its "use" claim with at least one specific factual allegation. It alleges that just a week after Kuester decided to stay with 3D Systems, "Aaron Wood," 3D Systems' "Director of Material Sales," sent an email asking after Intrepid's designs because he had "ascertained that Kuester's information regarding Intrepid's proof of concept of multi-projector technology in large format printing was, indeed, a dire threat to 3D Systems' business." (ECF 199, at 32.) The only way to "ascertain" that from Kuester's information would have been to "use" it.

So, viewed in the light most favorable to Intrepid, its allegations state a claim for the misappropriation element. Thus, the motions to dismiss Intrepid's counterclaims and third-party claims for trade-secret misappropriation are denied.

## C.    Intrepid's Claims 1 and 3: Fraudulent Inducement and Tortious Interference

Intrepid brings two state tort claims—fraudulent inducement and tortious interference—as alternatives to each other. But both claims are inextricably bound up with the trade-secret-misappropriation claim, so both are preempted by California's trade-secrets statute. That statute "occupies the field" of California common-law claims based

9

on trade-secret misappropriation. *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 90 Cal. Rptr. 3d 247, 258 (Ct. App. 2009). Apart from contract claims, it "preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117 (9th Cir. 2020) (cleaned up); *see* Cal. Civ. Code § 3426.7. "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (citation omitted).

Undeniably, the allegations supporting both claims lie at the heart of Intrepid's trade-secrets cause of action. In the first version (claim 1), Kuester fraudulently induced Intrepid to enter a nondisclosure agreement so he could acquire its secrets. (*Id.* at 28.) In the alternative account (claim 3), Kuester signed the nondisclosure agreement in good faith, but 3D Systems persuaded him to breach its terms and share the trade secrets he learned. (*Id.* at 32.) Under either narrative, the gravamen of the wrongful conduct is the acquisition, disclosure, and use of Intrepid's trade secrets. This falls directly within the trade-secret statute's preemptive ambit. *See* Cal. Civ. Code § 3426.1(a), (b)(2)(A) (defining "misappropriation" to include the use of "misrepresentation . . . to acquire knowledge of the trade secret" and "improper means" to include "inducement of a breach of a duty to maintain secrecy").

Courts uniformly agree. *See SHK Mgmt., Inc. v. Kilroy Realty Corp.*, No. CV 14-02509 DMG (Ex), 2014 WL 12561096, at *4 (C.D. Cal. Oct. 2, 2014) (finding fraudulent-inducement claim preempted when the "alleged purpose of the inducement was to gain access to the trade secrets"); *Novation Sols., Inc. v. Issuance Inc.*, No. 2:23-cv-00696-WLH-KSx, 2023 WL 5505908, at *10 (C.D. Cal. June 27, 2023) (holding that the California Uniform Trade Secrets Act "preempts claims where a defendant lies to gain access to proprietary information, which is precisely what this cause of action claims");

10

*Gems v. Diamond Imports, Inc.*, No. 15-cv-03531-MMC, 2016 WL 6902804, at *3 (N.D. Cal. Nov. 22, 2016) (finding fraudulent-inducement claim superseded as "merely the means by which [defendant] gained access to such information"). And when confidentiality agreements are interfered with for the sole purpose of gaining access to secrets, courts find those claims superseded as well. *See Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 5:20-cv-06846-EJD, 2021 WL 3042616, at *4 (N.D. Cal. July 19, 2021) (dismissing claim of interference with employee's confidentiality agreement as superseded "because it significantly overlaps with [employer's] misappropriation of trade secrets claims"); *cf. HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, No. 22-cv-04109-TSH, 2023 WL 1768120, at *7 (N.D. Cal. Feb. 3, 2023) (declining to dismiss interference claim as superseded when "facts in support of [contract-interference] claim" were "not solely based on trade secret misappropriation," but also alleged breach of the contract "independent of [claimant's] trade secrets or confidential information").

The motions to dismiss Intrepid's third-party claim for fraudulent inducement and its counterclaim for tortious interference are granted. There are no conceivable additional factual allegations that could save either of these claims from preemption, so leave to amend them is denied.

**D.    Intrepid's Claim 2: Breach of Written Contract**

Intrepid's claim that Kuester breached his nondisclosure agreement, by contrast, is unaffected by any preemption. Indeed, the "plain language" of California's trade-secrets statute "provides that it does not preempt contractual remedies, whether or not based upon misappropriation of a trade secret." *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. 2017) (cleaned up).

Kuester argues that "the Court should dismiss Intrepid's breach of contract claim because it does not identify the specific [nondisclosure agreement] provision that Kuester allegedly breached." (ECF 215, at 25.) Not so. Intrepid attached the one-page nondisclosure agreement itself, which required Kuester to "protect the disclosed confidential information by using . . . a reasonable degree of care, to prevent [its]

unauthorized use, dissemination or publication." (ECF 199, at 75.) Intrepid alleges that "Kuester breached the [nondisclosure agreement] by using and/or disclosing to 3D Systems Intrepid's nonpublic, proprietary, or confidential information." (*Id.* at 39.) Intrepid also alleges that Stacie Hoche later possessed information she could only have obtained from Kuester. (*Id.* at 33.) In other words, Intrepid has identified the provision at issue and the conduct that breached it. These allegations state a claim.

The cases Kuester relies on are of an entirely different sort. In each one, plaintiffs failed to plead a breach of contract because there was no term breached. *See, e.g.*, *Lowry v. EMC Mortg. Corp.*, 710 F. App'x 752, 752 (9th Cir. 2018) (holding that "plaintiffs failed to identify a contract provision requiring defendants to grant them a permanent loan modification" because there was no such provision); *Ewert v. eBay, Inc.*, 602 F. App'x 357, 359 (9th Cir. 2015) (dismissing claim because "plaintiffs failed to identify a provision in the User Agreement" that defendant breached, because there wasn't one); *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) (finding that "the Mirons failed to allege any provision of the contract which supports their claim," because there wasn't one).

Kuester's motion to dismiss Intrepid's third-party contract-breach claim is denied.

## E.    Intrepid's Claim 6: Unfair Competition Law

Intrepid alleges that the "conduct" of 3D Systems and Kuester "constitutes unlawful, unfair, or fraudulent business acts or practices in violation of [California's Unfair Competition Law]." (ECF 199, at 47.) Each of these UCL prongs—"unfair," "unlawful," and "fraudulent"—constitutes "a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009); *see* Cal. Bus. & Prof. Code § 17200.

### 1.    *"Unfair" Prong*

Intrepid does not dispute that both 3D Systems and Kuester are fairly characterized as its direct competitors—3D Systems as a developer in the additive-manufacturing industry and Kuester as 3D Systems' employee and executive. When a business sues a direct competitor for unfair business practices under the UCL, "unfair" means "conduct

that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999). The "antitrust laws . . . were enacted for the protection of *competition*, not *competitors*." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 (1986) (cleaned up). Because "injury to a competitor is not equivalent to injury to competition," a UCL claim based on the unfair prong must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech*, 973 P.2d at 544.

Intrepid alleges facts that, at most, substantiate injury to its own commercial interests in the form of a "loss of prospective customers [and] potential employees." (ECF 199, at 47.) *See Watson Labs., Inc. v. Rhône-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1117–19 (C.D. Cal. 2001) (dismissing claim under UCL "unfair" prong when "evidence merely indicate[d] harm to [plaintiff's] commercial interests, rather than harm to competition"). Beyond that, it alleges, in conclusory fashion, that "competition generally in the 3D printing market has been harmed." (*Id.*) And it says that targeting a "new market entrant with disruptive, landscape-changing technology" causes "general harm to the competitive marketplace." (ECF 260, at 15; ECF 261, at 26.) But Intrepid's allegations of general harm to competition are mere "labels and conclusions," insufficient to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555.

## 2. *"Unlawful" Prong*

The UCL's "unlawful" prong requires the "violation of another law." *See Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 186 (Ct. App. 2007). If that underlying legal claim fails, so too does the "derivative UCL claim." *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 239 Cal. Rptr. 3d 577, 599 (Ct. App. 2018). In a past order, this Court dismissed Intrepid's UCL claims as "preempted" because the alleged underlying legal violations were all "predicated on and directly connected to" the allegations of trade-secret misappropriation. (ECF 174, at 14.) Intrepid has now attempted to replead its UCL

13

claims but has not isolated the supporting facts it alleges are distinct from the trade-secrets claim, as the Court instructed it to do. (*See id.*)

Nonetheless, the Court will try to "strip[]" the record of misappropriation-related facts and see whether "the remaining factual allegations can be reassembled to independently support other causes of action," which, though not expressly brought, might undergird an unlawful-prong claim. *See Waymo*, 256 F. Supp. 3d at 1062. After all, trade-secret preemption "is not triggered where the facts in an independent claim are similar to, but distinct from, those underlying the misappropriation claim." *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08cv1992-MMA-POR, 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009). Intrepid gestures at a few candidates: defamation (ECF 199, at 35–36); false light (*id.* at 23, 35–36); trade libel (*id.* at 36); and intentional interference with prospective economic advantage (*id.* at 23, 36–37). It also tries to shoehorn its unlawful-employment-agreement contentions into a supporting role. (*Id.* at 47.)

### a.  Defamation, False Light, and Trade Libel

Defamation is "the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021). "[T]he threshold question in every defamation suit is whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact." *Id.* (cleaned up). If not, "the claim is foreclosed by the First Amendment." *Id.* The words constituting defamation "must be specifically identified, if not pleaded verbatim." *Glassdoor, Inc. v. Superior Ct.*, 215 Cal. Rptr. 3d 395, 406 (Ct. App. 2017). "Even under the liberal federal pleading standards, general allegations of the defamatory statements that do not identify the substance of what was said are insufficient." *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1079 (S.D. Cal. 2021).

Intrepid identifies the content of none of the defaming statements. It instead pleads only in generalities, decrying "statements about the capabilities of Intrepid's founders" (ECF 199, at 35) and "false statements related [to] the capabilities of Intrepid's founders

and the qualities, characteristics, and capabilities of Intrepid's printer systems and technologies" (*id.* at 36). Based only on this, the Court cannot determine the threshold question: whether they constitute statements of objective fact. Intrepid's pleading thus does not support a claim for defamation. The result is the same for false light. "When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." *Eisenberg v. Alameda Newspapers, Inc.*, Cal. Rptr. 2d 802, 823 n.13 (Ct. App. 1999).

Trade libel meets the same fate, for much the same reason. *See Films of Distinction, Inc. v. Allegro Film Prod., Inc.*, 12 F. Supp. 2d 1068, 1081 (C.D. Cal. 1998) (A "trade libel claim must be based on specific statements, and the defamatory character of the language must be apparent from the words themselves."). Intrepid falls far short in describing the statements that allegedly derogated its products: "3DS employees made [false] statements to the aerospace company . . . regarding the qualities, attributes and capabilities of Intrepid's printer systems and technologies." (ECF 199, at 36.) This will not do.

b. *Intentional Interference with Prospective Economic Advantage*

To state a claim for intentional interference with prospective economic advantage, a plaintiff must show, among other things, "intentional acts on the part of the defendant designed to disrupt" an economic relationship between the plaintiff and a third party. *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 49 Cal. Rptr. 2d 793, 802 (Ct. App. 1996) (cleaned up). The plaintiff also must show that the intentional act was independently wrongful—that is, that "the defendant's conduct was wrongful by some legal measure other than the fact of interference itself." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003) (cleaned up). "[A]n act is independently wrongful if it is unlawful." *Id.* at 954.

So, Intrepid faces a second level of difficulty here. It must plead yet another independent, unlawful act—and one not "based on the same nucleus of facts" as the alleged misappropriation—to support illegal interference that could in turn undergird an unlawful-

15

prong claim. Other than those already rejected, Intrepid suggests no other independently unlawful acts. As the claim fails on this key point, we need not reach the other elements.

### c. *Unlawfulness of 3D Systems' Employment Agreements*

Finally, Intrepid alleges that 3D Systems violated the UCL "by subjecting its employees to employee agreements that contain restrictions that 3D Systems knows are invalid under California law." (ECF 199, at 47.) California law provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. But even if Intrepid's allegations are accurate, the UCL offers it no remedy.

The injury Intrepid complains of from these agreements is its inability to "avail[] itself of the Independent Experts' experience and expertise in the 3D printing industry in California." (ECF 199, at 49.) The most generous interpretation of this claim is that these restrictions force Intrepid to forego business opportunities for innovation or customer development. This injury is not susceptible to a restitutionary remedy. "Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims." *Korea Supply*, 63 P.3d at 948. Essentially, Intrepid's claim is one for damages, however difficult to ascertain they may be. *See SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1185–87 (S.D. Cal. 2012) (reviewing caselaw on this distinction). Nor may Intrepid leverage its unjust-enrichment allegation to fill this vacuum, for "nonrestitutionary disgorgement of profits is not an available remedy in an individual action under the UCL." *Korea Supply*, 63 P.3d at 949. And if construed as seeking only injunctive relief, the claim would appear "largely superfluous to the declaratory relief claim." *See Allen v. OE Servs., LLC*, No. C 13-2460 RS, 2013 WL 12335012, at *4 (N.D. Cal. Oct. 10, 2013).

### 3. *"Fraudulent" prong*

The UCL's "fraudulent" prong is subject to the "heightened pleading standards" for fraud claims. *Kearns*, 567 F.3d at 1125. When fraud is alleged, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, when a

plaintiff alleges "a unified course of fraudulent conduct" and that conduct forms the basis of its UCL claim, "the pleading as a whole must satisfy the particularity requirement." *Id.* (cleaned up). UCL causes of action based on allegedly fraudulent acts "must describe facts such as the time, place, persons, statements and explanations of why allegedly misleading statements are misleading." *Arias v. Select Portfolio Servicing, Inc.*, No. 1:17-CV-01130-DAD-SAB, 2017 WL 6447890, at *8 (E.D. Cal. Dec. 18, 2017).

Intrepid claims only in conclusory fashion that "3D Systems' and Kuester's conduct constitutes . . . fraudulent business acts," and does not identify the conduct that allegedly qualifies. (ECF 199, at 47.) If it expects the "false statements" made to "participants in the 3D printing industry and/or potential customers" to fit the bill, Intrepid runs into the same lack-of-particularity problem that dooms any potential defamation claim. (*Id.* at 36.) At any rate, Intrepid has not sufficiently alleged the "who, what, when, where, and how of the misconduct charged." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation marks omitted).

Accordingly, Intrepid fails to state a claim under any of the UCL's three prongs, and the motions to dismiss Intrepid's UCL-related counterclaim and third-party claim are granted. Because the Court previously allowed Intrepid to amend to "set forth more clearly a basis for the UCL claim" but Intrepid failed to do so, this claim is dismissed without leave to amend. (*See* ECF 174, at 14.)

## F.    Leave to Amend

When a pleading "can possibly be cured by additional factual allegations," courts should grant leave to amend. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). But when a party has already amended once and has again failed to state a claim, a district court's "discretion to deny leave to amend is particularly broad." *Id.* (quotation marks omitted). This will be Intrepid's final opportunity. Leave to amend is granted only for claim 7—and solely to the extent of alleging additional facts that support Intrepid's declaratory-relief claim as to the "non-compete" and "non-solicitation" provisions. No new

causes of action may be alleged, and no new parties, including the five individual defendants, may be added to any claim.

## **<u>CONCLUSION</u>**

3D Systems' and Kuester's dismissal motions are **GRANTED IN PART** as follows:

1. Intrepid's claim 1 (fraudulent inducement), claim 3 (tortious interference with contract), and claim 6 (Unfair Competition Law) are **DISMISSED** *without* leave to amend.

2. Intrepid's claim 7 (declaratory relief) survives as to the "non-disclosure" provision, but as to the "non-compete" and "non-solicitation" provisions, it is **DISMISSED** with leave to amend, as set forth above. If Intrepid elects to proceed, its second amended answer must be filed by March 26, 2024.

The motions to dismiss are otherwise **DENIED**. 3D Systems' and Kuester's motion for judicial notice of various public patent documents is **GRANTED**. (*See* ECF 214-1; ECF 215-1.)

Dated:  March 12, 2024

_____
Andrew G. Schopler
United States District Judge

18