UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3D SYSTEMS, INC.,<br><br>                      Plaintiff,<br>v.<br><br>BEN WYNNE, et al.,<br><br>                      Defendants. | Case No.: 21-cv-1141-AGS-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO SEAL**<br><br>**and**<br><br>**(2) GRANTING DEFENDANTS' MOTION TO SEAL**<br><br>**[Dkt. Nos. 387, 397]** |

## I.

## INTRODUCTION

Before the Court are Plaintiff's Motion to Seal regarding certain exhibits filed in support of Plaintiff's Motion to Compel Forensic Inspection of Defendants' Electronically Stored Information ("Plaintiff's Motion to Seal") [Dkt. No. 387] and Defendants' Motion to Seal regarding certain documents submitted in support of their opposition to Plaintiff's Motion to Compel Forensic Inspection of Defendants' Electronically Stored Information ("Defendants' Motion to Seal") [Dkt. No. 397]. The Court **GRANTS** both motions.

## II.
## LEGAL STANDARDS

The public enjoys "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). When evaluating a request to seal judicial records, courts in this Circuit start with "a 'strong presumption in favor of access'" to those records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted). The party requesting sealing bears the burden of overcoming this strong presumption. *Id.* The showing required depends upon whether the underlying motion is closely related to the merits of the case—in which case the party must demonstrate "compelling reasons" to seal—or is only "tangentially related" to them, which requires a less demanding showing of good cause. *See Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

## III.
## DISCUSSION

### A. The "Good Cause" Standard Applies

Application of the "good cause" standard is appropriate where the court does not address the merits of litigation in the underlying motion. *See, e.g.*, *In re Mahltig Mgmt. Und Beteiligungsgesellschaft MBH*, No. 18-mc-80037 NC, 2018 WL 11198061, at *6 (N.D. Cal. Apr. 18, 2018). "Good cause" requires a "particularized showing that specific prejudice or harm will result" if the information is disclosed. *See Phillips ex rel. Estates of Byrd v. Gen Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning," do not satisfy the good cause standard. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

The "good cause" standard applies to both parties' motions to seal. The substantive motion underlying the parties' motions to seal is Plaintiff's Motion to Compel Forensic Inspection of Defendants' Electronically Stored Information ("Motion to Compel"),

wherein Plaintiff "moves, pursuant to Federal Rule of Civil Procedure 37, to compel a forensic inspection of electronically stored information . . . so that 3DS can obtain documents that were previously requested and should have been produced in discovery by Defendants." Dkt. No. 389 at 3.  The Motion to Compel only requires the Court to address whether to permit Plaintiff to conduct a forensic inspection of certain electronically stored information.  The Court need not address the merits of the case to rule on the Motion to Compel, nor will the Court's ruling dispose of either party's claims or restrict the evidence either party may introduce at trial in support of its claims.

B.    **Plaintiff's Motion to Seal**

"'[S]ources of business information that might harm a litigant's competitive standing' often warrant protection under seal." *In re Mahltig Mgmt.*, 2018 WL 11198061, at *6 (citing *Nixon*, 435 U.S. at 598).  Courts have granted motions to seal "third-parties' sensitive business information," recognizing that disclosure "might allow competitors to use that information to their advantage in their own contract negotiations," *Pulse Electronics, Inc. v. U.D. Electronic Corp.*, 530 F. Supp. 3d 988, 1031 (S.D. Cal. 2021) (citation omitted), so long as the material to be sealed is narrowly tailored to such confidential business information.  *See, e.g.*, *Monster Energy Co. v. Vital Pharm., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2019 WL 3099711, at *2 (C.D. Cal. June 17, 2019); *see also Rodman v. Safeway, Inc.*, No. 11-cv-03003-JST, 2015 WL 13673842, at *2 (N.D. Cal. Aug. 4, 2015).

Plaintiff moves to seal Exhibits 6, 7, 8, 9, and 10 filed in support of its Motion to Compel.  Dkt. No. 387 at 3.  Plaintiff describes the exhibits as "activity logs produced by third-party PTC, Inc. and related testimony."  *Id*.  As the Court recognized in a prior order granting Plaintiff's motion to seal similar records produced and designated as confidential by third party PTC, Inc. ("PTC"), "[a]n order sealing the documents designated as 'confidential' by non-party PTC is appropriate here given the sensitive nature of the information contained in the documents and the effect that disclosure would have on PTC and its customers." Dkt. No. 254 at 3.

Here, Plaintiff states that "PTC designated the information contained in Exhibits 6-10 . . . as 'CONFIDENTIAL' and 'CONFIDENTIAL – FOR COUNSEL ONLY' and expected the information would be filed under seal or not at all." Dkt. No. 387 at 4; Dkt. No. 387-1 at ¶ 14. In support of Plaintiff's Motion to Seal, Plaintiff provides declarations of Charles M. Urso, Senior Corporate Counsel at PTC ("Urso Declaration") and David Katzman, Divisional Vice President and Velocity Group General Manager at PTC ("Katzman Declaration"). The Urso Declaration and Katzman Declaration explain that PTC's customers use its Onshape computer-aided design product "to design new products, improve existing products, run analytics on proposed designs, and modify products based on the results of the analytics." Dkt. No. 387-1 at 6, ¶ 5; *id*. at 13, ¶ 8. Given this usage, "PTC's customers often consider this work and information to be highly confidential or trade secrets, and critical for maintaining a competitive advantage relative to their peer companies." *Id*. at 6-7, ¶ 5; *id*. at 13, ¶ 8. Analytics data generated by customers in certain industries "is particularly sensitive in that the analytics data, if made public, could be used by bad actors to exploit the customer's product, or the devices that incorporate the customer's product." *Id*. at 7, ¶ 6; *id*. at 13, ¶ 9.

Additionally, the Urso Declaration and Katzman Declaration explain that in response to Plaintiff's subpoena dated March 16, 2023, "PTC provided a log file showing individual events that took place within the relevant Onshape environments during the relevant time period." Dkt. No. 387-1 at 7, ¶ 8; *id*. at 13-14, ¶ 11. Irrespective of whether a customer considers their own data to be confidential, "the format of the Log File itself, the individual file characteristics that can be tracked by the Onshape platform, and the format and syntax of the individual identifiers contained in the Log File are proprietary and highly confidential to PTC." *Id*. at 7, ¶ 10; *id*. at 14, ¶ 13. Thus, "[p]ublicly disclosing the Log File in its complete form, even if certain columns remain redacted, could put PTC at a competitive disadvantage by providing PTC's competitors with information and a roadmap showing how Onshape manages, categorizes, and persists events occurring within the Onshape platform." *Id*. at 8, ¶ 11; *id*. at 14, ¶ 14. Moreover, if disclosed, "the Log File

in its complete form . . . could be leveraged by bad actors attempting to gain access to highly confidential or sensitive Onshape customer information." *Id*. at 8, ¶ 12; *id*. at 14, ¶ 15.

Finally, Urso and Katzman describe the internal measures PTC has implemented to maintain the security of its customers' sensitive data. For example, "PTC personnel may not access any customer data in the Onshape platform unless in connection with a Court order or validly issued subpoena, a security-related emergency, or with a customer's explicit permission." Dkt. No. 387-1 at 13, ¶ 10; *id*. at 7, ¶ 7. Moreover, "[u]nless PTC is provided access by a customer, PTC personnel are not able to see actual models, analytics, and other customer sensitive data without code-level changes to the Onshape platform." *Id*. at 13, ¶ 10. In the case of the log files produced in response to the March 16 subpoena, "[t]he Log File, and the information therein, as compiled, is not available to individual Onshape platform users or others outside of PTC," and "even within PTC, only PTC employees with VP-level or above permission are granted access to log files, and only in cases where access is necessary" for the reasons listed. *Id*. at 14, ¶ 12; *id*. at 7, ¶ 9.

Based on the foregoing, the Court finds that Plaintiff has demonstrated good cause for an order sealing Exhibits 6, 7, 8, 9, and 10. The Exhibits contain confidential information regarding the proprietary format of PTC's product and its customers' confidential and sensitive business information. The Urso and Katzman Declarations explain how disclosure would expose PTC's customers to bad actors hoping to exploit their products and place PTC at a disadvantage in relation to their competitors by revealing PTC's proprietary product design. As such, Plaintiff has made the required particularized showing of harm, and the materials Plaintiff requests to be sealed are narrowly tailored to only the confidential business information of PTC and the individual customer whose information is revealed in the materials. For these reasons, Plaintiff's Motion to Seal at Dkt. No. 387 is **GRANTED**. The Clerk of Court is respectfully requested to seal the foregoing documents lodged at Dkt. No. 388 in their entirety.

/ / /

**C.     Defendants' Motion to Seal**

Defendants move to seal a portion of the Declaration of Jeffrey J. Catalano in Support of Defendants' Opposition to Plaintiff's Motion to Compel ("Catalano Declaration"). Dkt. No. 397 at 2. Specifically, Defendants move to redact two images depicting Plaintiff's JanBot Figure 4 Production Prototype System at paragraph 5 of the Catalano Declaration. Each photo contains a "CONFIDENTIAL" label in the bottom left corner of the photo. In Defendants' Motion to Seal, Defendants explain that "3DS designated these images as CONFIDENTIAL pursuant to the Stipulated Protective Order entered in this matter. In deference to Plaintiff's designations of certain documents and deposition testimony as confidential, Defendants file the instant motion to seal." Dkt. No. 397 at 2.

Pursuant to this Court's order, Plaintiff filed a joinder in Defendants' Motion to Seal. Dkt. No. 449. In the joinder, Plaintiff asserts good cause exists to seal paragraph 5 of the Catalano Declaration—including the text and images provided at paragraph 5—because the JanBot system is "a prototype of 3DS's Figure 4 Production system from in or around January 2017," which "has never been commercialized by 3DS and contains an array of 3DS's Enso 2.6 Figure 4 print engines, which 3DS has not made public."[1] *Id.* at 2-3. Additionally, Plaintiff "contends that both the JanBot system and the Enso 2.6 Figure 4 print engines contained in the JanBot system are trade secrets of 3DS," and if the photos of the JanBot system become public, "they could benefit 3DS's competitors by revealing details of the layout of 3DS's JanBot and details of the Enso 2.6 print engine, which have not been made public by 3DS." *Id.* at 3. In further support of its joinder in the motion to seal, Plaintiff describes several measures it takes to maintain the secrecy of the JanBot information, including physical security measures at the location where JanBot is kept and

---

[1]     For clarity, the Court notes that Defendants' Motion to Seal seeks to redact only the images at paragraph 5, while Plaintiff's joinder seeks leave to seal both the text and images of paragraph 5. *See* Dkt. No. 397 at 2; *see also* Dkt. No. 449 at 2.

its policies for encryption, data storage, and acceptable uses of Plaintiff's information technology systems. *See id*. at 3. Finally, the images of the JanBot were generated during an inspection of Plaintiff's machines as part of the parties' discovery process. *Id*. Plaintiff agreed to the inspection pursuant to the Stipulated Protective Order and "with the understanding that the confidential and proprietary information reviewed by Defendants would remain confidential and not be made available to the public." *Id*. at 3-4.

The potential use of records to release trade secrets is an improper purpose sufficient to satisfy the stricter "compelling reasons" standard. *See Kamakana*, 447 F.3d at 1179 ("In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets.") (citation omitted).

Because the interest in protecting trade secrets from disclosure is compelling, Plaintiff has necessarily satisfied the less demanding good cause standard applicable here. Moreover, the redactions proposed by Plaintiff are narrowly tailored to Plaintiff's JanBot engine and certain non-public information in paragraph 5 which describes the JanBot's appearance and functionality. Good cause exists to redact these portions of paragraph 5 which disclose non-public information and photographs.

### IV.
### CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Plaintiff's Motion to Seal at Dkt. No. 387 is **GRANTED**. The Clerk of Court is respectfully requested to seal the documents lodged at Dkt. No. 388 in their entirety.
2. The Clerk of Court is requested to seal Dkt. No. 399-3 in its entirety.
3. By not later than **March 18, 2024**, Defendants must re-file the Catalano Declaration filed in support of Defendants' opposition to Plaintiff's Motion to

///

Compel Forensic Inspection of Defendants' Electronically Stored Information with redactions to paragraph 5, as follows:

a. Defendants must redact the two sentences at paragraph 5, lines 23-25.

b. Defendants must redact both images included under paragraph 5.

**IT IS SO ORDERED.**

Dated: March 13, 2024

_____
Hon. David D. Leshner
United States Magistrate Judge