1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   3D SYSTEMS, INC.,                    Case No.:  21-cv-1141-AGS-DDL

12                          Plaintiff,    **ORDER:**

13   v.
                                          **(1) GRANTING DEFENDANTS'**
14                                        **MOTION TO SEAL EXHIBITS**
     BEN WYNNE, et al.,                   **2 & 4**
15
                           Defendants.    **and**
16

17
                                          **(2) GRANTING PLAINTIFF'S**
18                                        **MOTION TO SEAL EXHIBIT**
                                          **E**
19

20                                        **[Dkt. Nos. 292, 301]**

21

22

23                               **I.**

24                          **INTRODUCTION**

25          Before the Court are Defendants' Motion to Consider Whether Plaintiff's

26   Documents/Material Should Be Sealed ("Defendants' Motion to Seal") [Dkt. No. 292]

27   regarding two exhibits filed in support of Defendants' Motion to Compel and Motion for

28   Sanctions and Plaintiff's Motion to Consider Whether Materials Should Be Sealed [Dkt.

No. 301] regarding one exhibit submitted in support of its opposition to Defendants' Motion to Compel and Motion for Sanctions ("Plaintiff's Motion to Seal").

For the reasons set forth herein, the Court **GRANTS** Defendants' Motion to Seal at Dkt. No 292, and further **GRANTS** Plaintiff's Motion to Seal at Dkt. No 301. Notwithstanding that compelling reasons exist to seal certain information in the parties' exhibits, the parties must narrowly tailor the material to be sealed by redacting the material and re-filing the exhibits on the public docket.

## II.

## LEGAL STANDARDS

The public enjoys "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). When evaluating a request to seal judicial records, courts in this Circuit start with "a 'strong presumption in favor of access'" to those records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted). The party requesting sealing bears the burden of overcoming this strong presumption. *Id*. The showing required depends upon whether the underlying motion is "closely related" to the merits of the case—in which case the party must demonstrate "compelling reasons" to seal—or is only "tangentially related" to them, which requires a less demanding showing of "good cause." *See Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

## III.

## DISCUSSION

### A.    The "Compelling Reasons" Standard Applies

In determining which standard should govern a request to seal judicial records, the Ninth Circuit cautions against adopting a "bright line rule" that would employ the "compelling reasons" standard only where the underlying motion is "technically dispositive." *Ctr. for Auto Safety*, 809 F.3d at 1101-02. Here, the Court finds that Defendants' Motion to Compel and Motion for Sanctions ("Motion for Sanctions") is

2

"more than tangentially related to the merits of [the] case," *id.* at 1102.  First, the Motion for Sanctions (which the Court has denied) was based, in part, on Defendants' contention that Plaintiff spoliated evidence related to Plaintiff's 2017 investigation of the individual Defendants' departure from their employment at 3D Systems, Inc., and that such evidence was relevant to, and potentially dispositive of, Defendants' statute of limitations defense against Plaintiff's misappropriation of trade secrets claim.  *See generally*, Dkt. No. 294 at 6-12.  Second, Defendants sought relief in the form of terminating and monetary sanctions. *See Keating v. Jastremski*, No. 3:15-cv-00057-L-AGS, 2020 WL 1813549, at *2 (S.D. Cal. Apr. 9, 2020) (analyzing motion to seal records related to motion for terminating sanctions under compelling reasons standard because "the motion for terminating sanctions is more than tangentially related to the merits of this case. . . . The dispositive nature of the motion for terminating sanctions therefore also counsels against applying the good cause standard"); *see also Charles v. Target Corp.,* No. 20-CV-07854-HSG, 2022 WL 3205047, at *3 (N.D. Cal. July 6, 2022) (applying compelling reasons standard to motion for spoliation sanctions).  As such, the Court applies the "compelling reasons" standard to both motions to seal.

A party may meet that standard through a showing, supported by specific facts, that the records at issue could "'become a vehicle for improper purposes'" if not kept confidential.  *Kamakana*, 447 F.3d at 1179 (citation omitted).   *See Charles*, 2022 WL 3205047, at *2 (listing examples of compelling reasons to justify sealing, "such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets").  The Court must then "balance the competing interests of the public and the party seeking to seal judicial records."  *In re Midland Nat. Life Ins. Co. Annuity Sales Prac. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (citation omitted).

**B.    Defendants' Motion to Seal (Dkt. No. 292)**

Defendants move to seal Exhibits 2 and 4 to the Declaration of Jeffrey J. Catalano in Support of Defendants' Motion to Compel and Motion for Sanctions, both of which

/ / /

contain documents that were "produced and designated as CONFIDENTIAL pursuant to the Stipulated Protective Order." Dkt. No. 292 at 2.

Plaintiff filed a joinder in Defendants' Motion to Seal. Dkt. No. 298. In the joinder, Plaintiff categorized the documents in three groups as follows: (1) "emails that . . . contain information related to 3DS's customers and vendors, both of which have been identified as 3DS's trade secret information in this case," (2) "emails that . . . contain information about the tools 3DS uses to develop its technology, and contains the email address and telephone number of a third party, Win Childers," and (3) "an email chain and an attachment that . . . include URLs that were presumably used in connection with 3DS and file pathways indicating where documents may be located on company servers."[1] *Id.* at 2-3.

### 1. <u>Plaintiff's Trade Secret Customer and Vendor Information</u>

Plaintiff contends that certain emails in Exhibit 4 "include the identity of a 3DS customer combined with sufficient information for a competitor to identify 3DS's vendor related to 3DS's Figure 4 technology," and that taken together, the information "is confidential and competitive information of 3DS that it would not want in the public domain." Dkt. No. 298 at 4. In further support of its joinder in the motion to seal, Plaintiff describes several measures it takes to maintain the secrecy of its customer and vendor information, including limitations on access to the physical workspace and computer system; mandatory confidentiality agreements for employees and mandatory non-disclosure agreements for existing and prospective customer and vendors; established policies for encryption, data storage, and acceptable uses of Plaintiff's information technology systems; and limited sharing of trade secret information solely to those on a need-to-know basis. *See id.* at 4.

---

[1]    In its joinder, Plaintiff references specific ranges of Bates numbers. The record before the Court reflects that the following Bates numbers were not included in the sealed exhibits lodged by Defendants at Dkt. No. 293: 3DSCORP_000046, 3DSCORP_000067, 3DSCORP_000073, 3DSCORP_000107, and 3DSCORP_000111.

As the *Kamakana* court explained, the potential disclosure of trade secrets is an improper purpose sufficient to satisfy the "compelling reasons" standard to seal a court record. *See Kamakana*, 447 F.3d at 1179 ("In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets.") (citation omitted). As set forth in Plaintiff's responses to Defendants' First Set of Interrogatories, Plaintiff contends that its customer list and vendor and supplier contact information are among its trade secrets at issue in the case. Dkt. No. 298 at 4; *see* Dkt. No. 232-1 at 154-155. Plaintiff's alleged trade secret customer and vendor lists include information that, if disclosed, could be used by a competitor for any number of improper purposes that harm Plaintiff's competitive standing. Accordingly, compelling reasons justify the sealing of Plaintiff's customer and vendor list information.

### 2.   Plaintiff's Technology and Third-Party Contact Information

Plaintiff asserts that certain emails in Exhibits 2 and 4 "contain a compilation and list of development tools and technology that 3DS uses to develop its technology, and this information would be valuable to competitors and could harm 3DS's competitive standing if disclosed, because competitors could then use the same tools to develop their own technology." Dkt. No. 298 at 5. As stated above, the potential disclosure of trade secrets constitutes a "compelling reason" to seal a court record. *See Kamakana*, 447 F.3d at 1179. But even if Plaintiff's development tools and technology were not sealable as trade secrets, "'sources of business information that might harm a litigant's competitive standing' often warrant protection under seal." *In re Mahltig Mgmt. Und Beteiligungsgesellschaft MBH*, No. 18-mc-80037 NC, 2018 WL 11198061, at *6 (N.D. Cal. Apr. 18, 2018) (citing *Nixon*, 435 U.S. at 598). Plaintiff's operation and competitive standing depend, at least in part, on the innovative and exclusive nature of its technologies. Accordingly, documents disclosing information about Plaintiff's development tools and technology are properly sealed.

/ / /

Additionally, Plaintiff states these emails "contain the contact information for a third party who is not a party to this lawsuit, and the public disclosure of this contact information would violate the individual's [right] to privacy set forth in the California Constitution." Dkt. No. 298 at 5. Courts have found that compelling reasons exist to seal non-parties' personal information when such information is not central to the issues in the case. *See ImprimisRx, LLC v. OSRX, Inc.*, No. 21-cv-01305-BAS-DDL, 2023 WL 7029210, at *4 (S.D. Cal. Oct. 24, 2023) (granting motion to seal record containing patients' names, dates of birth, addresses, and phone numbers upon finding the information is "not central to the dispute between the parties and presents a compelling reason to seal the document"). As with trade secrets, personal identifying information is the proper subject of a motion to seal because it "could become a vehicle for improper purposes." *Stafford v. Rite Aid Corp.*, No. 17-cv-1340-AJB-JLB, 2019 WL 3818015, at *1 (S.D. Cal. Aug. 14, 2019). Here, the third party's contact information is not central to the matters at issue in the case and is therefore subject to sealing.

### 3.    Plaintiff's URLs and File Pathways

Plaintiff contends that certain emails in Exhibit 4 "contain two URLs that were once used in connection with work performed for 3DS, which individuals could use to attempt to access 3DS information if made public." Dkt. No. 298 at 5. Additionally, Plaintiff states that emails display "the pathway where certain information is stored on 3DS's servers related to 3DS's Figure 4 technology, and if made public this information could potentially be exploited to attempt to access 3DS's confidential information." *Id*.

If disclosed, such URLs and file pathways could be a vehicle for improper use of confidential information and access to Plaintiff's trade secrets. For the reasons previously stated with respect to misuse of business or trade secret information, the Court finds this information suitable for sealing.

The parties have demonstrated compelling reasons to seal the aforementioned information in Exhibits 2 and 4 to the Catalano Declaration. Defendants' Motion to Seal is **GRANTED**.

**C.      Plaintiff's Motion to Seal (Dkt. No. 301)**

Plaintiff moves to seal Exhibit E to the Declaration of Plaintiff's counsel D. Andrew Quigley ("Quigley Declaration") filed in support of Plaintiff's Opposition to Defendants' Motion for Sanctions.  Plaintiff states that "**Exhibit E** is a copy of Intrepid Automation's responses to 3DS's Interrogatories, Set One, to Intrepid Automation regarding Intrepid Automation's counterclaims against 3DS.  Intrepid Automation designated the entirety of these responses as 'CONFIDENTIAL – FOR COUNSEL ONLY.'"  Dkt. No. 301 at 2 (bolding in original).

Defendants filed a joinder in Plaintiff's Motion to Seal, asserting that compelling reasons exist to justify sealing Exhibit E "because the material sought to be sealed identifies and fully describes Intrepid's trade secret information."  Dkt. No. 450 at 4.  Specifically, Defendants state the following:

> Here, there is no question Exhibit E identifies Intrepid's trade secrets and contains other highly sensitive commercial information.  Specifically, Exhibit E contains internal photographs and technical information related to Intrepid's DLP test bed used to prove concept of Intrepid's multi-projection edge blending and calibration, including the specific configuration of the details of the test bed, which have never been made available to the public; ultraviolet images depicting layers (e.g., the image of a cross-section of an actual part); Intrepid's in-development technologies; and Intrepid's business plans.  Dkt. No. 302, Ex. E, Rog. No. 1.
>
> This information constitutes non-public, confidential business information of Intrepid which, if made public, would impose a risk of harm to Intrepid's competitive standing.  It would expose to competitors how Intrepid's novel technology works while revealing confirmation of proof of concept. . . . In short, this would allow competitors . . . to develop and implement their own DLP multi-projector printer system.  Intrepid's trade secret information should be sealed to prevent this harm.  [Citation omitted.]

/ / /

/ / /

7

> Exhibit E should be sealed also because the disclosure of Intrepid's in-development technologies and other non-public business plans, as well as customer information, likewise poses a risk of competitive harm, as such information could be used by competitors . . . to undermine Intrepid's position in the market, steal customers, or make disparaging statements about Intrepid to Intrepid's customers . . . .

*Id*. at 5-6.

As discussed above, the potential disclosure of trade secrets is an improper purpose sufficient to satisfy the "compelling reasons" standard to seal a court record. *See Kamakana*, 447 F.3d at 1179. In its joinder in Plaintiff's Motion to Seal, Defendants specifically cite only to Interrogatory No. 1 as containing responses which reveal its trade secrets and other highly confidential information. *See* Dkt. No. 450 at 5 (citing "Dkt. No. 302, Ex. E, Rog. No. 1" after listing trade secrets revealed in Exhibit E). However, Exhibit E also contains Interrogatory Nos. 2, 3, 4, and 5, and Defendants' responses thereto. The Court reviews each of these interrogatory responses in turn.

On the one hand, Defendants' response to Interrogatory No. 3 identifies the names and addresses of certain of Defendants' former prospective customers, which is information Defendants identified as a trade secret in their response to Interrogatory No. 1. Dkt. No. 302 at 14; *see id*. at 10. Additionally, Defendants' response to Interrogatory No. 5 identifies facts that allegedly support Defendants' allegation that 3D Systems employees engaged in certain conduct to gain access to Defendants' trade secret information and includes references to customer information. *See id*. at 15-19. On the other hand, Interrogatory No. 2 pertains to "'false' or 'disparaging' COMMUNICATIONS" that Defendants allege Plaintiff made, and Interrogatory No. 4 pertains to Defendants' alleged damages. *See id*. at 11-13, 14-15. While it is evident that Defendants' responses to Interrogatory Nos. 1, 3, and 5 reflect the disclosures of at least some trade secrets, the same cannot be said of Defendants' responses to Interrogatory Nos.

///

///

2 or 4.  Thus, compelling reasons justify partial redactions of Exhibit E with respect to Defendants' responses to Interrogatory Nos. 1, 3, and 5 only.

For the foregoing reasons, the Court finds that compelling reasons justify partially sealing Exhibit E through redaction.  Plaintiff's Motion to Seal is **GRANTED**.

**D.   The Information to Be Sealed is Not Narrowly Tailored**

Defendants and Plaintiff each lodged the documents they request to seal without proposed redactions.  *See* Dkt. No. 293; *see also* Dkt. No. 302.   Moreover, as opposed to filing the documents publicly with proposed redactions, Defendants omitted Exhibits 2 and 4 from the Catalano Declaration and Plaintiff omitted Exhibit E from the Quigley Declaration each in their entirety.   Dkt. Nos. 294-3 and 294-5; Dkt. No. 300-6. Notwithstanding the parties' showing that compelling reasons exist to seal certain information in Exhibits 2 and 4 and Exhibit E, the parties have failed to narrowly tailor their respective requests to seal.  Narrowly tailored redactions will adequately serve the parties' interests in protecting confidential information while also balancing the public interest in access to public court records.  *See Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1139 (9th Cir. 2003) (finding it was an abuse of discretion to grant a motion to seal an entire document where the confidential information could have been "redacted with minimal effort").   For this reason, the parties must re-file the exhibits with appropriate redactions in accordance with Appendices A and B attached hereto.

## IV.

## CONCLUSION

The Court **ORDERS** as follows:

1.     Defendants' Motion to Seal at Dkt. No. 292 is **GRANTED**.  The parties must meet and confer to determine appropriate redactions to Exhibits 2 and 4 to the Catalano Declaration in accordance with Appendix A attached hereto.  By not later than **March 21, 2024**, Defendants must re-file the Catalano Declaration with redactions to Exhibits 2 and 4 in accordance with Appendix A.

/ / /

9

2.       Plaintiff's Motion to Seal at Dkt. No. 301 is **GRANTED**.  The parties must meet and confer to determine appropriate redactions to Exhibit E to the Quigley Declaration in accordance with Appendix B attached hereto.  By not later than **March 21, 2024**, Plaintiff must re-file the Quigley Declaration with redactions to Exhibit E in accordance with Appendix B.

**IT IS SO ORDERED.**

Dated:  March 14, 2024

Hon. David D. Leshner
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX A**

| Bates No.[2] | Content to Be Redacted |
|---|---|
| • 3DSCORP_000064 – 67<br>• 3DSCORP_000071 – 73<br>• 3DSCORP_000078<br>• 3DSCORP_000086 – 89<br>• 3DSCORP_000103 – 107<br>• 3DSCORP_000108 – 111 | • All information which identifies or which is sufficient to determine the identity of Plaintiff's customer and vendor "related to 3DS's Figure 4 technology."  Dkt. No. 298 at 4. |
| • 3DS_005026 – 27<br>• 3DSCORP_000090 – 92<br>• 3DSCORP_000096 – 98<br>• 3DSCORP_000099 – 102 | • All references to "development tools and technology that 3DS uses to develop its technology."  Dkt. No. 298 at 5.<br><br>• All references to third party Winthrop "Win" Childers's email address and phone number.  *Id.* |
| • 3DSCORP_000045 – 47 | • All references to "URLs that were once used in connection with work performed for 3DS."  Dkt. No. 298 at 5.<br><br>• All references to "the pathway where certain information is stored on 3DS's servers related to 3DS's Figure 4 technology."  *Id.* |

---

[2]     The record before the Court reflects that the following Bates numbers were not included in the sealed exhibits lodged by Defendants at Dkt. No. 293: 3DSCORP_000046, 3DSCORP_000067, 3DSCORP_000073, 3DSCORP_000107, and 3DSCORP_000111.

21-cv-1141-AGS-DDL

**APPENDIX B**

| Plaintiff's Interrogatory No. | Content to Be Redacted |
|---|---|
| Interrogatory No. 1 | All information, including images, set forth in Defendant Intrepid Automation's Response to Interrogatory No. 1 starting at page 5, line 9 through page 9, line 22.[3] |
| Interrogatory No. 3 | All information set forth in Defendant Intrepid Automation's Response to Interrogatory No. 3 at page 12, lines 5 through 9. |
| Interrogatory No. 5 | All references in Defendant Intrepid Automation's Response to Interrogatory No. 5 which identify Intrepid's customer(s) or prospective customer(s). |

---

[3]     All references to page numbers in Appendix B are to the page numbers at the bottom center of the Defendant Intrepid Automation's Responses to Plaintiff 3D Systems, Inc.'s Interrogatories lodged at Dkt. No. 302.