UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3D SYSTEMS, INC.,<br><br>                      Plaintiff,<br>v.<br><br>BEN WYNNE, et al.,<br><br>                      Defendants. | Case No.: 21-cv-1141-AGS-DDL<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>**[Dkt. No. 346]** |

**I.**

**<u>INTRODUCTION</u>**

After defendant Ben Wynne was served with the lawsuit in this case, he and defendant Chris Tanner deleted information from a cloud-based platform called OnShape. The deleted information included computer-aided design ("CAD") files pertaining to work that Wynne performed while employed at plaintiff 3D Systems and other information pertaining to 3D printing more generally.

3D Systems moves for terminating and other sanctions for spoliation of evidence under Federal Rule of Civil Procedure 37(e) and the Court's inherent authority. The Court has carefully considered the moving papers, the parties' supplemental briefs, the arguments of counsel, and the testimony given by Wynne, Tanner and 3D Systems employee Scott

Turner at the evidentiary hearing in this matter. As explained below, the present record supports a finding that Wynne and Tanner spoliated evidence, that 3D Systems was prejudiced and that sanctions are warranted under Rule 37(e)(1). However, the jury should determine whether the spoliation was intentional, which is an essential prerequisite to sanctions under Rule 37(e)(2). The Court further concludes that terminating sanctions are not warranted under Rule 37(e)(2) in any event and that, if the jury finds the spoliation was intentional, the appropriate sanction is to provide a "permissive inference" instruction informing the jury that it may presume the deleted information was unfavorable to defendants Wynne and Tanner, but is not required to do so.[1] Finally, Wynne and Tanner must pay 3D Systems's attorneys' fees incurred in bringing this motion.

## II.

## BACKGROUND

**A.     3D Systems Files Suit**

In 2016, 3D Systems hired the five individual defendants (collectively "Defendants"), including Wynne and Tanner, to "advance [its] Figure 4 print engine technology." Dkt. No. 363-27 (Declaration of Andrew Johnson) at ¶ 3. Defendants simultaneously resigned their employment with 3D Systems in August 2017. *Id.* at ¶ 4.

3D Systems filed this lawsuit in the San Diego Superior Court on May 19, 2021. Dkt. No. 1. The Complaint alleged, in relevant part:

---

[1] The Court lacks the authority to impose the terminating sanctions that 3D Systems seeks; however, the Court may order sanctions under Rule 37 "provided that the actual sanctions imposed are non-dispositive." *Apple, Inc. v. Samsung Electronics Company*, 888 F. Supp. 2d 976, 988 (N.D. Cal. 2012) (applying clear error standard of review to magistrate judge's order imposing adverse inference jury instruction); *Clear-View Techs., Inc. v. Rasnick*, No. 5:13-CV-02744-BLF, 2015 WL 2251005, at *6 (N.D. Cal. May 13, 2015) ("Magistrate judges may issue monetary sanctions and adverse inference jury instructions for spoliation.").

- Defendants and their company, Intrepid Automation, "misappropriated 3D Systems' trade secrets" and were "unlawfully using and benefitting from 3D Systems' trade secrets" (*id.* at 15, ¶ 38);

- Defendants' patent applications "contain trade secret and confidential drawing details of Enso," the print engine that is part of 3D Systems's Figure 4 print system (*id.* at 16, ¶ 42);

- Intrepid "stole and incorporated Enso CAD drawings and the initial Enso patent filings that were not published at the time Intrepid filed its patent application for Patent Number 10,780,640," including "the spine for supporting components, elevator mounted to spine, projector mounted to spine, and bracket on the projector" (*id.* at 16, ¶ 44); and

- "Intrepid's provisional filing of Patent Application Number US 20200103857 also contains trade secret and proprietary elements directly from 3D Systems' Enso 'Figure 4' print engine design, including elements from the Enso CAD drawings and 3D Systems' initial Enso patent filings, which were not published at the time of Intrepid's provisional filing." *Id.* at 17, ¶ 48.

On May 25, 2021, 3D Systems served defendants Wynne, Jamie Etcheson, Ivan Chousal and Intrepid Automation with the Complaint. Dkt. No. 346-3.

B.   **The OnShape Platform**

On May 25 and May 26, 2021, Wynne and Tanner deleted multiple documents and elements from their OnShape account. OnShape is a cloud-based product development platform. One of its features allows users to create and edit CAD files on the OnShape platform. CAD files are used to design and build products such as 3D printers. The CAD data stored on OnShape can range from a single part of a printer to a complete model of the entire printer with the size and shape of every physical component part.

An OnShape "document" is a container that may contain multiple types of data accessed through tabs within the document (analogous to the manner in which a single Excel file may include multiple tabs with different information accessible through each tab). An OnShape document is not limited to CAD data, however, and "can contain any type of information related to one or more projects, such as assemblies, subassemblies, parts, drawings, imported parts and any other projected related data such as PDFs, images,

and videos." Dkt. No. 346-2 at 4.  In this regard, an OnShape document is fundamentally different than, for example, a Word document that consists of a single file.  An OnShape "element" is a "subcomponent of a document." Dkt. No. 344 at 12.

An OnShape user can manually "trash" a document.  Dkt. No. 346-2 at 5-6.  A trashed document is automatically deleted after 30 days. *Id.* at 6.  Alternatively, the user can manually delete a trashed document by selecting the document in the trash can and clicking "trash forever." *Id.* at 6-7.  An OnShape user can delete an element within a document in a single step. *Id.* at 7.

An OnShape document that is deleted cannot be recovered through the OnShape platform.  Dkt. No. 344 at 14.  The record does not indicate whether the OnShape platform can recover a deleted element.

### C. The OnShape Deletions

Wynne used OnShape in connection with his duties at 3D Systems.  Transcript of March 27, 2024 Evidentiary Hearing (hereafter "Trans."), Dkt. No. 470 at 33:22-34:12.  After leaving 3D Systems in August 2017, Wynne and Tanner used OnShape in connection with their new 3D printing company, Intrepid Automation. *Id.* at 68:18-69:24, 72:18-73:16, 162:24-164:2.

As noted above, 3D Systems served defendants Wynne, Etcheson, Chousal and Intrepid Automation with the Complaint on May 25, 2021.  Dkt. No. 346-3.  On May 25 and 26, 2021, Wynne and Tanner trashed and/or deleted 10 documents and deleted 43 elements from OnShape as reflected in the following chart:

| OnShape Document | Action Taken by Wynne and Tanner |
|---|---|
| AY_AURORA_PLUS_HALO.zip | Wynne imported the document to OnShape on July 22, 2017, while employed by 3D Systems.<br><br>Wynne trashed and deleted the document on May 26, 2021. |

| OnShape Document | Action Taken by Wynne and Tanner |
|---|---|
| shuttle_assy_rear.step | Wynne imported the document to OnShape on August 5, 2016, while employed by 3D Systems.<br><br>Wynne trashed and deleted the document on May 26, 2021. |
| SubChassisAssy3.zip | Wynne imported the document to OnShape on April 13, 2017, while employed by 3D Systems.<br><br>Wynne trashed and deleted the document on May 26, 2021. |
| A-PROTO FRAME.step | Wynne created the document on OnShape on September 13, 2017.<br><br>Wynne trashed and deleted the document on May 26, 2021. |
| JIG MEMBRANE 70 um | Tanner created the document on OnShape on November 8, 2017.<br><br>Tanner deleted 15 elements on May 26, 2021.<br><br>Tanner trashed and deleted the document on May 26, 2021. |
| BRANE FRAME MOD | Tanner created the document on OnShape on December 16, 2017.<br><br>Tanner deleted 5 elements on May 25, 2021.<br><br>Tanner trashed the document on May 25, 2021, and Wynne deleted it on May 26, 2021. |

| OnShape Document | Action Taken by Wynne and Tanner |
|---|---|
| Print Test Fixture | Tanner trashed the document on May 26, 2021. |
| _MLL15Slide_4.step | Tanner imported the document to OnShape on August 22, 2017.<br><br>Tanner deleted one element on May 25, 2021.<br><br>Tanner trashed the document on May 25, 2021, and Wynne deleted it on May 26, 2021. |
| _LWL15R71_6BS1_6TrackRail_2.step | Tanner imported the document to OnShape on August 22, 2017.<br><br>Tanner deleted one element on May 25, 2021.<br><br>Tanner trashed the document on May 25, 2021, and Wynne deleted it on May 26, 2021. |
| "DELETED" | Tanner trashed the document on May 26, 2021. |
| dino test | Tanner created the document on OnShape on August 28, 2017.<br><br>Tanner deleted 11 elements on May 25, 2021. |
| IKO_Linear_Stage | Wynne created the document on OnShape on July 28, 2017, while employed by 3D Systems.<br><br>Tanner deleted 7 elements on May 25, 2021. |

| OnShape Document | Action Taken by Wynne and Tanner |
|---|---|
| Intrepid Scrachpad | Wynne created the document on OnShape on April 15, 2017, while employed by 3D Systems.<br><br>Tanner deleted one element on May 25, 2021. |
| force_mount | Wynne created the document on OnShape on September 15, 2017.<br><br>Tanner deleted one element on May 25, 2021. |
| CHASSIS COMPONENTS – Brane Frame (2).step | Wynne created the document on OnShape on October 28, 2017.<br><br>Tanner deleted one element on May 25, 2021. |

Records produced by OnShape show that Wynne and Tanner did not delete OnShape documents or elements at any other time in 2021. Dkt. No. 346-2 at 13, ¶ 29.

At the March 27 evidentiary hearing, Wynne and Tanner each testified that they do not recall deleting any OnShape documents or elements in May 2021, and they never intended to deprive 3D Systems of relevant evidence. Trans. 28:18-25, 161:7-16.

### III.
### DISCUSSION

**A.   Federal Rule of Civil Procedure 37(e)**

    **1.   Legal standards**

The law imposes upon litigants "a duty to preserve evidence which [they] know[] or reasonably should know is relevant to" pending or reasonably anticipated litigation. *In re Napster*, *Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Spoliation is a party's breach of this duty and is sanctionable. *See Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015). Such sanctions serve to

cure the prejudice created by the spoliation to the extent possible, and to deter any future spoliation. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013).[2]

Federal Rule of Civil Procedure 37(e) governs the spoliation of electronically stored information ("ESI"). The Rule empowers the Court to sanction a spoliating party when ESI "that should have been preserved in the anticipation or conduct of litigation is lost because [the] party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery . . . ." Fed. R. Civ. P. 37(e). The Rule further provides that the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). However, where the spoliating party "acted with the intent to deprive another party of the information's use," the Court may impose harsher sanctions, including "instruct[ing] the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2).

Rule 37(e) "establishes three prerequisites to sanctions" for spoliation of ESI. *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022). First, "the ESI should have been preserved." *Id*. Second, the ESI "[was] lost through a failure to take reasonable steps to preserve it." *Id*. And third, the ESI "cannot be restored or replaced through additional discovery." *Id*. The party moving for sanctions bears the burden of proving that the ESI existed and was spoliated. *See Belew-Nyquist v. Quincy School Dist. No. 144*, No. 2:19-CV-0215-TOR, 2020 WL 6845934, at *11 (E.D. Wash. Nov. 20, 2020). "The relevant standard of proof . . . is a preponderance of the evidence." *Fast*, 340 F.R.D. at 335.

"[O]nce spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017). Moreover, "the finding of intent required by Rule 37(e)(2) can support not only an

---

[2] All citations and internal quotation marks are omitted, and emphasis is added, unless otherwise noted.

inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 736 (9th Cir. 2024). Stated otherwise, "[i]f intent is established, then prejudice is presumed." *Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 622 (N.D. Ill. 2022).

### 2. Obligation to preserve OnShape data

3D Systems served its complaint on Wynne and other defendants on May 25, 2021. Dkt. No. 346-3. Following that service, Wynne and Tanner were obligated to preserve evidence they knew or reasonably should have known was relevant to this litigation. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1067. Although the complaint was not served on Tanner until June 2, 2021, the coordinated actions between Wynne and Tanner in trashing and deleting the OnShape data on May 26, 2021 are strong circumstantial evidence that Tanner knew of the complaint before he was formally served.

Defendants dispute whether all the OnShape documents and elements that Wynne and Tanner deleted were relevant to this litigation. Although 3D Systems, as the moving party, bears the burden of proving that relevant OnShape data existed, *Belew-Nyquist*, 2020 WL 6845934, at *11, this is particularly challenging because the deletion of that data by Wynne and Tanner has rendered it unavailable and requires 3D Systems to rely on circumstantial evidence to establish relevance. In certain circumstances, this type of informational asymmetry may counsel in favor of shifting the burden of proof to the spoliating party. *See Hollis*, 603 F. Supp. 3d at 620-21 (discussing allocation of burden of proof in spoliation analysis). However, the Court does not consider whether shifting the burden of proof is appropriate here because 3D Systems has established that at least three of the deleted OnShape documents were relevant to this litigation. These three documents were all imported to OnShape by Wynne in connection to his work for 3D Systems:

| OnShape Document | Contents |
|---|---|
| AY_AURORA_PLUS_HALO.zip | This OnShape document contained CAD data for 3D Systems's Aurora projector |

| OnShape Document | Contents |
|---|---|
| (Wynne imported the document to OnShape on July 22, 2017, while employed by 3D Systems. He trashed and deleted it on May 26, 2021.) | and Halo circuit board, which are both components of the 3D Systems Figure 4 print system that is at issue in this litigation. Trans. 32:15-35:23. |
| shuttle_assy_rear.step<br><br>(Wynne imported the document to OnShape on August 5, 2016, while employed by 3D Systems. He trashed and deleted it on May 26, 2021.) | 3D Systems recovered an exact match for this document, which contains CAD data for a tray dispenser component of the Figure 4 print system referred to as a "PEZ dispenser." Trans. 48:11-53:2. |
| SubChassisAssy3.zip<br><br>(Wynne imported the document to OnShape on April 13, 2017, while employed by 3D Systems. He trashed and deleted it on May 26, 2021.) | This OnShape document contained CAD data for the Herndon 3D printer that Wynne testified he uploaded to OnShape to see if he could make it marketable by adding the Aurora projector and Halo circuit board. Trans. 39:6-44:22. |

Additionally, Tanner deleted eleven elements from the "dino test" OnShape document on May 25, 2021. The "dino test" document – which Tanner testified was the linear stage spine assembly for the Atom print system – was relevant to the allegations in the complaint that Defendants misappropriated CAD drawings from the Enso print engine, including elements relating to the spine. Trans. 162:3-163:5; Dkt. No. 1 at 16, ¶ 44.

Finally, the apparently coordinated effort by Wynne and Tanner to trash and delete OnShape documents and elements immediately after Wynne was served with 3D Systems's complaint is additional circumstantial evidence that the deleted documents and elements were relevant to this case. This is particularly so where the record shows that neither Wynne nor Tanner deleted any OnShape documents at any other point in 2021. Accordingly, 3D Systems has shown that at least certain of the deleted OnShape documents

and elements "should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e).

### 3. Failure to preserve OnShape data

3D Systems has established that Wynne and Tanner "failed to take reasonable steps to preserve" the deleted OnShape data. *Id.* Specifically, OnShape records show that Wynne and Tanner took the affirmative step of trashing ten OnShape documents and took a second affirmative step of deleting eight of those documents (apparently allowing the remaining two trashed documents to automatically delete 30 days later). Dkt. No. 346-2 at 12, ¶ 27. OnShape data further shows that Tanner took the affirmative step of deleting a total of 43 elements from nine OnShape documents. *Id.* at ¶ 28.

### 4. Inability to restore or replace OnShape data

Sanctions are appropriate only where the information "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). "A court may not sanction a party for spoliation under [Rule] 37(e) if the parties can restore or replace the lost ESI through feasible means." *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-0106-LRH-VCF, 2020 WL 9209714, at *4 (D. Nev. Sept. 21, 2020), *report and recommendation adopted*, 2021 WL 1224904 (D. Nev. Mar. 31, 2021), *on reconsideration*, 2021 WL 9333202 (D. Nev. June 9, 2021). This is because ESI "often exists in multiple locations" such that "loss from one source may . . . be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment.

Defendants contend that nine of the ten deleted OnShape documents have been replaced "through substantial documentary evidence as well as testimony." Dkt. No. 502 at 3. For example, Wynne deleted the OnShape document AY_AURORA_PLUS_HALO.zip. That document is gone and cannot be recovered, but Defendants point out that 3D Systems located AY_AURORA_PLUS_HALO.SLDASM, a Solidworks assembly file with the same name. Wynne testified that uploading a CAD file in Solidworks assembly format to OnShape requires the user to first convert the file to zip format with the same top level name (*e.g.*, to upload a Solidworks assembly file named

1  PRINTER.SLDASM to OnShape, the user must convert the file to PRINTER.zip prior to
2  uploading it).  Trans. 18:9-19:24, 25:6-12.  Defendants thus contend that the deleted
3  AY_AURORA_PLUS_HALO.zip document is the same as the recovered
4  AY_AURORA_PLUS_HALO.SLDASM file, just with a different extension.  Trans.
5  32:19-21.
6      The recovered file AY_AURORA_PLUS_HALO.SLDASM contains CAD for 3D
7  Systems's Aurora projector and Halo circuit board, which Wynne testified he uploaded to
8  OnShape to see if those components could be used with 3D Systems's Herndon printer.
9  Trans. 42:9-45:6.  However, according to Wynne, Intrepid never used the Aurora or Halo
10 CAD, and Intrepid's Atom 3D print system uses a different, commercially available
11 projector and circuit board.  Trans. 32:19-21, 33:20-25, 35:14-23.  Moreover, Defendants
12 allowed 3D Systems to inspect the CAD for Intrepid's first Atom print engine, so 3D
13 Systems could see for itself whether Defendants had misappropriated the Aurora or Halo
14 CAD for Intrepid's own use.  Trans. 29:1-13, 161:17-25.
15     Defendants thus contend the AY_AURORA_PLUS_HALO.zip document that
16 Wynne deleted from OnShape and the recovered
17 AY_AURORA_PLUS_HALO.SLDASM file are the same files with different extensions
18 and contain the same data.  But as noted above, an OnShape document is a container that
19 may contain multiple types of data accessed through tabs within the document, including
20 "any type of information related to one or more projects, such as assemblies,
21 subassemblies, parts, drawings, imported parts and any other projected related data such as
22 PDFs, images, and videos."  Dkt. No. 346-2 at 4.  As such, it cannot be determined with
23 any degree of certainty whether the recovered AY_AURORA_PLUS_HALO.SLDASM
24 file and the deleted AY_AURORA_PLUS_HALO.zip document contained precisely the
25 same data and that the spoliated OnShape document has been completely restored simply
26 because they share the same name.  Moreover, with respect to at least one document
27 (SubChassisAssy3.zip) that Wynne imported to OnShape while employed at 3D Systems,
28

OnShape records reflect that Wynne opened the document multiple times in August 2017 after he left 3D Systems. Trans. 128:2-129:2.

Because an OnShape document that functions as a container for multiple types of data is fundamentally different than a single "file" or "document" (as those terms are commonly used), the Court cannot find that the nine recovered "files" contain precisely the same data as the deleted OnShape documents, notwithstanding the similar file names. The Court concludes that 3D Systems has met its burden, for purposes of this motion, of showing that the ESI cannot be restored or replaced.

### 5. Prejudice and intent to deprive 3D Systems of information

3D Systems has established by a preponderance of the evidence that (1) relevant OnShape documents and elements existed, (2) Wynne and Tanner had a duty to preserve the documents and elements and failed to take reasonable steps to do so, and (3) the deleted OnShape documents and elements cannot be restored or replaced. The burden thus shifts to Wynne and Tanner to show their deletion of the OnShape documents and elements did not prejudice 3D Systems. *Youngevity Int'l v. Smith*, No. 3:16-CV-704-BTM-JLB, 2020 WL 7048687, at *3 (S.D. Cal. July 28, 2020) ("Although Federal Rule of Civil Procedure 37(e) does not place the burden of proving or disproving prejudice on either party, if spoliation is proven, the burden shifts to the spoliating party to prove the lost information is not prejudicial.").

#### a. Prejudice

"'Prejudice' under Rule 37(e) includes the thwarting of a party's ability to obtain the evidence it needs for its case." *Hollis*, 603 F. Supp. 3d at 623. Prejudice also exists where "the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). The record demonstrates that 3D Systems was prejudiced by the deletion of the OnShape documents and elements. As explained above, it is not possible to determine the precise contents of each OnShape document deleted by Wynne and Tanner given that an OnShape document is really a container of information. As such,

Wynne and Tanner have not demonstrated that the lost information is not prejudicial. *See Jones*, 95 F.4th at 736 ("production of some evidence does not excuse destruction of other relevant evidence"). Corrective measures are thus appropriate, but they must be "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

### b. <u>Intent to deprive</u>

Rule 37(e)(2) authorizes more severe sanctions where the spoliating party "acted with the intent to deprive another party of the information's use." Fed. R. Civ. P. 37(e)(2). "Rule 37(e) does not define 'intent,' but in context, the word is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones*, 95 F.4th at 735 (affirming dismissal sanction where plaintiff deleted relevant text messages about the case and assisted witnesses in deleting text messages). "Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Id.* "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Id.*

These relevant considerations could lead a reasonable factfinder to conclude that Wynne and Tanner deleted the OnShape documents and elements to avoid their discovery by 3D Systems. Wynne and Tanner took affirmative steps to trash and delete the documents in a seemingly coordinated manner on May 26, 2021, the day after Wynne was served with the complaint. Their conduct stands in stark contrast to the remainder of 2021, when neither Wynne nor Tanner deleted any OnShape documents or elements. Moreover, although the record does not clearly indicate how many documents Wynne and Tanner maintained on their OnShape account, a reasonable factfinder could conclude that they selectively deleted some but not all of the documents and elements in their account.

On the other hand, both Wynne and Tanner testified that, although they do not recall deleting any OnShape documents on May 26, 2021, they would not have deleted evidence to prevent its discovery by 3D Systems. Moreover, defendants presented evidence at the March 27 evidentiary hearing that certain of the deleted documents were either 3D Systems

CAD data that was not used in connection with their work at Intrepid Automation (*e.g.*, AY_AURORA_PLUS_HALO.zip) or CAD data that has no bearing on the trade secrets allegedly misappropriated in this case (*e.g.,* Print Test Fixture).  For example, shuttle_assy_rear.step – which Wynne imported to OnShape while employed by 3D Systems and deleted on May 26, 2021 – contains CAD data for a tray dispenser component of the Figure 4 print system referred to as a "PEZ dispenser." Trans. 48:11-53:2.  Wynne testified that Intrepid does not use the "PEZ dispenser" feature.  Trans. 53:19-54:2.

A second example is SubChassisAssy3.zip – which Wynne imported to OnShape while employed by 3D Systems and deleted on May 26, 2021.  Wynne testified that this OnShape document contained CAD data for 3D Systems's Herndon 3D printer that he uploaded to OnShape to see if he could make it marketable by adding the Aurora projector and Halo circuit board.  Trans. 39:6-44:22.  Wynne further testified that Intrepid has not used the Herndon printer's CAD data.  Trans. 45:23-25.

Considering all the foregoing evidence, the Court concludes that "[r]easonable minds could disagree" whether Wynne and Tanner deleted the OnShape documents and elements with intent to deprive 3D Systems of this information. *Microvention, Inc. v. Balt USA, LLC*, No. 820CV02400JLSKES, 2023 WL 7476998, at *22 (C.D. Cal. Oct. 5, 2023). As such, "the Court will leave that determination to the jury." *Hollis*, 603 F. Supp. 3d at 624.  Rule 37(e)(2)'s advisory committee notes contemplate this approach:

> If a court were to conclude that the intent finding should be made by a jury, the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation. If the jury does not make this finding, it may not infer from the loss that the information was unfavorable to the party that lost it.

Fed. R. Civ. P. 37 advisory committee notes to 2015 amendment.  That instruction is discussed below.

### 6. **Curative measures**

#### a. **Defendants at issue**

The motion seeks sanctions against all five individual defendants and Intrepid Automation. In response to the Court's inquiry at the initial motion hearing on January 11, 2024, 3D Systems represented that it was limiting its motion to sanctions against Wynne, Tanner and defendant Intrepid Automation (presumably because there was no evidence that defendants Etcheson, Mueller or Chousal spoliated evidence). Dkt. No. 435 at 97. However, 3D Systems's motion does not set forth the basis for sanctions against Intrepid Automation. The Court understands Intrepid is an entity controlled by one or more of the individual defendants, but in the absence of any evidence as to which defendants control Intrepid or legal authority justifying the imposition of sanctions against Intrepid for the actions of Wynne and Tanner, the Court concludes 3D Systems has not established its entitlement to sanctions against Intrepid. Accordingly, the curative measures described below apply to defendants Wynne and Tanner only.

#### b. **Jury instructions**

Based on the foregoing analysis, 3D Systems is entitled to relief under Rule 37(e)(1), which requires the Court to "impose only those measures that are no greater than necessary to cure the prejudice resulting from the loss of the ESI." *Hollis*, 603 F. Supp. 3d at 625. "A common curative measure is instructing the jury that it can consider the circumstances surrounding the loss of the ESI." *Id. See Youngevity Int'l*, 2020 WL 7048687, at *5 ("Here, since the Court finds spoliation and prejudice, but no intent, the parties are allowed to present evidence and argument to the jury regarding the lost text messages and Relevant Defendants' intent, and the Court will instruct the jury it may consider the evidence along with all the other evidence in making its decision.").

As discussed above, the Court concludes that the issue of intent – an essential prerequisite to imposition of sanctions under Rule 37(e)(2) – should be decided by the jury. If the jury finds that Wynne and Tanner deleted the OnShape documents and elements with intent to deprive 3D Systems of the information's use in this litigation, the appropriate

remedy under Rule 37(e)(2) is to instruct the jury it may presume the deleted information was unfavorable to Wynne and Tanner. *See* Fed. R. Civ. P. 37(e)(2)(B). The Court will provide a jury instruction that informs the jury it may consider the evidence of spoliation with all other evidence in making its decision and that, if the jury finds Wynne or Tanner acted with intent, it may presume the deleted information was unfavorable to that party. *See, e.g.*, *Hollis*, 603 F. Supp. 3d at 625-26 (example of curative jury instruction under Rule 37(e)(1) and (e)(2)).

### c. Terminating sanctions

Terminating sanctions are not warranted. The relevant factors in this analysis are "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). These factors "provide[] the district court with a way to think about what to do, not a set of conditions precedent for sanctions," because "[i]n deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth." *Id.* at 1096-97. Thus, "[w]here a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." *Id.* at 1097 (citation omitted).

The first and fourth factors weigh for and against terminating sanctions, respectively, although that is true in virtually every case. The second factor is neutral – the discovery of the spoliation and the resulting motion practice have caused the parties and the Court to expend time and resources, but the litigation has progressed in the interim and motions for summary judgment are pending. Consideration of the third and fourth factors counsels against terminating sanctions. The Court has found that 3D Systems suffered prejudice sufficient to warrant relief under Rule 37(e)(1) in the form of a jury instruction. But the alleged trade secrets at issue in this case and the defenses raised by Defendants – including their statute of limitations defense – go far beyond the CAD that Wynne and Tanner

1  deleted, and terminating sanctions based on those deletions would impede a search for the
2  truth. *Id.* at 1097. Moreover, as described above, a less drastic sanction in the form of a
3  permissive jury instruction is available here if the jury finds intent, and the Court has not
4  previously imposed sanctions on Defendants. *See Compass Bank v. Morris Cerullo World*
5  *Evangelism*, 104 F. Supp. 3d 1040, 1060 (S.D. Cal. 2015) (declining to impose terminating
6  sanctions against plaintiff even though "the risk of prejudice to Defendant is great" and
7  plaintiff had history of discovery violations because "there is an appropriate less drastic
8  sanction that can be imposed").

### d.   Attorneys' fees

Given the finding that Wynne and Tanner spoliated evidence that warrants sanctions under Rule 37(e)(1), the Court concludes that 3D Systems "is entitled to an award of reasonable attorneys' fees and costs that [it] incurred in preparing and arguing the sanctions motion only." *Porter v. City & Cnty. of San Francisco*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *5 (N.D. Cal. Sept. 5, 2018). "There is no requirement in Rule 37(e) or the Committee Notes that a court must make a finding of bad faith before imposing monetary sanctions, and district courts have imposed monetary sanctions pursuant to Rule 37(e)(1)." *Spencer v. Lunada Bay Boys*, No. CV1602129SJORAOX, 2018 WL 839862, at *1 (C.D. Cal. Feb. 12, 2018) (rejecting argument that Rule 37(e)(1) does not authorize monetary sanctions), *aff'd*, 806 Fed. App'x 564, 568 (9th Cir. 2020) (finding the district court "did not abuse its discretion by ordering the sanctions award," although the amount was in error); *Est. of Bosco by & Through Kozar v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 931 (N.D. Cal. 2022) (imposing permissive inference jury instruction against defendant under Rule 37(e)(2) and awarding plaintiff attorneys' fees and costs).

/ / /
/ / /
/ / /
/ / /
/ / /

B. **Inherent Power**

A district court may impose sanctions, including terminating sanctions, for "a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). When considering whether terminating sanctions are appropriate, the Ninth Circuit directs district courts to consider "(1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, [and] (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case . . . ." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988).

A majority of courts hold that Rule 37 "provides the exclusive source of sanctions for the loss of ESI and forecloses reliance on [the Court's] inherent authority." *Fast*, 340 F.R.D. at 335. *See also*, *e.g.*, *Gault v. United States*, No. 20-10687 PA (PVC), 2022 WL 4292340, at *6 (C.D. Cal. Aug. 23, 2022) (noting that "[t]he weight of authority holds that [t]he 2015 revision to Rule 37(e) provides the sole basis for a court to take action for the failure to preserve electronic evidence"); *Shiflett v. City of San Leandro*, No. 21-CV-07802-LB, 2024 WL 536302, at *4 (N.D. Cal. Feb. 10, 2024) ("after the 2015 amendments, courts cannot rely on their inherent authority to issue sanctions for failing to preserve electronically stored information").

The Court need not address whether Rule 37(e) precludes the Court from imposing sanctions under its inherent authority. Even if the Court could rely on its inherent authority, it would nevertheless conclude that such authority would, at most, counsel in favor of the sanctions imposed under Rule 37(e) as described above.

### IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** 3D Systems's motion for sanctions as follows:

   1. The Court will provide a jury instruction under Rule 37(e) as described above.

2.   3D Systems shall recover its attorneys' fees and costs incurred as a result of this sanctions motion.  By not later than 7 days from the date of this Order, 3D Systems shall submit the amount of fees and costs it seeks to recover with appropriate documentation.  Wynne and Tanner may respond to the fee request no later than 7 days thereafter.

**IT IS SO ORDERED.**

Dated:  August 21, 2024

_____
Hon. David D. Leshner
United States Magistrate Judge