HUNTON ANDREWS KURTH LLP
EMILY BURKHARDT VICENTE (SBN 263990)
ebvicente@HuntonAK.com
ROLAND M. JUAREZ (SBN 160793)
rjuarez@HuntonAK.com
D. ANDREW QUIGLEY (SBN 280986)
aquigley@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: 213 • 532 • 2000
Facsimile: 213 • 532 • 2020

Attorneys for Plaintiff/Counter-Defendant,
3D SYSTEMS INC. and Third Party Defendant
EVAN KUESTER

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

3D SYSTEMS, INC., a California Corporation;

Plaintiff,

v.

BEN WYNNE, an individual; CHRIS TANNER, an individual; JAMIE ETCHESON, an individual; ROBERT MUELLER, an individual; IVAN CHOUSAL, an individual; INTREPID AUTOMATION, a California Corporation; and DOES 1 through 20, inclusive,

Defendants,

INTREPID AUTOMATION,

Counter-Claimant,

v.

3D SYSTEMS, and DOES 1-50, inclusive,

Case No.: 3:21-cv-01141-AGS-DDL

**PLAINTIFF 3D SYSTEMS, INC.'S PETITION FOR ATTORNEY'S FEES AND COSTS AGAINST DEFENDANTS CHRIS TANNER AND BEN WYNNE**

INTREPID AUTOMATION,

Third Party Claimant,

v.

EVAN KEUSTER, and ROES 1-50, inclusive,

Third Party Defendants.

2

3D SYSTEMS'S PETITION FOR ATTORNEY'S FEES AND COSTS AGAINST BEN WYNNE AND CHRIS TANNER

3:21-cv-01141-AGS-DDL

# TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1

II. THE COURT SHOULD AWARD 3DS $432,269.07 IN ATTORNEY'S FEES AND COSTS INCURRED AS A RESULT OF ITS MOTION ........ 2

A. The Court Has Already Determined That 3DS Is Entitled To Its Fees And Costs Related To Its Motion for Sanctions. ........ 2

B. 3DS's Requested Amount Of Fees And Costs Is Reasonable. ........ 2

1. Hunton's Hourly Rates Are Reasonable. ........ 2

2. Hunton's Requested Hours Are Reasonable. ........ 9

a. Deposition of OnShape ........ 10

b. Research, Drafting, and Revising Motion ........ 11

c. Researching, Drafting, and Revising Reply Brief ........ 13

d. Preparing for and Participating in January 11, 2024 Motion Hearing ........ 13

e. Preparing for and Participating in the Evidentiary Hearing ........ 15

f. Post-Evidentiary Hearing Briefing ........ 16

g. Fee Petition ........ 18

h. Costs ........ 19

III. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batchelder v. Geary*,
No. C-71-02017, 2007 WL 2427989 (N.D. Cal. Aug. 22, 2007)........................18

*Cabrales v. BAE Sys. San Diego Ship Repair, Inc.*,
No. 21-CV-02122-AJB-DDL, 2023 WL 5985517 (S.D. Cal. Sept. 13, 2023) ..........4

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) ..........3

*Carl Zeiss Vision Int'l GMBH v. Signet Armorlite, Inc.*,
No. 07-cv-0894, 2010 WL 1687788 (S.D. Cal. Apr. 26, 2010)..........9

*Carl Zeiss Vision Int'l GmbH v. Signet Armorlite, Inc.*,
No. 07CV0894 DMS (POR), 2009 WL 10668700 (S.D. Cal. Sept. 16, 2009) ..........9

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*,
No. 06-cv-03359, 2009 WL 3617786 (N.D. Cal. Oct. 29, 2009)..........9

*Donofrio v. IKEA US Retail, LLC*,
No. CV 18-599, 2024 WL 3511614 (E.D. Pa. July 23, 2024) ..........9

*Excel Fortress Ltd. v. Wilhelm*,
No. 17-cv-04297, 2019 WL 5294837 (D. Ariz. Oct. 18, 2019)..........19

*Flowrider Surf, Ltd. v. Pacific Surf Designs, Inc.*,
No. 15-cv-1879, 2017 WL 2212029 (S.D. Cal. May 18, 2017)..........4

*Gates v. Rowland*,
39 F.3d 1439 (9th Cir. 1994) ..........10

*Grant v. Martinez*,
973 F.2d 96 (2d Cir. 1992) ..........2

*Herring Networks, Inc. v. Maddow*,
No. 3:19-CV-1713-BAS-AHG, 2021 WL 409724 (S.D. Cal. Feb. 5, 2021) ....................4

*Hiken v. Dep't of Defense*,
836 F.3d 1037 (9th Cir. 2016) ....................3

*Kikkert v. Berryhill*,
No. 14cv1725-MMA-JMA, 2018 WL 3617268 (S.D. Cal. July 30, 2018) ....................4

*League of Residential Neighborhood Advocates v. City of Los Angeles*,
633 F. Supp. 2d 1119 (C.D. Cal. 2009) ....................2

*Lehman Bros. Holdings, Inc. v. PMC Bancorp*,
No. LA CV 10:07207-JAK, 2017 WL 11634506 (C.D. Cal. Oct. 11, 2017) ....................5

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
No. 15-CV-595, 2016 WL 1573319 (S.D. Cal. Apr. 18, 2016) ....................12, 18, 19

*Orthopaedic Hosp. v. Encore Med., L.P.*,
No. 3:19-CV-00970-JLS-AHG, 2021 WL 5449041, at *14 (S.D. Cal. Nov. 19, 2021) ....................4

*Sali v. Corona Reg'l Med. Ctr.*,
884 F.3d 1218 (9th Cir. 2018) ....................19

*San Diego Comic Convention v. Dan Farr Prods.*,
No. 14-CV-1865-AJB-JMA, 2019 WL 1599188 (S.D. Cal. Apr. 15, 2019) ....................4

*Scott v. Blackstone Consulting, Inc.*,
No. 21-CV-1470-MMA-KSC, 2024 WL 271439 (S.D. Cal. Jan. 24, 2024) ....................4

*Spencer v. Lunada Bay Boys*,
806 F. App'x 564 (9th Cir. 2020) ....................9

*Sure Safe Indus. Inc. v. C & R Pier Mfg.*,
152 F.R.D. 625 (S.D. Cal. 1993) ....................20

*Verbick v. Movement Tech. Co., Inc.*, No. 20-CV-611 TWR (DEB), 2023 WL 3801950 (S.D. Cal. June 2, 2023) ....................5

*Youngevity Int'l v. Smith*, No. 3:16-CV-704-BTM-JLB, 2021 WL 2559456 (S.D. Cal. May 19, 2021) ....................2, 3, 11, 19

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-CV-0541-GPC WVG, 2014 WL 6851612 (S.D. Cal. Dec. 3, 2014) ....................4

**Other Authorities**

Federal Rules of Civil Procedure Rule 37(e)(1) ....................1, 2

iv

3D SYSTEMS'S PETITION FOR ATTORNEY'S FEES AND COSTS AGAINST BEN WYNNE AND CHRIS TANNER

3:21-cv-01141-AGS-DDL

## I. INTRODUCTION

Pursuant to the Court's Order dated August 21, 2024 (ECF 607), Plaintiff 3D Systems, Inc. ("3DS" or "Plaintiff") hereby submits its Petition for Attorney's Fees and Costs incurred as a result of the spoliation of information from the OnShape cloud-based platform by Defendants Ben Wynne ("Wynne") and Chris Tanner ("Tanner"). The Court found that Wynne and Tanner had a duty to preserve OnShape documents and elements but failed to take reasonable steps to do so, the deleted OnShape documents and elements cannot be restored or replaced, and 3DS was prejudiced by the deletion of the OnShape documents and elements. ECF 607 at 13. As a sanction pursuant to Rule 37(e)(1) of the Federal Rules of Civil Procedure, the Court ordered that 3DS "shall recover its attorneys' fees and costs incurred as a result of this sanctions motion." *Id.* at 20.

3DS respectfully asks the Court to award it $432,269.07 in attorney's fees and costs incurred as a result of its Motion for Sanctions ("Motion"). This amount includes fees and costs that 3DS incurred (1) taking the deposition of third-party PTC, Inc. ("OnShape"), which 3DS noticed because it suspected spoliation by Wynne and Tanner, needed OnShape's testimony to verify 3DS's reading of the spreadsheets produced by PTC, Inc. and the deposition testimony provided the foundation for 3DS's Motion; (2) preparing 3DS's Motion and Reply Brief and related filings; (3) preparing for and attending the January 11, 2024 hearing on 3DS's Motion; (4) preparing for and attending the March 27, 2024 evidentiary hearing on the Motion; (5) preparing 3DS's post-evidentiary hearing briefing; and (6) preparing this Petition. 3DS has not included fees and costs for the events leading up to the OnShape deposition (including the subpoenas to PTC, Inc. and review of the information produced by PTC, Inc.) or the numerous meet and confer discussions with Defendants about the OnShape data leading up to the OnShape deposition. As explained below, 3DS's counsel's rates, the hours spent and costs incurred are reasonable. As set forth more fully below, the Court should award 3DS the full amount of $432,269.07 in attorney's fees and costs requested.

## II.   THE COURT SHOULD AWARD 3DS $432,269.07 IN ATTORNEY'S FEES AND COSTS INCURRED AS A RESULT OF ITS MOTION

### A.   The Court Has Already Determined That 3DS Is Entitled To Its Fees And Costs Related To Its Motion for Sanctions.

In light of its finding in the August 21, 2023 Order that "Wynne and Tanner spoliated evidence that warrants sanctions under Rule 37(e)(1)," the Court has already determined that 3DS "*shall* recover its attorneys' fees and costs incurred as a result of this sanctions motion." ECF 607 at 18, 20 (emphasis added). The Court stated that 3DS is not required to further show bad faith before a monetary sanction can be awarded. *Id.* at 18.

### B.   3DS's Requested Amount Of Fees And Costs Is Reasonable.

In *Youngevity Int'l v. Smith*, No. 3:16-CV-704-BTM-JLB, 2021 WL 2559456, at *1 (S.D. Cal. May 19, 2021), this Court recognized that the "Ninth Circuit utilizes the 'lodestar' method for assessing reasonable attorney's fees." To determine an appropriate fee award, the court multiplies "the number of hours reasonably spent on the litigation by a reasonable hourly rate." *Id.* The "fee applicant bears the initial burden of substantiating the amount of hours worked and the rate claimed," and should also provide to the court documentary evidence regarding "the number of hours spent and how it determined the hourly rate(s) requested." *Id.* at *2.  In assessing the reasonableness of counsel's hours, courts should avoid engaging in an "ex post facto determination of whether attorney hours were necessary to the relief obtained." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id.*; *League of Residential Neighborhood Advocates v. City of Los Angeles*, 633 F. Supp. 2d 1119, 1133 (C.D. Cal. 2009).

#### 1.   Hunton's Hourly Rates Are Reasonable.

To determine whether the hourly rates requested are reasonable, courts analyze the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d

973, 979 (9th Cir. 2008). Here, "the relevant community is the Southern District of California because it is 'the forum in which the district court sits.'" *Youngevity*, 2021 WL 2559456, at *1. Fee applicants can show that their rates are reasonable through attorney declarations and rate determinations in other cases. *Hiken v. Dep't of Defense*, 836 F.3d 1037, 1044 (9th Cir. 2016).

The current hourly rates of the attorneys from Hunton Andrews Kurth LLP ("Hunton") who billed time related to 3DS's Motion for Sanctions are as follows:[1]

| Timekeeper | Position | Law School Graduation Year | Hourly Rate For This Matter |
|---|---|---|---|
| Roland M. Juarez | Partner | 1992 | $830 |
| Emily Burkhardt Vicente | Partner | 1999 | $830 |
| D. Andrew Quigley | Counsel | 2011 | $685 |
| Richard Cortez. Jr. | Associate | 1998 | $505 |
| Michael A. Pearlson | Associate | 2019 | $475 |
| Jesse D. Borja | Associate | 2020 | $475 |
| Brian Moon | Paralegal | N/A[2] | $315 |

The rates charged by Hunton in the representation of 3DS are discounted off of each lawyer's standard rates, are commensurate with each attorney's seniority and experience and are well within the range of the rates charged by similarly qualified and experienced attorneys in other large firms in Southern California, including San Diego. Declaration of Emily Burkhardt Vicente ("Vicente Decl.") ¶ 4. As an AmLaw 100 firm, Hunton's rates are competitive with the market rates charged by comparable firms. *Id.*

For instance, in another employment matter, Magistrate Judge Leshner approved

[1] Because the work related to the Motion stretched over seven months, the rates for some of the attorneys changed during that period. The fees requested are calculated at the actual rate and amount 3DS incurred for the work performed, as shown in the exhibits to the Vicente Declaration. Vicente Decl. ¶ 4.

[2] Mr. Moon has been working as a paralegal for seven years. Vicente Decl. ¶ 12.

$795 an hour as a reasonable rate for a partner at an AmLaw 100 firm (DLA Piper) that is a comparator of Hunton. *See Cabrales v. BAE Sys. San Diego Ship Repair, Inc.*, No. 21-CV-02122-AJB-DDL, 2023 WL 5985517, at *4 (S.D. Cal. Sept. 13, 2023) ("To support these rates, BAE first notes Magistrate Judge Leshner has already found that the rate of $795/hour is reasonable for counsel in this matter."); *see* Order Imposing Sanctions for Failure to Appear at Deposition in *Cabrales*, No. 21-CV-02122-AJB-DDL (May 17, 2023) (ECF 80) (attached as Exhibit 10 to the Vicente Declaration). Other cases have approved similar rates from lawyers at multi-state, national law firms as those sought by Hunton. *See Herring Networks, Inc. v. Maddow*, No. 3:19-CV-1713-BAS-AHG, 2021 WL 409724, at *5, *7 (S.D. Cal. Feb. 5, 2021) (2021 case approving $1,150 per hour rate and $1,050 per hour rate for partners at Gibson, Dunn & Crutcher LLP with over 30 years of legal experience, a rate of $720 per hour for a senior associate with 10 years of legal experience, and a rate of $265 per hour for a paralegal with over 20 years of experience); *Scott v. Blackstone Consulting, Inc.*, No. 21-CV-1470-MMA-KSC, 2024 WL 271439, at *10 (S.D. Cal. Jan. 24, 2024) (a 2024 decision approving "hourly rates ranging from $500 to $925" as reasonable in wage and hour case); *Orthopaedic Hosp. v. Encore Med., L.P.*, No. 3:19-CV-00970-JLS-AHG, 2021 WL 5449041, at *14 (S.D. Cal. Nov. 19, 2021) (2021 decision approving a reduced average hourly rate of $709.63 for attorneys from Quinn Emanuel in granting a motion for sanctions under Rule 37); *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-CV-1865-AJB-JMA, 2019 WL 1599188, at *18 (S.D. Cal. Apr. 15, 2019) (2019 decision approving hourly rates as high as $795 for partners); *Kikkert v. Berryhill*, No. 14cv1725-MMA-JMA, 2018 WL 3617268, at *2 n.1 (S.D. Cal. July 30, 2018) (2018 decision finding hourly rate of $943 reasonable in social security appeal); *Flowrider Surf, Ltd. v. Pacific Surf Designs, Inc.*, No. 15-cv-1879, 2017 WL 2212029, at *3 (S.D. Cal. May 18, 2017) (2017 decision finding $750 is a reasonable hourly rate for partner with 25 years of experience); *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-CV-0541-GPC WVG, 2014 WL 6851612, at *5 (S.D. Cal. Dec. 3, 2014) (2014 decision finding $895 per hour to be a reasonable rate for lead counsel and $725 per hour a reasonable rate for

experienced attorneys, who were not partners, at a multi-state, national law firm).[3]

Furthermore, the Laffey Matrix, a compilation of data prepared by the Civil Division of the United States Attorney's Office for the District of Columbia that is designed to quantify reasonable hourly rates for attorneys and legal assistants, is often used by both California state and federal courts to determine reasonable hourly rates. Courts in the Southern District "have relied on this data in determining what constitutes an hourly rate." *Verbick v. Movement Tech. Co., Inc.*, No. 20-CV-611 TWR (DEB), 2023 WL 3801950, at *8 (S.D. Cal. June 2, 2023); *see also Lehman Bros. Holdings, Inc. v. PMC Bancorp*, No. LA CV 10:07207-JAK (PJWx), 2017 WL 11634506, at *7 (C.D. Cal. Oct. 11, 2017). According to the Laffey Matrix, from June 2023 to May 2024, the reasonable hourly rate for attorneys with over 20 years experience (like Ms. Vicente and Mr. Juarez) is $1,057, the reasonable hourly rate for attorneys with 11 to 19 years experience (like Mr. Quigley and Mr. Cortez) is $878, the reasonable hourly rate for attorneys with 4 to 7 years experience (like Mr. Borja and Mr. Pearlson) is $538, and the reasonable rate for attorneys with one to three years of experience is $437. The rates of each of Hunton's lawyers is well within the range of reasonable rates set forth in the Laffey Matrix and those found reasonable in other cases.

Roland M. Juarez is a partner at Hunton Andrews Kurth LLP, an American Lawyer 100 firm. He graduated from Columbia Law School in 1992 and has been practicing for 32 years. His experience includes class action and collective actions, PAGA, non-compete, non-solicitation and employee raiding cases, trade secret cases, discrimination, harassment, disability, and wage and hour cases. Mr. Juarez was recently recognized by the Los Angeles Business Journal (LABJ) as a Leader of Influence: Labor & Employment Attorney. He has been recognized on numerous lists for litigation and labor and employment by the Daily Journal, LABJ and The Los Angeles Times, as well as being

---

[3] Many of these cited cases are several years old, yet still approved rates commensurate with those charged by Hunton in this matter. Rates at law firms have risen since the time many of these cases were decided. Vicente Decl. ¶ 4.

ranked by legal directories including Benchmark Litigation and Legal 500. Mr. Juarez is intimately familiar with the relevant facts and legal issues in this case, having served as co-lead counsel since the inception of this matter and arguing the instant motion at the January 11 hearing before this Court. Vicente Decl. ¶ 6. Mr. Juarez's work related to 3DS's Motion included legal analysis of the spoliation issues, revising the Motion and Reply, reviewing and analyzing the opposing papers, arguing the motion at the January 11, 2024 Motion hearing, substantively participating in the March 27, 2024 evidentiary hearing, and revising the post-hearing briefing. *Id.* at ¶ 6. His current hourly billing rate for this matter is $830. *Id*. ¶ 3.

Emily Burkhardt Vicente is a partner and co-head of the national labor and employment practice at Hunton. She graduated from the University of North Carolina Chapel Hill School of Law in 1999, with honors, *Order of the Coif and Order of the Barristers,* and has been practicing for 25 years. Ms. Vicente is an accomplished trial lawyer who has defended some of the largest Fortune 100 companies in high-stakes employment and wage-hour litigation, is experienced in taking hybrid class and collective action cases to jury trial, and has worked on numerous complex trade secrets cases like the instant matter. Ms. Vicente is ranked by Chambers USA and was recently honored by being included on the LABJ's 2023 Women of Influence: Attorneys list. She has been recognized on numerous lists for litigation and labor and employment by the Daily Journal, LA Business Journal, The National Law Review and The Los Angeles Times, as well as being ranked by legal directories including Benchmark Litigation, Legal 500 and Lawdragon 500. Ms. Vicente also is a Fellow of the American Bar Foundation and a member of the American Employment Law Council, both invite-only organizations. Ms. Vicente is intimately familiar with the relevant facts and legal issues in this case, having served as co-lead counsel since the inception of this matter and having been intimately involved with the issues raised in the Motion. Vicente Decl. ¶ 7. Ms. Vicente's work related to 3DS's Motion included legal analysis of the spoliation issues, revising the Motion and Reply, reviewing and analyzing the opposing papers, participating in the March 27, 2024

evidentiary hearing, and revising the post-hearing briefing. *Id.* at ¶ 7. Her current hourly billing rate for this matter is $830. *Id.* ¶ 3.

D. Andrew Quigley is Counsel at Hunton.  He graduated from the University of Southern California Gould School of Law in 2011, where he was Editor in Chief, Southern California Review of Law and Social Justice, and has been practicing for 13 years.  He has experience in all aspects of state and federal court employment litigation involving contract disputes, trade secrets, and other employment matters and has handled a number of complex misappropriation of trade secrets cases.  Mr. Quigley recently was named "One to Watch in Labor and Employment Law – Management" by The Best Lawyers in America.  Mr. Quigley is intimately familiar with the relevant facts and legal issues in this case, having served as counsel for 3DS since the inception of this case. *Id.* at ¶ 8. Mr. Quigley's work related to 3DS's Motion included legal research and analysis, deposing third-party OnShape, revising the Motion and Reply, reviewing and analyzing the opposing papers, participating in the January 11, 2024 Motion hearing and March 27, 2024 evidentiary hearing, and drafting the post-hearing briefing. *Id.* at ¶ 8. His current hourly billing rate for this matter is $685.00.  *Id.* ¶ 3.

Richard Cortez, Jr. is an attorney with Hunton.  He graduated from SMU School of Law in 1998, *cum laude* and *Order of the Coif*, and where he served as Comment Editor, of the SMU Law Review Association.  He has experience in all aspects of state and federal court employment litigation involving contract disputes, trade secrets, and other employment matters.  Mr. Cortez regularly supports Hunton's California team on trade secret litigation and has extensive experience in these types of matters.  His current hourly billing rate for this matter is $505. Vicente Decl. ¶ 3.  Mr. Cortez is intimately familiar with the relevant facts and legal issues in this case, having been involved in this matter since its inception. *Id.* at ¶ 9. Throughout this case, Mr. Cortez has provided extensive support with research and motion drafting, as well as preparation for depositions and hearings.  *Id.* ¶ 9.  Mr. Cortez's work related to 3DS's Motion included legal research and analysis, drafting and

revising the sanctions Reply brief, and reviewing and analyzing the opposing papers. *Id.* at ¶ 9.

Michael Pearlson is an associate with Hunton and graduated from the University of California, Berkeley, School of Law in 2019. Mr. Pearlson has experience in all aspects of state and federal court employment litigation involving contract disputes, trade secrets, and other employment matters.  His current hourly billing rate for this matter is $475.  *Id.* ¶ 3. Mr. Pearlson is intimately familiar with the relevant facts and legal issues related to the Motion. *Id.* at ¶ 10. Mr. Pearlson's work related to 3DS's Motion included legal research and analysis, drafting the sanctions Motion, as well as assisting with research and legal arguments in preparation for the evidentiary hearing. *Id.* at ¶ 10.

Jesse D. Borja is an associate with Hunton and graduated from Harvard Law School in 2020. Mr. Borja has experience in all aspects of state and federal court employment litigation involving contract disputes, trade secrets, and other employment matters.  His current hourly billing rate for this matter is $475. Vicente Decl. ¶ 3. Mr. Borja is intimately familiar with the relevant facts and legal issues related to the sanctions motion and the instant litigation generally, having worked on the matter since nearly its inception. *Id.* at ¶ 11.  Throughout the litigation, Mr. Borja has been primarily responsible for reviewing and being familiar with the thousands of documents produced in this case, as well as assisting with deposition and hearing preparation, and motion drafting.  *Id.* ¶ 11.  Mr. Borja's work related to 3DS's Motion included developing the documentary evidence in support of the sanctions motion, and assisting with the extensive document preparation for the evidentiary hearing. *Id.* at ¶ 11.

Brian Moon is a paralegal with Hunton who has been working as a paralegal for approximately seven years. Prior to joining Hunton in 2023, Mr. Moon was an employment and labor paralegal at Ogletree Deakins and prior to that he was a paralegal at Wilson Elser. Vicente Decl. ¶ 12.  Mr. Moon's work related to 3DS's Motion included coordinating the evidentiary submissions for the Motion and Reply and preparing the exhibits and evidence used at the evidentiary hearing, as well as the materials used to prepare Mr. Turner for his

testimony at the hearing. *Id.* at ¶ 12. Mr. Moon's current hourly rate for this matter is $315. *Id.* ¶ 3.

**2. Hunton's Requested Hours Are Reasonable.**

3DS seeks to recover $432,269.07 for 588.4 hours incurred in relation to its Motion. The amount sought by 3DS is an appropriate sanction against a party that deleted 10 documents and 43 elements from OnShape within 24 hours of being served with this lawsuit causing prejudice to 3DS (ECF 607 at 4). *See, e.g.*, *Carl Zeiss Vision Int'l GMBH v. Signet Armorlite, Inc.*, No. 07-cv-0894, 2010 WL 1687788, at *2 (S.D. Cal. Apr. 26, 2010) (sanctioning plaintiffs more than $243,000 for, inter alia, spoliation of evidence)[4]; *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. 06-cv-03359, 2009 WL 3617786, at *4 (N.D. Cal. Oct. 29, 2009) (sanctioning plaintiffs more than $257,000 for spoliation of evidence, and finding that 901.5 hours spent "developing the record for spoliation" was reasonable and sufficiently supported for lodestar calculation). *See also Spencer v. Lunada Bay Boys*, 806 F. App'x 564, 568 (9th Cir. 2020) (affirming nearly $58,000 sanction against a defendant who spoliated four text messages); *Donofrio v. IKEA US Retail, LLC*, No. CV 18-599, 2024 WL 3511614, at *5 (E.D. Pa. July 23, 2024) (court awarded plaintiffs $566,296.89 in attorney's fees as a sanction for defendant's spoliation of evidence, using $771.75 as a reasonable hourly rate for Philadelphia partners with 25+ years of experience, and finding 674.9 hours worked by partners at that rate to be reasonable).

3DS "bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994). 3DS has met its burden by submitting the relevant billing entries. *Id.* The hours incurred for each phase of 3DS's Motion process are

[4] In this 2009 case, the court relied on defendant's counsel's hourly rates from a prior sanctions award in the case (*id.* at *1), which ranged from $445-$495 and $315-$350 per hour for the partners, and between $155 and $265 per hour for associates. *See Carl Zeiss Vision Int'l GmbH v. Signet Armorlite, Inc.*, No. 07CV0894 DMS (POR), 2009 WL 10668700, at *3 (S.D. Cal. Sept. 16, 2009). At today's reasonable rates, the award would likely be roughly double.

summarized below, set forth in more detail in the exhibits to the Declaration of Emily Burkhardt Vicente filed herewith, and are based on contemporaneous records for each timekeeper.[5] Vicente Decl. ¶ 4. The figures presented represents an accurate accounting of time actually expended by Hunton related to 3DS's Motion. *Id.* These hours were reasonably expended in connection with 3DS's Motion and should be granted in full.

a. Deposition of OnShape

After serving a subpoena on PTC, Inc. (OnShape), PTC produced Wynne's and Tanner's OnShape activity log from September 2, 2017 to May 24, 2023. Vicente Decl. ¶ 14. Upon reviewing these logs, 3DS's counsel believed they showed that Wynne and Tanner had spoliated evidence by deleting files from OnShape within 24 hours of Wynne and Intrepid being served with this lawsuit. To confirm its suspicions, 3DS took the 30(b)(6) deposition of PTC on September 7, 2023 and, through this deposition, confirmed that Wynne and Tanner intentionally "trashed" and/or deleted 10 documents and 43 elements from the OnShape CAD platform within 24 hours of this lawsuit being served. Vicente Decl. ¶ 14. 3DS would not have taken this deposition had it not needed to do so to establish Wynne and Tanner's misconduct and spoliation of evidence. *Id.* ¶ 14. This is evidenced by the fact that 3DS did not seek to depose PTC/OnShape after it received the response to its first subpoena from PTC/OnShape, and only sought to depose PTC/OnShape after reviewing the logs produced in response to 3DS's second subpoena to PTC/OnShape, which is the production that revealed Wynne's and Tanner's spoliation. Vicente Decl. ¶ 14.

---

[5] Given that the invoices sent by Hunton to 3DS contain privileged/work product information, 3DS has extracted the entries relevant to the Motion into a spreadsheet for submission with this Motion. If the Court wishes to review the actual invoices, 3DS requests to be permitted to submit those invoices (preferably with irrelevant entries redacted) for in camera review by the Court only. By submitting the text of its counsel's time entries, 3DS expressly does not waive attorney-client privilege over its invoices or any other time entries and submits these entries solely to comply with the Court's Order to support its request for fees and costs. Where the entries would reveal legal strategy, they have been redacted.

Throughout this case, Mr. Quigley has spent considerable time becoming familiar with the OnShape cloud-based platform and with reviewing information produced from PTC, Inc. related to the OnShape platform. Because of his familiarity with these issues, Mr. Quigley was the most qualified of 3DS's attorneys to take the deposition of PTC Inc., the provider of the OnShape platform. Vicente Decl. ¶ 15.

In preparing for and taking this deposition, Mr. Quigley expended 12.4 hours for a total of $7,750.00. Given the potential importance of the deposition, as lead counsel, Ms. Vicente expended 3.4 hours ($2,822.00), assisting Mr. Quigley with preparation for and taking the deposition.[6] *Id.* ¶ 16. 3DS therefore seeks to recover $10,572.00 in attorney's fees related to this deposition.[7] All entries for which 3DS seeks to recover fees are included within the attached Exhibit 2 and summarized in the attached Vicente Declaration at Paragraphs 14-18. Given that the testimony of PTC Inc regarding Wynne's and Tanner's spoliation of evidence formed the foundation for 3DS's Motion, all of this work resulted directly from Wynne's and Tanner's spoliation of evidence and was necessary to prevail on Plaintiff's Motion. *Id.* ¶ 17. The fees Plaintiff incurred are reasonable both in term of hours worked and the applicable hourly rates. *See e.g., Youngevity Int'l v. Smith*, 2021 WL 2559456, at *3 (finding 37.9 hours preparing for and taking deposition to be reasonable and awarding fees associated with that time as sanction). Accordingly, the Court should award Plaintiff $10,572.00 in attorneys' fees, without reduction, for this deposition.

b. <u>Research, Drafting, and Revising Motion</u>

3DS's Motion was factually intensive, involved highly technical subject matter, and required 3DS to address a variety of excuses offered by Wynne and Tanner regarding whether the OnShape documents were deleted, whether they were relevant, whether they

---

[6] Throughout this case, Defendants also have had multiple lawyers attend important depositions. For example, two to three of Defendants' lawyers attended the 30(b)(6) deposition of 3DS and Scott Turner. Vicente Decl. ¶ 16.

[7] 3DS has not sought to recover the time spent reviewing PTC's production of the OnShape spreadsheets or the numerous meet and confer discussions with Defendants' counsel regarding OnShape-related issues. Vicente Decl. ¶ 18.

could be replaced, and whether 3DS was prejudiced. 3DS also had to analyze several new documents produced by Defendants immediately before Plaintiff filed its Motion and adjust its filing to account for these newly produced documents, which Defendants claimed (erroneously) either were the missing documents or were sufficient to replace the missing documents. Vicente Decl. ¶ 19. Given the complex issues, the Motion was substantively dense and required 3DS's counsel to analyze a considerable number of cases to determine the appropriate standard, how each Rule 37 factor applied to the present circumstances and what type of Rule 37 sanctions would be appropriately requested. Vicente Decl. ¶ 20. Given that 3DS moved for the serious relief of terminating sanctions, 3DS's counsel worked diligently to prepare a well-reasoned (and ultimately successful) motion. *Id.* The Motion included two supporting declarations and 41 exhibits, a number of which were filed under seal and required preparation of a separate motion. *Id.* Mr. Pearlson, who is a junior associate with a lower billing rate, researched and drafted the Motion, spending 17.8 hours for a total of $7,120.00 in attorneys' fees. *Id.* More senior attorneys efficiently revised the Motion, spending 72.3 hours for a total of $52,444.50 in attorneys' fees. *Id.* The input of Mr. Quigley was essential to the Motion because of his familiarity with the OnShape platform and the deposition of PTC, Inc. Mr. Juarez and Ms. Vicente's input also was necessary given the serious relief sought through the Motion and their involvement in these issues throughout this case.[8] Vicente Decl. ¶ 20.

All of this work resulted directly from Wynne and Tanner's spoliation of evidence and was necessary to prevail on Plaintiff's Motion. *Id.* ¶ 21. The fees Plaintiff incurred are reasonable both in term of hours worked and the applicable hourly rates. All entries for which 3DS seeks to recover fees are included within the attached Exhibit 3 and summarized in the attached Vicente Declaration at Paragraphs 19-21. Accordingly, the Court should

---

[8] For comparison, when Defendants filed a motion to compel and for sanctions against 3DS, Defendants sought to recover for over 70 hours of time for the work of four lawyers (3 partners and a counsel) leading up to and preparing Defendants' opening motion. *See* ECF 462 at ¶ 12-13, 17-18.

award Plaintiff $60,090.50 in attorneys' fees, without reduction, for the preparation of the Motion, its exhibits and accompanying motion to seal.

c. Researching, Drafting, and Revising Reply Brief

3DS carefully analyzed Defendants' opposition brief, which included three supporting declarations and 29 exhibits, and thoroughly responded to Defendants' arguments in its Reply brief. Vicente Decl. ¶ 22. Defendants' opposition necessitated further research by 3DS to assess and distinguish the case law cited by Defendants. Mr. Cortez, an associate attorney with a lower billing rate, researched and drafted the Reply spending 20.2 hours for a total of $9,090.00 in attorneys' fees. *Id.* ¶ 22. More senior attorneys efficiently revised the Reply, spending 20.4 hours for a total of $13,200.50 in attorneys' fees. *Id.* ¶ 22 The input of Mr. Quigley was essential to the Motion because of his familiarity with the OnShape issues and the deposition of PTC, Inc., as well as his review of additional documents produced by Defendants and the responses necessary in light of those documents in the briefing. Mr. Juarez's and Ms. Vicente's input also was necessary given the serious relief sought through the Motion and their involvement in these issues throughout this case. Vicente Decl. ¶ 22.

All of this work resulted directly from Wynne's and Tanner's spoliation of evidence and was necessary to prevail on Plaintiff's Motion. *Id*. ¶ 23. The fees Plaintiff incurred are reasonable both in term of hours worked and the applicable hourly rates. All entries for which 3DS seeks to recover fees are included within the attached Exhibit 4 and summarized in the attached Vicente Declaration at Paragraphs 22-23. Accordingly, the Court should award Plaintiff $24,128.00 in attorneys' fees, without reduction, for the preparation of the Reply, its exhibits and accompanying motion to seal.

d. Preparing for and Participating in January 11, 2024 Motion Hearing

On January 11, 2024, the Court held a hearing on 3DS's Motion, among other motions. ECF 431. According to the hearing transcript, the hearing went from 2:05 p.m. to 5:20 p.m. (a total of 3 hours and 15 minutes). ECF 435. While approximately one-third

of that time was spent on 3DS's Motion for Sanctions, all counsel had to appear for the full hearing time given that counsel did not know at what point each motion would be heard and 3DS's Motion for Sanctions ultimately was heard last. Vicente Decl. ¶ 24 Given the complexity of the Motion, and the various technical issues involving the OnShape platform, Mr. Juarez argued the Motion but required significant assistance from Mr. Quigley on the technical issues. *Id.* Both Mr. Juarez and Mr. Quigley had interacted with Defendants' counsel at various points regarding the spoliation issues, were involved in drafting the motion papers, and it was critical for both attorneys to be present at the evidentiary hearing given the factual disputes at the hearing concerning Wynne's and Tanner's spoliation of evidence and counsel's interactions as to these issues. Mr. Borja provided support with documents to assist with preparation for the hearing, given his extensive familiarity with the documents produced by both sides in this case, and Mr. Pearlson provided research support to assist Mr. Juarez with preparation for the hearing given Mr. Pearlson researched and drafted the original motion. At that hearing, the Court ordered the parties to attend an evidentiary hearing on the Motion. ECF 431. In preparing for and attending this January hearing on the Motion, Mr. Juarez spent 22.6 hours and Mr. Quigley spent 8.1 hours.[9] *Id.* 3DS therefore seeks to recover $28,824.00 in attorney's fees related to its preparation for and attendance at this important hearing. All entries for which 3DS seeks to recover fees are included within the attached Exhibit 5 and summarized in the attached Vicente Declaration at Paragraphs 24-25.

All of this work resulted directly from Wynne's and Tanner's spoliation of evidence and was necessary to prevail on Plaintiff's Motion. *Id*. ¶ 25. The fees Plaintiff incurred are reasonable both in term of hours worked and the applicable hourly rates. Accordingly, the

[9] Ms. Vicente also attended this hearing and assisted with the argument on this Motion. However, since Ms. Vicente's attendance was primarily related to her handling of other motions being heard at this same hearing, 3DS has not sought to recover for the fees incurred by Ms. Vicente's attendance at this hearing. *Id.*

Court should award Plaintiff $28,824.00 in attorneys' fees, without reduction, for the preparation for and attendance at this Motion hearing.

e. Preparing for and Participating in the Evidentiary Hearing

The evidentiary hearing on Plaintiff's Motion was conducted on March 27, 2024 and, according to the transcript started at 9:01 a.m. and ended at 2:06 p.m., with only two short breaks, for a total of 5 hours. ECF 501-2. Three witnesses were called, and they were each divided amongst Mr. Juarez, Ms. Vicente, and Mr. Quigley.[10] *Id.;* Vicente Decl. ¶ 26 In addition to each handling a separate and distinct witness at the hearing, all three (Mr. Juarez, Ms. Vicente and Mr. Quigley) had interacted with Defendants' counsel at various points regarding the spoliation issues, were involved in drafting the motion papers, and it was critical for all three attorneys to be present at the evidentiary hearing, especially as there were factual disputes at the hearing concerning Wynne's and Tanner's spoliation of evidence and counsel's interactions as to these issues. Vicente Decl. ¶ 26. Mr. Juarez, Ms. Vicente and Mr. Quigley spent time preparing their coordinated strategy for the hearing, as well as their individual examinations of the witnesses that would be called at the hearing. Vicente Decl. ¶ 27. Significant time was spent culling through the documents produced in the case to identify the necessary exhibits for the hearing. Indeed, the evidentiary hearing exhibits consisted of approximately 200 exhibits, between those identified by Plaintiff and those identified by Defendants, many of which were lengthy spreadsheets of transaction history from the OnShape platform. *Id.* Hunton's paralegal Brian Moon also spent time finding, coordinating the assembly of, and coordinating the printing of these exhibits for the hearing. *Id.* 3DS's counsel also spent time meeting and conferring with Defendants' counsel over the exhibits and logistics for the hearing to try to streamline the proceedings and all counsel who would participate in the evidentiary hearing prepared for and attended a status conference with the Court on March 14, 2024, to discuss logistics for

[10] Defendants were represented by four attorneys at the evidentiary hearing – Mr. Catalano, Mr. Fogel, Mr. Stearns and Ms. Potiker. ECF 466.

the hearing. *Id.* at 28. Mr. Juarez and Ms. Vicente also spent time reviewing the prior testimony of Ben Wynne and Chris Tanner, both of whom had been deposed multiple times in the case, to prepare for their cross-examinations. *Id.* Mr. Juarez, Ms. Vicente and Mr. Quigley also spent necessary time with 3DS's in-house counsel and Scott Turner, 3DS's witness at the hearing, to prepare for the hearing. *Id.* at 29. In addition, Defendants produced a significant number of brand new exhibits a few days before the evidentiary hearing, which counsel for 3DS had to review and assess to prepare for the hearing and had to adjust their planned examinations of witnesses based on these newly produced documents. *Id.* ¶ 30. Mr. Borja provided research and evidentiary support related to the evidentiary hearing, particularly related to the identification and gathering of evidence given his familiarity with case documents. *Id.* ¶ 27.

In preparing for and attending the evidentiary hearing on the Motion, Mr. Juarez spent 36.2 hours, Ms. Vicente spent 88.4 hours and Mr. Quigley spent 80.1 hours. *Id.* at ¶ 31. 3DS therefore seeks to recover $173,333.00 in attorney's fees related to this factually and legally complex hearing. All entries for which 3DS seeks to recover fees are included within the attached Exhibit 6 and summarized in the attached Vicente Declaration at Paragraphs 26-31. All of this work resulted directly from Wynne's and Tanner's spoliation of evidence and was necessary to prevail on Plaintiff's Motion. *Id*. ¶ 31. The fees Plaintiff incurred are reasonable both in term of hours worked and the applicable hourly rates. Accordingly, the Court should award Plaintiff $173,333.00 in attorneys' fees, without reduction, for the preparation for and attendance at the evidentiary hearing.

f. Post-Evidentiary Hearing Briefing

After the March 27, 2024 evidentiary hearing on the Motion, the Court allowed the parties to file an optional post-hearing brief, which was to attach a substantive chart addressing the documents and elements that 3DS contended had been deleted and whether Defendants had shown they could be restored or replaced. ECF 467. 3DS filed a post-evidentiary hearing brief and chart to further assist the Court in its ruling given the complex nature of the testimony and the length of the hearing. *Id.* Given his participation in the

evidentiary hearing and intimate knowledge of the facts related to Defendants Wynne's and Tanner's spoliation, Mr. Quigley prepared the post-evidentiary hearing brief, and Mr. Juarez and Ms. Vicente efficiently revised the brief, primarily as it related to the documents and elements that they each cross-examined Mr. Tanner and Mr. Wynne respectively on. Vicente Decl. ¶ 32.  Much of the testimony of Mr. Wynne and Mr. Tanner relating to the documents produced by Defendants days before the hearing was new information for 3DS's counsel that had not previously been put forth by Defendant, which required significant new analysis not previously performed in order to effectively respond to this evidence in the post-hearing briefing. *Id.* ¶ 32.  In preparing the post-hearing brief, Mr. Quigley was required to review the testimony from the evidentiary hearing, assess additional research in support of the Motion, and review the 72 exhibits that were admitted into evidence during the hearing.  He then prepared a 10-page brief and a 29-page chart that painstakingly analyzed the parties' positions as to each of the 10 documents and 43 elements at issue, which Ms. Vicente and Mr. Juarez commented on given their involvement in the evidentiary hearing and related issues. *Id.* 32.   Mr. Borja provided support relating to Defendants' documentary evidence given his familiarity with case documents, and Mr. Pearlson provided research support related to the post-hearing briefing since he researched and drafted the original motion.  *Id.* 32.

In preparing 3DS's post-evidentiary brief, Mr. Quigley expended 73.2 hours drafting and revising the brief and chart.  Ms. Vicente spent 15.3 and Mr. Juarez spent 8.1 hours revising the brief and chart.  Mr. Borja spent 7.5 hours reviewing and analyzing exhibits and Mr. Pearlson spent 2.9 hours researching relevant legal authority.  3DS therefore seeks to recover $74,975.00 in attorney's fees related to this brief. All entries for which 3DS seeks to recover fees are included within the attached Exhibit 7 and summarized in the attached Vicente Declaration at Paragraphs 32-34.

All of this work resulted directly from Wynne's and Tanner's spoliation of evidence and was necessary to prevail on Plaintiff's Motion. *Id.* ¶ 33. The fees Plaintiff incurred are reasonable both in term of hours worked and the applicable hourly rates. Accordingly, the

Court should award Plaintiff $74,975.00 in attorneys' fees, without reduction, for the post-hearing brief.

g. Fee Petition

Because the Court sanctioned Wynne and Tanner under Rule 37, 3DS is entitled to recover its attorney's fees incurred in preparing this fee petition. *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-CV-595, 2016 WL 1573319, at *4 (S.D. Cal. Apr. 18, 2016). Given her familiarity with the billings in this matter, Ms. Vicente reviewed the seven (7) months of bills to identify the time entries and costs for which 3DS would seek recovery related to the Motion. Mr. Cortez, with his lower billing rate, prepared the initial draft of the Fee Petition, which was efficiently revised by Ms. Vicente and Mr. Quigley. Vicente Decl. ¶ 35. 3DS expended 41.7 hours in preparing this Fee Petition and therefore seeks to recover $27,941.00. *Id.*

Courts have awarded substantially similar and higher awards for fee applications. *See, e.g.*, *Batchelder v. Geary*, No. C-71-02017, 2007 WL 2427989, at *11 (N.D. Cal. Aug. 22, 2007) (in 2007, approving 97.50 hours of attorney time at a rate of $170 per hour preparing Motion for Fees, totaling $16,575.00); *Obesity Research Inst., LLC*, 2016 WL 1573319, at *4 (finding $11,122.50 in attorney's fees reasonable in submitting a fee application where underlying motion resulted in a $17,137.50 lodestar amount).[11] Hunton's hours are reasonable here because it had to review hundreds of billing entries spanning seven months in a heavily litigated case to determine which entries are connected to Wynne's and Tanner's spoliation. Vicente Decl., ¶ 36. Processing that material required considerable time. *Id.* All of this work resulted directly from Wynne's and Tanner's spoliation of evidence and was necessary to recover fees expended on Plaintiff's Motion. *Id.* ¶ *37.* All entries for which 3DS seeks to recover fees are included within the attached **Exhibit 8** and summarized in the attached Vicente Declaration at Paragraphs 35-37. The

[11] In *Obesity Research Inst.*, the court's award of $11,122.50 in attorney's fees on the fee application was based on 25.2 hours of time, with hourly rates ranging from $400 an hour for associates to $625-$675 for partners).

fees Plaintiff incurred are reasonable both in term of hours worked and the applicable hourly rates. *Id.* ¶ 36. Accordingly, the Court should award Plaintiff $27,941.00 in attorneys' fees, without reduction, for the preparation of this fee petition. *See Youngevity*, 2021 WL 2559456, at *4 (finding 51.5 hours on preparation of motion for fees reasonable).

h. Costs

The Court has also authorized an award of costs. ECF 607 at 20. 3DS incurred $32,405.57 in costs related to this Motion. *See* Vicente Decl. ¶¶ 38-42; Ex. 9. Those costs include court reporter, videographer and transcript fees for the deposition of OnShape, fees for the transcripts of the various Court hearings related to this Motion, transportation costs for 3DS's counsel and witnesses, Westlaw/Lexis fees for research related to the Motion, and costs of copying and preparing exhibits for the evidentiary hearing for 3DS's counsel, Defendants' counsel and the Court. *See* Vicente Decl. ¶¶ 38-42. Courts have found each of these types of costs recoverable under Rule 37. *See, e.g.*, *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1221 (9th Cir. 2018) (affirming deposition costs as sanction under Rule 37); *Youngevity*, 2021 WL 2559456, at *3 (court awarded Youngevity's costs of $7,077.40 for "deposition fees, transcript fees, transportation costs, and courtesy copies"); *Excel Fortress Ltd. v. Wilhelm*, No. 17-cv-04297, 2019 WL 5294837, at *2 (D. Ariz. Oct. 18, 2019) (awarding costs for two attorneys for "airfare, lodging, meals, parking, and ground transportation associated with their travel" under Rule 37); *Sure Safe Indus. Inc. v. C & R Pier Mfg.*, 152 F.R.D. 625, 626 (S.D. Cal. 1993) ("Properly included in an award of attorneys' fees are costs and fees for paralegals, out-of-pocket expenses, including travel, telephone, mailing, copying and computerized legal research expenses.")

All of the costs that 3DS seeks to recover resulted directly from Wynne's and Tanner's spoliation of evidence and were necessary to prevail on Plaintiff's Motion and are reasonable. *Id.* ¶ 42. All costs for which 3DS seeks to recover are identified within the attached Exhibit 9, and summarized and explained more fully in the attached Vicente Declaration at Paragraphs 38-42. Accordingly, the Court should award Plaintiff $32,405.57 in costs, without reduction, associated with its Motion.

## III. CONCLUSION

For the foregoing reasons, 3DS respectfully requests an award of its attorney's fees and costs against Ben Wynne and Chris Tanner related to its Motion for Sanctions in the amount of $432,269.07.

DATED: August 28, 2024

**HUNTON ANDREWS KURTH LLP**

By: */s/ Emily Burkhardt Vicente*
Emily Burkhardt Vicente
Roland M. Juarez
D. Andrew Quigley
Attorneys for Plaintiff/Counter-Defendant 3D SYSTEMS, INC. and Third Party Defendant EVAN KUESTER

20

3D SYSTEMS'S PETITION FOR ATTORNEY'S FEES AGAINST BEN WYNNE AND CHRIS TANNER

3:21-cv-01141-LAB-DDL