HUNTON ANDREWS KURTH LLP
EMILY BURKHARDT VICENTE (SBN 263990)
ebvicente@Hunton.com
ROLAND M. JUAREZ (SBN 160793)
rjuarez@Hunton.com
D. ANDREW QUIGLEY (SBN 280986)
aquigley@Hunton.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: 213 • 532 • 2000
Facsimile: 213 • 532 • 2020

Attorneys for 3D SYSTEMS, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3D SYSTEMS, INC., a California Corporation; <br>        Plaintiff, <br>      v. <br> BEN WYNNE, an individual; CHRIS TANNER, an individual; JAMIE ETCHESON, an individual; ROBERT MUELLER, an individual; IVAN CHOUSAL, an individual; INTREPID AUTOMATION, a California Corporation; and DOES 1 through 20, inclusive, <br><br>        Defendants. | Case No.: 3:21-cv-01141-AGS-DDL <br><br> **3D SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT AND CERTIFICATION FOR APPEAL PURSUANT TO FED. R. CIV. P. 54(b) IF RECONSIDERATION IS DENIED AND MOTION TO STAY REMAINING CLAIMS PENDING APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> **Hon. Andrew G. Schopler Courtroom 5C Hearing Date: July 11, 2025 at 2:00 P.M.** |
| INTREPID AUTOMATION, <br>        Counter-Claimant, <br>      v. <br> 3D SYSTEMS, and DOES 1-50, inclusive, <br><br>        Counter-Defendant. | |

1
2

INTREPID AUTOMATION,

          Third Party Claimant,

       v.

3
4

EVAN KEUSTER, and ROES 1-50,
inclusive,

5

          Third Party Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on July 11, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Andrew G. Schopler in Courtroom 5C of the above-referenced Court, located at the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA 92101, Plaintiff/Counter-Defendant 3D Systems, Inc. ("3DS") will, and hereby does, move the Court, if its pending Motion for Reconsideration is denied, for entry of a partial final judgment and certification for appeal pursuant to Federal Rule of Civil Procedure 54(b) as to 3DS's First, Second, and Third Causes of Action in its First Amended Complaint based on both the Court's March 20, 2025 Order granting summary judgment in favor of Defendants Intrepid Automation, et al. (the "MSJ Order"), and the Court's denial of 3DS's Motion for Reconsideration of the MSJ Order ("Reconsideration Order"), filed on April 17, 2025 (if the Motion for Reconsideration is denied).[1]

3DS's Motion is made on the ground that, pursuant to the MSJ Order and the Reconsideration Order, the three remaining claims brought by 3DS against Defendants have been adjudicated in favor of Defendants, and there is no just reason to delay entry of judgment on these claims so that 3DS can appeal the MSJ Order and the Reconsideration Order on the adjudicated claims. 3DS also seeks, under the Court's inherent authority, a stay of Defendants' counterclaims pending appeal of the three claims for which a final judgment was entered against 3DS.

3DS's Motion is based upon this Notice of Motion; 3DS's Memorandum of Points and Authorities and the evidence and legal authority cited therein; all files and records in this action; and on any argument that may be presented to the Court when this Motion is heard.

---

[1] If the Court grants 3DS's contemporaneously-filed Motion for Reconsideration, then this Rule 54(b) Motion is moot.

1  DATED: April 17, 2025                 **HUNTON ANDREWS KURTH LLP**

2                                        By: */s/ D. Andrew Quigley*
3                                             Emily Burkhardt Vicente
                                              Roland M. Juarez
4                                             D. Andrew Quigley
                                        Attorneys for Plaintiff/Counter-Defendant
5                                       3D SYSTEMS, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3DS'S MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT AND MOTION TO STAY
3:21-cv-01141-AGS-DDL

1

## **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

III.  ARGUMENTS AND AUTHORITIES ................................................. 5

    A.   Rule 54(b) Allows For Entry Of Partial Final Judgments. ................. 5

    B.   3DS Satisfies The Requirements For Entry Of A Partial Final Judgment. ........ 5

      1.  If Reconsideration Is Denied, The Court's MSJ Order Is "Final" As To 3DS's Claims. ................................................................. 6

      2.  There Is No Just Reason To Delay Entering Final Judgment On 3DS's Claims. ............................................................................ 6

        a.  Judicial Administrative Interests Support Granting This Motion. .............. 7

        b.  Equities Support Granting 3DS's Motion. ................................. 10

    C.   The Court Should Stay The Remaining Counterclaims Pending Appeal........ 11

IV.   CONCLUSION.......................................................................... 14

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3DS'S MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT AND MOTION TO STAY
3:21-cv-01141-AGS-DDL

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)..........................................................................................11

*Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
  819 F.2d 1519 (9th Cir. 1987) ...........................................................................6

*Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
  No. 2:20-cv-08819-CBM, 2023 WL 6783957 (C.D. Cal. July 20, 2023)........5, 6

*Crowe v. County of San Diego*,
  No. 99CV0241 R, 2005 WL 8156612 (S.D. Cal. July 25, 2005)..............8, 9, 10

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
  446 U.S. 1 (1980)...........................................................................................5, 6

*de Aguilar v. Nat'l R.R. Passenger Corp.*,
  No. CV-F-02-6527-REC-LJO, 2006 WL 509444 (E.D. Cal. Mar. 2, 2006) ....................................................................................................12

*Doe v. Univ. of Cal.*,
  No. C-92-2284 SAW, 1993 WL 361540 (N.D. Cal. Sept. 2, 1993)...................12

*Gregorian v. Izvestia*,
  871 F.2d 1515 (9th Cir. 1989) ...........................................................................6

*Hudson Ins. Co. v. Miller*,
  No. 2:15-cv-00349-GMN-CWH, 2016 WL 8709994 (D. Nev. Dec. 16, 2016) ...........................................................................................................12

*Intel Corp. v. Tela Innovations, Inc.*,
  No. 3:18-CV-02848-WHO, 2021 WL 783560 (N.D. Cal. Mar. 1, 2021) ..........13

*James v. Price Stern Sloan, Inc.*,
  283 F. 3d 1064 (9th Cir. 2002) ...........................................................................5

*K.J.P. v. Cnty. of San Diego*,
  No. 3:15-cv-2692, 2019 WL 2250001 (S.D. Cal. May 24, 2019).................6, 10

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ................................................................................ 11

*McCormick v. Cable Commc'ns, Inc.*,
   No. 3:14-CV-01128-MO, 2015 WL 13681814 (D. Or. Sept. 16, 2015) ........... 12

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*,
   No. CV 09-3220 RSWL MANx, 2011 WL 1790033 (C.D. Cal. May 9,
   2011) ......................................................................................... 7, 13

*Plotkin v. Pac. Tel. & Tel. Co.*,
   688 F.2d 1291 (9th Cir. 1982) ............................................................ 11

*Estate of Serna by & through Gilliland v. Cnty. of San Diego*,
   No. 20-cv-2096-LAB-DDL, 2023 WL 8525237 (S.D. Cal. Nov. 8, 2023) ....... 10

*Siegel v. Warner Bros. Ent. Inc.*,
   No. CV 04-8400 ODW (RZX), 2011 WL 13127546 (C.D. Cal. Mar. 15,
   2011) ................................................................................... 6, 7, 14

*Tessera, Inc. v. Toshiba Corp.*,
   No. 15-cv-02543-BLF, 2017 WL 11002227 (N.D. Cal. Mar. 6, 2017) ........... 10

*Texaco, Inc. v. Ponsoldt*,
   939 F.2d 794 (9th Cir. 1991) .......................................................... 5, 7

*Wood v. GCC Bend, LLC*,
   422 F.3d 873 (9th Cir. 2005) ............................................................ 7

**Rules**

Fed. R. Civ. P. 54(b) ............................................................................ 5

3DS'S MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT AND MOTION TO STAY
3:21-cv-01141-AGS-DDL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff 3D Systems, Inc. ("3DS") brought this lawsuit against five former employees, Ben Wynne ("Wynne"), Chris Tanner ("Tanner"), Jamie Etcheson ("Etcheson"), Robert Mueller ("Mueller"), and Ivan Chousal ("Chousal") and the company those former employees started upon leaving 3DS, Intrepid Automation ("Intrepid"; collectively "Defendants") for purposely and methodically stealing 3DS's trade secrets. Indeed, 3DS uncovered a plethora of evidence supporting Defendants' malicious scheme and efforts to cover it up—including that they started developing a printer and met with potential investors while still employed by 3DS, took and utilized 3DS's trade secret documents and CAD files, going so far as to include 3DS's trade secret CAD drawings in their own patent filings, and deleting evidence supporting 3DS's case both upon termination of their employment with 3DS and *the day after being served with this lawsuit*.

The Court, however, granted Defendants' Motion for Summary Judgment, finding that 3DS did not sufficiently identify its trade secrets and eliminating 3DS's opportunity to hold Defendants accountable for their malicious scheme. At the same time, the Court allowed Intrepid's counterclaims to proceed. With those counterclaims, Intrepid accuses 3DS of misappropriating Intrepid's supposed trade secrets – which are comprised of the very information that Defendants stole from 3DS.

Because (1) the Court's MSJ Order (if 3DS's simultaneously-filed Motion for Reconsideration of the MSJ Order is denied) disposes entirely of 3DS's claims, leaving only Intrepid's counterclaims for trial, and (2) there is substantial factual overlap in 3DS's misappropriation claims and Intrepid's counterclaims, there is no just cause to delay entry of a partial final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and to certify the MSJ Order and Reconsideration Order for appeal.

Judicial administrative interests and equities support entry of partial final judgment. A determination by the Ninth Circuit regarding whether 3DS sufficiently identified its trade secrets is highly relevant to the scope and contours of a trial as to Intrepid's

misappropriation counterclaims against 3DS and third-party defendant Evan Kuester, given that facts surrounding Intrepid's counterclaims are inextricably linked with facts surrounding 3DS's claims. In particular, one of 3DS and Kuester's central defenses will be that Kuester could not have misappropriated trade secrets from Intrepid because he already was aware of the technology, which Intrepid and its founders misappropriated from 3DS in the first place. This means that if Intrepid's claims proceed to trial, much of the same evidence will be re-presented at a second trial on 3DS's claims if the Ninth Circuit finds that 3DS adequately identified its trade secrets and that summary judgment for Intrepid was improper.

For those same reasons, 3DS also asks the Court, pursuant to its inherent authority, to stay Intrepid's remaining counterclaims pending appeal of the claims for which a partial final judgment was entered. Permitting a stay of proceedings while the viability of 3DS's misappropriation of trade secrets claims are on appeal will prevent piecemeal litigation and the possibility of two separate trials on the same nucleus of facts.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In 2016, Wynne, Tanner, Etcheson, Mueller, and Chousal (collectively the "Architects") began their employment at 3DS, and each of the Architects signed Employment Agreements containing prohibitions against disclosing 3DS's confidential information. 3DS First Amended Complaint ("FAC") ¶¶ 21-24 (ECF 6).

Throughout their employment with 3DS, 3DS provided the Architects with access to 3DS's proprietary information and trade secrets. FAC ¶¶ 3, 25; ECF 346 at 3. Among other things, the Architects had access to 3DS's solution for a DLP multi-projector system that would allow 3DS to 3-D print larger parts. FAC ¶¶ 51-52. Specifically, 3DS identified trade secrets in the specific projector layout, which involves four overhead projectors and two side projectors with bounce mirrors, and in its method of stitching the projectors together to accurately print a 3-D object (a process called "edge blending").[2]  ECF 549 at

---

[2] Although this was a trade secret at the time the Architects worked for 3DS and at the time they stole this trade secret, Defendants have since made these trade secrets public through

26. 3DS has learned in this litigation that, with a head start from 3DS's trade secrets, within just two months of leaving 3DS, Defendants had a finished 3D-printer that they were showing to potential investors. ECF 346 at 4.

The Architects resigned from 3DS in unison in August 2017 to form a competitor to 3DS, Defendant Intrepid Automation. FAC ¶¶ 39, 46. Unbeknownst to 3DS, while employed, Wynne and Tanner secretly uploaded 3DS's confidential information to a third-party hosted cloud-based platform called OnShape and then forensically wiped their 3DS hard drives to avoid detection once they left employment. FAC ¶ 42; ECF 346 at 3-4. The following year, Defendants filed various patent applications related to 3D printing, including a patent application (Serial No. 16/370,337) that eventually matured into USPN 10,780,640 ("the '640 Patent"), FAC ¶¶ 51-52, containing references to 3DS's trade secrets and even directly copying certain 3DS proprietary CAD drawings. These include certain aspects of 3DS's edge blending and calibration trade secret. Defendants then incorporated the trade secrets they misappropriated from 3DS into Intrepid's own multi-projector printer – the "Valkyrie." *Id.*; ECF 549 at 26.

Upon discovering Defendants' use of 3DS's trade secrets in Intrepid's patents, including the '640 Patent, and after additional due diligence, 3DS filed this lawsuit in May 2021, accusing Defendants of misappropriating 3DS's trade secrets. 3DS's FAC detailed 3DS's allegations of misappropriation and how Defendants used its information to damage 3DS. FAC ¶¶ 21-58. Amongst other things, 3DS alleged that Defendants stole 3DS trade secrets related to a DLP multi-projector system that was developed by 3DS, which were provided to the Architects during their onboarding at 3DS, including highly confidential edge blending and calibrating techniques developed by 3DS, which the Architects then incorporated into their patent for Intrepid. *Id.* at ¶¶ 51-52.

In response to 3DS's claims, and as an attempt to muddy the waters against 3DS, Intrepid asserted its own claims against 3DS and its employee, third party defendant

their patent filing and/or public marketing of their machines. Given this, 3DS has not filed this information under seal.

3DS'S MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT AND MOTION TO STAY
3:21-cv-01141-AGS-DDL

Kuester, alleging that 3DS sent Kuester to interview with Intrepid in January 2021 so that Kuester could steal Intrepid's supposed trade secrets relating to its multi-projection printer, the Valkyrie. ECF 199 ¶¶ 129-162. Critically, the technology that Intrepid alleged in its counterclaims that 3DS misappropriated is the very same technology that 3DS alleged Defendants stole from 3DS. Specifically, Intrepid alleged that it showed Kuester a "demonstration of the capabilities of Intrepid's DLP multi-projection test bed, a proof of concept for ground-breaking DLP multi-projector, large-format, vat-based printer system, which became known known as Valkyrie." ECF 542 at 3. This test bed "consisted of six fixed projectors – four projecting downwards and two projecting sideways to bounce mirrors (which redirected the light downward) – projecting UV light downwards onto a flat surface covered with paper, the latter of which was a stand in for a vat of resin." *Id.* "Each of the six projectors' individual images which were digitally stitched together to create a single, seamless composite image." *Id.* "The Test Bed featured fully digital alignment, utilizing source code to align the projected images rather than mechanical means such as micrometers." *Id*. Intrepid alleged that Kuester "would have understood that the Intrepid Test Bed was a proof of concept of a large format, vat-based DLP multi-projection printer." *Id.* As 3DS's expert in this litigation concluded, the trade secrets that Intrepid alleges 3DS stole are actually *3DS's own trade secret DLP multi-projector concepts that 3DS alleges the Architects stole from 3DS in the first place*. ECF 513-2.

The Parties filed motions for summary judgment in April and May 2024, ECF 484, 489, 531, and the Court ruled on the motions on March 20, 2025. ECF 645. Notably, the Court granted Defendants' MSJ, dismissing 3DS's three remaining claims on the basis that 3DS purportedly failed to sufficiently identify its trade secrets, and denied 3DS's MSJ with respect to three of Intrepid's counterclaims. ECF 645 at 3-4. Thus, the only claims remaining for trial are Intrepid's three counterclaims, largely based on Intrepid's twisted allegation that 3DS and Kuester stole 3DS's own trade secret technology from Intrepid.

## III.    ARGUMENTS AND AUTHORITIES

### A.    Rule 54(b) Allows For Entry Of Partial Final Judgments.

Federal Rule of Civil Procedure 54(b) provides, in pertinent part:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, cross-claim, or third-party relief – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). "Rule 54(b) provides a device for parties to seek interlocutory review of orders that are not truly 'final' because they 'do not dispose of all of the claims' in a suit." *Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*, No. 2:20-cv-08819-CBM (ASx), 2023 WL 6783957, at *2 (C.D. Cal. July 20, 2023).  Certification of a final judgment under Rule 54(b) is proper if it will aid "expeditious decision" of the case. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991). *See also James v. Price Stern Sloan, Inc.,* 283 F. 3d 1064, 1068 n.6 (9th Cir. 2002) ("[I]ssuance of a Rule 54(b) order is a fairly routine act. . . .").

### B.    3DS Satisfies The Requirements For Entry Of A Partial Final Judgment.

District courts follow a two-step process under the Rule 54(b) analysis for certification of a final judgment. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7-8 (1980)). Under step one, the court "must first determine that it is dealing with a 'final judgment,'" meaning there "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* at 7. Under step two, the court must determine whether there is any just reason for delaying an appeal. *Id.* at 8.  For the second step, "a district court must take into account judicial administrative interests as well as the equities involved." *Id.*

"The Ninth Circuit embraces a 'pragmatic approach focusing on severability [of claims] and efficient judicial administration' in the construction of what constitutes a claim and whether there is no just reason to delay appellate review." *Siegel v. Warner Bros. Ent.*

*Inc.*, No. CV 04-8400 ODW (RZX), 2011 WL 13127546, at *1 (C.D. Cal. Mar. 15, 2011) (quoting *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987)). Here, application of both factors confirms the Court should exercise its discretion and enter a final judgment on 3DS's claims so that it can timely file a notice of appeal.

### 1. If Reconsideration Is Denied, The Court's MSJ Order Is "Final" As To 3DS's Claims.

On the first factor – finality – if reconsideration is denied, there can be no question that the Court entered a judgment against 3DS that is final with regard to its claims. The MSJ Order dismissed 3DS's final remaining claims against Defendants, ECF 645, thus rendering an "ultimate disposition" of 3DS's claims in this multi-claim, multi-party lawsuit. *See Curtiss-Wright*, 446 U.S. at 7. As such, 3DS has satisfied this first step of the appellate certification analysis. *See K.J.P. v. Cnty. of San Diego*, No. 3:15-cv-2692, 2019 WL 2250001, at *2 (S.D. Cal. May 24, 2019) (finding summary judgment in defendants' favor was a "final judgment on all remaining claims against them" for purposes of the first step in the Rule 54(b) analysis).

### 2. There Is No Just Reason To Delay Entering Final Judgment On 3DS's Claims.

Under the second step of the Rule 54(b) analysis – whether there is no just reason to delay an appeal of an individual final judgment – the district court must take into account: (1) judicial administrative interests, and (2) the equities involved. *Curtiss-Wright*, 446 U.S. at 8. In this assessment, the court "should consider: (1) the interrelationship of the certified claims and the remaining claims in light of the policy against piecemeal review; and (2) equitable factors such as prejudice and delay" to any party in assessing whether to enter a final judgment. *Costar Grp., Inc.*, 2023 WL 6783957, at *2; *see also Gregorian v. Izvestia*, 871 F.2d 1515, 1518-20 (9th Cir. 1989).

Here, these factors overwhelmingly weigh in favor of granting 3DS's motion for entry of a partial final judgment under Rule 54(b) and certifying the MSJ Order and Reconsideration Order for appeal.

> **a.    Judicial Administrative Interests Support Granting This Motion.**

Judicial administrative interests support granting 3DS's Rule 54(b) motion. Certification is properly granted where "counterclaims are involved that arise out of the same transaction or occurrence as the certified claim, or the case is complex and there is an important or controlling legal issue that cuts across (and cuts out or at least curtails) a number of claims." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 881 (9th Cir. 2005). That is precisely the case here: 3DS's dismissed claims and 3DS's defense against Intrepid's claims remaining for trial are largely based on the same facts—to wit, whether Defendants used 3DS's trade secret technology in their printers. *See e.g. Texaco, Inc.,* 939 F.2d at 798 (holding because "claims disposed of on appeal and the remaining counterclaims require proof of the same facts, the legal issues now appealed will streamline the ensuing litigation.").

3DS alleges Defendants engaged in misappropriation by incorporating 3DS's trade secrets into Intrepid's patent filings and printer technologies (including its DLP multi-projector printer technology), which the Architects were exposed to while working at 3DS. FAC ¶¶ 50-58. Likewise, Intrepid alleges in its counterclaims that 3DS misappropriated trade secrets relating to *its* DLP multi-projection print technology. ECF 199 at ¶ 202.

Indeed, it is *because* the adjudicated claims and the remaining counterclaims require similar proof that entry of partial final judgment on adjudicated claims under Rule 54(b) "is especially appropriate" here, because the claims to be appealed "determine the scope and contours of trial as to the remaining issues." *Siegel*, 2011 WL 13127546, at *1; *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, No. CV 09-3220 RSWL MANx, 2011 WL 1790033, at *4 (C.D. Cal. May 9, 2011) ("it is well established that entry of judgment on adjudicated claims under Rule 54(b) is appropriate where the claims determine the scope of trial as to the remaining issues"). This exact

scenario plays out here, as 3DS's misappropriation claims will necessarily determine the scope and contours of a trial on Intrepid's counterclaims, as proof of the same or similar facts are involved with both competing claims of misappropriation. This district's ruling in *Crowe v. County of San Diego*, No. 99CV0241 R, 2005 WL 8156612, at *5 (S.D. Cal. July 25, 2005), is particularly instructive.

There, three plaintiffs brought constitutional claims against defendants after plaintiffs were arrested for murder, and one of the plaintiffs (Aaron Houser) also brought a state law defamation claim. *Id.* at *1. After the court granted defendants' motion for summary judgment on plaintiffs' constitutional claims but denied the motion on Houser's defamation claim, which remained for trial, plaintiffs filed a Rule 54(b) motion to enter final judgment and certify the constitutional claims, i.e., the "Subject Claims," for appeal. *Id.* at *1-2. This district court granted the motion, finding that "there is no doubt that it would streamline this litigation to have the Subject Claims, which comprise the heart of this case," decided on interlocutory appeal "rather than to have the Subject Claims considered in an appeal after the trial of the remaining claims." *Id.* at *4 (emphasis in original). The court found the "factual overlap" between the defamation claim and the constitutional claims, which required proof of the same evidence, *supports application* of Rule 54(b) here." *Id.* at *5 (emphasis added)  The court played out the following scenario: if it refused to grant plaintiffs' Rule 54(b) motion, then Aaron Houser's defamation claim would proceed to trial, and after that trial, there would be an appeal. *Id.*

> If, on appeal, the Subject Claims are resurrected by means of a reversal of the court's summary judgment rulings, there will certainly be a second trial because the Subject Claims are the heart of this case. *Due to the similarity of facts underlying Aaron's defamation claim and the Subject Claims, that second trial will require the introduction of much of the same evidence that was introduced during the first trial of Aaron's defamation claim.*

*Id.* (emphasis added) However, if the court entered final judgment under Rule 54(b) on the Subject Claims and plaintiffs immediately appeal those claims, the Ninth Circuit could

determine on appeal "which claims should go to trial, and all remaining claims can then be heard by a single jury in a single trial." *Id.* The same is true here.

3DS alleges Defendants engaged in misappropriation both by incorporating 3DS's trade secrets into Intrepid's patent filings and by developing printers that, unsurprisingly, are nearly identical to the 3DS proprietary printers and systems the Architects were exposed to while working at 3DS, including a DLP multi-projector printer system. *E.g.*, FAC ¶¶ 29, 50, 53 (ECF 6); 549 at 30:5-31:4. Likewise, Intrepid alleges in its counterclaims that "3D Systems and Kuester wrongfully gained access to a test bed and technology demonstration that Intrepid considered a 'proof of concept' of a DLP multi-projection print engine with six projectors projecting sub-images that are 'stitched together' to form a composite image to be printed." ECF 199 at ¶ 202. However, in defense of Intrepid's claims, 3DS contends its DLP multi-projector system – including the particular projector layout and edge blending aspects disclosed in the June 2016 slide set and specific lines of source code – *predates* Intrepid's patents and design for the Valkyrie. In other words, 3DS developed its unique projector layout and edge blending and calibration trade secret well *before* Intrepid filed patent applications and implemented 3DS's trade secrets into Intrepid's printers – meaning that Intrepid's so-called "trade secrets" actually comprise information Defendants stole from 3DS. 3DS's edge blending and calibration trade secrets are supported by 3DS's internal documents, confidential implementation details, source code and algorithms—much of which will be presented at trial on Intrepid's misappropriation claims to establish that 3DS and Kuester did not misappropriate Intrepid's purported trade secrets. This same evidence also would be presented at any trial of 3DS's misappropriation claims if the Ninth Circuit reverses the grant of summary judgment for Defendants on 3DS's claims.

By allowing 3DS to appeal the MSJ Order and Reconsideration Order now, the Court can avoid wasting resources in a re-trial on 3DS's technology if the Ninth Circuit later rules that 3DS sufficiently identified its trade secrets and that its misappropriation claims against Defendants should go forward. 3DS (and Kuester) will argue in a trial on Intrepid's

3DS'S MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT AND MOTION TO STAY
3:21-cv-01141-AGS-DDL

counterclaims that it did not misappropriate Intrepid's trade secrets because Intrepid's purported trade secrets already belonged to 3DS. The Court acknowledged as much in its MSJ Order, stating that 3DS and Kuester will have the burden at trial on Intrepid's misappropriation claims to show they independently developed certain multi-projector DLP printing technology. ECF 645 at 13. It would be inefficient to try Intrepid's misappropriation claims now with 3DS's asserted defenses of ownership of the trade secrets, only to later conduct another trial on 3DS's misappropriation claims that Intrepid had actually stolen those very same trade secrets from 3DS first.

Finally, there is little risk of piecemeal appellate review here. As an initial matter, and as set forth below, 3DS is asking for a stay of this litigation upon granting of 3DS's Rule 54(b) motion, which would necessarily eliminate any potential for piecemeal appellate review. Furthermore, as shown above, courts regularly grant Rule 54(b) when certifying an appeal will serve to "carve out threshold claims" and streamline complex litigation, which ultimately limits the risk of, and outweighs any prospect of, piecemeal appeals. *See K.J.P.*, 2019 WL 2250001, at *2; *Tessera, Inc. v. Toshiba Corp.*, No. 15-cv-02543-BLF, 2017 WL 11002227, at *5 (N.D. Cal. Mar. 6, 2017); *Crowe*, 2005 WL 8156612, at *5-6. Lastly, the discrete issue that 3DS seeks to appeal – whether 3DS sufficiently identified its trade secrets to create a triable issue of fact for a jury – will not return on appeal. "A subsequent appeal from judgment on the remaining claims might necessarily cover the same factual background, but the legal issues would be distinct." *Estate of Serna by & through Gilliland v. Cnty. of San Diego*, No. 20-cv-2096-LAB-DDL, 2023 WL 8525237, at *2 (S.D. Cal. Nov. 8, 2023) (granting Rule 54(b) motion where issues on appeal are not distinct from remaining issues and allowing appeal would streamline the litigation).

Thus, the judicial administrative interests clearly favor granting 3DS's motion for entry of partial final judgment and certifying the adjudicated claims for appeal.

### b. The Equities Support Granting 3DS's Motion.

As to the equities, they support granting 3DS's motion for entry of a partial final

judgment. First, resolution of Intrepid's counterclaims will not moot 3DS's appeal of its separate claims. Moreover, there will be no prejudice or harm to the remaining litigation, or to Defendants, by entering an appealable final judgment on 3DS's claims now. There is no compelling need to preserve the status quo because the viability of 3DS's claims will not be affected by the outcome of Intrepid's counterclaims. Thus, it makes sense to begin the appellate process now with respect to 3DS's claims rather than wait several months, or even a year, after trial on Intrepid's counterclaims.

While Defendants will suffer no prejudice by granting this motion, 3DS will certainly be prejudiced if it cannot immediately appeal the MSJ Order and Reconsideration Order, which is a final resolution of 3DS's claims, and wait until after a trial on Intrepid's claims to do so – a trial that will necessarily address 3DS's trade secrets at issue in the appeal, as set forth above.

## C.    The Court Should Stay The Remaining Counterclaims Pending Appeal.

Upon entering a partial final judgment and certifying the MSJ Order and Reconsideration Order for appeal as to 3DS's adjudicated claims, 3DS respectfully requests the Court stay the remaining counterclaims in the action, pending the outcome of the Ninth Circuit's review of the MSJ Order and Reconsideration Order. While a motion to stay pending claims is not automatically granted simply because a court permits interlocutory appeals of adjudicated claims, *see Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982), district courts do retain discretionary power to stay proceedings in their own court. *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936). The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* When choosing to exercise this judgment, courts must "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976).

Courts recognize that, "if a district court certifies claims for appeal pursuant to Rule 54(b), it should stay all proceedings on the remaining claims if the interests of efficiency and fairness are served by doing so." *Doe v. Univ. of Cal.*, No. C-92-2284 SAW, 1993 WL 361540, at *2 (N.D. Cal. Sept. 2, 1993). In *Hudson Ins. Co. v. Miller*, No. 2:15-cv-00349-GMN-CWH, 2016 WL 8709994, at *3 (D. Nev. Dec. 16, 2016), for instance, the court granted defendant's motion for summary judgment and dismissed plaintiff's claims, but allowed defendant's counterclaims to proceed. The court granted plaintiff's Rule 54(b) motion and entered a final judgment on plaintiff's claims, thereby certifying plaintiff's claims for appeal. *Id.* The court also granted plaintiff's motion to stay the case, finding that defendant's "counterclaims clearly relate to this Court's Summary Judgment Order that Plaintiff is appealing under Rule 54(b)," and a stay of all claims was appropriate in the interest of judicial economy because "a resolution by the Ninth Circuit will likely aid in the resolution of Defendant's counterclaims." *Id.*

Likewise, courts hold that a motion to stay "further proceedings pending the appeal of the grant of summary judgment" pursuant to Rule 54(b) should be granted when doing so "will avoid the need to conduct two separate trials, thereby saving judicial resources as well as the resources of the parties." *de Aguilar v. Nat'l R.R. Passenger Corp.*, No. CV-F-02-6527-REC-LJO, 2006 WL 509444, at *3 (E.D. Cal. Mar. 2, 2006); *see also McCormick v. Cable Commc'ns, Inc.*, No. 3:14-CV-01128-MO, 2015 WL 13681814, at *3 (D. Or. Sept. 16, 2015) ("In addition, a stay will conserve judicial resources as it nullifies the possibility of two trials in one case."). Finally, granting a stay following the grant of a Rule 54(b) motion for entry of partial final judgment is appropriate when it "will allow all parties to focus fully on the appellate issues." *McCormick*, 2015 WL 13681814, at *3. All of these factors fully justify staying this matter pending appeal of the MSJ Order and Reconsideration Order.

Permitting a stay of proceedings while the viability of 3DS's misappropriation of trade secrets claims are on appeal will prevent piecemeal litigation because the parties and the Court will avoid the possibility of two separate trials that both consider 3DS's alleged

trade secrets, either as defenses to Intrepid's counterclaims or as part of 3DS's misappropriation claims if the Ninth Circuit rules favorably on 3DS's appeal and allows those claims to proceed. Indeed, as explained above, the relevant factors strongly weigh in favor of a stay given the overlap between the competing misappropriation claims raised by both sides. Intrepid's counterclaims will turn, in part, on issues raised by 3DS's misappropriation claims, including whether it was possible for 3DS and Kuester to misappropriate Intrepid's trade secrets if, in fact, those trade secrets are owned by 3DS in the first instance, and it was actually the Architects and Intrepid who misappropriated them. This will be argued in defense at the trial of Intrepid's misappropriation claims. If no stay is granted while the MSJ Order and Reconsideration are appealed, and the Ninth Circuit permits 3DS to proceed on its misappropriation claim, then a second trial on 3DS's trade secrets will once again be before the Court with much of the same evidence in support that 3DS would have already introduced at the first trial on Intrepid's claims.

Accordingly, regardless of which party prevails, both parties and the Court would benefit from the simplification of issues, consolidation of proof presentations, and rulings on questions of law that would necessarily result from resolution of 3DS's appeal. Moreover, because the two actions necessarily involve the same parties, technologies, and some of the same discovery and witnesses, the resolution of 3DS's appeal will streamline the issues in this action, further the orderly course of justice, and allow the parties to avoid potentially duplicative trials. Last, the duration of the stay is not indefinite but limited to the resolution of the appeal of the MSJ Order and Reconsideration Order, mitigating any damage Defendants may suffer (if at all). Thus, a stay will preserve judicial resources and will be more efficient, as well as allow the parties to focus their attention on the appeal of the MSJ Order and Reconsideration Order. Because a stay will reduce litigation expenses and be mutually convenient for the Court and the parties, the Court should grant 3DS's request. *See Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-CV-02848-WHO, 2021 WL 783560, at *11 (N.D. Cal. Mar. 1, 2021) ("A stay of all other claims pending appeal is warranted. It minimizes the probable burden for the parties, counsel, and this court, and it

ensures that issues are tried in the most efficient way."); *Ready Pac Foods, Inc.*, 2011 WL 1790033, at *5 ("The Court STAYS further proceedings in this case pending resolution of any appeal taken from the Rule 54(b) Judgment."); *Siegel*, 2011 WL 13127546, at *1–2) (remaining claims stayed pending appeal granted pursuant to Rule 54(b)).

## IV.   CONCLUSION

For the reasons set forth above, 3D Systems, Inc. requests that, if its Motion for Reconsideration is denied, this Motion be granted because the interests of efficiency and fairness are served by immediate appellate review of the MSJ Order and Reconsideration Order and a stay of the remaining claims in the action. Immediate appellate review and a stay of all remaining claims would allow the parties to avoid the unnecessary time and expense of preparing for trial on the remaining claims, and reduce the opportunities for duplicative judicial review and trial court proceedings. Defendants would not be prejudiced by such a stay, and all parties and the Court would benefit.

DATED: April 17, 2025

**HUNTON ANDREWS KURTH LLP**

By: */s/ D. Andrew Quigley*
       Emily Burkhardt Vicente
       Roland M. Juarez
       D. Andrew Quigley
   Attorneys for 3DS SYSTEMS, INC.