UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3D SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>Ben WYNNE, et al.,<br><br>Defendants. | Case No.: 21-cv-1141-AGS-DDL<br><br>**ORDER DENYING RECONSIDERATION OF SUMMARY JUDGMENT (ECF 653) AND GRANTING SUPPLEMENTAL-AUTHORITY REQUEST (ECF 696)** |

This Court granted summary judgment against plaintiff on its trade-secret claims because the alleged secrets were described with "forbidden generality." (ECF 645, at 3, 11.) Plaintiff seeks reconsideration.

## RECONSIDERATION STANDARD

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). It is "the moving party's burden" to establish the need for reconsideration. *Forte v. Schwartz*, No. 1:13-cv-01980-LJO-MJS, 2018 WL 1036403, at *1 (E.D. Cal. Feb. 23, 2018). For reconsideration requests under Federal Rule of Civil Procedure 54(b), like the one here, some district courts use a slightly different four-issue framework, which largely covers the same concerns. *See, e.g.*, *Gicharu v. Garland*, No. 3:24-CV-349-AR, 2024 WL 2956957, at *1 n.1 (D. Or. June 11, 2024) (setting forth four-point test and collecting cases). Because the result is the same either way, the Court will apply only the Ninth Circuit's *ACandS* rule.

## DISCUSSION

Under Rule 54(b), plaintiff 3D Systems moves to reverse the summary-judgment ruling as to three of its alleged trade secrets. (ECF 653, at 9.) 3D Systems presents no newly discovered evidence, so our analysis focuses on the last two bases for reconsideration: clear error and new caselaw developments.

21-cv-1141-AGS-DDL

**A.    Clear Error**

"To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must be dead wrong." *United States v. Hollis*, 506 F.3d 415, 421 (5th Cir. 2007). 3D Systems alleges clear error on both the facts and the law.

First, the facts. 3D Systems argues that this Court disregarded legally sufficient trade-secret descriptions by improperly fixating on plaintiff's "early discovery response to Interrogatory 1" and by "overlooking" some evidence. (ECF 653, at 16.) Plaintiff emphasizes that "trade secrets need not be identified in a single interrogatory." (*Id.* at 15.) While 3D Systems certainly was not *required* to rely solely on its interrogatory responses, that is exactly where it claimed its trade-secret identifications would be found. (*See* ECF 549, at 26 (3D Systems insisting that it "identified 12 trade secrets related to its 3DS printing process" and citing to Interrogatory 1); ECF 519-5, at 12 (3D Systems' attorney to opposing counsel: "If you're asking [this witness] what the company has identified as its trade secrets, those are in the interrogatory responses.").) The Court thus understandably searched there (in vain) for an adequate description.

3D Systems protests that it "supplemented the initial trade secret descriptions" for Interrogatory 1 and, in its summary-judgment papers, pointed to other "documents, declarations, and/or discovery responses." (ECF 653, at 15.) But it never detailed the alleged secrets in any remotely digestible way. It appended over 1,000 pages to its summary-judgment briefing. (*See* ECF 484; ECF 551.) The papers it specifically cited to alone totaled "more than 250 pages" (ECF 645, at 10)—and even that understates the reading burden. Over 80 of those pages included compressed transcripts, in which each page contained four pages of deposition testimony, pushing the actual page count to around 500. (*See* ECF 519-5; ECF 545-3; ECF 551-5; ECF 551-9; ECF 583-1; ECF 583-2; ECF 583-3; ECF 583-4.)

Plaintiffs cannot meet their trade-secret-identification burden by burying a descriptive needle in a haystack of papers and then dumping that haystack on the judge's desk. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658, 660 (9th Cir.

2020) ("It is inadequate for plaintiffs to 'cite and incorporate by reference hundreds of documents that purportedly . . . reflect the trade secret information'" and then to "invite the court to hunt through the details in search of items meeting the statutory definition."). This Court even anticipated that there may be "further identifying [trade-secret] information lurk[ing] somewhere in this substantial record." (ECF 645, at 10.) 3D Systems now identifies three trade secrets in a more specific and consolidated manner than it ever did before. But its deadline to do so has long passed. This Court refuses to reward such attempts at last-gasp compliance. 3D Systems "knowingly incurred the risk that its [trade-secret identifications] would not meet the 'reasonable particularity' requirement." *See InteliClear*, 978 F.3d at 663 (emphasis removed); (*see, e.g.*, ECF 102, at 5–6 (noting that 3D Systems' "initial response" to the interrogatory asking it to identify and fully describe each trade secret "was to refuse to respond at all" until the magistrate judge compelled an answer); ECF 519-5, at 12 (3D Systems' attorney stating: "If you're asking [the 30(b)(6) representative] what the company has identified as its trade secrets, those are in the interrogatory responses."); *id.* at 31 (opposing counsel asking 3D System's 30(b)(6) representative: "Is there like a list somewhere that lists all the trade secrets that 3DS has?" Answer: "Not that I'm aware of.").)

That leaves only the objections to this Court's treatment of the caselaw. In particular, 3D Systems takes issue with the Court's analysis of *Forro Precision, Inc. v. IBM*, 673 F.2d 1045 (9th Cir. 1982), and *Imax Corp. v. Cinema Techs.*, 152 F.3d 1161 (9th Cir. 1998). But plaintiff merely rehashes legal positions that this Court already considered and rejected. (*See* ECF 549, at 27–28, 30; ECF 645, at 4–5; ECF 653, at 17–19). None of these recycled arguments demonstrate that this Court's legal reasoning was "dead wrong." *See Hollis*, 506 F.3d at 421.

Thus, 3D Systems has not carried its burden of showing any clear error.

**B.    Changed Law**

Finally, 3D Systems claims that two new Ninth Circuit cases represent an intervening change in controlling law. The first, *Quintara Biosciences, Inc. v. Ruifeng*

21-cv-1141-AGS-DDL

*Biztech, Inc.*, 149 F.4th 1081 (9th Cir. 2025), rejected a trial court's imposition of a California state-law requirement that plaintiff identify its trade secrets with "reasonable particularity" "at the outset of discovery." *Id*. at 1085. After all, federal law "does not require a plaintiff to identify with particularity its alleged trade secrets from the start." *Id*. By contrast, 3D Systems had years to sufficiently identify its alleged secrets before this Court finally ruled—at the summary-judgment stage—that the time for doing so had run out. Indeed, *Quintara Biosciences* agreed that the particularity inquiry "is usually a matter for summary judgment or trial." *Id.*

In the other case, *Zunum Aero, Inc. v. Boeing Co.*, No. 24-5212, 2025 WL 2364602 (9th Cir. 2025), the Ninth Circuit reversed the trial judge's ruling that plaintiff "failed to identify any of its alleged trade secrets with sufficient particularity." *Id*. at *1. Yet the panel never quoted—nor even summarized—the relevant trade-secret descriptions, so it's hard to understand how this nonprecedential opinion altered the legal landscape in any way.

In short, 3D Systems also fails to establish any intervening legal change.

### CONCLUSION

3D Systems' motion for reconsideration is **DENIED**. Its motion for leave to file supplemental authority in support of that motion is **GRANTED**, and those authorities are discussed above.

Dated:  March 12, 2026

_____
Hon. Andrew G. Schopler
United States District Judge

21-cv-1141-AGS-DDL