UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3D SYSTEMS, INC.,<br><br>                              Plaintiff,<br><br>v.<br><br>BEN WYNNE, et al.,<br><br>                              Defendants. | Case No.:  21-cv-1141-AGS-DDL<br><br>**ORDER RE DISCOVERY PURSUANT TO FEBRUARY 12 ORDER** |

## I.

## BACKGROUND

In ruling on the parties' discovery-related motions, Judge Schopler determined that "no one did anything worth sanctioning" but that discovery would be "briefly reopen[ed]." Dkt. No. 752 at 1 ("February 12 Order"). Specifically, "the parties will have four weeks to complete discovery, which will be limited to 3D Systems' development of the PSLA 270, including its family of products, and the related damages request." *Id.* at 3. "Each party may ask three targeted interrogatories, make three requests for production of documents or items, and take one eight-hour deposition." *Id.*  The February 12 Order referred to the undersigned "any disputes or questions about these limitations as well as any discovery extension requests." *Id.*

/ / /

1

Thereafter, the parties met and conferred regarding the anticipated discovery and submitted a joint status report describing their positions on the scope of discovery generally and the specific discovery requests proposed by each party. Dkt. No. 756. On March 11, 2026, the Court held a hearing on the proposed discovery and directed the parties to file amended discovery requests consistent with the Court's rulings at the hearing. The parties timely filed their amended requests, and the Court held a further hearing on March 12, 2026. Dkt. Nos. 760, 761.

## II.

## THRESHOLD ISSUES

The parties' joint status report raised multiple issues pertaining to interpretation of the February 12 Order. For the reasons stated on the record at the March 11 and 12 hearings, the Court orders as follows:

### A.    Parties Authorized To Serve Discovery

"Each party may ask three targeted interrogatories, make three requests for production of documents or items, and take one eight-hour deposition." February 12 Order at 3. For the reasons discussed at the March 11 hearing, "each party" refers to 3D Systems and Intrepid Automation, and those are the only parties authorized to serve discovery and take a deposition.

### B.    "Family Of Products"

The February 12 Order authorized discovery "limited to 3D Systems' development of the PSLA 270, including its family of products, and the related damages request." *Id.* After considering the joint status report and the parties' arguments at the March 11 hearing, the Court concludes that the PSLA 270 "family of products" includes the PSLA 270 and PSLA 380. It does not include the large-format printer concept discussed by the parties because that is "a research project based on a commercially available imaging system that uses dynamic projectors rather than the static (or fixed) projectors required by Intrepid's alleged trade secret." Dkt. No. 756 at 5. In addition, the large-format printer "does not

even have a name because it has not been productized, nor is there a product development project for this concept." *Id.*

## C. "Development Of The PSLA 270"

The February 12 Order authorizes discovery pertaining to the "development of the PSLA 270." The parties advance different interpretations of this phrase.

Intrepid contends discovery is not limited to "development of certain aspects or functionality of the PSLA 270" but rather "necessarily encompasses the process by which the PSLA platform was conceived, designed, engineered, tested, and ultimately brought to market." Dkt. No. 756 at 6-7. Consistent with this interpretation, Intrepid initially proposed requests for production ("RFPs") seeking all documents (correspondence and non-correspondence) "referring to the development of the PSLA family of products" over a 5-year time period. Dkt. No. 756-1 at 5. Practically speaking, these RFPs would include every document pertaining to the development of the PSLA 270 irrespective of whether the documents have anything to do with what Evan Kuester observed when he visited Intrepid in 2021.

On the other hand, 3D Systems asserts the February 12 Order authorizes a more limited scope of discovery focusing on the particular Intrepid trade secrets that Kuester allegedly observed when he visited Intrepid and whether 3D Systems used those trade secrets in its development of the PSLA 270 family of products. Dkt. No. 756 at 10-11. Thus, 3D Systems proposed that discovery should be limited as follows: "if the PLSA 270 contains a substantially similar feature or component to the Intrepid test bed, was that feature or component taken from Intrepid, or did 3DS come up with it independently?" Dkt. No. 756 at 11. The Court generally agrees with 3D Systems.

In denying 3D Systems' and Kuester's motion for summary judgment on Intrepid's trade secret misappropriation counterclaim, Judge Schopler summarized Intrepid's counterclaim as follows: "Intrepid alleges that 3D Systems either sent Kuester to steal Intrepid's trade secrets 'under the deceptive guise of seeking' employment or persuaded

Kuester to reveal 'the confidential information he obtained' after a legitimate job interview and tour of Intrepid's facilities." Dkt. No. 645 at 11.  The specific allegations include:

> During that recruitment tour [in 2021], Intrepid showed Kuester "part of the multi-projector test bed" (ECF 542-4, at 7) for its indevelopment "[digital-light-processing]-based large-format machine," (ECF 542-5, at 9). That machine had "projectors *on top*" that were "*facing down*." (ECF 542-5, at 9, 12 (emphasis added).) The "moment [Intrepid] showed [Kuester] it had projectors on top," Kuester "believe[d] that Intrepid's [digital-light-processing]-based large-format machine was superior to the SLA 750," 3D Systems' newest "large-frame" printer. (ECF 542-5, at 8–9.) Then, less than three years after Kuester's recruitment tour, 3D Systems announced that it would "preview" its "PSLA 270, a new projector-based polymer 3D printing platform," at an industry conference. (ECF 542-18, at 2, 5.) Its display model for this "new" machine showed that it uses "two [digital-light-processing] projectors" that "*project[] downwards*." (ECF 542-35, at 5 (emphasis added).)

*Id.* at 12-13.

Judge Schopler concluded this alleged conduct created a triable issue of fact on Intrepid's trade secret misappropriation claim:

> The Ninth Circuit has found that "disclosure of the [trade] secret to the defendant, followed by manufacture of a closely similar device by the defendant, shifts to the defendant the burden of going forward with evidence to prove, if it can, that it arrived at the process by independent invention."
> *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 793 (9th Cir. 1976).
> So it is here.

*Id.* at 12.  The February 12 Order authorized discovery on this same misappropriation theory under *Droeger*: "if 3D Systems sent an employee to spy on Intrepid's technology, used stolen trade secrets to push the PSLA 270 family of products to market, and hid all

that until after discovery closed, then Intrepid deserves to delve into that information before trial." Dkt. No. 752 at 3.

Considering both the summary judgment order and the February 12 Order, the Court concludes that discovery regarding the "development of the PSLA 270, including its family of products" must be tethered to the Intrepid trade secrets that Kuester allegedly observed at Intrepid in 2021 and whether 3D Systems used any such trade secret information in the development of the PSLA 270 or PSLA 380. Intrepid's response to 3D Systems' Interrogatory No. 1 identifies the trade secrets at issue. The asserted trade secrets relevant to the February 12 Order are Intrepid's "implementation of edge-blending technology" and "implementation of [Intrepid's] multi-projector calibration techniques." Dkt. No. 662-4 at 7-9.[1] Discovery pertaining to the "development of the PSLA 270, including its family of products" is limited to these two asserted trade secrets.

## III.

## DISCOVERY REQUESTS

"It is not the Court's responsibility to 'rewrite' discovery for the parties." *Dunsmore v. San Diego Cnty. Sheriff's Dep't*, No. 20-CV-00406-AJB-DDL, 2023 WL 215724, at *3 (S.D. Cal. Jan. 17, 2023) (citation omitted). But having considered the parties' joint status report, their initial proposed discovery requests and their revised proposed requests over the course of two hearings, it is apparent that further directives to the parties to meet and confer regarding the disputed requests will not be productive. Accordingly, pursuant to the February 12 Order and consistent with the principles articulated above, the Court will authorize the parties to serve the following interrogatories and RFPs.

///

---

[1] This order does not authorize discovery pertaining to Intrepid's other asserted trade secrets, including its "in-development Valkyrie printer system" (*see* Dkt. No. 664-1 at 9-11), as these trade secrets are not sufficiently tethered to 3D Systems' alleged "manufacture of a closely similar device" (*i.e.*, the PSLA 270 and PSLA 380). *Droeger*, 541 F.2d at 793.

**A.     Written Discovery To Be Served By 3D Systems**

**1.     Interrogatories**

3D Systems is authorized to serve Interrogatory Nos. 6, 7 and 8 as set forth in the parties' joint status report.  *See* Dkt. No. 756-2 at 4-6.

**2.     RFPs**

3D Systems is authorized to serve RFP Nos. 6 and 7 as set forth in the parties' joint status report.  *See* Dkt. No. 756-2 at 16.

3D Systems is authorized to serve the following RFP No. 8:

**3DS REQUEST FOR PRODUCTION NO. 8:**

Documents sufficient to show the structure and operation of Intrepid's asserted trade secrets, including documents sufficient to show the technical specifications for how the Intrepid test bed allegedly shown to Kuester carries out each of the alleged Intrepid trade secrets that you contend were used in the manufacture of the PSLA 270.

**B.     Written Discovery To Be Served By Intrepid**

**1.     Interrogatories**

Intrepid is authorized to serve Supplemental Interrogatory Nos. 1, 2 and 3 as set forth in the parties' joint status report (Dkt. No. 756-1 at 4) except that the PSLA 270 "family of products" is limited to the PSLA 270 and PSLA 380 as discussed above.  This Order does not preclude 3D Systems from responding to Supplemental Interrogatory No. 2 with an explanation as to why certain of the information sought by Intrepid is not reasonably within 3D Systems' possession given its position that it "did not segregate and track research and development expenses by quarter associated with the development" of the PSLA 270 and PSLA 380 prior to the fall of 2023.  Dkt. No. 760 at 4.

/ / /

/ / /

/ / /

/ / /

21-cv-1141-AGS-DDL

## 2.    **RFPs**

Intrepid is authorized to serve the following Supplemental RFP Nos. 1, 2 and 3:

**INTREPID SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 1:**

All non-correspondence documents (excluding source code) from January 1, 2020 to November 1, 2024, pertaining to 3D Systems' development of the PSLA 270 and PSLA 380 functions that correspond to the "edge-blending technology" and "multi-projector calibration techniques" identified as trade secrets in Intrepid's response to 3D Systems' Interrogatory No. 1.  *See* Dkt. No. 664-1 at 7-9.

**INTREPID SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 2:**

All email and Microsoft Teams messages sent or received by the custodians listed below from January 1, 2020 to November 1, 2024, pertaining to 3D Systems' development of the PSLA 270 and PSLA 380 functions that correspond to the "edge-blending technology" and "multi-projector calibration techniques" identified as trade secrets in Intrepid's response to 3D Systems' Interrogatory No. 1.  *See* Dkt. No. 664-1 at 7-9.

The custodians are (1) Eric Innes, (2) Sam Green, (3) Evan Kuester, and (4) the PSLA 270/380 program manager(s) during the relevant time period, including but not limited to Or Branstein.

The Court declines to require 3D Systems to utilize specific search terms to identify responsive documents.  "Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 18-CV-0347-CAB-MDD, 2019 WL 4934477, at *2 (S.D. Cal. Oct. 7, 2019).  "Nothing in Rule 34 requires a requesting party to identify custodians or search terms or for a producing party to accede to demands that particular custodians' files be searched or that particular search terms be used." *Hastings v. Ford Motor Co.*, No. 19-CV-2217-BAS-MDD, 2021 WL 1238870, at *2 (S.D. Cal. Apr. 2, 2021).

**INTREPID SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to show 3D Systems' analyses and projections of the total addressable market, expected market size, target industries or market segments, competing products, and expected sales, revenue or profits associated with the PSLA 270 and/or PSLA 380 from the date 3D Systems contends that the development of the PSLA 270 or PSLA 280 began until the commercial launch of the PSLA 270.

Information responsive to this RFP shall not be redacted.

**C.   DEADLINES**

3D Systems and Intrepid shall each serve the authorized Interrogatories and RFPs via email by not later than **March 18, 2026**.  The parties shall respond to the authorized Interrogatories by not later than **April 1, 2026**.  The parties shall respond to the authorized RFPs and produce all responsive documents by not later than **April 8, 2026**.

The Court will resolve any issues pertaining to the Rule 30(b)(6) depositions after reviewing the parties' forthcoming joint status report.  The parties shall conclude the two authorized depositions by not later than **April 17, 2026**.

**IT IS SO ORDERED.**

Dated:  March 17, 2026

_David Leshner_

Hon. David D. Leshner
United States Magistrate Judge

8

21-cv-1141-AGS-DDL