# Exhibit 11

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 3D SYSTEMS, INC., a California Corporation;<br>Plaintiff,<br>v.<br>BEN WYNNE, an individual; CHRIS TANNER, an individual; JAMIE ETCHESON, an individual; ROBERT MUELLER, an individual; IVAN CHOUSAL, an individual; INTREPID AUTOMATION, a California Corporation; and DOES 1 through 20, inclusive,<br>Defendants. | Case No.: 3:21-cv-01141-AGS-DDL<br><br>**3D SYSTEMS, INC.'S AND EVAN KUESTER'S PROPOSED JURY INSTRUCTIONS**<br><br>**Hon. Andrew G. Schopler**<br>**Courtroom 5C** |
| INTREPID AUTOMATION,<br>Counter-Claimant,<br>v.<br>3D SYSTEMS, and DOES 1-50, inclusive,<br>Counter-Defendant. | |
| INTREPID AUTOMATION,<br>Third Party Claimant,<br>v.<br>EVAN KEUSTER, and ROES 1-50, inclusive,<br>Third Party Defendant. | |

# I. <u>PRELIMINARY INSTRUCTIONS</u>[1]

**3DS/Kuester Proposed Instruction No. 1: Duty of Jury (Court Reads Instructions at the Beginning of Trial but Does Not Provide Written Copies)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. (You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected, and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.)

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

<u>At the end of the trial, I will give you a final set of instructions. It is the final instructions that will govern your deliberations.</u>

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.[2]

---

[1] 3DS and Kuester renew their objection to the case proceeding as a jury trial for the reasons set forth in prior briefing before the Court and nothing herein should be construed as a waiver of that position.

[2] Authority: Model Civil Jury Instruction 1.2 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 2: Claims and Defenses**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Intrepid claims that 3D Systems and Evan Kuester misappropriated the following information which Intrepid asserts are trade secrets:

(1) edge-blending technology as embodied in a test bed consisting of six 4K-resolution projectors deployed in a specific configuration, with four projectors arranged in a 2X2 formation and projecting downward and two additional projectors facing laterally and being redirected via bounce mirrors. This first alleged trade secret will sometimes be referred to in short-hand as “edge-blending”;

(2) a fully-automated self-calibration system as deployed in software and hardware of the above-described 6-projector test bed, which required no manual adjustment (for example, by an optics technician) and no movability or manual flexibility of the projectors themselves. This second alleged trade secret will sometimes be referred to in short-hand as “auto-calibration/6-projector layout”; and

(3) the following information regarding Intrepid’s DLP multiprojection printer system, Valkyrie, which at the time of Evan Kuester’s tour of Intrepid was under development::

(i) the commercial viability of the printer and its technology, which Intrepid claims permitted a customer the ability to use DLP technology for the imaging of large photopolymer parts at a high resolution versus lasers and galvanometer mirrors;

(ii) the anticipated size of the print platform of the printer and number of projectors used by the same;

(iii) Intrepid’s ability to customize the build-area, projectors, and other parameters to customer specification;

(iv) the target market for the printer, including the fact that the printer was specifically designed to meet the needs of SpaceX, who specifically commissioned Intrepid to build the first production version of Valkyrie;

(v) the development timeline and anticipated timeline to market for the printer; and

(vi) Intrepid's expectations regarding approximate price to customers of the printer.

This third alleged trade secret will sometimes be referred to in short-hand as specific information about the in-development Valkyrie.

For purposes of these instructions the information described in (a) through (c) above is referred to in short-hand as the "Alleged Trade Secrets". This is not intended to imply that the information constitutes trade secrets under law. You are instructed that Intrepid bears the burden of proving all elements of its claim for misappropriation of trade secrets, including that the information referred to in (a) through (c) above are trade secrets. When evaluating whether Intrepid has satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court has used this short-hand reference to describe the information Intrepid alleges to be a trade secret, described in (a) through (c) above.

Intrepid also asserts that Mr. Kuester breached a non-disclosure agreement with Intrepid by disclosing this same information to 3DS.

The plaintiff has the burden of proving these claims.

3DS and Mr. Kuester deny that either of them misappropriated any trade secrets. They dispute that Intrepid shared all of the information with Mr. Kuester

that Intrepid claims to have shared. Mr. Kuester and 3DS also dispute that the information Intrepid claims it shared with Mr. Kuester was confidential or trade secrets of Intrepid. 3DS and Kuester allege that the Information Intrepid alleges they misappropriated was generally known in the field or were readily ascertainable by proper means by those skilled in the art at the time of the alleged misappropriation occurred. They also contend that 3DS independently developed the same technology Intrepid claims to have used its trade secrets. Mr. Kuester also denies that he breached an NDA with Intrepid concerning this same information. 3DS and Mr. Kuester also contend that they did not cause damages to Intrepid. [3]

(The defendant [name] denies those claims [and also contends that [*defendant's counterclaims and/or affirmative defenses]]*. [The defendant [name] has the burden of proof on these [*counterclaims and/or affirmative defenses.]]*

[The plaintiff [*name*] has the burden of proof on these [*counterclaims and/or affirmative defenses*.]])

[3] Authority: Adopted from Model Civil Jury Instruction 1.5 (2025 Edition - Last Updated March 2026); *see also* ECF 885-14 (Intrepid's Amended Supplemental Response to Kuester's Rog 1); ECF 885 (3DS & Kuester's Omnibus Motion in Limine).

**3DS/Kuester Proposed Instruction No. 3: Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim ([or affirmative defense]) by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim ([or affirmative defense]) is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.[4]

[4] Authority: Model Civil Jury Instruction 1.6 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 4: Burden of Proof— Clear and Convincing Evidence**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.[5]

---

[5] Authority: Model Civil Jury Instruction 1.7 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 5: Two or More Parties—Different Legal Rights**

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.[6]

[6] Authority: Model Civil Jury Instructions 1.8 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 6: What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;
2. the exhibits that are admitted into evidence;
3. any facts to which the lawyers have agreed; and
4. any facts that I [may instruct] [have instructed] you to accept as proved.[7]

[7] Authority: Model Civil Jury Instruction 1.9 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 7: What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.[8]

[8] Authority: Model Civil Jury Instruction 1.10 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 8: Evidence for Limited Purpose**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.[9]

([The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and not for any other purpose.])

[9] Authority: Model Civil Jury Instruction 1.11 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 9: Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.[10]

[10] Authority: Model Civil Jury Instruction 1.12 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 10: Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.[11]

[11] Authority: Model Civil Jury Instruction 1.13 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 11: Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.[12]

[12] Authority: Model Civil Jury Instruction 1.14 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 12: Conduct of the Jury**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it ([), although I have no information that there will be news reports about this case (]); do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings ([), and a mistrial could result, requiring the entire trial process to start over(]). If any juror is exposed to any outside information, please notify the court immediately, by sending a note through the [clerk] [bailiff] signed by any one or more of you.[13]

[13] Authority: Model Civil Jury Instruction 1.15 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 13: Publicity During Trial**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.[14]

[14] Authority: Model Civil Jury Instruction 1.16 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 14: Confidentiality Of Certain Information Shared**

During this trial, you [may be] presented with evidence that the parties claim constitutes a trade secret or is highly sensitive business information, including but not limited to certain technical information, business strategies, or financial data. This information has been disclosed to you solely for the purpose of deciding this case. You must not share, discuss, or disclose any of this information with anyone outside of your fellow jurors during your deliberations. You are strictly prohibited from using this information for personal gain, professional advantage, or passing it along to any third party.

Furthermore, you must not use or disclose this information after this trial has concluded. Your duty to keep this information secret and secure continues indefinitely, even after the verdict has been rendered and you have been dismissed.

During trial, the Court may take certain precautions to prevent public access to certain information, for example by [removing members of the public from the courtroom and sealing the courtroom or ordering that certain exhibits not be publicly displayed to the courtroom]. You are instructed that Intrepid bears the burden of proving all elements of its claim for misappropriation of trade secrets. When evaluating whether Intrepid has satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court took such precautions.[15]

[15] Authority: Adapted from *Masimo Corp. v Apple Inc.*, Case No. 8:20-cv-00048-JVS-JDE (C.D. Cal. May 1, 2023) at ECF 1715, page 6 (Jury Instructions).

**3DS/Kuester Proposed Instruction No. 15: No Transcript Available to Jury**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.[16]

[16] Authority: Model Civil Jury Instruction 1.17 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 16: Taking Notes**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.[17]

[17] Authority: Model Civil Jury Instruction 1.18 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 17: Questions to Witnesses by Jurors During Trial**[18]

(*Option 1*)

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. ( *[Specific reasons for not allowing jurors to ask questions may be explained.*]) If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

(*Option 2*)

(When attorneys have finished their examination of a witness, you may ask questions of the witness. [Describe procedure to be used.] If the rules of evidence do not permit a particular question, I will advise you. After your questions, if any, the attorneys may ask additional questions.)

[18] Authority: Model Civil Jury Instruction 1.19, Option No. 1 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 18: Bench Conferences and Recesses**

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.[19]

[19] Authority: Model Civil Jury Instruction 1.29 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 19: Outline of Trial**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, (and) counsel for the defendants may cross-examine, and plaintiff may then examine the witness.

Then the defendant may present evidence, (and) counsel for the plaintiff may cross-examine, and defendant may then examine the witness.

Then the plaintiff may present additional evidence, and counsel for the defendants may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.[20]

[20] Authority: Model Civil Jury Instruction 1.21 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 20: Cautionary Instructions**

***At the End of Each Day of the Case:***

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

***At the Beginning of Each Day of the Case:***

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. (To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.) (ALTERNATIVE 1 (in open court):) If you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions. (ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or shared any information about this case outside of this courtroom? . . . Thank you for your careful adherence to my instructions.)[21]

[21] Authority: Model Civil Jury Instruction 2.1 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 21: Stipulations of Fact**

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] ([) that will be read to you (]). You must therefore treat these facts as having been proved.[22]

[22] Authority: Model Civil Jury Instruction 2.3 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 22: Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. ([) When a person is unavailable to testify at trial, the deposition of that person may be used at the trial. (])

(The deposition of [*name of witness*] was taken on [*date*].) Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

([)Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.(])[23]

[23] Authority: Model Civil Jury Instruction 2.5 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 23: Use of Interrogatories**

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.[24]

[24] Authority: Model Civil Jury Instruction 2.12 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 24: Use of Requests for Admission <u>(If Applicable)</u>**

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.[25]

[25] Authority: Model Civil Jury Instruction 2.13 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 25: Expert Witness Opinion Testimony**

(You) During the trial you [may hear] [have heard] ([are about to hear]) testimony from expert witnesses who [may testify] [testified] about their opinions and the reasons for those opinions about matters in the expert's field of expertise. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of [this] [these] [witness] [witnesses].

Such opinion testimony should be judged like any other testimony. You may accept it or reject it (and). You may believe all, part, or none of an expert's testimony, and you give it as much weight (or no weight) as you think it deserves, considering the [witness's [witnesses'] specialized knowledge, skill, experience, training, or education, the facts the expert relied upon, the reasons given for the opinion, and all the other evidence in the case.[26]

[26] Authority: Model Civil Jury Instruction 2.14 (2025 Edition - Last Updated March 2026); *see also* CACI No. 219 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 26: Conflicting Expert Testimony**

If the expert witnesses disagree with one another, you should weigh each opinion against the others. You should examine the reasons given for each opinion and the facts or other matters that each witness relied on. You may also compare the experts' qualifications.[27]

[27] Authority: Authority: CACI No. 221 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 27: Charts and Summaries Not Received in Evidence**

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.[28]

[28] Authority: Model Civil Jury Instruction 2.15 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 28: Charts and Summaries Received in Evidence**

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.[29]

[29] Authority: Model Civil Jury Instruction 2.16 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 29: Party Having Power to Produce Better Evidence**

You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.[30]

[30] Authority: CACI 203 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 30: Failure to Explain or Deny Evidence**

If a party failed to explain or deny evidence against it when it could reasonably be expected to have done so based on what it knew, you may consider its failure to explain or deny in evaluating that evidence. It is up to you to decide the meaning and importance of the failure to explain or deny evidence against the party.[31]

[31] Authority: CACI No. 205 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 31: Willful Suppression of Evidence**

You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party.[32]

[32] Authority: CACI No. 204 (2026 Edition); *see also* Model Civil Jury Instruction 2.10 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 32: Corporations —Fair Treatment**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.[33]

[33] Authority: Model Civil Jury Instruction 4.1 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 33: Wealth of Parties**

In reaching a verdict, you may not consider the wealth or poverty of any party. The parties' wealth or poverty is not relevant to any of the issues that you must decide.[34]

[34] Authority: CACI 117 (2026 Edition).

# II. INSTRUCTIONS AFTER TRIAL

**3DS/Kuester Proposed Instruction No. 34: Duty of Jury**

Members of the jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these jury instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in this case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence (before you). You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.[35]

[35] Authority: Model Civil Jury Instruction 1.4 (2025 Edition - Last Updated March 2026) .

**3DS/Kuester Proposed Instruction No. 35: Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.

Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.[36]

[36] Authority: Model Civil Jury Instruction 3.1 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 36: Consideration of Evidence—Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, (the platform "X" formerly known as) Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.
>
> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed

during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.[37]

[37] Authority: Model Civil Jury Instruction 3.2(2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 37: Evidence in Electronic Format**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer[; and how to print the exhibits]. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any “outside” website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access

to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.[38]

[38] Authority: Model Civil Jury Instruction 2.17 (2025 Edition - Last Updated March 2026) .

**3DS/Kuester Proposed Instruction No. 38 Confidentiality Of Certain Information Shared**

During this trial, you [were] [may have been] presented with evidence that the parties claim constitutes a trade secret or is highly sensitive business information, including but not limited to certain technical information, business strategies, or financial data. This information has been disclosed to you solely for the purpose of deciding this case. You must not share, discuss, or disclose any of this information with anyone outside of your fellow jurors during your deliberations. You are strictly prohibited from using this information for personal gain, professional advantage, or passing it along to any third party.

Furthermore, you must not use or disclose this information after this trial has concluded. Your duty to keep this information secret and secure continues indefinitely, even after the verdict has been rendered and you have been dismissed.

[During trial, the Court has taken certain precautions to prevent public access to certain information, for example by [removing members of the public from the courtroom and sealing the courtroom or ordering that certain exhibits not be publicly displayed to the courtroom]. You are reminded that Intrepid bears the burden of proving all elements of its claim for misappropriation of trade secrets. When evaluating whether Intrepid has satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court took such precautions.[39]

[39] Authority: Adapted from *Masimo Corp. v Apple Inc.*, Case No. 8:20-cv-00048-JVS-JDE (C.D.Cal. May 1, 2023) at ECF 1715, page 6 (Jury Instructions).

**3DS/Kuester Proposed Instruction No. 39: Different Types Of Intellectual Property**

In this case, you have heard about different types of intellectual property rights. Unlike patents, which are public, trade secrets are – as their name suggests – secret. Your role is solely to determine whether 3DS and Kuester misappropriated Intrepid's Alleged Trade Secrets. Intrepid does not allege in this case that 3DS or Kuester have infringed any Intrepid patent and no such issue should be considered by you.

**3DS/Kuester Proposed Instruction No. 40: Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.[40]

[40] Authority: Model Civil Jury Instruction 3.3 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 41: Return of Verdict**

A verdict form has been prepared for you. [*Explain verdict form as needed.*] After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.[41]

[41] Authority: Model Civil Jury Instruction 3.5 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 42: Corporations (and Partnerships) — Fair Treatment**

All parties are equal before the law and a company is entitled to the same fair and conscientious consideration by you as any party.[42]

[42] Authority: Model Civil Jury Instruction 4.1 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 43: Liability of Corporations—Scope of Authority Not in Issue**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.[43]

[43] Authority: Model Civil Jury Instruction 4.2 (2025 Edition - Last Updated March 2026).

**3DS/Kuester Proposed Instruction No. 44: Misappropriation of Trade Secret Claims -Overview**

Intrepid brings two separate claims for misappropriation of trade secrets – one under state law and one under federal law. The state law claim is brought under the California Uniform Trade Secrets Act (CUTSA) and the federal law claim is brought under the Defend Trade Secrets Act (DTSA). Many, but not all, of the elements of these claims are the same. Where they differ, I will instruct you that they are different.

**3DS/Kuester Proposed Instruction No. 45: Misappropriation of Trade Secrets - Introduction**

Intrepid claims that it is the owner of the following information:

(a) edge-blending technology as embodied in a test bed consisting of six 4K-resolution projectors deployed in a specific configuration, with four projectors arranged in a 2X2 formation and projecting downward and two additional projectors facing laterally and being redirected via bounce mirrors. This first alleged trade secret was sometimes referred to during trial, and is referred to in short-hand on the verdict form, as "edge-blending"; ;

(b) a fully-automated self-calibration system as deployed in software and hardware of the above-described 6-projector test bed, which required no manual adjustment (for example, by an optics technician) and no movability or manual flexibility of the projectors themselves. This second alleged trade secret was sometimes referred to during trial, and is referred to in short-hand on the verdict form, as "auto-calibration/6-projector layout";

(c) the following information regarding Intrepid's DLP multiprojection printer, which at the time of Evan Kuester's tour of Intrepid was under development:

(i) the commercial viability of the printer and its technology, which Intrepid claims permitted a customer the ability to use DLP technology for the imaging of large photopolymer parts at a high resolution versus lasers and galvanometer mirrors;

(ii) the anticipated size of the print platform of the printer and number of projectors used by the same;

(iii) Intrepid's ability to customize the build-area, projectors, and other parameters to customer specification;

(iv) the target market for the printer, including the fact that the printer was specifically designed to meet the needs of SpaceX, who specifically commissioned Intrepid to build the first production version of Valkyrie;

(v) the development timeline and anticipated timeline to market for the printer; and

(vi) Intrepid's expectations regarding approximate price to customers of the printer.

This third alleged trade secret was sometimes referred to during trial, and is referred to in short-hand on the verdict form, as specific information about the in-development Valkyrie.

Intrepid claims that the information in (a) through (c) above are trade secrets and that 3DS and Mr. Kuester misappropriated them. "Misappropriation" can include the improper acquisition, use, or disclosure of the alleged trade secrets. Intrepid also claims that 3DS's and/or Mr. Kuester's alleged misappropriation caused it harm or 3DS to be unjustly enriched.

For purposes of these Instructions and the verdict form, the information described in (a) through (c) above will be referred to as the "Alleged Trade Secrets." This is not intended to imply that the information constitutes trade secrets under law. You are instructed that Intrepid bears the burden of proving all elements of its claim for misappropriation of trade secrets, including that the information referred to in (a) through (c) above are trade secrets. When evaluating whether Intrepid has satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court has used this short-hand reference to describe the information Intrepid alleges to be a trade secret, described in (a) through (c) above.

3DS and Mr. Kuester contend that the information is not protectible as trade secrets and that neither of them misappropriated the Alleged Trade Secrets.  3DS and Mr. Kuester also deny that they caused harm to Intrepid or that 3DS was unjustly enriched.[44]

[44] Authority: CACI 4400 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 46: Misappropriation of Trade Secrets—Essential Factual Elements**

Now I will instruct you on the elements of Intrepid's claims for trade secret misappropriation.

Intrepid claims that 3DS and Kuester misappropriated the Alleged Trade Secrets. To succeed on this claim, Intrepid must prove all of the following:

1. That Intrepid owned each of the Alleged Trade secrets;

2. Each of the Alleged Trade Secrets was a trade secret at the time of the misappropriation;

3. That 3DS improperly acquired or used each of the Alleged Trade Secrets and/or that Mr. Kuester improperly acquired and disclosed the Alleged Trade Secret(s);

4. That Intrepid was harmed or that 3DS was unjustly enriched; and

5. That 3DS's acquisition or use and/or Mr. Kuester's acquisition or disclosure of the Alleged Trade Secret(s)was a substantial factor in causing Intrepid's harm or causing 3DS to be unjustly enriched.

In deciding whether the first and second elements have been proven, you should refer to Instructions __, __, and __. In deciding whether the third element has been proven, you should refer to Instructions __, ___, and __. In deciding whether the fourth and fifth elements have been proven, you should refer to Instructions __, ___, and __.

You must consider each one of the Alleged Trade Secrets individually.[45]

[45] Authority: CACI 4401 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 47: Trade Secret Ownership**

To prove ownership of a trade secret, Intrepid must identify the trade secrets and carry the burden of showing they exist. The plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade. A plaintiff must clearly refer to tangible trade secret material rather than referring to a system that potentially qualifies for trade secret protection, and may not simply rely upon catchall phrases or identify categories of trade secrets.[46]

[46] Authority: *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (2020); *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161 (1998)).

**3DS/Kuester Proposed Instruction No. 48: Trade Secrets**

Under CUTSA, to prove that the Alleged Trade Secrets set forth in Instruction No. __ are trade secrets, Intrepid must prove all of the following:

1. That each of the Alleged Trade Secrets were secret;

2. That each of the Alleged Trade Secrets had actual or potential independent economic value because they were secret; and

3. That Intrepid made reasonable efforts to keep each of the Alleged Trade Secrets secret.

You must consider each one of the Alleged Trade Secrets individually.

Under DTSA, to prove that the Alleged Trade Secrets set forth in Instruction No. __ are trade secrets, Intrepid must prove all of the following:

1. That each of the Alleged Trade Secrets were secret;

2. That each of the Alleged Trade Secrets had actual or potential independent economic value because they were secret, or not readily ascertainable through proper means; and

3. That Intrepid made reasonable efforts to keep each of the Alleged Trade Secrets secret.[47]

You must consider each one of the Alleged Trade Secrets individually.

[47] Authority: CACI 4402 (2026 Edition); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) ("the definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret."); 18 U.S.C. § 1839(3).

**3DS/Kuester Proposed Instruction No. 49: Secrecy**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in Intrepid's use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.[48]

[48] Authority: CACI 4403 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 50: Not Readily Ascertainable Through Proper Means**

Under the DTSA, "Readily Ascertainable through proper means" encompasses reverse engineering, independent derivation, and all other lawful methods of obtaining information. This means that if a competitor could lawfully obtain the information — by, for example, purchasing a product and reverse engineering it, independently developing the same information, or finding it in publicly available sources — the information is readily ascertainable through proper means.[49]

[49] Authority: 18 USCA § 1839.

**3DS/Kuester Proposed Instruction No. 51: Reasonable Efforts to Protect Secrecy**

To establish that each of the Alleged Trade Secrets are trade secrets, Intrepid must prove that it made reasonable efforts under the circumstances to keep them secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Intrepid, exercising due care to protect important information of the same kind. This requirement applies separately to each item that Intrepid claims to be a trade secret.

In determining whether or not Intrepid made reasonable efforts to keep the Alleged Trade Secrets secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

a. Whether documents or computer files containing the Alleged Trade Secrets were marked with confidentiality warnings;

b. Whether Intrepid instructed its employees to treat the Alleged Trade Secrets as confidential;

c. Whether Intrepid restricted access to the Alleged Trade Secrets to persons who had a business reason to know the information;

d. Whether Intrepid kept the Alleged Trade Secrets in a restricted or secured area;

e. Whether Intrepid required employees or others with access to the Alleged Trade Secrets to sign confidentiality or nondisclosure agreements;

f. Whether Intrepid took any action to protect the specific Alleged Trade Secrets, or whether it relied on general measures taken to protect its business information or assets; and

g. The extent to which any general measures taken by Intrepid would prevent the unauthorized disclosure of the Alleged Trade Secrets.

The presence or absence of any one or more of these factors is not necessarily determinative.[50]

[50] Authority: CACI 4404 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 52: Independent Economic Value (Explained)**

Information has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether each of the Alleged Trade Secrets had actual or potential independent economic value because it was secret, you may consider the following:

(a) The extent to which Intrepid obtained or could obtain economic value from the Alleged Trade Secrets in keeping them secret;

(b) The extent to which others could obtain economic value from the Alleged Trade Secrets if they were not secret;

(c) The amount of time, money, or labor that Intrepid expended in developing the Alleged Trade Secrets; and

(d) The amount of time, money, or labor that would be saved by a competitor who used the Alleged Trade Secrets.

The presence or absence of any one or more of these factors is not necessarily determinative.[51]

[51] Authority: CACI 4412 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 53: Misappropriation by Acquisition**

Kuester and/or 3DS misappropriated the Alleged Trade Secrets by acquisition if they acquired them and knew or had reason to know that they used improper means to acquire them.

Possession of another's trade secret is not by itself a basis for liability. [52]

[52] Authority: CACI 4405 (2026 Edition); *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 951 (N.D. Cal. 2003) ("In determining what constitutes "use" and "disclosure" of trade secrets in the context of misappropriation, courts have held that mere possession of trade secrets is not sufficient to satisfy this element of the cause of action.") (citing *Gibson–Homans Co. v. Wall–Tite, Inc.*, 1992 WL 512411 (C.D. Cal. Oct. 27, 1992).).

**3DS/Kuester Proposed Instruction No. 54: Misappropriation by Disclosure**

3DS and/or Kuester misappropriated the Alleged Trade Secrets by disclosure if they:

1. disclosed them without Intrepid's consent; and
2. did one of the following:

(i) acquired knowledge of the trade secret by improper means; or

[(ii) at the time of disclosure, knew or had reason to know that its knowledge of Intrepid's Alleged Trade Secret came from or through Kuester, and that Kuester had previously acquired the trade secret by improper means;] or

[(ii) at the time of disclosure, knew or had reason to know that knowledge of the Alleged Trade Secret was acquired under circumstances giving rise to a duty to maintain secrecy, which created a duty to keep the Alleged Trade Secrets secret][53].

[53] Authority: CACI 4406 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 55: Misappropriation by Use**

3D Systems misappropriated the Alleged Trade Secrets if it acquired the Alleged Trade Secrets by improper means and used them without Intrepid's consent.[54]

[54] Authority: CACI 4407 (2026 Edition); *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1669, 3 Cal. Rptr. 3d 279, 286 (2003).

**3DS/Kuester Proposed Instruction No. 56: Improper Means Of Acquiring A Trade Secret**

Improper means of acquiring a trade secret includes, but is not limited to, theft, bribery, misrepresentation, or breach or inducing a breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret by any of the following:

1. Independent efforts to invent or discover the information;

2. Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;

3. Obtaining the information as a result of a license agreement with the owner of the information;

4. Observing the information in public use or on public display; or

5. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.[55]

[55] Authority: CACI 4407 (2026 Edition); *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1669, 3 Cal. Rptr. 3d 279, 286 (2003).

**3DS/Kuester Proposed Instruction No. 57: Imputation**

Knowledge of Intrepid's trade secrets by Mr. Kuester cannot be imputed to 3D Systems. Intrepid has the burden of proving that Mr. Kuester disclosed each of Intrepid's trade secrets to 3D Systems.[56]

[56] Authority: *Droeger v. Welsh Sporting Goods Corp*., 541 F.2d 790, 793 (9th Cir. 1976); *Carr v. AutoNation Inc*., No. 2:17-CV-01539-JAM-AC, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018) ("it is not 'appropriate to direct a jury to impute an agent's knowledge of a secret to the principal'").

**3DS/Kuester Proposed Instruction No. 58: Affirmative Defense—Information Was Readily Ascertainable by Proper Means**

Under CUTSA, Mr. Kuester and 3D Systems did not misappropriate Intrepid's alleged trade secrets if they prove that the Alleged Trade Secrets could have been readily ascertainable by proper means at the time of the alleged misappropriation, regardless of whether they did in fact ascertain the Alleged Trade Secrets by proper means.

There is no fixed standard for determining what could be "readily ascertainable by proper means." In general, information is readily ascertainable if it could be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.[57]

[57] Authority: CACI 4420 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 59: Interstate Commerce**

To prevail on its misappropriation of trade secret claim under the Defend Trade Secrets Act (DTSA), Intrepid may only bring a claim if the Alleged Trade Secrets related to a product or service used in, or intended for use in, interstate or foreign commerce. To establish this, Intrepid must prove: (i) the existence of a relationship tethering (ii) the Alleged Trade Secrets (iii) to a product or service used in, or intended for use in, interstate commerce. The Alleged Trade Secret information itself—not merely Intrepid's general operations or funding sources must be used in, or intended for use in, interstate commerce.

Use or intended use of the Alleged Trade Secret in interstate commerce means that the Alleged Trade Secret involves travel, trade, transportation, or communication between a place in one state and a place in another state or that the Alleged Trade Secret involves travel, trade, transportation, or communication between a place in the United States and a place outside of the United States.[58]

[58] Authority: *Islands Hospice, Inc. v. Duick*, 2019 WL 4620369, at *5 (D. Hawaii Sept. 23, 2019); 18 USC § 1836(b)(1).

**3DS/Kuester Proposed Instruction No. 60: Trade Secret Compensatory Damages**

If you decide that Intrepid has proved its trade secret misappropriation claims against Mr. Kuester, then Intrepid is entitled to recover damages if Mr. Kuester's misappropriation caused Intrepid to suffer an actual loss.

If you decide that Intrepid has proved its trade secret misappropriation claims against 3DS, then Intrepid is entitled to recover damages if 3DS's misappropriation caused Intrepid to suffer an actual loss or 3DS to be unjustly enriched.

If 3DS's misappropriation did not cause Intrepid to suffer an actual loss or to be unjustly enriched, Intrepid may still be entitled to a reasonable royalty from 3DS for no longer than the period of time the use by 3DS could have been prohibited.[59]

[59] Authority: CACI No. 4409 (2026 Edition); 18 U.S.C. § 1836(b)(3)(B)(ii).

**3DS/Kuester Proposed Instruction No. 61: Lost Profits (Economic Damage (Actual Loss)**

To recover damages for lost profits, Intrepid must prove it is reasonably certain it would have earned profits but for 3DS's and/or Kuester's misappropriation of the Alleged Trade Secret(s).

To decide the amount of damages for lost profits, you must determine the gross amount Intrepid would have received but for 3DS's and/or Kuester's conduct and then subtract from that amount all expenses [including the value of the labor, materials, and manufacturing costs] Intrepid would have had if 3DS's and/or Kuester's conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.[60]

[60] Authority: CACI 3903N (2026 Edition). 3DS and Kuester reserve the right to assert that this and other instructions herein concerning lost profits/unjust enrichment/actual damages should be omitted if a reasonable royalty instruction is given. *See Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514 (1997) ("the imposition of a reasonable royalty is reserved for those instances where the court finds that neither actual damages to the holder of the trade secret nor unjust enrichment to the user are provable."); *Cacique, Inc. v. Robert Reiser & Co., Inc.,* 169 F.3d 619 (1999) (holding that "a trade secret plaintiff can recover a reasonable royalty only when both actual damages and unjust enrichment are unprovable.").

**3DS/Kuester Proposed Instruction No. 62: Unjust Enrichment**

3DS was unjustly enriched if its misappropriation of the Alleged Trade Secret(s) caused 3DS to receive a benefit that it otherwise would not have achieved. Intrepid does not seek unjust enrichment damages against Mr. Kuester.

To decide the amount of any unjust enrichment, first determine the value of 3DS's benefit that would not have been achieved except for its misappropriation. Then subtract from that amount 3DS's reasonable expenses, including the value of the labor, materials, rents, and interest on invested capital.

In calculating the amount of any unjust enrichment, do not take into account any amount of damages for Intrepid's lost profits.[61]

[61] Authority: CACI 4410 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 63: Reasonable Royalty**

[As an alternative to damages in the form of actual loss and unjust enrichment,] you may award Intrepid compensatory damages for trade secret misappropriation in the form of a reasonable royalty.[62] If you find that a reasonable royalty should be awarded to Intrepid for misappropriation of the Alleged Trade Secret(s) by 3DS, you may determine the amount of the royalty. Intrepid does not seek a reasonable royalty against Mr. Kuester.

Generally speaking, a reasonable royalty is defined as the reasonable amount that someone wanting to use a trade secret should expect to pay the owner, and the owner should expect to receive, for its use, calculated from the time of the misappropriation to the date of your verdict. Said another way, a reasonable royalty aims to calculate what the parties would have agreed to as a fair licensing price at a time just before the alleged misappropriation occurred.

In this case, the reasonable royalty is the payment that would have resulted from a hypothetical negotiation between Intrepid and 3DS. You should focus on what the expectations of Intrepid and 3DS would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must also assume that both parties believed the information allegedly misappropriated was lawfully protected, and that it was improperly acquired, used, or disclosed by 3DS. In addition, you must assume that Intrepid and 3DS were willing to enter into an agreement.

The measure of damages is the royalty that would have resulted from this hypothetical negotiation, and not simply what royalty either party would have

[62] Under CUTSA, 3DS and Kuester reserve the right to assert the exclusion of actual loss, unjust enrichment and/or reasonable royalty instructions and verdict form questions based on the course of trial. *See Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514 (1997) ("the imposition of a reasonable royalty is reserved for those instances where the court finds that neither actual damages to the holder of the trade secret nor unjust enrichment to the user are provable."); *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619 (1999) (holding that "a trade secret plaintiff can recover a reasonable royalty only when both actual damages and unjust enrichment are unprovable.").

preferred. You should assume that Intrepid was willing to grant 3DS a license to use its Alleged Trade Secrets and that 3DS was willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that Intrepid would consider in setting the amount 3DS would pay and the amount 3DS would have been willing to pay. I will list for you a number of factors which you may consider. This is not intended as an exclusive list of the factors which you may consider, although it will give you an idea of the kinds of things to consider in setting a reasonable royalty. Among the factors which you may find relevant are the following:

1) The resulting and foreseeable change in the parties' competitive posture;

2) The prices past purchasers or licensees of the Alleged Trade Secret(s) that you found were misappropriated may have paid;

3) The total value of the secret to Intrepid, including Intrepid's development costs of the Alleged Trade Secrets that you found were misappropriated and the importance of those Alleged Trade Secret(s) to Intrepid's business;

4) The nature and extent of the use 3DS intended for the Alleged Trade Secret(s) that you found were misappropriated; and finally,

5) Whatever other unique factors in a particular case which might have affected the parties' agreement.[63]

[63] Authority: Closing Jury Instructions, ECF No. 391, *Comet Techs. USA Inc. et al. v. XP Power LLC*, Case No. 5:20-cv-06408-NC (N.D. Cal.).

**3DS/Kuester Proposed Instruction No. 64: Willful and Malicious Misappropriation**

If you find that 3DS and/or Mr. Kuester's misappropriation caused Intrepid's harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Intrepid and to discourage similar conduct in the future. In order to recover punitive damages, Intrepid must prove by clear and convincing evidence that 3DS and/or Mr. Kuester acted willfully and maliciously. You must determine whether 3DS and/or Mr. Kuester acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.

"Willful" means that 3DS and/or Mr. Kuester acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Malicious" means that 3DS and/or Mr. Kuester acted with an intent to cause injury, or that 3DS and/or Mr. Kuester's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. 3DS and/or Mr. Kuester acted with knowing disregard if they were aware of the probable consequences of their conduct and deliberately failed to avoid those consequences.[64]

[64] Authority: CACI No. 4411 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 65: Breach of Contract—Introduction**

Intrepid claims that it and Evan Kuester entered into a Non-Disclosure Agreement.

Intrepid claims that Mr. Kuester breached this contract by disclosing to 3DS the following information of Intrepid that Intrepid claims is confidential:

(1) edge-blending technology as embodied in a test bed consisting of six 4K-resolution projectors deployed in a specific configuration, with four projectors arranged in a 2X2 formation and projecting downward and two additional projectors facing laterally and being redirected via bounce mirrors;

(2) a fully-automated self-calibration system as deployed in software and hardware of the above-described 6-projector test bed, which required no manual adjustment (for example, by an optics technician) and no movability or manual flexibility of the projectors themselves; and

(3) the following information regarding Intrepid's DLP multiprojection printer, which at the time of Evan Kueter's tour of Intrepid was under development:

(i) the commercial viability of the printer and its technology, which Intrepid claims permitted a customer the ability to use DLP technology for the imaging of large photopolymer parts at a high resolution versus lasers and galvanometer mirrors;

(ii) the anticipated size of the print platform of the printer and number of projectors used by the same;

(iii) Intrepid's ability to customize the build-area, projectors, and other parameters to customer specification;

(iv) the target market for the printer, including the fact that the printer was specifically designed to meet the needs of SpaceX, who specifically commissioned Intrepid to build the first production version of Valkyrie;

(v) the development timeline and anticipated timeline to market for the printer; and

(vi) Intrepid's expectations regarding approximate price to customers of the printer.

Intrepid also claims that Kuester's breach of this contract caused harm to Intrepid for which Kuester should pay.

Kuester denies that Intrepid shared certain of the information Intrepid claims was shared with him, denies that the information was confidential under the NDA, and denies that he breached the NDA as to any of the information that forms the basis of Intrepid's claim against him. Mr. Kuester contends that he did not cause Intrepid to suffer damages and that Intrepid did not take reasonable steps to avoid any harm.[65]

[65] Authority: CACI 300 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 66: Contract Formation – Essential Factual Elements**

Intrepid claims that Intrepid and Kuester entered into a contract called a non-disclosure agreement or NDA. To prove that a contract was created, Intrepid must prove all of the following:

1. That the contract terms were clear enough that the parties could understand what each was required to do;
2. That the parties agreed to give each other something of value; and
3. That the parties agreed to the terms of the contract.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions.

If Intrepid did not prove all of the above, then a contract was not created.[66]

[66] Authority: CACI 302 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 67: Breach of Contract – Essential Factual Elements**

To recover damages from Mr. Kuester for breach of contract, Intrepid must prove all of the following:

1. That Intrepid and Mr. Kuester entered into a contract;
2. That Intrepid did all, or substantially all, of the significant things that the contract required it to do;
3. That Mr. Kuester failed to do something that the contract required him to do;
4. That Intrepid was harmed; and
5. That Mr. Kuester's breach of contract was a substantial factor in causing Intrepid's harm.[67]

[67] Authority: CACI 303 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 68: Contract Formation – Offer**

Both an offer and an acceptance are required to create a contract. To prove it made an offer to Mr. Kuester, Intrepid must prove all of the following:

That Intrepid communicated to Mr. Kuester that it was willing to enter into a contract with Mr. Kuester;

1. That the communication contained specific terms; and
2. That, based on the communication, Mr. Kuester could have reasonably concluded that a contract with these terms would result if he accepted the offer.

If Intrepid did not prove all of the above, then a contract was not created.[68]

[68] Authority: CACI 307 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 69: Contract Formation—Acceptance**

Both an offer and an acceptance are required to create a contract. To prove an offer was accepted, Intrepid must prove both of the following:

1. That Mr. Kuester agreed to be bound by the terms of the offer; and
2. That Mr. Kuester communicated his agreement to Intrepid.

If Intrepid did not prove both of the above, then a contract was not created.[69]

[69] Authority: CACI 309 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 70: Interpretation – Meaning of Ordinary Words**

You should assume that the parties intended the words in (their contract) the NDA to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.[70]

[70] Authority: CACI 315 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 71: Breach of Contract – Exclusions**

Mr. Kuester cannot be found to have violated the contract, if the information:

(a) was available to the public prior to the disclosure;

(b) becomes available to the public through no act or omission of Mr. Kuester;

(c) has been or is given to Mr. Kuester by a third party not known by Mr. Kuester after due inquiry to be under any obligation of confidentiality to the Discloser; or,

(d) is developed independently by Mr. Kuester without the use or benefit of the confidential information of the Discloser.[71]

[71] Authority: NDA, Paragraph 5, Exclusions.

**3DS/Kuester Proposed Instruction No. 72: Interpretation—Meaning of Technical Words**

You should assume that the parties intended technical words used in the (contract) NDA to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.[72]

[72] Authority: CACI 316 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 73: Interpretation – Construction of Contract as a Whole**

In deciding what the words of (a contract) the NDA meant to the parties, you should consider the whole (contract) NDA, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.[73]

[73] Authority: CACI 317 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 74: Interpretation—Construction Against Drafter**

In determining the meaning of the words of the (contract) NDA, you must first consider all of the other instructions that I have given you. If, after considering these instructions, you still cannot agree on the meaning of the words, then you should interpret the (contract) NDA against the party that caused the uncertainty.[74]

[74] Authority: CACI 320 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 75: Mitigation of Damages (Breach of Contract)**

If Mr. Kuester breached the contract and the breach caused harm, Intrepid is not entitled to recover damages for harm that Mr. Kuester proves Intrepid could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of Intrepid's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.[75]

[75] Authority: CACI No. 358 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 76: Affirmative Defense To Breach Of Contract – Unclean Hands**

Mr. Kuester has raised as an affirmative defense that Intrepid has come to court with unclean hands. The doctrine of unclean hands is invoked when the defendant proves that the plaintiff has engaged in inequitable, unfair, unconscionable, or deceitful conduct in connection with the same subject matter for which the plaintiff claims a right to damages.

Even if you determine that Intrepid has proven the elements of its claim for breach of contract, you may still reject Intrepid's claim if you determine that Mr. Kuester has proven that Intrepid's conduct has been inequitable, unfair, unconscionable, or deceitful, and resulted in prejudice to Mr. Kuester. Intrepid's misconduct that constitutes unclean hands must be intimately connected with whether Mr. Kuester improperly acquired or disclosed Intrepid's alleged trade secrets in breach of the NDA.[76]

---

[76] Authority: *Cal-Agrex, Inc. v. Tassell*, 258 F.R.D. 340, 348 (N.D. Cal. 2009), aff'd, 408 F. App'x 58 (9th Cir. 2011) ("unclean hands is available as an affirmative defense to a contract claim under California law"); *Kendall–Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 90 (2000); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957 (N.D. Cal. May 17, 2013), aff'd, 609 F. App'x 497 (9th Cir. 2015).

**3DS/Kuester Proposed Instruction No. 77: Introduction to Contract Damages**

If you decide that Intrepid has proved its claim against Mr. Kuester for breach of contract, you also must decide how much money will reasonably compensate Intrepid for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Intrepid in as good a position as it would have been had Mr. Kuester performed as promised.

To recover damages for any harm, Intrepid must prove that when the contract was made, both Intrepid and Mr. Kuester knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of (the) contract.

Intrepid also must prove the amount of its damages according to the following instructions. _It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.[77]

[77] Authority: CACI 350 (2026 Edition).

**3DS/Kuester Proposed Instruction No. 78: Lost Profits/Actual Loss (Breach of Contract Claim)**

To recover damages for lost profits, Intrepid must prove it is reasonably certain it would have earned profits but for Kuester's (conduct) breach of contract.

To decide the amount of damages for lost profits, you must determine the gross amount Intrepid would have received but for Kuester's breach and then subtract from that amount (the) all expenses including the value of the labor, materials, and manufacturing costs Intrepid would have had if Kuester's (conduct) breach had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.[78]

[78] Authority: CACI 3903N (2026 Edition).

DATED: July 1, 2026

**HUNTON ANDREWS KURTH LLP**

By: /s/ Emily Burkhardt Vicente
Emily Burkhardt Vicente
Roland M. Juarez
D. Andrew Quigley
Attorneys for Plaintiff/Counter-Defendant, 3D SYSTEMS, INC. and Third-Party Defendant EVAN KUESTER