# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3D SYSTEMS, INC., a California Corporation;<br>Plaintiff,<br>v.<br>BEN WYNNE, an individual; CHRIS TANNER, an individual; JAMIE ETCHESON, an individual; ROBERT MUELLER, an individual; IVAN CHOUSAL, an individual; INTREPID AUTOMATION, a California Corporation; and DOES 1 through 20, inclusive,<br>Defendants. | Case No.: 3:21-cv-01141-AGS-DDL<br><br>**JOINT AGREED AND DISPUTED PROPOSED JURY INSTRUCTIONS**<br><br>**Hon. Andrew G. Schopler**<br>**Courtroom 5C** |
| INTREPID AUTOMATION,<br>Counter-Claimant,<br>v.<br>3D SYSTEMS, and DOES 1-50, inclusive,<br>Counter-Defendant. | |
| INTREPID AUTOMATION,<br>Third Party Claimant,<br>v.<br>EVAN KEUSTER, and ROES 1-50, inclusive,<br>Third Party Defendant. | |

## I. PRELIMINARY INSTRUCTIONS

**Agreed Proposed Instruction No. 1: Duty of Jury (Court Reads Instructions at the Beginning of Trial but Does Not Provide Written Copies)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. ~~You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected, and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.~~

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.[1]

[1] Model Civil Jury Instruction 1.2 (2025 Edition - Last Updated March 2026).

**Disputed Proposed Instruction No. 2: Claims and Defenses**

**<u>Intrepid's Proposal:</u>**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

~~The~~ Intrepid asserts that Evan Kuester breached a non-disclosure agreement with Intrepid. Intrepid also claims that 3DS and Kuester misappropriated the following information which Intrepid asserts are trade secrets: (i) information regarding the DLP Multiprojection Test Bed, a machine with six projectors that successfully demonstrated Intrepid's edge-blending technology and multiprojection calibration techniques for use in 3D printing; and (ii) information regarding the In-Process Development of the Valkyrie 3D printer.

The plaintiff has the burden of proving these claims.

~~The defendant~~ Defendants ~~denies~~ deny those claims ~~[and also contends that [*defendant's counterclaims and/or affirmative defenses*]]. [The defendant has the burden of proof on these [*counterclaims and/or affirmative defenses.*]]~~

~~[The plaintiff denies [*defendant's counterclaims and/or affirmative defenses*].]~~[2]

**<u>[3DS and Kuester's Proposal on next page]</u>**

[2] Adopted from Model Civil Jury Instruction 1.5 (2025 Edition - Last Updated March 2026).

**3DS and Kuester's Proposal:**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

~~The plaintiff [*name*] asserts that [*plaintiff's claims*].~~ Intrepid claims that 3D Systems and Evan Kuester misappropriated the following information which Intrepid asserts are trade secrets:

(1) edge-blending technology as embodied in a test bed consisting of six 4K-resolution projectors deployed in a specific configuration, with four projectors arranged in a 2X2 formation and projecting downward and two additional projectors facing laterally and being redirected via bounce mirrors. This first alleged trade secret will sometimes be referred to in short-hand as "edge-blending";

(2) a fully-automated self-calibration system as deployed in software and hardware of the above-described 6-projector test bed, which required no manual adjustment (for example, by an optics technician) and no movability or manual flexibility of the projectors themselves. This second alleged trade secret will sometimes be referred to in short-hand as "auto-calibration/6-projector layout"; and

(3) the following information regarding Intrepid's DLP multiprojection printer system, Valkyrie, which at the time of Evan Kuester's tour of Intrepid was under development::

(i) the commercial viability of the printer and its technology, which Intrepid claims permitted a customer the ability to use DLP technology for the imaging of large photopolymer parts at a high resolution versus lasers and galvanometer mirrors;

(ii) the anticipated size of the print platform of the printer and number of projectors used by the same;

(iii) Intrepid's ability to customize the build-area, projectors, and other parameters to customer specification;

(iv) the target market for the printer, including the fact that the printer was specifically designed to meet the needs of SpaceX, who specifically commissioned Intrepid to build the first production version of Valkyrie;

(v) the development timeline and anticipated timeline to market for the printer; and

(vi) Intrepid's expectations regarding approximate price to customers of the printer.

This third alleged trade secret will sometimes be referred to in short-hand as specific information about the in-development Valkyrie.

For purposes of these instructions the information described in (a) through (c) above is referred to in short-hand as the "Alleged Trade Secrets". This is not intended to imply that the information constitutes trade secrets under law. You are instructed that Intrepid bears the burden of proving all elements of its claim for misappropriation of trade secrets, including that the information referred to in (a) through (c) above are trade secrets. When evaluating whether Intrepid has satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court has used this short-hand reference to describe the information Intrepid alleges to be a trade secret, described in (a) through (c) above.

Intrepid also asserts that Mr. Kuester breached a non-disclosure agreement with Intrepid by disclosing this same information to 3DS.

~~The plaintiff~~ Intrepid has the burden of proving these claims.

The defendant [*name*] 3DS and Mr. Kuester denies those claims [and also contends that [*defendant's counterclaims and/or affirmative defenses*]]. [The defendant [name] has the burden of proof on these [*counterclaims and/or affirmative defenses*.]] deny that either of them misappropriated any trade secrets. They dispute that Intrepid shared all of the information with Mr. Kuester that Intrepid claims to have shared. Mr. Kuester and 3DS also dispute that the information Intrepid claims it shared with Mr. Kuester was confidential or trade secrets of Intrepid. 3DS and Kuester allege that the Information Intrepid alleges they misappropriated was generally known in the field or were readily ascertainable by proper means. They also contend that any device in which Intrepid claims 3DS used Intrepid's Alleged Trade Secrets was independently developed. Mr. Kuester also denies that he breached an NDA with Intrepid concerning this same information. 3DS and Mr. Kuester also contend that they did not cause damages to Intrepid.[3]

[The plaintiff [*name*] has the burden of proof on these [*counterclaims and/or affirmative defenses*.]])

[3] Authority: Adopted from Model Civil Jury Instruction 1.5 (2025 Edition - Last Updated March 2026); *see also* ECF 885-14 (Intrepid's Amended Supplemental Response to Kuester's Rog 1); ECF 885 (3DS & Kuester's Omnibus Motion in Limine).

**Agreed Proposed Instruction No. 3: Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.[4]

[4] Model Civil Jury Instruction 1.6 (2025 Edition - Last Updated March 2026).

**Disputed Proposed Instruction No. 4: Burden of Proof – Clear and Convincing Evidence (3DS and Kuester Only)**

**Intrepid's Proposal:**

*No instruction is necessary because the jury will determine all elements by the preponderance of the evidence.*

**3DS and Kuester's Proposal:**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.[5]

[5] Authority: Model Civil Jury Instruction 1.7 (2025 Edition - Last Updated March 2026). *See also* CACI No. 4411 (2026 Edition).

**Agreed Proposed Instruction No. 5: Two or More Parties—Different Legal Rights**

You should decide the case as to each ~~[plaintiff] [defendant] [~~party~~]~~ separately. Unless otherwise stated, the instructions apply to all parties.[6]

[6] Authority: Model Civil Jury Instructions 1.8 (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 6: What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I [may instruct] [have instructed] you to accept as proved.[7]

[7] Model Civil Jury Instruction 1.9 (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 7: What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.[8]

[8] Model Civil Jury Instruction 1.10 (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 8: Evidence for Limited Purpose**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.[9]

~~[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and not for any other purpose.]~~

[9] Model Civil Jury Instruction 1.11 (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 9: Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.[10]

[10] Model Civil Jury Instruction 1.12 and Cmt (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 10: Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.[11]

[11] Model Civil Jury Instruction 1.13 (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 11: Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember.

Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.[12]

[12] Model Civil Jury Instruction 1.14 (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 12: Conduct of the Jury**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached

> in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.
>
> Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information

not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings ~~[, and a mistrial could result, requiring the entire trial process to start over]~~. If any juror is exposed to any outside information, please notify the court immediately, by sending a note through the [clerk] [bailiff] signed by any one or more of you.[13]

[13] Model Civil Jury Instruction 1.15 (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 13: Publicity During Trial**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.[14]

[14] Model Civil Jury Instruction 1.16 (2025 Edition - Last Updated March 2026).

**Disputed Proposed Instruction No. 14: Confidentiality of Certain Information Shared**

**Intrepid's Proposal:**

During this trial, you [may be] presented with evidence that the parties claim constitutes a trade secret or is highly sensitive business information, including but not limited to certain technical information, business strategies, or financial data. This information has been disclosed to you solely for the purpose of deciding this case. You must not share, discuss, or disclose any of this information with anyone outside of your fellow jurors during your deliberations. You are strictly prohibited from using this information for personal gain, professional advantage, or passing it along to any third party.

Furthermore, you must not use or disclose this information after this trial has concluded. Your duty to keep this information secret and secure continues indefinitely, even after the verdict has been rendered and you have been dismissed.

**3DS and Kuester's Proposal:**

During this trial, you [may be] presented with evidence that the parties claim constitutes a trade secret or is highly sensitive business information, including but not limited to certain technical information, business strategies, or financial data. This information has been disclosed to you solely for the purpose of deciding this case. You must not share, discuss, or disclose any of this information with anyone outside of your fellow jurors during your deliberations. You are strictly prohibited from using this information for personal gain, professional advantage, or passing it along to any third party.

Furthermore, you must not use or disclose this information after this trial has concluded. Your duty to keep this information secret and secure continues indefinitely, even after the verdict has been rendered and you have been dismissed.

During trial, the Court may take certain precautions to prevent public access to certain information, for example by [removing members of the public from the courtroom and sealing the courtroom or ordering that certain exhibits not be publicly displayed to the courtroom]. You are instructed that Intrepid bears the burden of proving all elements of its claim for misappropriation of trade secrets. When evaluating whether Intrepid has satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court took such precautions.[15]

---

[15] Authority: Adapted from *Masimo Corp. v Apple Inc.*, Case No. 8:20-cv-00048-JVS-JDE (C.D. Cal. May 1, 2023) at ECF 1715, page 6 (Jury Instructions). The parties note that they are only in disagreement as to 3DS and Kuester's third paragraph.

**Agreed Proposed Instruction No. 15: No Transcript Available to Jury**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.[16]

[16] Model Civil Jury Instruction 1.17 (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 16: Taking Notes**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.[17]

[17] Model Civil Jury Instruction 1.18 (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 17: Questions to Witnesses by Jurors During Trial**[18]

(*Option 1*)

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. ~~*[Specific reasons for not allowing jurors to ask questions may be explained.]*~~ If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

(*Option 2*)

~~When attorneys have finished their examination of a witness, you may ask questions of the witness. [Describe procedure to be used.] If the rules of evidence do not permit a particular question, I will advise you. After your questions, if any, the attorneys may ask additional questions.~~

[18] Model Civil Jury Instruction 1.19, Option No. 1 (2025 Edition - Last Updated March 2026)

**Agreed Proposed Instruction No. 18: Bench Conferences and Recesses**

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.[19]

[19] Model Civil Jury Instruction 1.20 (2025 Edition - Last Updated March 2026)

**Agreed Proposed Instruction No. 19: Outline of Trial**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendants may cross-examine.

Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.[20]

[20] Model Civil Jury Instruction 1.21 (2025 Edition - Last Updated March 2026)

## II. INSTRUCTIONS IN THE COURSE OF TRIAL

**Agreed Proposed Instruction No. 20: Cautionary Instructions**

***At the End of Each Day of the Case:***

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

***At the Beginning of Each Day of the Case:***

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. ~~To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.~~

~~[~~ALTERNATIVE 1 (in open court): if you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.~~]~~

~~[ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or shared any information about this case outside of this courtroom? . . . Thank you for your careful adherence to my instructions.]~~[21]

[21] Model Civil Jury Instruction 2.1 (Alternative 1) (2025 edition).

**Agreed Proposed Instruction No. 21: Stipulations of Fact**[22]

The parties have agreed to certain facts ~~[to be placed in evidence as Exhibit ] [~~that will be read to you~~]~~. You must therefore treat these facts as having been proved.

[22] Model Civil Jury Instruction 2.3 (2025 edition).

**Disputed Proposed Instruction No. 22: Judicial Notice (If Applicable)**

**Intrepid's Proposal:**

The court has decided to accept as proved the facts that ~~[state fact]~~:

1. On May 19, 2021, 3DS sued Intrepid and its founders for, among other things, misappropriation of 3DS's alleged trade secret in DLP multiprojection edge-blending and projector calibration techniques and breach of the confidentiality and non-disclosure agreement in Intrepid's founders' employment agreement(s) with 3DS.

2. On September 1, 2022, Intrepid filed counterclaims against 3DS and third-party claims against Kuester alleging, among other things, that Kuester breached an NDA with Intrepid and that 3DS and Kuester misappropriated Interpid's trade secret, including in the in-process development of the Valkyrie 3D printer.

3. On March 20, 2025, the Court dismissed 3DS's trade secret misappropriation claims against Intrepid and its founders, finding that 3DS had failed to carry its burden to sufficiently identify any trade secret and show that it exists, further, the Court dismissed 3DS's breach of contract claim finding that the confidentiality and non-disclosure agreement(s) were not enforceable and/or inapplicable.

You must accept ~~this~~ these facts as true.[23]

**3DS and Kuester's Proposal:**

*This instruction is unnecessary and premature, as no motion has been made seeking judicial notice and the Court has not granted judicial notice of any items. Also, 3DS and Kuester have filed a Motion in Limine seeking to exclude some or all of these statements. Any requests for judicial notice should be raised and ruled on at trial.*

[23] Model Civil Jury Instruction 2.3 (2025 Edition - Last Updated March 2026)

**Agreed Proposed Instruction No. 23: Deposition in Lieu of Live Testimony**[24]

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. [When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.]

The deposition of [*name of witness*] was taken on [*date*]. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

[24] Model Civil Jury Instruction 2.5 (2025 edition).

**Agreed Proposed Instruction No. 24: Use of Interrogatories**[25]

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

[25] Model Civil Jury Instruction 2.12 (2025 Edition - Last Updated March 2026)

**Agreed Proposed Instruction No. 25: Use of Requests for Admission (If Applicable)[26]**

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

[26] Model Civil Jury Instruction 2.13 (2025 Edition - Last Updated March 2026)

**Agreed Proposed Instruction No. 26: Expert Opinion Testimony**

You [have heard] [are about to hear] testimony from [*name*] who [testified] [will testify] about ~~[his] [her] [*other pronoun*]~~ their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of ~~this witness~~these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the ~~witness's~~ witnesses' specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.[27]

[27] Model Civil Jury Instruction 2.14 (2025 Edition - Last Updated March 2026)

**Disputed Proposed Instruction No. 27: Conflicting Expert Testimony**

**<u>Intrepid's Proposal:</u>**

*This instruction is not necessary.*

**<u>3DS and Kuester's Proposal:</u>**

If the expert witnesses disagree~~d~~ with one another, you should weigh each opinion against the others. You should examine the reasons given for each opinion and the facts or other matters that each witness relied on. You may also compare the experts' qualifications.[28]

[28] Authority: CACI No. 221 (2026 Edition).

**Agreed Proposed Instruction No. 28: Charts and Summaries Not Received in Evidence**[29]

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

[29] Model Civil Jury Instruction 2.15 (2025 Edition - Last Updated March 2026)

**Agreed Proposed Instruction No. 29: Charts and Summaries Received in Evidence**[30]

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

[30] Model Civil Jury Instruction 2.16 (2025 Edition - Last Updated March 2026)

## III. INSTRUCTIONS AFTER TRIAL

**Agreed Proposed Instruction No. 30: Party Having Power to Produce Better Evidence[31]**

You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.

[31] CACI 203 (2026 Edition).

**Disputed Proposed Instruction No. 31: Failure to Explain or Deny Evidence**

**<u>Intrepid's Proposal:</u>**

*This instruction is not necessary*

**<u>3DS and Kuester's Proposal:</u>**

If a party failed to explain or deny evidence against ~~[him/her/*nonbinary pronoun*/~~it~~]~~ when ~~[he/she/*nonbinary pronoun*/~~it~~]~~ could reasonably be expected to have done so based on what ~~[he/she/*nonbinary pronoun*/~~it~~]~~ knew, you may consider its failure to explain or deny in evaluating that evidence. It is up to you to decide the meaning and importance of the failure to explain or deny evidence against the party.[32]

[32] Authority: CACI No. 205 (2026 Edition).

**Disputed Proposed Instruction No. 32: Failure to Call Available Witness**

**Intrepid's Proposal:**

If a party fails to call a person as a witness who has knowledge about the facts in issue, and who is reasonably available to the party, and who is not equally available to the other party, then you may infer that the testimony of that person is unfavorable to the party who could have called the witness and did not.[33]

**3DS and Kuester's Proposal:**

*This instruction is unnecessary and inapplicable to this case and is not based on any relevant model instruction.*

[33] 3 Fed. Jury Prac. & Instr. § 104:25.

**Disputed Proposed Instruction No. 33: Willful Suppression of Evidence**

**<u>Intrepid's Proposal:</u>**

*This instruction is unnecessary.*

**<u>3DS and Kuester's Proposal:</u>**

You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party.[34]

~~The evidence that a witness [*e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.*] may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.~~

[34] Authority: CACI No. 204 (2026 Edition); *see also* Model Civil Jury Instruction 2.10 (2025 Edition - Last Updated March 2026). The version presented is the CACI instruction. The redlined version is the Model Civil Instruction.

**Disputed Proposed Instruction No. 34: Corporations – Fair Treatment**

**<u>Intrepid's Proposal:</u>**

*This instruction is unnecessary because it is duplicative of another instruction offered by 3DS and Kuester.*

**<u>3DS and Kuester's Proposal:</u>**

All parties are equal before the law and a ~~[~~<u>corporation</u>~~] [partnership]~~ is entitled to the same fair and conscientious consideration by you as any party.[35]

[35] Authority: Model Civil Jury Instruction 4.1 (2025 Edition - Last Updated March 2026).

**Disputed Proposed Instruction No. 35: Wealth of Parties**

**<u>Intrepid's Proposal:</u>**

*3DS and Kuester's Proposed Instruction is a misstatement of the law. The wealth or poverty of Intrepid and 3DS is relevant to at least the calculation of a reasonable royalty and damages for willful and malicious misappropriation.*

**<u>3DS and Kuester's Proposal:</u>**

In reaching a verdict, you may not consider the wealth or poverty of any party. The parties' wealth or poverty is not relevant to any of the issues that you must decide.[36]

[36] Authority: CACI 117 (2026 Edition).

**Agreed Proposed Instruction No. 36: Duty of Jury**

Members of the jury: Now that you have heard all of the evidence ~~[~~and the arguments of the attorneys~~]~~, it is my duty to instruct you on the law that applies to this case.

~~[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]~~

~~*or*~~

[A copy of these jury instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in ~~the~~ this case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence ~~before you~~. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.[37]

[37] Authority: Model Civil Jury Instruction 1.4 (2025 Edition - Last Updated March 2026).

**Agreed Proposed Instruction No. 37: Duty to Deliberate**[38]

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

[38] Model Civil Jury Instruction 3.1 (2025 Edition - Last Updated March 2026)

**Agreed Proposed Instruction No. 38: Consideration of Evidence—Conduct of the Jury**[39]

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties,

[39] Model Civil Jury Instruction 3.2 (2025 Edition - Last Updated March 2026)

the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

**Agreed Proposed Instruction No. 39: Evidence in Electronic Format**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer~~; and how to print the exhibits~~. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such

materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.[40]

[40] Authority: Model Civil Jury Instruction 2.17 (2025 Edition - Last Updated March 2026).

**Disputed Proposed Instruction No. 40: Confidentiality Of Certain Information Shared**

**<u>Intrepid's Proposal:</u>**

During this trial, you [were] [may have been] presented with evidence that the parties claim constitutes a trade secret or is highly sensitive business information, including but not limited to certain technical information, business strategies, or financial data. This information has been disclosed to you solely for the purpose of deciding this case. You must not share, discuss, or disclose any of this information with anyone outside of your fellow jurors during your deliberations. You are strictly prohibited from using this information for personal gain, professional advantage, or passing it along to any third party.

Furthermore, you must not use or disclose this information after this trial has concluded. Your duty to keep this information secret and secure continues indefinitely, even after the verdict has been rendered and you have been dismissed.

**<u>3DS and Kuester's Proposal:</u>**

During this trial, you [were] [may have been] presented with evidence that the parties claim constitutes a trade secret or is highly sensitive business information, including but not limited to certain technical information, business strategies, or financial data. This information has been disclosed to you solely for the purpose of deciding this case. You must not share, discuss, or disclose any of this information with anyone outside of your fellow jurors during your deliberations. You are strictly prohibited from using this information for personal gain, professional advantage, or passing it along to any third party.

Furthermore, you must not use or disclose this information after this trial has concluded. Your duty to keep this information secret and secure continues indefinitely, even after the verdict has been rendered and you have been dismissed.

[During trial, the Court has taken certain precautions to prevent public access to certain information, for example by [removing members of the public from the courtroom and sealing the courtroom or ordering that certain exhibits not be publicly displayed to the courtroom]. You are reminded that Intrepid bears the burden of proving all elements of its claim for misappropriation of trade secrets. When evaluating whether Intrepid has satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court took such precautions.[41]

[41] Authority: Adapted from *Masimo Corp. v Apple Inc.*, Case No. 8:20-cv-00048-JVS-JDE (C.D.Cal. May 1, 2023) at ECF 1715, page 6 (Jury Instructions). The parties note that they are only in disagreement as to 3DS and Kuester's third paragraph.

**Disputed Proposed Instruction No. 41: Different Types Of Intellectual Property**

**<u>Intrepid's Proposal:</u>**

*This instruction is unnecessary and confusing.*

**<u>3DS and Kuester's Proposal:</u>**

In this case, you have heard about different types of intellectual property rights. Unlike patents, which are public, trade secrets are – as their name suggests – secret. Your role is solely to determine whether 3DS and Kuester misappropriated Intrepid's Alleged Trade Secrets. Intrepid does not allege in this case that 3DS or Kuester have infringed any Intrepid patent and no such issue should be considered by you.

**Agreed Proposed Instruction No. 42: Communication with Court[42]**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

[42] Model Civil Jury Instruction 3.3 (2025 Edition - Last Updated March 2026)

**Agreed Proposed Instruction No. 43: Return of Verdict**[43]

A verdict form has been prepared for you. [Explain verdict form as needed.] After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

[43] Model Civil Jury Instruction 3.5 (2025 Edition - Last Updated March 2026)

**Agreed Proposed Instruction No. 44: Corporations and Partnerships—Fair Treatment**[44]

All parties are equal before the law and a company [corporation] [partnership] is entitled to the same fair and conscientious consideration by you as any party.

[44] Model Civil Jury Instruction 4.1 (2025 Edition - Last Updated March 2026)

**Agreed Proposed Instruction No. 45: Liability of Corporations—Scope of Authority Not in Issue**[45]

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

[45] Model Civil Jury Instruction 4.2 (2025 Edition - Last Updated March 2026)

## IV. Trade Secret Related Instructions

**Disputed Proposed Instruction No. 46: Misappropriation of Trade Secret Claims - Overview**

**Intrepid's Proposal:**

*The proposed instruction is unnecessary and does not come from any model instructions. Intrepid submits that the jury does not need to be instructed on the differences between DTSA and CUTSA given that the elements are "substantially similar," other than the interstate commerce requirement of the DTSA. InteliClear, LLC v. Etc Global Holdings, Inc.*, 978 F.3d 653, 657 (2020).

**3DS and Kuester's Proposal:**

Intrepid brings two separate claims for misappropriation of trade secrets – one under state law and one under federal law. The state law claim is brought under the California Uniform Trade Secrets Act (CUTSA) and the federal law claim is brought under the Defend Trade Secrets Act (DTSA). Many, but not all, of the elements of these claims are the same. Where they differ, I will instruct you that they are different.[46]

[46] 3DS and Kuester contend there are certain material differences between DTSA and CUTSA claims that may impact the juries deliberations and verdict.

**Disputed Proposed Instruction No. 47: Misappropriation of Trade Secrets Introduction**

**<u>Intrepid's Proposal:</u>**

*The proposed instruction misstates Intrepid's trade secrets, is overly complicated and likely to confuse the jury, and is unnecessary. It also bears little resemblance to the model instruction it purports to be.*

**<u>3DS and Kuester's Proposal:</u>**

~~[*Name of plaintiff*]~~ Intrepid claims that ~~[he/she/*nonbinary pronoun*/~~it~~]~~ ~~[~~is~~/was]~~ the ~~[~~owner~~/licensee]~~ of ~~[*insert general description of alleged trade secret[s]*]~~ the following information:

(a) edge-blending technology as embodied in a test bed consisting of six 4K-resolution projectors deployed in a specific configuration, with four projectors arranged in a 2X2 formation and projecting downward and two additional projectors facing laterally and being redirected via bounce mirrors. This first alleged trade secret was sometimes referred to during trial, and is referred to in short-hand on the verdict form, as "edge-blending"; ;

(b) a fully-automated self-calibration system as deployed in software and hardware of the above-described 6-projector test bed, which required no manual adjustment (for example, by an optics technician) and no movability or manual flexibility of the projectors themselves. This second alleged trade secret was sometimes referred to during trial, and is referred to in short-hand on the verdict form, as "auto-calibration/6-projector layout";

(c) the following information regarding Intrepid's DLP multiprojection printer, which at the time of Evan Kuester's tour of Intrepid was under development:

(i) the commercial viability of the printer and its technology, which Intrepid claims permitted a customer the ability to use DLP technology for the imaging of large photopolymer parts at a high resolution versus lasers and galvanometer mirrors;

(ii) the anticipated size of the print platform of the printer and number of projectors used by the same;

(iii) Intrepid's ability to customize the build-area, projectors, and other parameters to customer specification;

(iv) the target market for the printer, including the fact that the printer was specifically designed to meet the needs of SpaceX, who specifically commissioned Intrepid to build the first production version of Valkyrie;

(v) the development timeline and anticipated timeline to market for the printer; and

(vi) Intrepid's expectations regarding approximate price to customers of the printer.

This third alleged trade secret was sometimes referred to during trial, and is referred to in short-hand on the verdict form, as specific information about the in-development Valkyrie.

[*Name of plaintiff*] Intrepid claims that [this/these] [*select short term to describe, e.g., information*] [is/the information in (a) through (c) above are] [a] trade secret[s] and that [*name of defendant*] 3DS and Mr. Kuester misappropriated [it/them].

"Misappropriation" means can include the improper [acquisition/, use/ , [or] disclosure] of the alleged trade secret[s].

[*Name of plaintiff*]Intrepid also claims that [*name of defendant*]3DS's and/or Mr. Kuester's alleged misappropriation caused [[him/her/*nonbinary pronoun*/it] harm/ [ or] [*name of defendant*]3DS to be unjustly enriched].

For purposes of these Instructions and the verdict form, the information described in (a) through (c) above will be referred to as the "Alleged Trade Secrets." This is not intended to imply that the information constitutes trade secrets under law. You are instructed that Intrepid bears the burden of proving all elements of its claim for misappropriation of trade secrets, including that the information referred to in (a) through (c) above are trade secrets. When evaluating whether Intrepid has satisfied this burden, you are not permitted to take into account, or consider in any way, the fact that the Court has used this short-hand reference to describe the information Intrepid alleges to be a trade secret, described in (a) through (c) above.

[*Name of defendant*] denies [*insert denial of any of the above claims*].

[[*Name of defendant*] also claims [*insert affirmative defenses*].]

3DS and Mr. Kuester contend that the information is not protectible as trade secrets and that neither of them misappropriated the Alleged Trade Secrets. 3DS and Mr. Kuester also deny that they caused harm to Intrepid or that 3DS was unjustly enriched.[47]

[47] Authority: CACI 4400 (2026 Edition).

**Disputed Proposed Instruction No. 48: Misappropriation of Trade Secrets—Essential Factual Elements**

**Intrepid's Proposal:**

Now I will instruct you on the elements of Intrepid's claims for trade secret misappropriation.

[*Name of plaintiff*]Intrepid claims that 3DS and Kuester[*name of defendant*] has misappropriated a its trade secrets. To succeed on this claim, [*name of plaintiff*]Intrepid must prove all of the following:

1. That [*name of plaintiff*]Intrepid [owned/was a licensee of] [the following:] [*describe each item claimed to be a trade secret tha tis subject to the misappropriation claim*] the following information which Intrepid asserts are trade secrets: (i) information regarding the DLP Multiprojection Test Bed, a machine with six projectors that successfully demonstrated Intrepid's edge-blending technology and multiprojection calibration techniques for use in 3D printing; and (ii) information regarding the In-Process Development of the Valkyrie 3D printer;

2. That [this/these] [select short term to describe, e.g., information] was [a] trade secret[s] at the time of the misappropriation;

3. That 3DS and/or Kuester[*name of defendant*] improperly [acquired/, used/ , [or] disclosed] the trade secret[s];

4. That [[*name of plaintiff*]Intrepid was harmed/ [or] 3DS and/or Kuester[*name of defendant*] was were unjustly enriched; and

5. That 3DS and/or Kuester[*name of defendant*]'s [acquisition, /use./ [or] disclosure] was a substantial factor in causing [*name of plaintiff*]Intrepid's harm/ [or] 3DS and/or Kuester to be unjustly enriched].

In deciding whether the first and second elements have been proven, you should refer to Instructions __, __, and __. In deciding whether the third element has been proven, you should refer to Instructions __, ___, and __. In deciding whether the fourth and fifth elements have been proven, you should refer to Instructions __, ___, and __.[48] [49]

**3DS and Kuester's Proposal:**

Now I will instruct you on the elements of Intrepid's claims for trade secret misappropriation.

[*Name of plaintiff*] Intrepid claims that [*name of defendant*] 3DS and Kuester has misappropriated the Alleged Trade Secretsa trade secret. To succeed on this claim, [*name of plaintiff*] Intrepid must prove all of the following:

1. That [*name of plaintiff*]Intrepid [owned/was a licensee of] [the following:][*describe each item claimed to be a trade secret that is subject to the misappropriation claim*] each of the Alleged Trade Secrets;

2. That [this/these] [select short term to describe, e.g., information]

[48] The elements of a claim of trade-secret misappropriation under the California Uniform Trade Secrets Act are "substantially similar" to those under the Defend Trade Secrets Act, except the "interstate commerce" element does not apply. *InteliClear, LLC v. Etc Global Holdings, Inc.*, 978 F.3d 653, 657 (2020).

[49] CACI 4401 (2026 Edition).

[Each of the Alleged Trade Secrets was/were] [ a] trade secret[s] at the time of the misappropriation;

3. That [*name of defendant*]3DS improperly [acquired/ or used/ [or] disclosed] each of the Alleged trade Trade secretSecret[s] and/or that Mr. Kuester improperly acquired and disclosed the Alleged Trade Secret(s);

4. That [[*name of plaintiff*]Intrepid was harmed/ [ or] [*name of defendant*]3DS was unjustly enriched]; and

5. That [*name of defendant*]3DS's [acquisition/ or use/ [and/or] Mr. Kuester's acquisition or disclosure] of the Alleged Trade Secret(s) was a substantial factor in causing [[*name of plaintiff*]Intrepid's harm/ [ or] [*name of defendant*]causing 3DS to be unjustly enriched].

In deciding whether the first and second elements have been proven, you should refer to Instructions __, __, and __. In deciding whether the third element has been proven, you should refer to Instructions __, ___, and __. In deciding whether the fourth and fifth elements have been proven, you should refer to Instructions __, ___, and __.

You must consider each one of the Alleged Trade Secrets individually. [50]

[50] Authority: CACI 4401 (2026 Edition).

**Disputed Proposed Instruction No. 49: Trade Secret Ownership**

**Intrepid's Proposal:**

*This instruction is unnecessary. Alternatively, Intrepid proposes the following:*

In articulating a trade secret, it is not enough for Intrepid to point to broad areas of technology. Instead, it is Intrepid's burden to identify concrete information that it contends to constitute its alleged trade secrets.[51]

**3DS and Kuester's Proposal:**

To prove ownership of a trade secret, Intrepid must identify the trade secrets and carry the burden of showing they exist. The plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade. A plaintiff must clearly refer to tangible trade secret material rather than referring to a system that potentially qualifies for trade secret protection, and may not simply rely upon catchall phrases or identify categories of trade secrets.[52]

[51] Closing Jury Instructions, ECF No. 391, *Comet Techs. USA Inc. et al. v. XP Power LLC*, Case No. 5:20-cv-06408-NC (N.D. Cal.) (Instruction 15)

[52] Authority: *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653 (2020); *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161 (1998)).

**Disputed Proposed Instruction No. 50: Trade Secrets**

**Intrepid's Proposal:**

A trade secret is information, cinluding but not limited to, a formula, pattern, compoilation, program, device, meothd, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that (1) is suffiently secret to derive independent economic value, actual or potential, from not being generally known to other persons who can obtaine economic value from its disslcosure or use; and (2) is the subject of efforst that are reasonable under the circumstances to maintain its secrecy or confidentiality.[53] Intrepid claims that 3DS and Kuester misappropriated the following trade secrets: (i) information regarding the DLP Multiprojection Test Bed, a machine with six projectors that successfully demonstrated Intrepid's edge-blending technology and multiprojection calibration techniques for use in 3D printing; and (ii) information regarding the In-Process Development of the Valkyrie 3D printer.

To prove that the ~~[*select short term to describe, e.g., information*]~~information ~~[~~was~~/were] [a]~~ trade secret~~[s]~~, ~~[*name of plaintiff*]~~Intrepid must demonstrate:

1. That the ~~[*e.g., information*]~~information was secret;

2. That the ~~[*e.g., information*]~~information had actual or potential independent economic value because ~~[~~it was~~/they were]~~ secret; and

3. That ~~[*name of plaintiff*]~~Intrepid made reasonable efforts to keep the ~~[*e.g., information*]~~information secret.[54]

---

[53] Closing Jury Instructions, ECF No. 391, *Comet Techs. USA Inc. et al. v. XP Power LLC*, Case No. 5:20-cv-06408-NC (N.D. Cal.) (Instruction 14).
[54] CACI 4402 (2026 Edition).

**3DS and Kuester's Proposal:**

Under CUTSA, ~~To~~ to prove that the Alleged Trade Secrets set forth in Instruction No. 47 ~~[*select short term to describe, e.g., information*] [was/were] [a]~~ are trade secret~~[~~s~~]~~, ~~[*name of plaintiff*]~~ Intrepid must prove all of the following:

1. That each of the ~~[*e.g., information*]~~Alleged Trade Secrets ~~[was/~~were~~]~~ secret;

2. That each the ~~[*e.g., information*]~~Alleged Trade Secrets had actual or potential independent economic value because ~~[it was/~~they were~~]~~ secret; and

3. That ~~[*name of plaintiff*]~~Intrepid made reasonable efforts to keep each of the ~~[*e.g., information*]~~Alleged Trade Secrets secret.

You must consider each one of the Alleged Trade Secrets individually.

Under DTSA, to prove that the Alleged Trade Secrets set forth in Instruction No. 47 are trade secrets, Intrepid must prove all of the following:

1. That each of the Alleged Trade Secrets were secret;

2. That each of the Alleged Trade Secrets had actual or potential independent economic value because they were secret, or not readily ascertainable through proper means; and

3. That Intrepid made reasonable efforts to keep each of the Alleged Trade Secrets secret.

You must consider each one of the Alleged Trade Secrets individually.[55]

[55] Authority: CACI 4402 (2026 Edition); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) ("the definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret."); 18 U.S.C. § 1839(3).

**Agreed Proposed Instruction No. 51: Secrecy**[56]

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in [*name of plaintiff*]Intrepid's use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

[56] CACI 4403 (2026 Edition).

**Disputed Proposed Instruction No. 52: Not Readily Ascertainable Through Proper Means**

**<u>Intrepid's Proposal:</u>**

*The proposed instruction is a misstatement of 18 U.S.C. § 1839 and is not necessary as duplicative of the instruction regarding independent economic value.*

**<u>3DS and Kuester's Proposal:</u>**

Under the DTSA, "Readily Ascertainable through proper means" encompasses reverse engineering, independent derivation, and all other lawful methods of obtaining information. This means that if a competitor could lawfully obtain the information — by, for example, purchasing a product and reverse engineering it, independently developing the same information, or finding it in publicly available sources — the information is readily ascertainable through proper means.[57]

[57] Authority: 18 USCA § 1839.

**Disputed Proposed Instruction No. 53: Reasonable Efforts to Protect Secrecy**

**Intrepid's Proposal:**

To establish that the ~~[*select short term to describe, e.g. ,information*]~~ information ~~[~~is~~/are] [a]~~ trade secret, Intrepid~~[*name of plaintiff*]~~ must prove that ~~[he/she/*nonbinary pronoun*/~~it~~]~~ made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable ~~[person/~~business~~]~~ in the same situation and having the same knowledge and resources as Intrepid~~[*name of plaintiff*]~~, exercising due care to protect important information of the same kind. ~~[~~This requirement applies separately to each item that Intrepid~~[*name of plaintiff*]~~ claims to be a trade secret.~~]~~

In determining whether or not Intrepid~~[*name of plaintiff*]~~ made reasonable efforts to keep the ~~[*e.g., information*]~~ information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

~~[a. Whether documents or computer files containing the information were marked with confidentiality warnings;]~~

~~[~~b. Whether Intrepid~~[*name of plaintiff*]~~ instructed ~~[his/her/*nonbinary pronoun*/~~its~~]~~ employees to treat the ~~[*e.g. information*]~~information as confidential;~~]~~

~~[~~c. Whether Intrepid~~[*name of plaintiff*]~~ restricted access to the ~~[*e.g. information*]~~information to persons who had a business reason to know the information;~~]~~

~~[~~d. Whether Intrepid~~[*name of plaintiff*]~~ kept the ~~[*e.g. information*]~~information in a restricted or secured area;~~]~~

[e. Whether Intrepid[*name of plaintiff*] required employees or others with access to the [*e.g. information*]information to sign confidentiality or nondisclosure agreements;]

[f. Whether Intrepid[*name of plaintiff*] took any action to protect the specific [*e.g. information*]information, or whether it relied on general measures taken to protect its business information or assets;]

[g. The extent to which any general measures taken by Intrepid[*name of plaintiff*] would prevent the unauthorized disclosure of the [*e.g. information*]information;] and

[h. Whether there were other reasonable measures available to Intrepid[*name of plaintiff*] that it did not take.]

[i. *Specify other factor(s)*.]

The presence or absence of any one or more of these factors is not necessarily determinative.[58]

**3DS and Kuester's Proposal:**

To establish that each of the Alleged Trade Secrets the [*select short term to describe, e.g., information*] [is/are] [a] trade secret[s], [*name of plaintiff*] Intrepid must prove that [he/she/*nonbinary pronoun*/it] made reasonable efforts under the circumstances to keep it them secret. "Reasonable efforts" are the efforts that would be made by a reasonable [person/business] in the same situation and having the same

[58] CACI 4404 (2026 Edition).

knowledge and resources as ~~[name of plaintiff]~~Intrepid, exercising due care to protect important information of the same kind. ~~[~~This requirement applies separately to each item that ~~[name of plaintiff]~~Intrepid claims to be a trade secret.~~]~~

In determining whether or not ~~[name of plaintiff]~~Intrepid made reasonable efforts to keep the ~~[e.g., information]~~Alleged Trade Secrets secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

~~[~~a. Whether documents or computer files containing the ~~[e.g., information]~~Alleged Trade Secrets were marked with confidentiality warnings;~~]~~

~~[~~b. Whether ~~[name of plaintiff]~~Intrepid instructed ~~[his/her/nonbinary pronoun/~~ its~~]~~ employees to treat the ~~[e.g., information]~~Alleged Trade Secrets as confidential;~~]~~

~~[~~c. Whether ~~[name of plaintiff]~~Intrepid restricted access to the ~~[e.g., information]~~ Alleged Trade Secrets to persons who had a business reason to know the information;

d. Whether ~~[name of plaintiff]~~Intrepid kept the ~~[e.g., information]~~Alleged Trade Secrets in a restricted or secured area;~~]~~

~~[~~e. Whether ~~[name of plaintiff]~~Intrepid required employees or others with access to the ~~[e.g., information]~~Alleged Trade Secrets to sign confidentiality or nondisclosure agreements;~~]~~

~~[~~f. Whether ~~[name of plaintiff]~~Intrepid took any action to protect the specific ~~[e.g., information]~~Alleged Trade Secrets, or whether it relied on general measures taken to protect its business information or assets;~~]~~ and

~~[~~g. The extent to which any general measures taken by ~~[name of plaintiff]~~Intrepid would prevent the unauthorized disclosure of the ~~[e.g., information]~~Alleged Trade Secrets~~;]~~.

The presence or absence of any one or more of these factors is not necessarily determinative.[59]

[59] Authority: CACI 4404 (2026 Edition).

**Disputed Proposed Instruction No. 54: Independent Economic Value**

**Intrepid's Proposal:**

Information[Select short term to describe, e.g., Information] has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the [e.g. information] information and who could obtain economic value from its disclosure or use.

In determining whether [e.g. information] information had actual or potential independent economic value because it was not being generally known or readily ascertainablesecret, you may consider the following:

(a) The extent to which Intrepid[name of plaintiff] obtained or could obtain economic value from the [e.g. information] information in keeping [it/them] secret;

(b) The extent to which others could obtain economic value from the [e.g. information] information if [it were/they were] not secret;

(c) The amount of time, money, or labor that Intrepid[name of plaintiff] expended in developing the [e.g. information] information; and

(d) The amount of time, money, or labor that [would be/was] saved by a competitor who used the [e.g. information] information.

[e. Insert other applicable factor(s).]

The presence or absence of any one or more of these factors is not necessarily determinative.[60]

[60] CACI 4412 (2026 Edition); 18 USC § 1839.

**3DS and Kuster's Proposal:**

~~[*Select short term to describe, e.g.,* ~~Information~~]~~ has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the [*e.g., information*] and who could obtain economic value from its disclosure or use.

In determining whether <u>each of the Alleged Trade Secrets</u>~~[*e.g., information*]~~ had actual or potential independent economic value because it was secret, you may consider the following:

(a) The extent to which ~~[*name of plaintiff*]~~<u>Intrepid</u> obtained or could obtain economic value from the ~~[*e.g., information*]~~<u> Alleged Trade Secrets</u> in keeping ~~[it/~~them~~]~~ secret;

(b) The extent to which others could obtain economic value from the ~~[*e.g., information*]~~<u>Alleged Trade Secrets</u> if ~~[it were/~~they were~~]~~ not secret;

(c) The amount of time, money, or labor that ~~[*name of plaintiff*]~~<u>Intrepid</u> expended in developing the ~~[*e.g., information*]~~<u>Alleged Trade Secrets</u>;<u> and</u>

(d) The amount of time, money, or labor that ~~[~~would be~~/was]~~ saved by a competitor who used the ~~[*e.g., information*];~~<u> Alleged Trade Secrets.</u>

~~[(e) [*Insert other applicable factors*].]~~

The presence or absence of any one or more of these factors is not necessarily determinative.[61]

[61] Authority: CACI 4412 (2026 Edition).

**Disputed Proposed Instruction No. 55: Misappropriation by Acquisition**

**Intrepid's Proposal:**

Defendants ~~[*Name of defendant*]~~ misappropriated ~~[*name of plaintiff*]~~Intrepid's trade secret by acquisition if ~~[*name of defendant*]~~they acquired the trade secret~~[s]~~ and knew or had reason to know that ~~[he/she/*nonbinary pronoun*/it/[*name of third party*]~~they used improper means to acquire ~~[it/~~them~~]~~.[62]

**3DS and Kuester's Proposal:**

~~[*Name of defendant*]~~ Kuester and/or 3DS misappropriated ~~[*name of plaintiff*]'s trade secret[s]~~ the Alleged Trade Secrets by acquisition if ~~[*name of defendant*]~~ they acquired ~~the trade secret[s]~~them and knew or had reason to know that ~~[he/she/*nonbinary pronoun*/it/[*name of third party*]]~~they used improper means to acquire ~~[it/~~them~~]~~.

Possession of another's trade secret is not by itself a basis for liability.[63]

[62] CACI 4405 (2026 Edition).

[63] Authority: CACI 4405 (2026 Edition); *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 951 (N.D. Cal. 2003) ("In determining what constitutes "use" and "disclosure" of trade secrets in the context of misappropriation, courts have held that mere possession of trade secrets is not sufficient to satisfy this element of the cause of action.") (citing *Gibson–Homans Co. v. Wall–Tite, Inc.*, 1992 WL 512411 (C.D. Cal. Oct. 27, 1992).).

**Disputed Proposed Instruction No. 56: Misappropriation by Disclosure**

**<u>Intrepid's Proposal:</u>**

Defendants~~[*Name of defendant*]~~ misappropriated ~~[*name of plaintiff*]~~Intrepid's trade secret by disclosure if ~~[*name of defendant*]~~they

1. disclosed ~~[~~it~~/them]~~ without ~~[*name of plaintiff*]~~Intrepid's consent; and

2. ~~[~~did any of the following:~~]~~

~~[*insert one or more of the following:*]~~

~~[~~acquired knowledge of the trade secret by improper means~~] [./~~; or~~]~~

~~at the time of disclosure, knew or had reason to know that its knowledge of [*name of plaintiff*]~~Intrepid~~'s trade secret came from or through Kuester, and that Kuester had previously acquired the trade secret by improper means; [./; or]~~

~~[~~at the time of disclosure, knew or had reason to know that ~~[his/her/*nonbinary pronoun*/~~its~~]~~ knowledge of ~~[*name of plaintiff*]~~Intrepid's trade secret~~[s]~~ was acquired under a Non-Disclosure Agreement~~[*insert circumstances giving rise to duty to maintain secrecy*]~~, which created a duty to keep the ~~[*select short term to describe, e.g., information*]~~information secret~~] [./~~; or~~]~~

~~[~~at the time of disclosure, knew or had reason to know that ~~[his/her/*nonbinary pronoun*/~~its~~]~~ knowledge of ~~[*name of plaintiff*]~~Intrepid's trade secret~~[s]~~ came from or through Kuester~~[*name of third party*]~~, and that Kuester~~[*name of third party*]~~had a duty to ~~[*name of plaintiff*]~~Intrepid to keep the information secret~~][~~.~~/; or]~~

~~[before a material change of [his/her/nonbinary pronoun/its] position, knew or had reason to know that [it was/they were] [a] trade secret[s] and that knowledge of [it/them] had been acquired by accident or mistake.]~~[64]

**3DS and Kuester's Proposal:**

~~[*Name of defendant*]~~ 3DS and/or Kuester misappropriated ~~[*name of plaintiff*]'s~~the Alleged ~~trade~~ Trade ~~secret~~Secret~~[~~s~~]~~ by disclosure if ~~[*name of defendant*]~~they

1. disclosed ~~[it/~~them~~]~~ without ~~[*name of plaintiff*]~~Intrepid's consent; and

2. ~~[~~did ~~any~~ one of the following:~~]~~

~~2. [*insert one or more of the following:*]~~

~~2.~~ ~~[~~(i) acquired knowledge of the trade secret~~[s]~~ by improper means~~][./~~; or~~]~~

~~2.~~ [(ii) at the time of disclosure, knew or had reason to know that ~~[his/her/*nonbinary pronoun*/~~its~~]~~ knowledge of ~~[*name of plaintiff*]~~Intrepid's Alleged ~~trade~~Trade ~~secret~~Secret~~[~~s~~]~~ came from or through ~~[*name of third party*]~~Kuester, and that ~~[*name of third party*]~~Kuester had previously acquired the trade secret~~[s]~~ by improper means~~][./~~; or]

~~2.~~ [(ii) at the time of disclosure, knew or had reason to know that ~~[his/her/*nonbinary pronoun*/its]~~ knowledge of ~~[*name of plaintiff*]'s~~the Alleged ~~trade~~Trade ~~secret~~Secret~~[s]~~ was acquired under ~~[*insert*~~ circumstances giving rise to duty to maintain secrecy~~]~~, which created a duty to keep the ~~[*select short term to describe, e.g., information*]~~Alleged Trade Secrets secret]~~[./; or]~~ [65]

~~2. [at the time of disclosure, knew or had reason to know that [his/~~

[64] CACI 4406 (2026 Edition).
[65] Authority: CACI 4406 (2026 Edition).

her/*nonbinary pronoun*/its] knowledge of [*name of plaintiff*]'s trade secret[s] came from or through [*name of third party*], and that [*name of third party*] had a duty to [*name of plaintiff*] to keep the [*e.g., information*] secret][./; or]

2. [before a material change of [his/her/*nonbinary pronoun*/its] position, knew or had reason to know that [it was/they were] [a] trade secret[s] and that knowledge of [it/them] had been acquired by accident or mistake.]

**Disputed Proposed Instruction No. 57: Misappropriation by Use**

**Intrepid's Proposal:**

Defendants[*Name of defendant*] misappropriated [*name of plaintiff*]Intrepid's trade secret by use if they[*name of defendant*]

1. used [it/them] without [*name of plaintiff*]Intrepid's consent; and

2. did any of the following:

[*insert one or more of the following:*]

[acquired knowledge of the trade secret[s] by improper means][./; or]

[at the time of use, knew or had reason to know that [his/her/*nonbinary pronouns*/its] knowledge of [*name of plaintiff*]'s trade secret[s] came from or through [*name of third party*], and that [*name of third party*] had previously acquired the trade secret[s] by improper means][./; or]

[at the time of use, knew or had reason to know that [his/her/*nonbinary pronoun*/its] knowledge of [*name of plaintiff*]Intrepid's trade secret[s] was acquired under circumstances creating a legal obligation to limit use of the [*select short term to describe, e.g., information*]information][./; or]

[at the time of use, knew or had reason to know that [his/her/*nonbinary pronoun*/its] knowledge of [*name of plaintiff*]Intrepid's trade secret[s] came from or through [*name of third party*]Kuester, and that [*name of third party*]Kuester had a duty to [*name of plaintiff*]Intrepid to limit use of the [*e.g. information*]information][./;or]

[before a material change of [his/her/nonbinary pronoun/its] position, knew or had reason to know that [it was/they were] [a] trade secret[s] and that knowledge of [it/them] had been acquired by accident or mistake.][66]

**3DS and Kuester's Proposal:**

[*Name of defendant*]3DS misappropriated [*name of plaintiff*]'s the Alleged trade Trade secretSecret[s] if it acquired the Alleged Trade Secrets by improper means and use if [*name of defendant*]

1. used [it/them] without [*name of plaintiff*]Intrepid's consent; and

2. [did any of the following:]

2. [*insert one or more of the following:*]

2. [acquired knowledge of the trade secret[s] by improper means][./; or]

2. [at the time of use, knew or had reason to know that [his/her/ *nonbinary pronoun*/its] knowledge of [*name of plaintiff*]'s trade secret[s] came from or through [*name of third party*], and that [*name of third party*] had previously acquired the trade secret[s] by improper means][./; or]

2. [at the time of use, knew or had reason to know that [his/her/ *nonbinary pronoun*/its] knowledge of [*name of plaintiff*]'s trade secret[s] was acquired under circumstances creating a legal obligation to limit use of the [*select short term to describe, e.g., information*]][./; or]

2. [at the time of use, knew or had reason to know that [his/her/

[66] CACI 4407 (2026 Edition).

*nonbinary pronoun*/its] knowledge of [*name of plaintiff*]'s trade secret[s] came from or through [*name of third party*], and that [*name of third party*] had a duty to [*name of plaintiff*] to limit use of the [*e.g., information*]][./; or]

2. [before a material change of [his/her/*nonbinary pronoun*/its] position, knew or had reason to know that [it was/they were] [a] trade secret[s] and that knowledge of [it/them] had been acquired by accident or mistake.].[67]

[67] Authority: CACI 4407 (2026 Edition); *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1669, 3 Cal. Rptr. 3d 279, 286 (2003).

**Disputed Proposed Instruction No. 58: Improper Means of Acquiring Trade Secret**

**Intrepid's Proposal:**

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, ~~[theft/bribery/~~ misrepresentation/breach or inducing a breach of a duty to maintain secrecy~~/[or] wiretapping, electronic eavesdropping, [or] [insert other means of espionage]]~~.

~~[~~However, it is not improper to acquire a trade secret or knowledge of the trade secret by ~~[~~any of the following:~~]~~

~~[~~1. Independent efforts to invent or discover the information;~~]~~

~~[~~2. Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;~~]~~

~~[~~3. Obtaining the information as a result of a license agreement with the owner of the information;~~]~~

~~[~~4. Observing the information in public use or on public display;~~]~~ ~~[~~or~~]~~

~~[~~5. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.~~]]~~[68]

**3DS and Kuester's Proposal:**

Improper means of acquiring a trade secret ~~or knowledge of a trade secret~~ includes, but ~~are~~ is not limited to, ~~[~~theft~~/~~, bribery~~/~~, misrepresentation~~/~~, or breach or inducing a breach of a duty to maintain secrecy~~/ [or] wiretapping, electronic eavesdropping, [or] [*insert other means of espionage*]]~~.

[68] CACI 4408 (2026 Edition).

[However, it is not improper to acquire a trade secret or knowledge of the trade secret by [any of the following]:

[1. Independent efforts to invent or discover the information;]

[2. Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;]

[3. Obtaining the information as a result of a license agreement with the owner of the information;]

[4. Observing the information in public use or on public display;]

[or]

[5. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.]][69]

[69] Authority: CACI 4407 (2026 Edition); *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1669, 3 Cal. Rptr. 3d 279, 286 (2003).

**Disputed Proposed Instruction No. 59: Interstate Commerce (If Necessary)**

**Intrepid's Proposal:**

Trade Secrets are used in interstate commerce if they are used in or related to a product or service used in, or intended for use in, interstate or foreign commerce.

Use or intended use in interstate commerce involves travel, trade, transportation, or communication between a place in one state and a place in another state or travel, trade, transportation, or communication between a place in the United States and a place outside of the United States.[70]

**3DS and Kuester's Proposal:**

To prevail on its misappropriation of trade secret claim under the Defend Trade Secrets Act (DTSA), Intrepid may only bring a claim if the Alleged Trade Secrets related to a product or service used in, or intended for use in, interstate or foreign commerce. To establish this, Intrepid must prove: (i) the existence of a relationship tethering (ii) the Alleged Trade Secrets (iii) to a product or service used in, or intended for use in, interstate commerce. The Alleged Trade Secret information itself—not merely Intrepid's general operations or funding sources must be used in, or intended for use in, interstate commerce.

Use or intended use of the Alleged Trade Secret in interstate commerce means that the Alleged Trade Secret involves travel, trade, transportation, or communication between a place in one state and a place in another state or that the Alleged Trade

[70] *Islands Hospice, Inc. v. Duick*, 2019 WL 4620369, at *5 (D. Hawaii Sept. 23, 2019); 18 USC § 1836(b)(1).

Secret involves travel, trade, transportation, or communication between a place in the United States and a place outside of the United States.[71]

[71] Authority: *Islands Hospice, Inc. v. Duick*, 2019 WL 4620369, at *5 (D. Hawaii Sept. 23, 2019); 18 USC § 1836(b)(1).

**Disputed Proposed Instruction No. 60: Imputation**

**Intrepid's Proposal:**

*This instruction is not necessary as neither party has raised imputation of knowledge.*

**3DS and Kuester's Proposal:**

Knowledge of Intrepid's trade secrets by Mr. Kuester cannot be imputed to 3D Systems. Intrepid has the burden of proving that Mr. Kuester disclosed each of Intrepid's trade secrets to 3D Systems.[72]

[72] Authority: *Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 793 (9th Cir. 1976); *Carr v. AutoNation Inc.*, No. 2:17-CV-01539-JAM-AC, 2018 WL 288018, at *2 (E.D. Cal. Jan. 4, 2018) ("it is not 'appropriate to direct a jury to impute an agent's knowledge of a secret to the principal'").

**Agreed Proposed Instruction No. 61: Trade Secret Compensatory Damages**

If you decide that Intrepid has proved its trade secret misappropriation claims against 3DS and/or Kuester, then you must also decide how much money will reasonably compensate Intrepid for the harm. It is for you to determine what damages, if any, have been proven. Your award, if any, must be based upon evidence and not on speculation, guesswork or conjecture.

You can find that Intrepid should be awarded damages only if 3DS's and/or Kuester's actions were a substantial factor in bringing about the damages. A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor.

Intrepid is seeking compensatory damages under two alternative theories. First, Intrepid seeks damages for its actual loss and defendants' unjust enrichment. Second, in the alternative, Intrepid seeks damages in the form of a reasonable royalty.[73]

[73] Closing Jury Instructions, ECF No. 391, *Comet Techs. USA Inc. et al. v. XP Power LLC*, Case No. 5:20-cv-06408-NC (N.D. Cal.)

**Disputed Proposed Instruction No. 62: Affirmative Defense—Information Was Readily Ascertainable by Proper Means**

**Intrepid's Proposal:**

*The proposed instruction misstates the model jury instruction (i.e., "could" instead of "was/were") and is not necessary.*

**3DS and Kuester's Proposal:**

Under CUTSA, ~~[*Name of defendant*]~~Mr. Kuester and 3D Systems did not misappropriate ~~[*name of plaintiff*]~~Intrepid's alleged trade secret~~[~~s~~]~~ if ~~[*name of defendant*]~~they prove~~s~~ that the ~~[*select short term to describe, e.g., information*]~~Alleged Trade Secrets ~~[was/~~were~~]~~ readily ascertainable by proper means at the time of the alleged ~~[acquisition/use/ [or] disclosure]~~misappropriation, regardless of whether they did in fact ascertain the Alleged Trade Secrets by proper means.

There is no fixed standard for determining what ~~is~~ could be "readily ascertainable by proper means." In general, information is readily ascertainable if it ~~can be~~ could be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.[74]

[74] Authority: CACI 4420 (2026 Edition).

**Disputed Proposed Instruction No. 63: Trade Secret Compensatory Damages**

**<u>Intrepid's Proposal:</u>**

*This instruction improperly limits Intrepid's remedies and improperly instructs the jury regarding trade secret damages.*

**<u>3DS and Kuester's Proposal:</u>**

If you decide that ~~[*name of plaintiff*]~~ Intrepid has ~~proves~~ proved~~that [*name of defendant*] misappropriated [his/her/*nonbinary pronoun*/its] trade secret[s]~~ its misappropriation claims against Mr. Kuester, then ~~[*name of plaintiff*]~~Intrepid is entitled to recover damages if ~~the~~ Mr. Kuester's misappropriation caused ~~[[*name of plaintiff*]~~Intrepid to suffer an actual loss~~/ [or] [*name of defendant*] to be unjustly enriched]~~.

If you decide that Intrepid has proved its trade secret misappropriation claims against 3DS, then Intrepid is entitled to recover damages if 3DS's misappropriation caused Intrepid to suffer an actual loss or 3DS to be unjustly enriched.

~~[~~If ~~[*name of defendant*]~~3DS's misappropriation did not cause ~~[[*name of plaintiff*]~~Intrepid to suffer an actual loss~~/~~ ~~[~~or~~]~~ ~~[*name of defendant*]~~ to be unjustly enriched~~]~~, ~~[*name of plaintiff*]~~Intrepid may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited.~~ However, I will calculate the amount of any royalty.]~~[75]

[75] Authority: CACI No. 4409 (2026 Edition); 18 U.S.C. § 1836(b)(3)(B)(ii).

**Agreed Proposed Instruction No. 64: Lost Profits (Actual Loss)**

To recover damages for lost profits, ~~[*name of plaintiff*]~~Intrepid must prove it is reasonably certain ~~[he/she/*nonbinary pronoun*/~~it~~]~~ would have earned profits but for 3DS's and/or Kuester~~[*name of defendant*]~~'s conduct.

To decide the amount of damages for lost profits, you must determine the gross amount ~~[*name of plaintiff*]~~Intrepid would have received but for 3DS's and/or Kuester~~[*name of defendant*]~~'s conduct and then subtract from that amount the expenses [including the value of ~~the [*specify categories of evidence, such as labor/materials/rents/all expenses/interest of the capital employed*]~~all expenses~~]~~ ~~[*name of plaintiff*]~~Intrepid would have had if 3DS's and/or Kuester~~[*name of defendant*]~~'s conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.[76]

[76] CACI 3903N (2026 Edition).

**Disputed Proposed Instruction No. 65: Lost Profits (Economic Damage (Actual Loss))**

**Intrepid's Proposal:**

*If this instruction is given, it should follow the CACI 3903 model instruction without 3DS's additions.*

**3DS and Kuester's Proposal:**

~~[*Insert number, e.g.*, "13."] Lost profits.~~

To recover damages for lost profits, ~~[*name of plaintiff*]~~ Intrepid must prove it is reasonably certain ~~[he/she/*nonbinary pronoun*/~~it~~]~~ would have earned profits but for ~~[*name of defendant*]'s conduct~~3DS's and/or Kuester's misappropriation of the Alleged Trade Secret(s).

To decide the amount of damages for lost profits, you must determine the gross amount ~~[*name of plaintiff*]~~Intrepid would have received but for ~~[*name of defendant*]~~3DS's and/or Kuester's conduct and then subtract from that amount ~~the~~ all expenses [including the value of the ~~[*specify categories of evidence, such as*~~ labor~~/~~, materials~~/rents/all expenses/interest of the capital employed]]~~, and manufacturing costs ~~[*name of plaintiff*]~~Intrepid would have had if ~~[*name of defendant*]~~3DS's and/or Kuester's conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.[77]

[77] Authority: CACI 3903N (2026 Edition). 3DS and Kuester reserve the right to assert that this and other instructions herein concerning lost profits/unjust enrichment/actual damages should be omitted if a reasonable royalty instruction is given. *See Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514 (1997) ("the imposition of a reasonable royalty is reserved for those instances where the court finds that neither actual damages to the holder of the trade secret nor unjust enrichment to the user are provable."); *Cacique, Inc. v. Robert Reiser & Co., Inc.,* 169 F.3d 619 (1999) (holding that "a trade secret plaintiff can recover

**Disputed Proposed Instruction No. 66: Unjust Enrichment**

**Intrepid's Proposal:**

Defendants ~~[*Name of defendant*] was~~ were unjustly enriched if ~~[his/her/*nonbinary pronoun*/~~its~~]~~ misappropriation of Intrepid~~[*name of plaintiff*]~~'s trade secret~~[s]~~ caused Defendants~~[*name of defendant*]~~ to receive a benefit that ~~[he/she/*nonbinary pronoun*/*it*]~~they otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of Defendants~~[*name of defendant*]~~' benefit that would not have been achieved except for ~~[his/her/*nonbinary pronoun*/~~its~~]~~ misappropriation. Then subtract from that amount Defendants~~[*name of defendant*]~~' reasonable expenses~~[~~, including the value of the ~~[*specify catetories of expenses in evidence, such as labor, materials, rents, interest on invested capital*]~~labor, materials, rents, and interest on invested capital.~~]~~ Intrepid must establish the value of the Defendants' sales that would not have been achieved except for Defendants' misappropriation; Defendants must establish the amount of their reasonable expenses.

~~[~~In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Intrepid~~[*name of plaintiff*]~~'s actual loss.~~]~~[78]

---

a reasonable royalty only when both actual damages and unjust enrichment are unprovable.").

[78] CACI 4410 (2026 Edition); Restatement (Third) of Unfair Competition § 45; *see also Monster Energy Co. v. Vital Pharms., Inc.*, Case No. EDCV 18-1882, 2023 WL 8168854 at *11 (C.D. Cal. Oct. 6, 2023) (adopting the Restatement (Third) of Unfair Competition § 45 for calculation of unjust enrichment); *Masimo Corp. v. Apple Inc.*, Case No. SA CV 20-00048, 2023 WL 3432167 at *10 (C.D. Cal. May 4, 2023) (same).

**3DS and Kuester's Proposal:**

[*Name of defendant*] 3DS was unjustly enriched if [his/her/*nonbinary pronoun*/ its] misappropriation of [*name of plaintiff*]'sthe Alleged trade Trade secretSecret[(s] ) caused [*name of defendant*]3DS to receive a benefit that [he/she/*nonbinary pronoun*/it] otherwise would not have achieved. Intrepid does not seek unjust enrichment damages against Mr. Kuester.

To decide the amount of any unjust enrichment, first determine the value of [*name of defendant*]3DS's benefit that would not have been achieved except for [his/her/*nonbinary pronoun*/its] misappropriation. Then subtract from that amount [*name of defendant*]3DS's reasonable expenses[, including the value of the [*specify categories of expenses in evidence, such as* labor, materials, rents, and interest on invested capital]].

[In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for [*name of plaintiff*]Intrepid's actual loss.]lost profits.[79]

[79] Authority: CACI 4410 (2026 Edition).

**Disputed Proposed Instruction No. 67: Reasonable Royalty**

**Intrepid's Proposal:**

As an alternative to damages in the form of actual loss and unjust enrichment, you may award Intrepid compensatory damages for trade secret misappropriation in the form of a reasonable royalty. If you find that a reasonable royalty should be awarded to Intrepid for trade secret misappropriation by Defendants, you may determine the amount of the royalty.

Generally speaking, a reasonable royalty is defined as the reasonable amount that someone wanting to use a trade secret or other protected intellectual property should expect to pay the owner, and the owner should expect to receive, for its use, calculated from the time of the misappropriation to the date of your verdict. Said another way, a reasonable royalty aims to calculate what the parties would have agreed to as a fair licensing price at a time just before the alleged misappropriation occurred.

In this case, the reasonable royalty is the payment that would have resulted from a hypothetical negotiation between Intrepid and Defendants. You should focus on what the expectations of the parties would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must also assume that both parties believed the information allegedly misappropriated was lawfully protected, and that it was improperly acquired, used, or disclosed by Defendants. In addition, you must assume that the parties were willing to enter into an agreement.

The measure of damages is the royalty that would have resulted from this hypothetical negotiation, and not simply what royalty either party would have

preferred. You should assume that Intrepid and Defendants knew at that time such things as the level of sales and profits that Defendants would make using the intellectual property, the research and development cost-savings Defendants would avoid using the intellectual property, and the sales and profits that Intrepid would lose as a result of Defendants' use of Intrepid's intellectual property. You should also assume that Intrepid was willing to grant Defendants a license to use its protected intellectual property and that Defendants were willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that Intrepid would consider in setting the amount Defendants would pay. I will list for you a number of factors which you may consider. This is not intended as an exclusive list of the factors which you may consider, although it will give you an idea of the kinds of things to consider in setting a reasonable royalty. Among the factors which you may find relevant are the following:

1) The resulting and foreseeable change in the parties' competitive posture;

2) The prices past purchasers or licensees of the trade secret may have paid;

3) The total value of the secret to Intrepid, including the Intrepid's development costs and the importance of the secret to Intrepid's business;

4) The nature and extent of the use Defendants intended for the secret; and finally,

5) Whatever other unique factors in a particular case which might have affected the parties' agreement.[80]

[80] Closing Jury Instructions, ECF No. 391, *Comet Techs. USA Inc. et al. v. XP Power LLC*, Case No. 5:20-cv-06408-NC (N.D. Cal.)

**3DS and Kuester's Proposal:**

[As an alternative to damages in the form of actual loss and unjust enrichment,] you may award Intrepid compensatory damages for trade secret misappropriation in the form of a reasonable royalty.[81] If you find that a reasonable royalty should be awarded to Intrepid for misappropriation of the Alleged Trade Secret(s) by 3DS, you may determine the amount of the royalty. Intrepid does not seek a reasonable royalty against Mr. Kuester.

Generally speaking, a reasonable royalty is defined as the reasonable amount that someone wanting to use a trade secret should expect to pay the owner, and the owner should expect to receive, for its use, calculated from the time of the misappropriation to the date of your verdict. Said another way, a reasonable royalty aims to calculate what the parties would have agreed to as a fair licensing price at a time just before the alleged misappropriation occurred.

In this case, the reasonable royalty is the payment that would have resulted from a hypothetical negotiation between Intrepid and 3DS. You should focus on what the expectations of Intrepid and 3DS would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. You must also assume that both parties believed the information allegedly misappropriated was lawfully protected, and that it was improperly acquired, used, or disclosed by 3DS. In addition, you must assume that Intrepid and 3DS were willing to enter into an agreement.

The measure of damages is the royalty that would have resulted from this hypothetical negotiation, and not simply what royalty either party would have

[81] Under CUTSA, 3DS and Kuester reserve the right to assert the exclusion of actual loss, unjust enrichment and/or reasonable royalty instructions and verdict form questions based on the course of trial. *See Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514 (1997) ("the imposition of a reasonable royalty is reserved for those instances where the court finds that neither actual damages to the holder of the trade secret nor unjust enrichment to the user are provable."); *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619 (1999) (holding that "a trade secret plaintiff can recover a reasonable royalty only when both actual damages and unjust enrichment are unprovable.").

preferred. You should assume that Intrepid was willing to grant 3DS a license to use its Alleged Trade Secrets and that 3DS was willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that Intrepid would consider in setting the amount 3DS would pay and the amount 3DS would have been willing to pay. I will list for you a number of factors which you may consider. This is not intended as an exclusive list of the factors which you may consider, although it will give you an idea of the kinds of things to consider in setting a reasonable royalty. Among the factors which you may find relevant are the following:

1) The resulting and foreseeable change in the parties' competitive posture;

2) The prices past purchasers or licensees of the Alleged Trade Secret(s) that you found were misappropriated may have paid;

3) The total value of the secret to Intrepid, including Intrepid's development costs of the Alleged Trade Secrets that you found were misappropriated and the importance of those Alleged Trade Secret(s) to Intrepid's business;

4) The nature and extent of the use 3DS intended for the Alleged Trade Secret(s) that you found were misappropriated; and finally,

5) Whatever other unique factors in a particular case which might have affected the parties' agreement.[82]

[82] Authority: Closing Jury Instructions, ECF No. 391, *Comet Techs. USA Inc. et al. v. XP Power LLC*, Case No. 5:20-cv-06408-NC (N.D. Cal.).

**Disputed Proposed Instruction No. 68: Prejudgment Interest**

**<u>Intrepid's Proposal:</u>**

If you decide that Intrepid[*name of plaintiff*] is entitled to recover damages for past economic loss in one or more of the categories of damages that [he/she/*nonbinary pronoun*/it]they claims for trade secret misappropriation, then you must decide whether [he/she/*nonbinary pronoun*/it]they should also receive prejudgment interest on each item of loss in those categories. Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict.

Whether Intrepid[*name of plaintiff*] should receive an award of prejudgment interest on all, some, or none of any past economic damages for trade secret misappropriation that you may award is within your discretion. If you award these damages to Intrepid[*name of plaintiff*] you will be asked to address prejudgment interest in the special verdict formidentify on your verdict form the date from which prejudgment interest should be calculated.[83]

**<u>3DS and Kuester's Proposal:</u>**

*This instruction is unnecessary because prejudgment interest is not a question for the jury to decide. The Court will determine, in its discretion, whether prejudgment interest should be awarded pursuant to Cal. Civ. Code, § 3287(a) and (b).*

[83] CACI 3935 (2026 Edition); Cal. Civ. Code, § 3288.

*If the Court does provide a jury instruction on prejudgment interest, then 3DS and Kuester propose the following:*

If you decide that [*name of plaintiff*]Intrepid is entitled to recover damages for past economic loss in one or more of the categories of damages that [he/she/*nonbinary pronoun*/it] claims, then you must decide whether [he/she/*nonbinary pronoun*/it] should also receive prejudgment interest on each item of loss in those categories. Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict. Prejudgment interest is only permitted if you find oppression, fraud, or malice by 3DS and Mr. Kuester.

Whether [*name of plaintiff*]Intrepid should receive an award of prejudgment interest on all, some, or none of any past economic damages that you may award is within your discretion. If you award these damages to [*name of plaintiff*]Intrepid, you will be asked to address prejudgment interest in the special verdict form.[84]

[84] Authority: CACI 3935 (2026 Edition).

**Disputed Proposed Instruction No. 69: Willful and Malicious Misappropriation**

**<u>Interpid's Proposal:</u>**

*This is an improper statement of the law. The jury will decide both entitlement to and the amount of any damages for willful and malicious appropriation.*

**<u>3DS and Kuester's Proposal:</u>**

If you ~~decide~~ <u>find</u> that ~~[*name of defendant*]~~<u>3DS and/or Mr. Kuester</u>'s misappropriation caused ~~[*name of plaintiff*]~~<u>Intrepid's</u> harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed ~~[*name of plaintiff*]~~<u>Intrepid</u> and to discourage similar conduct in the future.

In order to recover punitive damages, ~~[*name of plaintiff*]~~<u>Intrepid</u> must prove ~~[~~by clear and convincing evidence~~]~~ that ~~[*name of defendant*]~~<u>3DS and/or Mr. Kuester</u> acted willfully and maliciously. You must determine whether ~~[*name of defendant*]~~<u>3DS and/or Mr. Kuester</u> acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.

"Willfully" means that ~~[*name of defendant*]~~<u>3DS and/or Mr. Kuester</u> acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that ~~[*name of defendant*]~~ <u>3DS and/or Mr. Kuester</u> acted with an intent to cause injury, or that ~~[*name of defendant*]~~<u>3DS and/or Mr. Kuester</u>'s conduct was despicable and was done with a willful and knowing disregard for the rights of others.

Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. ~~[*Name of defendant*]~~3DS and/or Mr. Kuester acted with knowing disregard if ~~[he/she/*nonbinary pronoun*/it]~~they ~~was~~ were aware of the probable consequences of ~~[his/her/*nonbinary pronoun*/its]~~their conduct and deliberately failed to avoid those consequences.[85]

[85] Authority: CACI No. 4411 (2026 Edition).

**Disputed Proposed Instruction No. 70: Punitive Damages for Willful and Malicious Misappropriation**

**Intrepid's Proposal:**

If you find for Intrepid on its trade secrets claims, you may, but are not required to, assess additional punitive damages against Defendants. The purposes of punitive damages are to punish Defendants for their conduct and to deter Defendants and others from engaging in similar conduct in the future.

In order for Intrepid to recover punitive damages, you must find that Intrepid has proved that Defendants' act of trade secret misappropriation were willful and malicious. "Willful" means that Defendants acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith. Conduct is "malicious" if it is accompanied by ill will or spite, or if it is done for the purpose of injuring Intrepid.

If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages. Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward either party. In determining the amount of any punitive damages, you should consider the following factors:

1. The reprehensibility of the conduct;

2. The impact of the conduct on Intrepid;

3. The relationship between Intrepid and Defendants;

4. Defendants' financial condition;

5. The likelihood that such conduct would be repeated by Defendants or others if an award of punitive damages is not made; and

6. The relationship of any award of punitive damages to the amount of actual harm that Intrepid suffered.

If you find that Defendants acted willfully and maliciously, you may award Intrepid an amount of exemplary damages up to two times the total amount of the compensatory damages you award Intrepid for trade secret misappropriation.[86]

**3DS and Kuester's Proposal:**

*This instruction is unnecessary because the jury does not determine the amount of any punitive damages. The Court will determine, in its discretion, whether exemplary damages should be awarded. See Cal. Civ. Code § 3426.3(c) (if misappropriation was willful and malicious, "the court may award exemplary damages in an amount not exceeding twice any award") (emphasis added); 18 U.S.C. § 1836(b)(3)(C) ("if the trade secret is willfully and malicious misappropriated," a court may "award exemplary damages in an amount not more than 2 times the amount of the damages awarded"); see also Citcon USA, LLC v. RiverPay Inc., No. 20-16929, 2022 WL 287563, at *2 (9th Cir. Jan. 31, 2022) ("CUTSA provides that punitive damages are awarded by the court, not the jury, and punitive damages are not mandatory even if the jury finds the misappropriation willful and malicious").*

[86] Closing Jury Instructions, ECF No. 391, *Comet Techs. USA Inc. et al. v. XP Power LLC*, Case No. 5:20-cv-06408-NC (N.D. Cal.)

## V. Contract-Related Instructions

**Disputed Proposed Instruction No. 71: Breach of Contract—Introduction**

**Intrepid's Proposal:**

~~[*Name of Plaintiff*]~~Intrepid claims that ~~[he/she/*nonbinary pronoun*/~~it~~]~~ and Evan Kuester~~[*name of defendant*]~~ entered into a Non-Disclosure Agreement~~contract for [*insert brief summary of alleged contract*]~~.

~~[*Name of Plaintiff*]~~Intrepid claims that Evan Kuester~~[*name of defendant*]~~ breached this contract by disclosing to 3DS confidential information of Intrepid~~[*briefly state the alleged breach*]~~.

~~[*Name of Plaintiff*]~~Intrepid also claims that Evan Kuester~~[*name of defendant*]~~'s breach of this contract caused harm to ~~[*Name of Plaintiff*]~~Intrepid for which Evan Kuester~~[*name of defendant*]~~ should pay.

Evan Kuester~~[*name of defendant*]~~ denies these claims.~~ [*Name of defendant*] also claims [*insert affirmative defense*].~~[87]

**Kuester's Proposal:**

~~[*Name of plaintiff*]~~Intrepid claims that ~~[he/she/*nonbinary pronoun*/~~it~~]~~ and ~~[*name of defendant*]~~ Evan Kuester entered into a ~~contract for [*insert brief summary of alleged contract*]~~ Non-Disclosure Agreement.

~~[*Name of plaintiff*]~~ Intrepid claims that ~~[*name of defendant*]~~ Mr. Kuester breached this contract by ~~[*briefly state the alleged breach*]~~ disclosing to 3DS the following information of Intrepid that Intrepid claims is confidential:

[87] CACI 300 (2026 Edition).

(1) edge-blending technology as embodied in a test bed consisting of six 4K-resolution projectors deployed in a specific configuration, with four projectors arranged in a 2X2 formation and projecting downward and two additional projectors facing laterally and being redirected via bounce mirrors;

(2) a fully-automated self-calibration system as deployed in software and hardware of the above-described 6-projector test bed, which required no manual adjustment (for example, by an optics technician) and no movability or manual flexibility of the projectors themselves; and

(3) the following information regarding Intrepid's DLP multiprojection printer, which at the time of Evan Kueter's tour of Intrepid was under development:

(i) the commercial viability of the printer and its technology, which Intrepid claims permitted a customer the ability to use DLP technology for the imaging of large photopolymer parts at a high resolution versus lasers and galvanometer mirrors;

(ii) the anticipated size of the print platform of the printer and number of projectors used by the same;

(iii) Intrepid's ability to customize the build-area, projectors, and other parameters to customer specification;

(iv) the target market for the printer, including the fact that the printer was specifically designed to meet the needs of SpaceX, who specifically commissioned Intrepid to build the first production version of Valkyrie;

(v) the development timeline and anticipated timeline to market for the printer; and

(vi) Intrepid's expectations regarding approximate price to customers of the printer.

[*Name of plaintiff*] Intrepid also claims that Kuester[*name of defendant*]'s breach of this contract caused harm to [*name of plaintiff*] Intrepid for which [*name of defendant*]Kuester should pay.

[*Name of defendant*] Kuester denies that Intrepid shared certain of the information Intrepid claims was shared with him, denies that the information was confidential under the NDA, and denies that he breached the NDA as to any of the information that forms the basis of Intrepid's claim against him. Mr. Kuester contends that he did not cause Intrepid to suffer damages and that Intrepid did not take reasonable steps to avoid any harm.[88] [*Name of defendant*] also claims [*insert affirmative defense*].

[88] Authority: CACI 300 (2026 Edition).

**Disputed Proposed Instruction No. 72: Contract Formation – Essential Factual Elements**

**<u>Intrepid's Proposal:</u>**

*This instruction is not necessary because this is not a defense raised by 3DS and Kuester.*

**<u>Kuester's Proposal:</u>**

~~[*Name of plaintiff*]~~ <u>Intrepid</u> claims that ~~the parties~~ <u>Intrepid and Kuester</u> entered into a contract <u>called a non-disclosure agreement or NDA</u>. To prove that a contract was created, ~~[*name of plaintiff*]~~ <u>Intrepid</u> must prove all of the following:

1. That the contract terms were clear enough that the parties could understand what each was required to do;
2. That the parties agreed to give each other something of value; and
3. That the parties agreed to the terms of the contract.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions.

If ~~[*name of plaintiff*]~~ <u>Intrepid</u> did not prove all of the above, then a contract was not created.[89]

[89] Authority: CACI 302 (2026 Edition).

**Disputed Proposed Instruction No. 73: Breach of Contract—Essential Factual Elements)**

**Intrepid's Proposal:**

To recover damages from ~~[*name of defendant*]~~ Kuester for breach of contract, ~~[*name of the plaintiff*]~~Intrepid must prove all of the following:

1. That ~~[*name of the plaintiff*]~~Intrepid and ~~[*name of defendant*]~~ Kuester entered into a contract;

2. That ~~[*name of the plaintiff*]~~Intrepid did all, or substantially all, of the significant things that the contract required it to do;

~~[or]~~

~~[2. That [*name of plaintiff*] was excused from having to [*specify things that plaintiff did not do, e.g., obtain a guarantor on the contract*];]~~

~~[3. That [*specify occurrence of all conditions required by the contract for [name of defendant]'s performance, e.g., the property was rezoned for residential use*];]~~

~~[3. [or]~~

~~[3. That [*specify condition(s) that did not occur*] [was/were] [waived/ excused];]~~

~~[4. That [*name of defendant*] failed to do something that the contract~~

required [him/her/*nonbinary pronoun*/it] to do;]

[4. [*or*]

4. 3. That Intrepid provided Kuester with Intrepid's confidential information and business plans in furtherance of Kuester's alleged interest in employment with Intrepid;

4. That [*name of defendant*] Kuester did something that the contract prohibited him from doing;

5. That *name of the plaintiff*]Intrepid was harmed; and

6. That [*name of defendant*] Kuester's breach of contract was a substantial factor in causing *name of the plaintiff*]Intrepid's harm.[90]

**Kuester's Proposal:**

To recover damages from [*name of defendant*]Mr. Kuester for breach of contract, [*name of plaintiff*]Intrepid must prove all of the following:

1. That [*name of plaintiff*]Intrepid and [*name of defendant*]Mr. Kuester entered into a contract;

[2. That [*name of plaintiff*]Intrepid did all, or substantially all, of the significant things that the contract required [him/her/*nonbinary pronoun*/it] to do;]

[2. [or]

[90] CACI 303 (2026 Edition).

[2. That [*name of plaintiff*] was excused from having to [*specify things that plaintiff did not do, e.g., obtain a guarantor on the contract*];]

[3. That [*specify occurrence of all conditions required by the contract for [name of defendant]'s performance, e.g., the property was rezoned for residential use*];]

[3. [or]

[3. That [*specify condition(s) that did not occur*] [was/were] [waived/ excused];]

[4. That [*name of defendant*] Mr. Kuester failed to do something that the contract required [him/her/*nonbinary pronoun*/it] to do;]

[4. [*or*]

[4. That [*name of defendant*] did something that the contract prohibited [him/her/*nonbinary pronoun*/it] from doing;]

5. That [*name of plaintiff*] Intrepid was harmed; and

65. That [*name of defendant*]Mr. Kuester's breach of contract was a substantial factor in causing [*name of plaintiff*]Intrepid's harm.[91]

[91] Authority: CACI 303 (2026 Edition).

**Disputed Proposed Instruction No. 74: Contract Formation – Offer**

**Intrepid's Proposal:**

*This instruction is not necessary because this is not a defense raised by 3DS and Kuester.*

**Kuester's Proposal:**

Both an offer and an acceptance are required to create a contract. ~~[*Name of defendant*] contends that a contract was not created because there was never any offer. To overcome this contention, [*name of plaintiff*]~~ To prove it made an offer to Mr. Kuester, Intrepid must prove all of the following:

1. That ~~[*name of plaintiff*]~~Intrepid communicated to ~~[*name of defendant*]~~ Mr. Kuester that ~~[he/she/*nonbinary pronoun*/~~it~~]~~ was willing to enter into a contract with ~~[*name of defendant*]~~Mr. Kuester;

2. That the communication contained specific terms; and

3. That, based on the communication, ~~[*name of defendant*]~~Mr. Kuester could have reasonably concluded that a contract with these terms would result if ~~[~~he~~/she/*nonbinary pronoun*/it]~~ accepted the offer.

If ~~[*name of plaintiff*]~~Intrepid did not prove all of the above, then a contract was not created.[92]

---

[92] Authority: CACI 307 (2026 Edition).

**Disputed Proposed Instruction No. 75: Contract Formation—Acceptance**

**Intrepid's Proposal:**

*This instruction is not necessary because this is not a defense raised by 3DS and Kuester.*

**Kuester's Proposal:**

Both an offer and an acceptance are required to create a contract. ~~[*Name of defendant*] contends that a contract was not created because the offer was never accepted. To overcome this contention, [*name of plaintiff*]~~To prove an offer was accepted, Intrepid must prove both of the following:

1. That ~~[*name of defendant*]~~ Mr. Kuester agreed to be bound by the terms of the offer~~. [If [*name of defendant*] agreed to be bound only on certain conditions, or if [he/she/*nonbinary pronoun*/it] introduced a new term into the bargain, then there was no acceptance]~~; and

2. That ~~[*name of defendant*]~~Mr. Kuester communicated ~~[~~his~~/her/*nonbinary pronoun*/its]~~ agreement to ~~[*name of plaintiff*]~~Intrepid.

If ~~[*name of plaintiff*]~~ Intrepid did not prove both of the above, then a contract was not created.[93]

[93] Authority: CACI 309 (2026 Edition).

**Disputed Proposed Instruction No. 76: Interpretation – Meaning of Ordinary Words**

**<u>Intrepid's Proposal:</u>**

*This instruction is not necessary because interpretation of contract terms is not at issue in this case.*

**<u>Kuester's Proposal:</u>**

You should assume that the parties intended the words in ~~their contract~~ <u>the NDA</u> to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.[94]

[94] Authority: CACI 315 (2026 Edition).

**Disputed Proposed Instruction No. 77: Breach of Contract – Exclusions**

**<u>Intrepid's Proposal:</u>**

*This instruction is not necessary because this is not a defense raised by 3DS and Kuester and is not an issue of law. Instead, it points to the language of the contract itself.*

**<u>Kuester's Proposal:</u>**

<u>Mr. Kuester cannot be found to have violated the contract, if the information:</u>

<u>(a) was available to the public prior to the disclosure;</u>

<u>(b) becomes available to the public through no act or omission of Mr. Kuester;</u>

<u>(c) has been or is given to Mr. Kuester by a third party not known by Mr. Kuester after due inquiry to be under any obligation of confidentiality to the Discloser; or,</u>

<u>(d) is developed independently by Mr. Kuester without the use or benefit of the confidential information of the Discloser.[95]</u>

[95] Authority: NDA, Paragraph 5, Exclusions. This instruction is not redlined since it is not based on a model instruction.

**Disputed Proposed Instruction No. 78: Interpretation—Meaning of Technical Words**

**<u>Intrepid's Proposal:</u>**

*This instruction is not necessary because interpretation of contract terms is not at issue in this case.*

**<u>Kuester's Proposal:</u>**

You should assume that the parties intended technical words used in the ~~contract~~ <u>NDA</u> to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.[96]

[96] Authority: CACI 316 (2026 Edition).

**Disputed Proposed Instruction No. 79: Interpretation – Construction of Contract as a Whole**

**Intrepid's Proposal:**

*This instruction is not necessary because interpretation of contract terms is not at issue in this case.*

**Kuester's Proposal:**

In deciding what the words of ~~a contract~~the NDA meant to the parties, you should consider the whole ~~contract~~NDA, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.[97]

[97] Authority: CACI 317 (2026 Edition).

**Disputed Proposed Instruction No. 80: Interpretation—Construction Against Drafter**

**<u>Intrepid's Proposal:</u>**

*This instruction is not necessary because interpretation of contract terms is not at issue in this case.*

**<u>Kuester's Proposal:</u>**

In determining the meaning of the words of the ~~contract~~<u>NDA</u>, you must first consider all of the other instructions that I have given you. If, after considering these instructions, you still cannot agree on the meaning of the words, then you should interpret the ~~contract~~ <u>NDA</u> against the party that caused the uncertainty.[98]

[98] Authority: CACI 320 (2026 Edition).

**Disputed Proposed Instruction No. 81: Mitigation of Damages (Breach of Contract)**

**<u>Intrepid's Proposal:</u>**

*This instruction is not necessary because this is not a defense raised by 3DS and Kuester.*

**<u>Kuester's Proposal:</u>**

If ~~[*name of defendant*]~~Mr. Kuester breached the contract and the breach caused harm, ~~[*name of plaintiff*]~~ Intrepid is not entitled to recover damages for harm that ~~[*name of defendant*]~~Mr. Kuester proves ~~[*name of plaintiff*]~~ Intrepid could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of ~~[*name of plaintiff*]~~Intrepid's efforts in light of the circumstances facing ~~[him/her/*nonbinary pronoun*/~~it~~]~~ at the time, including ~~[his/her/*nonbinary pronoun*/~~its~~]~~ ability to make the efforts or expenditures without undue risk or hardship. [99]

~~If [*name of plaintiff*] made reasonable efforts to avoid harm, then your award should include reasonable amounts that [he/she/*nonbinary pronoun*/it] spent for this purpose.~~

[99] Authority: CACI No. 358 (2026 Edition).

**Disputed Proposed Instruction No. 82: Affirmative Defense To Breach Of Contract – Unclean Hands**

**Intrepid's Proposal:**

*This instruction is not necessary because this is not a defense raised by 3DS and Kuester.*

**Kuester's Proposal:**

Mr. Kuester has raised as an affirmative defense that Intrepid has come to court with unclean hands. The doctrine of unclean hands is invoked when the defendant proves that the plaintiff has engaged in inequitable, unfair, unconscionable, or deceitful conduct in connection with the same subject matter for which the plaintiff claims a right to damages.

Even if you determine that Intrepid has proven the elements of its claim for breach of contract, you may still reject Intrepid's claim if you determine that Mr. Kuester has proven that Intrepid's conduct has been inequitable, unfair, unconscionable, or deceitful, and resulted in prejudice to Mr. Kuester. Intrepid's misconduct that constitutes unclean hands must be intimately connected with whether Mr. Kuester improperly acquired or disclosed Intrepid's alleged trade secrets in breach of the NDA.[100]

[100] Authority: *Cal-Agrex, Inc. v. Tassell*, 258 F.R.D. 340, 348 (N.D. Cal. 2009), aff'd, 408 F. App'x 58 (9th Cir. 2011) ("unclean hands is available as an affirmative defense to a contract claim under California law"); *Kendall–Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 90 (2000); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957 (N.D. Cal. May 17, 2013), aff'd, 609 F. App'x 497 (9th Cir. 2015).

**Agreed Proposed Instruction No. 83: Introduction to Contract Damages** [101]

If you decide that [*name of plaintiff*]Intrepid has proved [his/her/*nonbinary pronoun*/its] claim against [*name of defendant*]Kuester for breach of contract, you also must decide how much money will reasonably compensate [*name of plaintiff*]Intrepid for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put [*name of plaintiff*]Intrepid in as good a position as it would have been had [*name of defendant*]Kuester performed as promised.

To recover damages for any harm, [*name of plaintiff*]Intrepid must prove that when the contract was made, both Intrepid and Kuester parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

[*name of plaintiff*]Intrepid must prove the amount of [his/her/*nonbinary pronoun*/its] damages according to the following instructions. [He/She/*Nonbinary pronoun*/It] does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

[*Name of plaintiff*] claims damages for [*identify general damages claimed*.].

[101] Authority: CACI 350 (2026 Edition).

**Agreed Proposed Instruction No. 84: Lost Profits/Actual Loss (Breach of Contract Claim)**

To recover damages for lost profits, ~~*name of the plaintiff*]~~Intrepid must prove it is reasonably certain ~~[he/she/*nonbinary pronoun*/~~it~~]~~ would have earned profits but for ~~[*name of defendant*]~~ Kuester's ~~conduct~~ breach of contract.

To decide the amount of damages for lost profits, you must determine the gross amount ~~*name of the plaintiff*]~~Intrepid would have received but for ~~[*name of defendant*]~~ Kuester's ~~conduct~~ breach and then subtract from that amount ~~the~~ all expenses ~~[~~including the value of the ~~[*specify categories of evidence, such as labor/materials/rents/alle xpenses/interest of the capital employed*]~~ labor, materials, and manufacturing costs ~~*name of the plaintiff*]~~Intrepid would have had if ~~[*name of defendant*]~~ Kuester's ~~conduct~~ breach had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.[102]

[102] Authority: CACI 3903N (2026 Edition).

**Disputed Proposed Instruction No. 85: Special Damages (Breach of Contract Claim)**

**Intrepid's Proposal:**

~~[*Name of plaintiff*]~~Intrepid ~~[also]~~ claims damages for ~~[*identify special damages*]~~ loss of its business expectancy from its commercial relationship with AeroCo.

To recover for this harm with respect to its breach of contract, ~~[*name of plaintiff*]~~Intrepid must prove that when the parties made the contract, ~~[*name of defendant*]~~Kuester knew or reasonably should have known of the special circumstances leading to the harm.[103]

**Kuester's Proposal:**

*This is instruction is not applicable because Intrepid never sought such damages from Kuester. The instruction also is confusing and provides the jury no guidance on how to determine if such damages were suffered or how to calculate them. The amount sought appears to be duplicative of Intrepid's claim for lost profits. In any event, this instruction is unnecessary, as damages for "loss of business expectancy" arise in claims for tortious interference with contract, not breach of contract. Intrepid no longer has a tortious interference with contract claim in this case, as it was dismissed. ECF 452.*

[103] CACI 351 (2026 Edition).

**Disputed Proposed Instruction No. 86: Restitution From 3D Systems Based on Unjust Enrichment (Breach of Contract Claim)**

**Intrepid's Proposal:**

~~[Name of plaintiff]~~Intrepid claims that ~~[name of defendant]~~3D Systems must restore to ~~[name of plaintiff] [specify, e.g., money]~~Intrepid the benefit that ~~[name of defendant]~~3D Systems received from Kuester's~~[name of third party]~~ disclosure of Intrepid's confidential information, because~~but~~ that benefit really should belong to Intrepid~~[name of plaintiff]~~]. ~~[Name of plaintiff]~~Intrepid is entitled to restitution if ~~[he/she/nonbinary pronoun]~~it proves that ~~[name of defendant]~~3D Systems knew or had reason to know that Kuester disclosed or used Intrepid's confidential information in breach of the NDA.~~[name of third party] [specify act constituting unjust enrichment, e.g., embezzled money from [name of plaintiff]].~~[104]

**Kuester's Proposal:**

*3DS and Kuester object to Intrepid belatedly adding a new instruction for the first time in this re-submission. This instruction also is unnecessary and improper because Intrepid has not asserted a breach of contract claim against 3D Systems and this instruction as drafted by Intrepid appears to seek restitution damages from 3DS on a breach of contract claim that has never been asserted against it. See ECF 199 at p. 39 (Second Cause of Action – Breach of Written Contract "Against Evan Kuester" only). This CACI instruction does not apply because it is intended for a situation where a third party has misappropriated and transferred to the breach-of-contract defendant (here Kuester) money or property of the Plaintiff (here Intrepid). See CACI 375, cmt. ("Under quasi-contract, one is entitled to restitution*

[104] CACI 375 (2026 Edition).

*of one's money or property that a third party has misappropriated and transferred to the defendant if the defendant had reason to believe that the thing received had been unlawfully taken from the plaintiff by the third party.").  There is no allegation, nor has there ever been an allegation, that 3D Systems transferred Intrepid's property to Kuester. To the extent this instruction is intended to seek restitution damages against Kuester it is likewise improper and unnecessary because no restitution or unjust enrichment damages have been properly alleged against Kuester and this instruction is not applicable to him because it presumes a transfer to Kuester of Intrepid's property from a third party. There is no such allegation in this case.*

Dated: July 8, 2026

**MILLER JOHNSON / IRWIN IP**

By: /s/ Jeffrey J. Catalano
Jeffrey J. Catalano
Robyn M. Bowland
Alexander S. Bennett

Dated: July 8, 2026

**SMITH GAMBRELL RUSSELL LLP**

By: /s/ Jason P. Stearns
Jason P. Stearns

Dated: July 8, 2026

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: /s/ Anne S. Potiker
Sean M. Monks, Esq.
Anne S. Potiker, Esq.

Attorneys for Defendant/Counter-Claimant/Third Party Claimant INTREPID AUTOMATION

DATED: July 8, 2026

**HUNTON ANDREWS KURTH LLP**

By: /s/ Emily Burkhardt Vicente
Emily Burkhardt Vicente
Roland M. Juarez
D. Andrew Quigley
Maya Eckstein
Jake Struck
Ozzie Farres

Attorneys for Plaintiff/Counter-Defendant, 3D SYSTEMS, INC. and Third-Party Defendant EVAN KUESTER