UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3D SYSTEMS, INC.,<br>Plaintiff,<br>v.<br>Ben WYNNE, et al.,<br>Defendants. | Case No.: 21-cv-1141-AGS-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART INTREPID'S EX PARTE MOTION FOR SANCTIONS (ECF 918)** |

Two weeks before trial and three years after the information was due, counsel produced three exhibits that it admits are both "late" and part of "its defense." (ECF 926, at 6, 10.) The opposition now moves ex parte for sanctions.

**BACKGROUND**

While preparing for trial, counter-defendant 3D Systems, Inc., came across three emails that it seeks to introduce at trial: Exhibits JX, JY, and JZ. (ECF 926-1, at 4.) Although these emails were "responsive to" discovery requests from "2023," they were "miscoded" and thus not identified until "July 12, 2026." (*Id.* at 3–4.)

The exhibits involve an internal 3D Systems email exchange about the "potential threat" that Intrepid posed to a client whose business both companies sought: "AeroCo." (ECF 918-5, at 10; 918-9, at 3.)

**DISCUSSION**

**A. Ex Parte Relief**

As a preliminary matter, under these circumstances, Intrepid may properly proceed *ex parte* with its sanctions motion. To obtain "*ex parte* relief," Intrepid must "show that it will suffer irreparable harm if the motion is not heard on an expedited schedule and that it either did not create the circumstances warranting *ex parte* relief or that the circumstances occurred as a result of excusable neglect." *See Rumely v. Mednax, Inc.*, No. 21-cv-00152-BAS-JLB, 2021 WL 870804, at *1 (S.D. Cal. Mar. 8, 2021). 3D Systems and Kuester don't oppose the ex parte nature of the relief, and with good reason. Absent Court intervention,

this motion wouldn't be heard until after trial ends, which would moot the objections to these potential trial exhibits. And all sides agree that Intrepid did not "create the circumstances" that require an expedited review. (*See* ECF 926-1, at 4).

**B. Sanctions**

Yet 3D Systems and Kuester oppose the specific requested sanctions, asserting there was "no meaningful harm." (ECF 926, at 6.) Among its proposed sanctions, Intrepid demands (a) an "immediate[] search" of "custodial files" using specific keywords, (b) making "every witness on either parties' witness list" who "appear[s] in the new production available for depositions," and (c) an "adverse inference" jury instruction. (ECF 918, at 9, 14.) Both sides reach too far, but the Court will consider excluding the evidence and other sanctions.

**1. *Evidentiary Exclusion***

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Under this rule, district courts have "particularly wide latitude" when exercising "discretion to issue sanctions." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Id.*

3D Systems admits that it failed to provide the information in the exhibits as required, asserting that the oversight was on account of a "miscoding error" by an "associate" who is "no longer with [3D Systems' counsel's] firm." (ECF 926-1, at 4–5.) This excuse does not render the discovery failure "substantially justified," so the Court must determine whether the omission was "harmless." *See* Fed. R. Civ. P. 37(c)(1). The "burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly*, 259 F.3d at 1107.

In 3D Systems' view, the exhibit emails "are harmless disclosures that reflect what Intrepid has long known through witness testimony." (ECF 926, at 10.) This is so because

one witness, Craig White, "already testified to the substance" of those emails—namely, that 3D Systems learned of Intrepid's business with AeroCo "through a contact at AeroCo." (*Id.* at 11.) But this framing glosses over all the new information that the email exhibits reveal. 3D Systems itself admits that the "email that 3DS recently produced provides the name of" the person who sent the late-produced email—Patrick Daly. His name was previously unavailable because "White could not recall" it. (*Id.*) And Daly has since "left" 3D Systems, so he would be difficult to reach before this week's trial. (*See* ECF 926-1, at 4.) In addition, the email exhibits reference a "cross-functional team" that Intrepid should at least have had the option to seek information about. (*See* ECF 918-5, at 8.) In short, 3D Systems has not met its burden to show that its incredibly late disclosure is harmless, so exclusion is the appropriate remedy.

**2. *Fees and Expenses***

In addition to excluding evidence, "after giving an opportunity to be heard," the court may grant a motion to "order payment of the reasonable expenses, including attorney's fees, caused by the failure" to disclose. Fed. R. Civ. P. 37(c)(1)(A). To its credit, 3D Systems' and Kuester's counsel promptly turned over the late-discovered items. Counsel found the initial exhibit on a Sunday and told Intrepid "the following day," after "several hours looking through email correspondence during the time period of January and February 2021 to determine whether any other responsive documents existed that had not been produced." (ECF 926-1, at 5.) 3D Systems also offered to let Intrepid conduct an additional hour-long deposition of White, a recipient of the key email exhibit. (*Id.* at 6.) But its three-year delay ultimately forced Intrepid to use valuable trial preparation time to deal with a problem that 3D Systems created. Thus, the Court further sanctions 3D Systems' counsel the costs and fees that Intrepid incurred in bringing this motion.

**3. *Other Sanctions***

Intrepid's other proposed sanctions, however, are either too drastic or unworkable in the limited time between now and trial. For example, an adverse-inference jury instruction is traditionally appropriate after a finding of "intentional or grossly negligent"

behavior. *See Estakhrian v. Obenstine*, No. CV 11-3480 FMO (CWX), 2016 WL 6275599, at *4 (C.D. Cal. May 17, 2016); *see also Karnazes v. Cnty. of San Mateo*, No. C 09-0767 MMC (MEJ), 2010 WL 2672003, at *2 (N.D. Cal. July 2, 2010) ("An adverse inference instruction may be appropriate where a party's bad faith or gross negligence has resulted in either the spoliation of evidence or failure to turn over relevant evidence."). As discussed earlier, there is nothing to suggest bad faith or gross negligence here. 3D Systems' "attorneys have reviewed more than 36,000 documents and produced more than 11,200 documents in this lawsuit." (ECF 926-1, at 6.) That three items were miscoded—and quickly disclosed once discovered—does not suggest behavior that warrants an adverse-inference instruction. In addition, Intrepid admits that, "at best," "the withheld emails themselves are ambiguous" as to which side they benefit. (ECF 918, at 8.) This further cuts against any hint of bad faith or gross negligence.

Finally, even Intrepid seems to acknowledge that its other recommended sanctions are "not feasible." (ECF 918*,* at 9.) Trial starts today. It is difficult to imagine how the parties would have time to "immediately search" "custodial files" using specific keywords and make available "every witness on either parties' witness list" for questioning. (*See id*.) Years into this litigation, and based on the current record, the Court is unwilling to defer the trial's start date any more.

## CONCLUSION

Intrepid's sanctions motion is **GRANTED in part** and **DENIED in part**. For trial purposes, the three newly turned-over exhibits—Exhibits JX, JY, and JZ—are **EXCLUDED**. 3D Systems' counsel must pay Intrepid's counsel's costs and fees for bringing this motion. The parties must meet and confer on that amount. By August 24, 2026, 3D Systems' counsel must either pay the requested amount or move for the Court to resolve any dispute about that amount.

Dated: July 27, 2026

Hon. Andrew G. Schopler
United States District Judge