**MILLER JOHNSON / IRWIN IP**
JEFFREY J. CATALANO
catalanoj@millerjohnson.com
ROBYN M. BOWLAND
rbowland@irwinip.com
ALEXANDER S. BENNETT
abennett@irwinip.com
150 N. Wacker Drive, Suite 700
Chicago, IL 60606

**SMITH GAMBRELL & RUSSELL LLP**
JASON STEARNS
jstearns@sgrlaw.com
201 North Franklin Street
Suite 3550
Tampa, Florida 33602
Telephone: (312) 360-6832

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Sean M. Monks (SBN 326301)
Anne S. Potiker (SBN 323693)
401 West A Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 321-6200

Attorneys for Defendants/Counter-Claimant/Third-Party Claimant, INTREPID AUTOMATION, BEN WYNNE, CHRIS TANNER, JAMIE ETCHESON, ROBERT MUELLER, and IVAN CHOUSAL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 3D SYSTEMS, INC., a California Corporation;<br>Plaintiff,<br>v.<br>BEN WYNNE, an individual; CHRIS TANNER, an individual; JAMIE ETCHESON, an individual; ROBERT MUELLER, an individual; IVAN CHOUSAL, an individual; INTREPID | Case No.: 3:21-cv-01141-AGS-DDL<br><br>**COUNTERCLAIMANT/THIRD-PARTY CLAIMANT INTREPID'S ADDITIONAL PROPOSED JURY INSTRUCTIONS** |

AUTOMATION, a California Corporation; and DOES 1 through 20, inclusive,
Defendants.

INTREPID AUTOMATION,
Counter-Claimant,
v.
3D SYSTEMS, and DOES 1-50, inclusive,
Counter-Defendant.

INTREPID AUTOMATION,
Third-Party Claimant,
v.
EVAN KUESTER, and ROES 1-50, inclusive,
Third-Party Defendant.

Pursuant to the Court's order during the August 4, 2026 Charge Conference, Intrepid respectfully requests the judge enter the following proposed jury instructions.

**Proposed Revision to Final Instruction 18 (changes shown in redline)**

Intrepid contends that, without Intrepid's consent, 3D Systems, Evan Kuester, or both of them disclosed Intrepid's Alleged Trade Secrets that one or both of them acquired by improper means.

Defendants disclosed Intrepid's Alleged Trade Secrets if, ~~Intrepid also contends that,~~ without Intrepid's consent, one or both defendants disclosed Intrepid's Alleged Trade Secrets in circumstances under which defendants knew or had reason to know that their knowledge of the Alleged Trade Secrets was derived from or through a person who used improper means to acquire the Alleged Trade Secrets.

Defendants disclosed Intrepid's Alleged Trade Secrets if,~~Intrepid further contends that,~~ without Intrepid's consent, one or both defendants disclosed Intrepid's Alleged Trade Secrets in circumstances under which defendants knew or had reason to know that their knowledge of the Alleged Trade Secrets was acquired under circumstances giving rise to a duty to Intrepid to maintain the secrecy or limit the use of the Alleged Trade Secrets.

Defendants disclosed Intrepid's Alleged Trade Secrets if, ~~And Intrepid contends that,~~ without Intrepid's consent, one or both defendants disclosed Intrepid's Alleged Trade Secrets despite having knowledge or a reason to know that defendants' knowledge of the Alleged Trade Secrets was derived from or through a person who owed a duty to Intrepid to maintain the secrecy or limit the use of the Alleged Trade Secrets.

To "disclose" ordinarily means to make something known or to reveal something. In the context of trade secret misappropriation, the term "disclose" has been broadly defined as any conduct that enables another to learn the trade secret. It can include public or private dissemination of information. Disclosure ordinarily occurs as part of an attempt to exploit the commercial value of the secret, but that is not required. Disclosure can

include the sale or transfer of goods or other tangible objects from which the trade secret can be obtained.

~~Misappropriation by unauthorized disclosure must be proved by a preponderance of the evidence separately for each Alleged Trade Secret.~~You must consider whether Intrepid has proven misappropriation by unauthorized disclosure separately for each Alleged Trade Secret.[1]

**Proposed Revision to Final Instruction 19 (changes shown in redline)**

Intrepid contends that, without Intrepid's consent, defendant 3D Systems used Intrepid's Alleged Trade Secrets that defendant 3D Systems acquired by improper means. Intrepid does not assert that Kuester used Intrepid's Alleged Trade Secrets that defendant 3D Systems acquired by improper means.

3D Systems used Intrepid's Alleged Trade Secrets that 3D Systems acquired by improper means Intrepid's Alleged Trade Secrets if~~Intrepid also contends that~~, without Intrepid's consent, defendant 3D Systems used Intrepid's Alleged Trade Secrets in circumstances under which defendant 3D Systems knew or had reason to know that its knowledge of the Alleged Trade Secrets was derived from or through a person who used improper means to acquire the Alleged Trade Secrets.

3D Systems used Intrepid's Alleged Trade Secrets that 3D Systems acquired by improper means Intrepid's Alleged Trade Secrets if ~~Intrepid further contends that~~, without Intrepid's consent, defendant 3D Systems used Intrepid's Alleged Trade Secrets in circumstances under which defendant 3D Systems knew or had reason to know that its knowledge of the Alleged Trade Secrets was acquired under circumstances giving rise to a duty to Intrepid to maintain the secrecy or limit the use of the Alleged Trade Secrets.

---

[1] It is Intrepid's understanding that the Court has already decided to make this change.

3D Systems used Intrepid's Alleged Trade Secrets that 3D Systems acquired by improper means Intrepid's Alleged Trade Secrets ifAnd Intrepid contends that, without Intrepid's consent, defendant 3D Systems used Intrepid's Alleged Trade Secrets despite having knowledge or a reason to know that defendant 3D Systems' knowledge of the Alleged Trade Secrets was derived from or through a person who owed a duty to Intrepid to maintain the secrecy or limit the use of the Alleged Trade Secrets.

"Use" ordinarily means to employ for the accomplishment of a purpose. In the context of trade secret misappropriation, the term "use" has been broadly defined as any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant. This includes marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of the trade secret information. The "use" of a trade secret encompasses all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitive purpose.

If a defendant used Intrepid's Alleged Trade Secret without Intrepid's consent during the design or development of its product or process, that defendant cannot escape liability because its final product or process does not use Intrepid's Alleged Trade Secret in its original form or is not an exact copy of plaintiff's Alleged Trade Secret. A defendant is liable for its unauthorized use even if it modified or improved the Alleged Trade Secret.

Direct evidence of use of the Alleged Trade Secret is not required. You may consider circumstantial evidence in determining whether an Alleged Trade Secret was used. However, merely possessing a trade secret without using it is not "use." In the absence of direct evidence of use, possession of the Alleged Trade Secret must be combined with other evidence, such as unusually accelerated or low-cost development of a competing product and relative lack of prior expertise to establish use based on circumstantial evidence. Mere

similarities between Intrepid's Alleged Trade Secrets and a defendant's products or technologies alone are insufficient to establish unauthorized use.

~~Misappropriation by unauthorized use must be proved by a preponderance of the evidence separately for each Alleged Trade Secret.~~ You must consider whether Intrepid has proven misappropriation by unauthorized use separately for each Alleged Trade Secret.

**Proposed Verdict Form**

It is Intrepid's position that the Court's proposed separate verdict forms for 3D Systems and Evan Kuester, including separate damages awards for 3D Systems and Mr. Kuester, are the appropriate verdict forms for the jury to consider. The Court can address post-trial any issues related to an alleged double recovery from 3D Systems and Mr. Kuester if the issues arises. Therefore, Intrepid does not propose a revised verdict form or jury instruction on this issue.

Respectfully submitted, **MILLER JOHNSON / IRWIN IP**

Dated: Aug. 4, 2026

By: /s/ *Robyn Bowland*

Jeffrey J. Catalano (*pro hac vice*)
**MILLER JOHNSON**
150 N. Wacker Drive, Suite 700
Chicago, Illinois 60606
(312) 667-6080 (Telephone)
catalanoj@millerjohnson.com

Robyn Bowland (*pro hac vice*)
Alexander Bennett (*pro hac vice*)
**IRWIN IP LLP,** *a part of* **MILLER JOHNSON**
150 N. Wacker Drive, Suite 700

Chicago, Illinois 60606
(312) 667-6080 (Telephone)
rbowland@irwinip.com
abennett@irwinip.com

Sean M. Monks (SBN 326301)
Anne S. Potiker (SBN 323693)
**WILSON, ELSER, MOSKOWITZ, EDELMAN DICKER LLP**
401 West A Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 321-6200

Jason Stearns
**SMITH GAMBRELL & RUSSELL LLP**
201 North Franklin Street, Suite 3550
Tampa, Florida 33602
Telephone: (312) 360-6832

*Counsel for Intrepid Automation*