# FINAL INSTRUCTIONS

## FINAL INSTRUCTION 1

Members of the jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these jury instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in this case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## FINAL INSTRUCTION 2

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

The bailiffs will show you how to operate the computer and other equipment, and how to locate and view the exhibits on the computer. You may request a paper copy of any exhibit received in evidence by sending a note through the bailiff. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the bailiff, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the bailiff present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any data.

## FINAL INSTRUCTION 3

During this trial, you have been presented with evidence that the parties claim constitutes a trade secret or highly sensitive business information, including but not limited to certain technical information, business strategies, and financial data. This information has been disclosed to you solely for the purpose of deciding this case. You must not share, discuss, or disclose any of this information with anyone outside of your fellow jurors during your deliberations. You are strictly prohibited from using this information for personal gain, professional advantage, or passing it along to any third party.

Furthermore, you must not use or disclose this information after this trial has concluded. Your duty to keep this information secret and secure continues indefinitely, even after the verdict has been rendered and you have been dismissed.

During trial, the Court took precautions to prevent public access to certain information, such as by removing members of the public from the courtroom or ordering that certain exhibits not be displayed to the spectators. When evaluating whether Intrepid has satisfied its burden of proof in this case, you are not permitted to take into account, or consider in any way, the fact that the Court took such precautions.

## FINAL INSTRUCTION 4

All parties are equal before the law, and a corporation is entitled to the same fair and conscientious consideration by you as any party.

## FINAL INSTRUCTION 5

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

## FINAL INSTRUCTION 6

You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.

## FINAL INSTRUCTION 7

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

## FINAL INSTRUCTION 8

Certain charts and summaries *not* admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## FINAL INSTRUCTION 9

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## FINAL INSTRUCTION 10

When a party has the burden of proving any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## FINAL INSTRUCTION 11

Intrepid brings two separate claims for misappropriation of trade secrets—one under state law and one under federal law. The federal-law claim is brought under the Defend Trade Secrets Act (DTSA), and the state-law claim is brought under the California Uniform Trade Secrets Act (CUTSA). Many, but not all, of the elements of these claims are the same.

**FINAL INSTRUCTION 12**

I will first instruct you on the claim under the Defend Trade Secrets Act or DTSA.

This trial concerns Intrepid's Alleged Trade Secrets. Intrepid contends that 3D Systems, Evan Kuester, or both of them misappropriated the Alleged Trade Secrets set forth in Court Exhibit 1. The summary and listing of the Alleged Trade Secrets in Court Exhibit 1 has been provided for your convenience. It does not mean that they are (or are not) in fact trade secrets. You should consider each Alleged Trade Secret separately to decide (1) if it qualifies as an identifiable trade secret; and (2) if it is a trade secret, whether it was misappropriated, based on the law that I will explain to you.

**FINAL INSTRUCTION 13**

Intrepid claims that defendants misappropriated the Alleged Trade Secrets in violation of the Defend Trade Secrets Act. To succeed on this claim, Intrepid must prove by a preponderance of the evidence all of the following elements as to at least one of the Alleged Trade Secrets:

1. The existence of that trade secret;

2. Intrepid owned that trade secret;

3. That trade secret was used in or intended for use in interstate or foreign commerce;

4. Defendant misappropriated that trade secret; and

5. Intrepid was harmed or defendant was unjustly enriched as a result of the trade-secret misappropriation.

You should consider these elements separately for each Alleged Trade Secret and against each defendant. I will separately instruct you regarding each of these elements.

## FINAL INSTRUCTION 14

You must decide whether each Alleged Trade Secret qualified as a trade secret at the time of the alleged misappropriation. The term "trade secret" includes all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.

Intrepid must identify the information it alleges to be trade secrets with a reasonable degree of precision and specificity that is particular enough to separate each Alleged Trade Secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.

**FINAL INSTRUCTION 15**

To prove that an Alleged Trade Secret qualified as a trade secret at the time of the misappropriation, Intrepid must prove all of the following by a preponderance of the evidence as to that Alleged Trade Secret:

1. That the information was secret;

2. That the information derives independent economic value, actual or potential, from being kept secret;

3. That Intrepid has taken reasonable measures to keep the information secret; and

4. That the information was neither generally known nor readily ascertainable by proper means.

## FINAL INSTRUCTION 16

To determine that a trade secret exists, you must decide whether the information qualified as a trade secret when the defendant's alleged misappropriation occurred. Matters that are generally known to the public at large or to the people in Intrepid's trade or business are not trade secrets. Nor can information be considered a trade secret if it would be readily ascertainable from publicly available information.

Absolute secrecy is not necessary for information to qualify as a trade secret. It is not required that no one else in the world possesses the information. Rather, Intrepid must demonstrate that the information was known only to it or to others who have also treated the information as a trade secret. The degree of secrecy must be such that it would be difficult for others who are not authorized to have access to the information to obtain it without using improper means.

## FINAL INSTRUCTION 17

To prove that an Alleged Trade Secret is a protectable trade secret, Intrepid must establish by a preponderance of the evidence that Intrepid has taken reasonable measures to keep the information secret. A trade-secret owner does not have to undertake extreme and unduly expensive measures; however, its efforts must represent a reasonable attempt to limit exposure of the information to those who have a reason to know it and who are made aware of its confidential nature. In assessing reasonableness under the circumstances, you may consider the value of the information, the risk of unintended disclosure, and the cost or inconvenience of particular measures.

This requirement applies separately to each Alleged Trade Secret. There is no precise definition of what "reasonable measures" are; what is reasonable depends upon all of the circumstances. Factors you may consider in evaluating whether Intrepid took "reasonable measures" to keep the information secret include the following:

1. Whether documents or computer files containing the information were marked with confidentiality warnings;
2. Whether Intrepid instructed its employees to treat the information as confidential;
3. Whether Intrepid restricted access to the information to persons who had a business reason to know the information;
4. Whether Intrepid kept the information in a restricted or secured area;
5. Whether Intrepid required employees or others with access to the information to sign confidentiality or nondisclosure agreements;
6. Whether Intrepid took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;
7. The extent to which any general measures taken by Intrepid would prevent the unauthorized disclosure of the information; and
8. Whether there were other reasonable measures available to Intrepid that it did not take.

The presence or absence of all or even any one of these factors may or may not be determinative. You must decide what weight to give these factors, given all the circumstances.

# FINAL INSTRUCTION 18

To prove that an Alleged Trade Secret is a protectable trade secret, Intrepid must establish by a preponderance of the evidence that the information derives independent economic value, actual or potential, from being kept secret. A trade secret has independent economic value if it would have given the owner an actual or potential economic advantage over others who did not know the information and who could have obtained economic value from its disclosure or use. Independent economic value needs to be more than trivial, although the value does not need to be great. In determining whether the information had actual or potential independent economic value because it was secret, you may consider the following list, which is not exhaustive. The presence or absence of any one or more of these factors is not determinative.

1. The extent to which the owner obtained or could have obtained an economic or competitive advantage from the information by keeping it secret;
2. The extent to which others could have obtained economic value from the information if it were not secret;
3. The amount of time, money, or labor that the owner expended in developing the information; and
4. The amount of time, money, or labor that defendant saved by using the information.

The presence or absence of any one or more of these factors is not determinative. It is not enough that the information provides some value. Instead, independent economic value requires that the value provided by the information be specifically tied to secrecy.

This requirement applies separately to each Alleged Trade Secret.

**FINAL INSTRUCTION 19**

Separately for each Alleged Trade Secret, Intrepid must prove by a preponderance of the evidence that the Alleged Trade Secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. This is a two-part inquiry.

First, Intrepid must identify a product or service used in or intended for use in interstate or foreign commerce.

Second, Intrepid must show that the Alleged Trade Secret relates to that product or service. It is the underlying product or service—not the trade secret—that must be used in or intended for use in interstate commerce.

## FINAL INSTRUCTION 20

Information that is "generally known" to the public at large or to those people in a trade or business is not protectable as a "trade secret." Special knowledge is also not a trade secret if it is generally known to persons who are skilled in the trade.

Likewise, information that is "readily ascertainable by proper means" is not protectable as a trade secret. For example, information is readily ascertainable if it is available in patent disclosures, trade journals, directories, websites, books, or other published materials. Information that is "readily ascertainable" can be lawfully reconstructed through reverse engineering, independent derivation, or compiled without significant effort or expense.

Whether information is "generally known" or "readily ascertainable by proper means" is assessed at the time of the alleged misappropriation. Information may be "generally known" to those who can obtain economic value from using or disclosing the information, if it can be shown that other competitors already know of the information and did not receive it from Plaintiff under obligations of secrecy. There may be overlapping evidence of what is "generally known" or "readily ascertainable by proper means." Whether information is "generally known" or "readily ascertainable" may be proven through expert testimony or other means.

## FINAL INSTRUCTION 21

Intrepid must prove by a preponderance of the evidence that the defendant misappropriated at least one Alleged Trade Secret.

Each act of improperly acquiring, disclosing, or using the Alleged Trade Secrets may constitute a separate act of misappropriation.

I will next instruct you on the elements required for each of Intrepid's theories of misappropriation. You must consider whether Intrepid has proven misappropriation separately for each Alleged Trade Secret.

**FINAL INSTRUCTION 22**

A defendant misappropriates a trade secret by acquisition if that defendant acquired the trade secret (a) by improper means or (b) in circumstances under which the defendant knew or had reason to know that the trade secret had been acquired by improper means.

"Acquisition" means the gaining of possession or control over something.

"Improper means" includes theft, bribery, trespass, misrepresentation, breach, or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means, such as wiretapping. "Improper means" does not include reverse engineering, independent derivation, or any other lawful means of acquisition.

Acquisition by improper means requires an improper or illegitimate purpose. Mistake, misunderstanding, or negligence is insufficient. Similarly, a mere violation of a directive or contract may be insufficient. Retention or failure to return information that was properly obtained does not necessarily constitute acquisition by improper means.

In determining whether conduct constitutes acquisition through improper means, you may consider circumstantial evidence, including the timing of the conduct, whether the defendant accessed, maintained, or failed to return the trade secret in violation of an agreement or policy, whether the defendant accessed, maintained, or transferred the trade secret outside of a company-issued device, network or system for an improper or illegitimate purpose, and whether the defendant attempted to conceal such conduct.

For each Alleged Trade Secret separately, you must consider whether Intrepid has proven misappropriation by acquisition by improper means.

**FINAL INSTRUCTION 23**

A defendant misappropriates a trade secret by disclosure if that defendant:

1. disclosed the trade secret without plaintiff's consent; and

2. did any of the following:

    a. acquired the trade secret by improper means;

    b. disclosed the trade secret in circumstances under which defendant knew or had reason to know that defendant's knowledge of the trade secret was derived from or through a person who used improper means to acquire that trade secret;

    c. disclosed the trade secret in circumstances under which defendant knew or had reason to know that defendant's knowledge of the trade secret was acquired under circumstances giving rise to a duty to plaintiff to maintain the secrecy or limit the use of that trade secret; or

    d. disclosed the trade secret despite having knowledge or a reason to know that defendant's knowledge of the trade secret was derived from or through a person who owed a duty to plaintiff to maintain the secrecy or limit the use of that trade secret.

To "disclose" means to make something known or to reveal something. In the context of trade-secret misappropriation, the term "disclose" has been broadly defined as any conduct that enables another to learn the trade secret. It can include public or private dissemination of information. Disclosure ordinarily occurs as part of an attempt to exploit the commercial value of the secret, but that is not required. Disclosure can include the sale or transfer of goods or other tangible objects from which the trade secret can be obtained.

For each Alleged Trade Secret separately, you must consider whether Intrepid has proven misappropriation by disclosure.

## FINAL INSTRUCTION 24

Intrepid asserts a claim of misappropriation by use against defendant 3D Systems, but not against defendant Kuester.

A defendant misappropriates a trade secret by use if that defendant:

1. used the trade secret without plaintiff's consent; and

2. did any of the following:

   a. acquired the trade secret by improper means;

   b. used the trade secret in circumstances under which defendant knew or had reason to know that defendant's knowledge of the trade secret was derived from or through a person who used improper means to acquire the trade secret;

   c. used the trade secret in circumstances under which defendant knew or had reason to know that defendant's knowledge of the trade secret was acquired under circumstances giving rise to a duty to plaintiff to maintain the secrecy or limit the use of the trade secret; or

   d. used the trade secret despite having knowledge or a reason to know that defendant's knowledge of the trade secret was derived from or through a person who owed a duty to plaintiff to maintain the secrecy or limit the use of the trade secret.

"Use" means to employ for the accomplishment of a purpose. In the context of trade-secret misappropriation, the term "use" has been broadly defined as any exploitation of the trade secret that is likely to result in injury to the trade-secret owner or enrichment to the defendant. This includes marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of the trade-secret information. The "use" of a trade secret encompasses all the ways one can take advantage of trade-secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitive purpose.

If a defendant used plaintiff's trade secret without plaintiff's consent during the design or development of its product or process, that defendant cannot escape liability because its final product or process does not use plaintiff's trade secret in its original form or is not an exact copy of plaintiff's trade secret. A defendant is liable for its unauthorized use even if it modified or improved the trade secret.

Direct evidence of use of the trade secret is not required. You may consider circumstantial evidence in determining whether a trade secret was used. However, merely possessing a trade secret without using it is not "use." In the absence of direct evidence of use, possession of the trade secret must be combined with other evidence, such as unusually accelerated or low-cost development of a competing product and relative lack of prior expertise to establish use based on circumstantial evidence. Mere similarities between plaintiff's trade secret and a defendant's products or technologies alone are insufficient to establish unauthorized use.

For each Alleged Trade Secret separately, you must consider whether Intrepid has proven misappropriation by use.

## FINAL INSTRUCTION 25

To recover damages for lost profits under the DTSA, Intrepid must prove it is reasonably certain it would have earned profits but for the defendant's conduct.

To decide the amount of damages for lost profits, you must determine the gross amount Intrepid would have received but for the defendant's conduct and then subtract from that amount the expenses, including the value of all expenses Intrepid would have had if defendant's conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

**FINAL INSTRUCTION 26**

The DTSA also provides for recovery of damages for a defendant's unjust enrichment caused by that defendant's misappropriation of the trade secret that is not addressed in computing damages for actual loss.

A defendant is unjustly enriched if the defendant's misappropriation of the plaintiff's trade secret caused the defendant to receive a benefit that the defendant would not have otherwise received without the misappropriation. Unjust enrichment can take many forms. For example, unjust enrichment may include profits on sales made by the defendant that, absent the misappropriation, would not have been made by the defendant. As another example, the defendant may accelerate its own development timeline or save on development costs by misappropriating the plaintiff's trade secret. Unjust enrichment does not occur, however, where the benefit would have been realized regardless of the misappropriation. The misappropriation must have been a substantial factor in causing the unjust enrichment. It must be more than a remote or trivial factor, but it does not have to be the only cause.

Here, if Intrepid proves that a defendant misappropriated its trade secret, then Intrepid is entitled to recover unjust enrichment damages if the misappropriation was a substantial factor in causing that defendant to be unjustly enriched.

Intrepid seeks to recover unjust enrichment damages based on a defendant's profits from sales made by that defendant. To recover this type of damages, Intrepid has the burden of establishing by a preponderance of the evidence the amount of a defendant's profits attributable to that defendant's trade-secret misappropriation.

Then, the defendant has an opportunity to prove by a preponderance of the evidence any amounts that should be deducted from that amount. In particular, a defendant may prove (1) the portion of its profits that were not attributable to the misappropriation, but to its own legitimate efforts; and (2) any expenses it incurred in making the profits attributable to the misappropriation that have not already been deducted.

**FINAL INSTRUCTION 27**

The period of liability for trade-secret misappropriation does not extend indefinitely. Events that occur after a defendant's misappropriation may impact the period of time during which a plaintiff is entitled to unjust-enrichment damages. In this case, you should determine whether and to what extent any monetary relief should be impacted by two such events: (1) the date that Intrepid's Alleged Trade Secrets were properly accessible to a defendant; and (2) the end of a defendant's alleged unfair competitive advantage (or "head start") derived from the trade-secret misappropriation. I will tell you how to make both determinations.

The first determination you will need to make is the date or dates, if any, when the Alleged Trade Secrets became, or would become, properly accessible to a defendant, meaning the Alleged Trade Secrets were, or would be, ascertainable by legal means. Legal means include discovery by independent development or reverse engineering, if possible, both of which require some amount of effort to learn the Alleged Trade Secrets. There is nothing improper or illegal about reverse engineering a competitor's product or trade secret, if possible. A product containing a trade secret may be placed in public sale or use without necessarily terminating secrecy. Sharing a trade secret pursuant to a confidentiality agreement does not render the trade secret properly accessible. You must determine when each Alleged Trade Secret became, or would become, properly accessible, if at all.

The second determination you will need to make is the duration of a defendant's head-start period. Even if a trade secret becomes properly accessible, Intrepid may still recover unjust-enrichment damages for an additional period of time to account for how a defendant's trade-secret misappropriation gave it an advantage over the competition. The head-start period is the amount of time it would have taken a defendant, after the defendant's permissible discovery of the trade secret, to recreate the trade secret in its own products and achieve the level of sales it made through the benefit of the misappropriation. The head-start period ends when a defendant's marketing advantage or "head start" over competitors or the public at large was neutralized.

All, or a portion, of the profits arising from a defendant's use of the trade secret during the head-start period may be included in the award of unjust-enrichment damages. It is up to you to decide which, if any, profits are attributable to the Alleged Trade Secrets and should be included within the head-start period.

**FINAL INSTRUCTION 28**

If you find for Intrepid on one or more of its DTSA trade-secret-misappropriation claims, you may, but are not required to, assess additional exemplary damages against the defendant.

The purposes of exemplary damages are to punish a defendant for its conduct and to deter that defendant and others from engaging in similar conduct in the future.

In order for Intrepid to recover exemplary damages, you must find that Intrepid has proved by a preponderance of the evidence that the defendant's misappropriation was both willful and malicious.

"Willful" means that the defendant acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith. Conduct is "malicious" if it is accompanied by ill will or spite, or if it is done with an intent to cause injury or harm.

If you find that exemplary damages are appropriate, then you must use sound reason in setting the amount of those damages. Exemplary damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward either party. In determining the amount of any exemplary damages under the DTSA, you should consider the following factors:

1. The reprehensibility of the conduct;
2. The impact of the conduct on Intrepid;
3. The relationship between Intrepid and the defendant;
4. The defendant's financial condition;
5. The likelihood that such conduct would be repeated by the defendant or others if an award of exemplary damages is not made; and
6. The relationship of any award of exemplary damages to the amount of actual harm Intrepid suffered.

If you find that the defendant acted willfully and maliciously, you may award Intrepid an amount of exemplary damages under the DTSA up to two (2) times the total amount of the trade secret misappropriation damages you award Intrepid.

## FINAL INSTRUCTION 29

I will now instruct you on the claim brought under the California Uniform Trade Secrets Act or CUTSA. Because there are some differences between the DTSA and CUTSA claims, you must decide those claims separately.

As we've discussed, Intrepid claims that it is the owner of the information in Court Exhibit 1. Intrepid claims that Court Exhibit 1 lists its trade secrets and that 3D Systems, Evan Kuester, or both defendants misappropriated them under CUTSA. "Misappropriation" means the improper acquisition, use, or disclosure of the trade secrets. Intrepid also claims that the defendant's misappropriation caused it harm or allowed the defendant to be unjustly enriched. Both 3D Systems and Evan Kuester deny Intrepid's allegations. Both defendants also claim an affirmative defense that the Alleged Trade Secret information was readily ascertainable.

## FINAL INSTRUCTION 30

Intrepid claims that 3D Systems, Evan Kuester, or both have misappropriated its Alleged Trade Secrets in Court Exhibit 1. To succeed on this claim, Intrepid must prove by a preponderance of the evidence all the following elements as to at least one of the Alleged Trade Secrets:

1. That Intrepid owned the information;

2. That the information was a trade secret at the time of the misappropriation;

3. That the defendant improperly acquired, used, or disclosed the trade secret;

4. That Intrepid was harmed or the defendant was unjustly enriched; and

5. That the defendant's acquisition, use, or disclosure was a substantial factor in causing Intrepid's harm or the defendant to be unjustly enriched.

## FINAL INSTRUCTION 31

To prove that any Alleged Trade Secret in Court Exhibit 1 constitutes a trade secret, Intrepid must prove all of the following by a preponderance of the evidence as to that Alleged Trade Secret:

1. That the information was secret;

2. That the information had actual or potential independent economic value because it was secret; and

3. That Intrepid made reasonable efforts to keep the information secret.

## FINAL INSTRUCTION 32

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in Intrepid's use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

## FINAL INSTRUCTION 33

To establish that an Alleged Trade Secret is a trade secret, Intrepid must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Intrepid, exercising due care to protect important information of the same kind. This requirement applies separately to each item that Intrepid claims to be a trade secret. In determining whether Intrepid made reasonable efforts to keep the information secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

1. Whether documents or computer files containing the information were marked with confidentiality warnings;
2. Whether Intrepid instructed its employees to treat the information as confidential;
3. Whether Intrepid restricted access to the information to persons who had a business reason to know the information;
4. Whether Intrepid kept the information in a restricted or secured area;
5. Whether Intrepid required employees or others with access to the information to sign confidentiality or nondisclosure agreements;
6. Whether Intrepid took any action to protect the specific information, or whether it relied on general measures taken to protect its business information or assets;
7. The extent to which any general measures taken by Intrepid would prevent the unauthorized disclosure of the information; and
8. Whether there were other reasonable measures available to Intrepid that it did not take.

The presence or absence of any one or more of these factors is not necessarily determinative.

## FINAL INSTRUCTION 34

An Alleged Trade Secret has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether the Alleged Trade Secret had actual or potential independent economic value because it was secret, you may consider the following:

1. The extent to which Intrepid obtained or could obtain economic value from the information in keeping it secret;
2. The extent to which others could obtain economic value from the information if it were not secret;
3. The amount of time, money, or labor that Intrepid expended in developing the information; and
4. The amount of time, money, or labor that would be saved by a competitor who used the information;

The presence or absence of any one or more of these factors is not necessarily determinative.

## FINAL INSTRUCTION 35

A defendant misappropriated Intrepid's trade secrets by acquisition if that defendant acquired the trade secrets and knew or had reason to know that that defendant used improper means to acquire the trade secrets.

## FINAL INSTRUCTION 36

A defendant misappropriated Intrepid's trade secrets by disclosure if that defendant:

1. disclosed the trade secrets without Intrepid's consent; and

2. did any of the following:

   a. acquired knowledge of the trade secrets by improper means; or

   b. at the time of disclosure, knew or had reason to know that that defendant's knowledge of Intrepid's trade secrets came from or through Evan Kuester, and that Kuester had a duty to Intrepid to keep that information secret.

## FINAL INSTRUCTION 37

3D Systems misappropriated Intrepid's trade secrets by use if it

1. used the trade secrets without Intrepid's consent; and

2. did any of the following:

    a. acquired knowledge of the trade secrets by improper means; or

    b. at the time of use, knew or had reason to know that defendant 3D Systems' knowledge of Intrepid's trade secrets came from or through Evan Kuester, and that Kuester had a duty to Intrepid to limit use of that information.

## FINAL INSTRUCTION 38

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, bribery, misrepresentation, breach or inducing a breach of a duty to maintain secrecy, wiretapping, or electronic eavesdropping.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by any of the following:

1. Independent efforts to invent or discover the information;
2. Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;
3. Obtaining the information as a result of a license agreement with the owner of the information;
4. Observing the information in public use or on public display; or
5. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

## FINAL INSTRUCTION 39

A defendant was unjustly enriched if the misappropriation of Intrepid's trade secrets caused that defendant to receive a benefit that that defendant otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of the defendant's benefit that would not have been achieved except for the misappropriation. Then subtract from that amount defendant's reasonable expenses, including the value of the labor, materials, rents, and/or interest on invested capital. In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for Intrepid's actual loss.

**FINAL INSTRUCTION 40**

The defendant did not misappropriate Intrepid's trade secrets if that defendant proves that any such trade secret was readily ascertainable by proper means at the time of the alleged acquisition, use, or disclosure.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

## FINAL INSTRUCTION 41

To recover damages for lost profits under the CUTSA, Intrepid must prove it is reasonably certain it would have earned profits but for the defendant's conduct.

To decide the amount of damages for lost profits, you must determine the gross amount Intrepid would have received but for the defendant's conduct and then subtract from that amount the expenses, including the value of all expenses Intrepid would have had if defendant's conduct had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

## FINAL INSTRUCTION 42

If you decide that Intrepid is entitled to recover damages for past economic loss in one or more of the categories of CUTSA damages that it claims, then you must decide whether it should also receive prejudgment interest on each item of loss in those categories. Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict.

Whether Intrepid should receive an award of prejudgment interest on all, some, or none of any past economic damages that you may award is within your discretion.

## FINAL INSTRUCTION 43

If you decide that any CUTSA trade-secret misappropriation caused Intrepid harm, you must decide whether that conduct justifies an award of exemplary damages. The purposes of exemplary damages are to punish a wrongdoer for the conduct that harmed Intrepid and to discourage similar conduct in the future.

To recover exemplary damages under CUTSA, Intrepid must prove by clear and convincing evidence that the defendant acted willfully and maliciously. You must determine whether the defendant acted willfully and maliciously, and you will be asked to determine the amount of any exemplary damages.

"Willfully" means that the defendant acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that the defendant acted with an intent to cause injury, or that the conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. A defendant acted with knowing disregard if that defendant was aware of the probable consequences of the conduct and deliberately failed to avoid those consequences.

## FINAL INSTRUCTION 44

In this case, Intrepid seeks damages from more than one defendant for misappropriation of trade secrets. If you determine that more than one defendant is liable to Intrepid for actual losses arising from trade-secret misappropriation, you will be asked to find Intrepid's total damages. Do not attempt to divide those damages between the defendants. The allocation of responsibility for payment of actual losses among multiple defendants is to be done by the court after you reach your verdict.

If you determine that there was any unjust enrichment due to trade-secret misappropriation, you will be asked to allocate to each defendant the amount that defendant was enriched.

## FINAL INSTRUCTION 45

It may be that only one measure of damages (for example, plaintiff's actual loss or defendant's unjust enrichment) is necessary to fully compensate plaintiff. However, you are also entitled to combine both plaintiff's actual loss and a defendant's unjust enrichment in determining the measure of damages to award plaintiff, so long as you follow the guidelines I am about to give you.

These two approaches to damages—plaintiff's actual losses and defendant's unjust enrichment—while different in some respects, may overlap. That is, it may be that defendant profited from particular sales that plaintiff would have made had defendant not competed using the trade secrets at issue. In that situation, the two ways of approaching damages that I have just described would measure the identical damages—whether viewed as plaintiff's loss or defendant's benefit.

The law does not permit plaintiff to recover twice for the same damages. Thus, you may include as damages both plaintiff's actual losses and defendant's unjust enrichment only if and to the extent that they do not overlap in this way. In other words, if you were to include lost sales in calculating plaintiff's actual losses because defendant made the sales, then the value of those same sales must be excluded from any calculation of defendant's unjust enrichment or benefit that you may make. To facilitate elimination of any potential double counting, identify the amount of defendant's unjust enrichment that is also included in plaintiff's actual losses calculated above.

**FINAL INSTRUCTION 46**

I will now instruct you on the claim for breach of contract.

Intrepid claims that it and Evan Kuester entered into a contract called a non-disclosure agreement or NDA.

Intrepid claims that Kuester breached this contract by disclosing Intrepid's confidential information to 3D Systems.

Intrepid also claims that Kuester's breach of this contract caused harm to Intrepid for which Kuester should pay.

Evan Kuester denies these claims. Kuester also claims an affirmative defense of unclean hands.

## FINAL INSTRUCTION 47

To recover damages from Kuester for breach of contract, Intrepid must prove all of the following:

1. That Intrepid and Kuester entered into a contract;

2. That Intrepid did all, or substantially all, of the significant things that the contract required it to do;

3. That Intrepid provided Kuester with Intrepid's confidential information and business plans in furtherance of Kuester's alleged interest in employment with Intrepid;

4. That Kuester did something that the contract prohibited him from doing;

5. That Intrepid was harmed; and

6. That Kuester's breach of contract was a substantial factor in causing Intrepid's harm.

## FINAL INSTRUCTION 48

To prove that a contract was created, Intrepid must prove all of the following:

1. That the contract terms were clear enough that the parties could understand what each was required to do;

2. That the parties agreed to give each other something of value (a promise to do something or not to do something may have value); and

3. That the parties agreed to the terms of the contract.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions.

If Intrepid did not prove all of the above, then a contract was not created.

**FINAL INSTRUCTION 49**

Both an offer and an acceptance are required to create a contract. To prove it made an offer to Kuester, Intrepid must prove all of the following:

1. That Intrepid communicated to Kuester that it was willing to enter into a contract with Kuester;

2. That the communication contained specific terms; and

3. That, based on the communication, Kuester could have reasonably concluded that a contract with these terms would result if he accepted the offer.

If Intrepid did not prove all of the above, then a contract was not created.

**FINAL INSTRUCTION 50**

To prove an offer was accepted, Intrepid must prove both of the following:

1. That Kuester agreed to be bound by the terms of the offer; and

2. That Kuester communicated his agreement to Intrepid.

If Intrepid did not prove both of the above, then a contract was not created.

## FINAL INSTRUCTION 51

You should assume that the parties intended the words in the NDA to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

## FINAL INSTRUCTION 52

You should assume that the parties intended technical words used in the NDA to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

**FINAL INSTRUCTION 53**

In deciding what the words of the NDA meant to the parties, you should consider the whole NDA, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

## FINAL INSTRUCTION 54

In determining the meaning of the words of the NDA, you must first consider all of the other instructions that I have given you touching on the claim for breach of contract. If, after considering these instructions, you still cannot agree on the meaning of the words, then you should interpret the contract against the party that caused the uncertainty.

**FINAL INSTRUCTION 55**

Defendant Kuester has raised as an affirmative defense that Intrepid has come to court with unclean hands. The doctrine of unclean hands is invoked when the defendant proves that the plaintiff has engaged in inequitable, unfair, unconscionable, or deceitful conduct in connection with the same subject matter for which the plaintiff claims a right to damages.

Even if you determine that Intrepid has proven the elements of its claim for breach of contract, you may still reject Intrepid's claim if you determine that Kuester has proven that Intrepid's conduct has been inequitable, unfair, unconscionable, or deceitful, and resulted in prejudice to Kuester. Intrepid's misconduct that constitutes unclean hands must be intimately connected with whether Kuester improperly acquired or disclosed Intrepid's Alleged Trade Secrets in breach of the NDA.

## FINAL INSTRUCTION 56

If you decide that Intrepid has proved its claim against Kuester for breach of contract, you also must decide how much money will reasonably compensate Intrepid for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Intrepid in as good a position as it would have been had Kuester performed as promised.

To recover damages for any harm, Intrepid must prove that when the contract was made, both Intrepid and Kuester knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of contract.

Intrepid must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

## FINAL INSTRUCTION 57

To recover damages for lost profits, Intrepid must prove it is reasonably certain it would have earned profits but for Kuester's breach of contract.

To decide the amount of damages for lost profits, you must determine the gross amount Intrepid would have received but for Kuester's breach and then subtract from that amount all expenses including the value of the labor, materials, and manufacturing costs Intrepid would have had if Kuester's breach had not occurred.

The amount of the lost profits need not be calculated with mathematical precision, but there must be a reasonable basis for computing the loss.

## FINAL INSTRUCTION 58

Intrepid claims that Kuester must restore to Intrepid the benefit that would not have been achieved except for his misappropriation. Intrepid is entitled to restitution if it proves that Kuester knew or had reason to know that 3D Systems knew or had reason to know that Kuester disclosed or used Intrepid's confidential information in breach of the NDA.

## FINAL INSTRUCTION 59

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

**FINAL INSTRUCTION 60**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

## FINAL INSTRUCTION 61

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.